**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION**

| | |
|---|---|
| KAELI GARNER, DOLORES SHEEHAN, PAUL SHEEHAN, RICKY BABANI, MICHAEL BATES, DENNIS CROTEAU, and JEANNETTE CROTEAU, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC., a Delaware Corporation, and A2Z DEVELOPMENT CENTER, INC., a Delaware Corporation,<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT—CLASS ACTION AND DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

**I.    INTRODUCTION**

1.    This case is a class action lawsuit arising out of Amazon's practice of using smart-speaker technology ("Alexa") to surreptitiously save permanent recordings of millions of Americans' voices, all without their knowledge or consent.  Such an invasion of privacy blatantly violates the laws of California, Florida, Massachusetts, and New Hampshire, all of which prohibit the recording of oral communications without the consent of all parties to the communication.  Plaintiffs bring this

CLASS ACTION COMPLAINT - 1
CASE NO.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

action, individually, and on behalf of a class of similarly situated person, to redress those violations of law.

2. The mechanics of Amazon's illegal conduct work as follows. Alexa devices are designed to record and respond to communications immediately after an individual says a word known as a "wake" word, which usually consists of an individual saying the words "Alexa" or "Echo." Once the Alexa device recognizes the "wake" word, the Alexa device then records the ensuing communication—*including anything an individual in the vicinity of the device may say*—and then transmits that recording to Amazon's servers for interpretation and processing before receiving the relevant data back in response. *Amazon then indefinitely and permanently stores a copy of that recording on its own servers for later use and commercial benefit, warehousing billions of private conversations in the process.*

3. This practice becomes all the more sinister when one recognizes the magnitude of how much Alexa can capture. For one, Amazon does not distinguish between a registered Alexa user or non-registered users; *anyone* in the vicinity of an Alexa device who speaks—whether directly to Alexa or to another person in the room, or even to themselves—will have their voice recorded through this process.[1] Further, Amazon's use of this smart-speaker technology is not limited to one line of devices, but encompasses a range of Amazon products including Echo Dot, Echo Plus, Echo Sub, Echo Show, Echo Input, Echo Frames eyeglasses, Amazon Fire TV digital media player, and Amazon Fire tablets. Indeed, Amazon allows third-party manufacturers of devices such as residential thermostats, computers, and security cameras to offer Alexa integration, and even allows third-party manufacturers to offer devices with Alexa capability already built-in, such that those third-party devices are functionally equivalent to an Amazon device (collectively, "Alexa Devices" or "Alexa Device").

4. Shockingly, Alexa may also capture a person's voice and record their conversations even without the intentional use of a wake word. It has been found that words as varied as

---

[1] "Registered" users refer to persons who registered the Alexa Device at issue. "Unregistered" or "Non-registered" users refer to persons who did not register the Alexa Device at issue.

CLASS ACTION COMPLAINT - 2
CASE NO.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

"exclamation," "congresswoman," "Kevin's car," "pickle," or "a ghost" have caused an Alexa device to activate if the programmed wake words were "Alexa" or "Echo."[2] Notably, a user may set their own wake word, which brings with it another wide range of false positives that activate Alexa's ears – and Amazon's insidious course of conduct in the process.

5. Alexa's eavesdropping range thus captures a host of private conversations that many individuals would find extremely personal, including conversations about one's family, medical conditions, religious beliefs, political affiliations, and other personal or private matters. Such conversations are located and stored in a cold server owned by Amazon—and left in Amazon's hands to use as they see fit.

6. Plaintiffs bring this Class Action Complaint against Defendants Amazon.com, Inc., and a2z Development Center, Inc. d/b/a Amazon Lab126 (collectively "Amazon" or "Defendants") to obtain redress for all California, Florida, Massachusetts, and New Hampshire residents who have used Alexa on any Alexa Device, or had their communications monitored, recorded, stored, or intercepted by an Alexa Device—irrespective of whether they were registered or unregistered users—and have therefore been recorded by Amazon without consent. Plaintiffs allege as follows as to themselves, upon personal knowledge of their own acts and experiences, and as to all other matters, upon information and belief including investigation conducted by their undersigned attorneys:

## II. PARTIES

7. Plaintiff Kaeli Garner is a natural person and citizen of California, and resides in the County of San Diego. Plaintiff Kaeli Garner lived in a household with an Alexa Device registered by someone else.

8. Plaintiffs Dolores Sheehan and Paul Sheehan are natural persons and citizens of the Commonwealth of Massachusetts. Plaintiff Dolores Sheehan owns and operates an Amazon Echo

---

[2] Jennifer Jolly, *It's not you, it's them: Google, Alexa and Siri may answer even if you haven't called*, USA TODAY (Feb. 25, 2020), https://www.usatoday.com/story/tech/conferences/2020/02/25/google-alexa-siri-randomly-answer-even-without-wake-word-study-says/4833560002/.

CLASS ACTION COMPLAINT - 3
CASE NO.

device. Dolores and Paul Sheehan are husband and wife and reside in the same household. Plaintiff Paul Sheehan lived in a household with an Alexa Device registered by someone else.

9. Plaintiff Ricky Babani is a natural person and citizen of Florida. A member of his household owns and operates an Alexa Device. Plaintiff Ricky Babani lived in a household with an Alexa Device registered by someone else.

10. Plaintiff Michael Bates is a natural person and citizen of the Commonwealth of Massachusetts. Plaintiff Michael Bates lived in a household with an Alexa Device registered by someone else.

11. Plaintiffs Dennis and Jeannette Croteau are natural person and citizens of New Hampshire. Plaintiff Jeannette Croteau owns and operates an Amazon Device. Plaintiff Dennis Croteau lived in a household with an Alexa Device registered by someone else.

12. Defendant Amazon.com, Inc. is a Delaware corporation with its headquarters and principal place of business at 410 Terry Avenue North, Seattle, Washington.

13. Defendant a2z Development Center, Inc., d/b/a Amazon Lab126, is a Delaware corporation with its headquarters and principal place of business located at 1120 Enterprise Way, Sunnyvale, California. Amazon Lab126 employs thousands of individuals, many of whom work on Alexa-enabled devices and software at its Sunnyvale headquarters, and is a subsidiary of Amazon.com, Inc.

### III. JURISDICTION AND VENUE

14. This Court has subject-matter jurisdiction over this dispute under 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and because at least one member of each class is a citizen of a different state than at least one Defendant.

15. This Court has personal jurisdiction over Defendants because a substantial part of the harm, events, and conduct giving rise to Plaintiff's claims occurred in Washington, and Defendant Amazon.com, Inc. is headquartered in Washington.

CLASS ACTION COMPLAINT - 4
CASE NO.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

16. Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant Amazon.com, Inc. is headquartered in this District, and because a substantial part of the events and conduct giving rise to Plaintiff's claims took place in this District.

## IV. FACTUAL BACKGROUND

17. Amazon is one of the largest companies in the world, with net sales of over $386 billion in 2020.[3]  As an e-commerce company, Amazon's main sources of revenue are retail sales, third-party seller services, subscription services, and Amazon Web Services ("AWS") arrangements that include "global sales of compute, storage, database and other services."[4]  According to some reports, an astounding 42% of the internet is powered by AWS, more than double that of Microsoft, Google, and IBM combined.[5]

18. Amazon also develops certain technology products, including Alexa, Amazon's "cloud-based voice service available on hundreds of millions of devices from Amazon and third-party device manufacturers."[6] Amazon further describes Alexa as its "voice AI," which "lives in the cloud and is happy to help anywhere there's internet access and a device that can connect to Alexa."[7] Alexa "listens" to verbal communications and responds to those communications in a simulated voice.

19. The inception of Alexa began with Amazon Lab126 designing and engineering the Echo "smart speaker" in 2010, which led to Amazon launching the Echo "smart speaker" product in conjunction with the Alexa voice assistant in November 2014.

20. Amazon's use of the Alexa smart-speaker technology is not limited to one line of devices, but now encompasses a range of Amazon products including Echo Dot, Echo Plus, Echo Sub, Echo Show, Echo Input, Echo Frames eyeglasses, Amazon Fire TV digital media player, and

---

[3] Form 10-K for Fiscal Year Ended December 31, 2020, Amazon Inc., https://ir.aboutamazon.com/sec-filings/default.aspx
[4] *Id.*
[5] Matt Ward, *Amazon: The Company Consuming Consumers*, thinkgrowth.org (Jan. 29, 2018), https://thinkgrowth.org/the-big-4-part-one-amazon-the-company-that-consumes-the-world-fb4679f10708.
[6] Amazon, *What is Alexa*, https://developer.amazon.com/en-US/alexa (last visited June 4, 2021).
[7] Amazon, *FAQs: What is Alexa?*, https://www.amazon.com/b?ie=UTF8&node=21576558011 (last visited June 5, 2021).

CLASS ACTION COMPLAINT - 5
CASE NO.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Amazon Fire tablets. Additionally, Amazon allows third-party manufacturer of devices, such as residential thermostats, computers, and security cameras, to offer Alexa integration, and also allows third-party manufacturers to offer devices with Alexa capability already built-in (collectively, "Alexa Devices" or "Alexa Device"). As of January 2019, Amazon has reported that over 100 million devices with Amazon's Alexa assistant pre-installed have been sold.[8]

21. In order to use an Alexa Device, a person needs a WiFi Internet connection and the Alexa mobile application (the "Alexa App") installed on a smartphone or tablet.

22. To first use the Alexa App, an individual must have an account with Amazon. The individual must then follow the set-up process on the Alexa Device, which indicates that one must pair the Alexa Device with the Alexa App. After the person has paired the Alexa Device to the Alexa App, the Alexa Device is ready for use by anyone, including people who do not have an account with Amazon, have not set up the Alexa Device, or do not have an Alexa App.

23. Alexa Devices are designed to record and respond to communications immediately after an individual says a wake word (usually "Alexa" or "Echo").[9] If the wake word is recognized, the Alexa Device records the ensuing communication and then transmits the recording to Amazon's servers for interpretation and processing before receiving the relevant data in response.

24. However, oftentimes, the Alexa Device will record, monitor, or intercept communications even without the intentional use of a wake word. Indeed, reports have stated that it is extremely common for Alexa to activate, begin recording, and then upload the eavesdropped audio to the cloud, even when no wake word was used.[10] It has been found that words as varied as "exclamation," "congresswoman," "Kevin's car," "pickle," or "a ghost" have activated Alexa even if

---

[8] Lucase Matney, *More Than 100 Million Alexa Devices Have Been Sold,* TECH CRUNCH (Jan. 4, 2019), https://techcrunch.com/2019/01/04/more-than-100-million-alexa-devices-have-been-sold/.
[9] Matt Day, Giles Turner, and Natalia Drozdiak, *Amazon Workers Are Listening to What You Tell Alexa,* BLOOMBERG (Apr. 10, 2019), https://www.bloomberg.com/news/articles/2019-04-10/is-anyone-listening-to-you-on-alexa-a-global-team-reviews-audio.
[10] Carley Lerner, *Is Alexa Really Always Listening*, READER'S DIGEST (May 28, 2021), https://www.rd.com/article/is-alexa-really-always-listening/.

CLASS ACTION COMPLAINT - 6
CASE NO.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

the wake words "Alexa" or "Echo" were not used.[11]  According to a report by Bloomberg, there are at least 100 transcripts of conversations uploaded to the cloud *each day* that Alexa Devices have recorded without purposely being activated.[12]

25. Furthermore, Alexa's auditory reach is expansive. It can hear individuals typing across the room such that it can record PIN codes and text messages, by picking up and listening to the vibration of the screen while a user's finger taps it.[13] Alexa has also recorded people during intimate moments.[14] There have been reports that Alexa has also sent and forwarded audio recordings of private conversations to family members, without the intent of the Alexa user.[15]

26. Once Alexa has responded to a recording sent by an Alexa Device, Amazon permanently stores a copy of that recording on its own servers for later use and analysis.[16] While users may attempt to delete their recordings, according to Senator Chris Coons, after directly inquiring of Amazon as to how long voice recordings and transcripts were kept by the company, "Amazon's response leaves open the possibility that transcripts of user voice interactions with Alexa are not deleted from all of Amazon's servers, even after a user has deleted a recording of his or her voice. . .

---

[11] Jennifer Jolly, *It's not you, it's them: Google, Alexa and Siri may answer even if you haven't called*, USA TODAY (Feb. 25, 2020), https://www.usatoday.com/story/tech/conferences/2020/02/25/google-alexa-siri-randomly-answer-even-without-wake-word-study-says/4833560002/.

[12] *Id.*; Matt Day, Giles Turner, and Natalia Drozdiak, *Amazon Workers Are Listening to What You Tell Alexa,* BLOOMBERG (Apr. 10, 2019), https://www.bloomberg.com/news/articles/2019-04-10/is-anyone-listening-to-you-on-alexa-a-global-team-reviews-audio.

[13] Aditya Saroha, *Alexa can hear and record what is typed in nearby devices, study finds*, THE HINDU (Dec. 28, 2020), https://www.thehindu.com/sci-tech/technology/alexa-can-hear-and-record-what-is-typed-in-nearby-devices-study-finds/article33435660.ece.

[14] Asher Stockler, *Amazon Alexa Capturing Audio of People Having Sex, Possible Sexual Assaults: Report*, NEWSWEEK (Aug. 1, 2019), https://www.newsweek.com/amazon-alexa-recordings-romania-sex-privacy-1452173.

[15] Carley Lerner, *Is Alexa Really Always Listening*, READER'S DIGEST (May 28, 2021), https://www.rd.com/article/is-alexa-really-always-listening/.

[16] Charlie Osborne, *Amazon confirms Alexa customer voice recordings are kept forever*, ZD NET (July 3, 2019), https://www.zdnet.com/article/amazon-confirms-alexa-customer-voice-recordings-are-kept-forever/.

CLASS ACTION COMPLAINT - 7
CASE NO.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

. What's more, the extent to which this data is shared with third parties, and how those third parties use and control that information, is still unclear."[17]

27. Amazon then uses those recordings for its own benefit. It claims to use them to constantly refine, improve, and develop new technologies for Amazon. For example, Amazon now has the capability to listen to people's conversations and make targeted advertisements based on what is said.[18] Moreover, many Alexa recordings are individually reviewed by Amazon workers and contractors, with reviewers parsing as many as 1,000 audio clips per day from outposts located in Costa Rica, Romania, and India.[19]

28. Amazon does not sufficiently warn individuals via its terms of service or otherwise that it is intercepting, recording, monitoring, or storing their communications in perpetuity and creating permanent recordings of their voice when they are communicating in the vicinity of an Alexa Device. It also does not obtain their consent to do so.

29. The storage of these recordings has been reported to also be unsecure. Recent reports have described how vulnerable the recordings are to hackers even when stored – a flaw first detected by cyber security firm CheckPoint.[20]

30. Recently, Amazon's ambitions for Alexa have manifested more clearly: Amazon's use of Alexa is part of an overall plan to create a forced "shared" Internet that is automatically opt-in. Indeed, Amazon intends that—by automatic default—all Amazon devices, include "Alexa, Echo, Ring, CCTV cameras, ambient light sources, motion sensors and other electronics" will share part of

---

[17] Alfred Ng, *Amazon Alexa keeps your data with no expiration date, and shares it too*, CNET (July 2, 2019), https://www.cnet.com/home/smart-home/amazon-alexa-keeps-your-data-with-no-expiration-date-and-shares-it-too/; Press Release, Sen. Chris Coons, Amazon responds to Sen. Coons' concerns about consumer privacy practices for Alexa devices (July 3, 2019), *available at* https://www.coons.senate.gov/news/press-releases/amazon-responds-to-sen-coons-concernsabout-consumer-privacy-practices-for-alexa-devices.

[18] *See* U.S. Patent No. 10,692,506 (filed Aug. 2, 2019).

[19] Asher Stockler, *Amazon Alexa Capturing Audio of People Having Sex, Possible Sexual Assaults: Report*, NEWSWEEK (Aug. 1, 2019), https://www.newsweek.com/amazon-alexa-recordings-romania-sex-privacy-1452173.

[20] Tech Desk, *A critical flaw could have leaked all your personal Alexa voice recordings*, THE INDIAN EXPRESS (Aug. 14, 2020), https://indianexpress.com/article/technology/social/amazon-alexa-critical-bug-voice-recordings-6554545/.

CLASS ACTION COMPLAINT - 8
CASE NO.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

the user's Internet channel with his or her neighbors in case they do not have Internet and vice versa.[21] To opt-out of this program, consumers must go through a burdensome opt-out process for all their devices.

31. It should therefore come as no surprise that Amazon's overall goal is, and has always been, the aggressive acquisition of consumer's data based upon its massive AWS presence, its "shared" Internet program, and the use of Alexa Devices to capture and record human conversation and data.

32. Alexa has the ability to automatically ask for consent from its users. Through its functionality, it can ask its users whether they would like to prevent Alexa from storing its conversations permanently after the conversation or inquiry with Alexa is over. It can ask for affirmative vocal consent from the user to permanently store its conversations during the installation process. It can deactivate Amazon's permanent recording functionality for users who do not affirmatively consent. Alexa could simply prevent voice recordings altogether by retaining the user's audio communications only for the time period necessary to process them locally on the device, rather than transmit an entire voice recording to Amazon's servers.

33. However, Amazon does not do this because this would run contrary to its ever-expanding strategy of obtaining and collecting data from millions of Americans for its own commercial gain. The use of Alexa to permanently store and capitalize on millions of Americans' private conversations is working exactly as intended.

## V. CLASS ACTION ALLEGATIONS

34. Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of the following Class of Persons:

---

[21] Abdullah, *Amazon Will Force Users of Their Devices to Share the Internet*, GIZCHINA (May 31, 2021), https://www.gizchina.com/2021/05/31/amazon-will-force-users-of-their-devices-to-share-the-internet/; *see also* Laurel Wamsley, *Your Amazon Echo will Share Your Wireless Network with Neighbors, Unless You Opt Out*, NPR (June 4, 2021), https://www.npr.org/2021/06/02/1002590964/your-amazon-echo-will-share-your-wi-fi-network-with-neighbors-unless-you-opt-out.

CLASS ACTION COMPLAINT - 9
CASE NO.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

**California Subclass**: All residents in California who used Alexa on any Alexa Device, or had their communications recorded, stored, intercepted, or monitored by an Alexa Device, two years from the date of the filing of this Complaint.

**Florida Subclass**: All residents in Florida who used Alexa on any Alexa Device, or had their communications recorded, stored, intercepted, or monitored by an Alexa Device, four years from the date of the filing of this Complaint.

**Massachusetts Subclass**: All residents in Massachusetts who used Alexa on any Alexa Device, or had their communications recorded, stored, intercepted, or monitored by an Alexa Device, three years from the date of the filing of this Complaint.

**New Hampshire Subclass**: All residents in New Hampshire who used Alexa on any Alexa Device, or had their communications recorded, stored, intercepted, or monitored by an Alexa Device, three years from the date of the filing of this Complaint.

37. Excluded from the Class are: (1) Defendants, Defendants' subsidiaries, parents, successors, predecessors, agents, employees, attorneys, and any entity in which Defendants of their parents have a controlling interest and their current or former employees, officers, and directors; (2) any Judge or Magistrate presiding over this action and any immediate family members; (3) persons who properly execute and file a timely request for exclusion from the Class; and (4) Plaintiffs' counsel and Defendants' counsel.

38. Defendants' conduct violated the privacy rights of thousands, if not millions, of Class members, including Plaintiffs, without consent.

39. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

40. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

CLASS ACTION COMPLAINT - 10
CASE NO.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

    a. Whether Alexa Devices operating Alexa record, monitor, intercept, or store voice recordings of persons who interact with them.

    b. Whether registered or unregistered Alexa users who use Alexa Devices in their home or locations where they otherwise would have an expectation of privacy, have an objectively reasonable expectation of confidentiality.

    c. Whether Defendants obtained consent to record, monitor, intercept, or store voice recordings of registered or unregistered users of Alexa Devices.

    d. Whether Defendants' conduct violates the laws of the states of California, Florida, New Hampshire, and the Commonwealth of Massachusetts, as alleged below.

41. Plaintiffs' claims are typical of those of the Class because Plaintiffs and the Class were harmed by Defendants' wrongful conduct in violation of the applicable state statutes. Plaintiffs' and Class members' privacy were invaded by Defendants' uniform wrongful conduct.

42. Plaintiffs will adequately protect the Class's interests. Plaintiffs have retained counsel competent and experience in complex litigation and class actions, including litigations to remedy privacy violations. Plaintiffs have no interest that is antagonistic to the interests of the Class, and Defendants have no defenses unique to any Plaintiff. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to the interests of the other members of the Class.

43. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## TOLLING, CONCEALMENT, AND ESTOPPEL

44. The applicable statutes of limitation have been tolled as a result of Amazon's knowing and active concealment and denial of the facts alleged herein, namely its practice of recording, intercepting, monitoring, and permanently storing individual's private conversations without their consent.

45. Plaintiffs and Class Members could not, with due diligence, have discovered the full

CLASS ACTION COMPLAINT - 11
CASE NO.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

scope of Amazon's conduct, due in no small part to Amazon's efforts to conceal such conduct. All applicable statutes of limitation also have been tolled by operation of the discovery rule. Under the circumstances, Amazon was under a duty to disclose the nature and significance of their practice of recording, intercepting, monitoring, and permanently storing confidential communications, but did not do so. Defendants are therefore estopped from relying on any statute of limitations.

46. Amazon's fraudulent concealment and omissions are common to Plaintiffs and all Class members.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
Violation of the California Invasion of Privacy Act ("CIPA"),
Cal. Penal Code § 630, *et seq*.
(On Behalf of Plaintiff Garner and the California Subclass)

47. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein

48. The California Legislature enacted CIPA finding that "advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." § 630. Thus, the intent behind CIPA is "to protect the right of privacy of the people of this state." *Id.*

49. Cal. Penal Code §632 prohibits recording of any confidential communication, including those occurring among the parties in the presence of one another or by means of a telephone, telegraph or other device, through the use of an electronic amplifying or recording device without the consent of all parties to the communication.

50. When Plaintiff and Class members used Alexa Devices or otherwise had their communications recorded, stored, intercepted, or monitored by an Alexa Device, Amazon recorded their communications, transmitted them to cloud servers, and retained copies of them, in violation of Cal. Penal Code § 632(a) and (b), which prohibits any "corporation" from intentionally using a

CLASS ACTION COMPLAINT - 12
CASE NO.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

"recording device to eavesdrop upon or record" any "confidential communication" without the "consent of all parties" to the confidential communication.

51. Plaintiff and Class members allege that Amazon through the use of Alexa, intentionally recorded the private conversations of individuals, because it had the knowledge, to a substantial certainty, that the use of the Alexa Device will result in the recordation of a confidential conversation.

52. Indeed, Amazon failure to rectify and destroy the audio recordings of millions of individuals further demonstrates Amazon's intent to permanently store said confidential communications, and to continue its practice of eavesdropping and recording individuals' conversations.

53. Plaintiff and Class Members never consented to Amazon's recording of their conversations.

54. Plaintiff and Class Members had a reasonable expectation of privacy in their confidential communications.

55. Plaintiff and Class members seek statutory damages in accordance with § 637.2(a), which provides for the greater of: (1) $5,000 per violation; or (2) three times the amount of damages sustained by Plaintiff and the Class in an amount to be proven at trial, as well as injunctive or other equitable relief.

56. Plaintiff and Class members have also suffered irreparable injury from these unauthorized acts of disclosure, their persona, private, and sensitive health information have been collected, viewed, accessed, stored, and used by Defendants, and have not been destroyed, and due to the continuing threat of such injury, have no adequate remedy at law, entitled Plaintiff to injunctive relief.

57. Plaintiff, individually and on behalf of the members of the Class, bring this claim within two years of the alleged misconduct that occurred by Amazon, as set forth herein.

CLASS ACTION COMPLAINT - 13
CASE NO.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

**SECOND CLAIM FOR RELIEF**
**Violation of the Florida Wiretapping Statute, Fla. Stat. § 934.03**
(On Behalf of Plaintiff Babani and the Florida Subclass)

58. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

59. Plaintiff and Class members used Alexa Devices in their residences or otherwise had their communications recorded, stored, intercepted, or monitored by an Alexa Device.

60. When Plaintiff and Class members used Alexa Devices or otherwise had their communications recorded, stored, intercepted, or monitored by an Alexa Device, Amazon recorded their communications, transmitted them to cloud servers, and retained copies of them, in violation of Fla. Stat. § 934.03 (1)(a), which prohibits the intentional interception of another person's oral communications.

61. When Plaintiff and Class members used Alexa Devices or otherwise had their communications recorded, stored, intercepted, or monitored by an Alexa Device, Amazon recorded their communications, transmitted them to cloud servers, retained copies of them, and utilized those recordings for Amazon's own commercial benefit, in violation of Fla. Stat. § 934.03 (1)(b), which prohibits the intentional "use" of another person's oral communications.

62. Amazon did not adequately disclose to Plaintiff and Class members that it would record and store their communications that occurred in the vicinity of Alexa.

63. Plaintiff and Class members did not believe that Amazon would record and store their interactions with Alexa.

64. Plaintiff and Class members reasonably expected that their Alexa interactions would remain private.

65. Plaintiff and Class members did not consent to have their communications recorded, stored, intercepted, or monitored by Amazon through the Alexa Device.

66. Amazon intentionally recorded and stored interactions Plaintiff and Class members had with Alexa.

67. Amazon's conduct violated the statute complained of herein.

CLASS ACTION COMPLAINT - 14
CASE NO.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

68. Amazon's conduct in violation of the state statute complained of herein caused injury to the dignity, well-being, and security of Plaintiff and Class members.

69. By this conduct, Amazon intentionally intercepted and used oral communications without the consent of all parties to those communications, in violation of Fla. Stat. § 934.03.

70. Amazon violated Plaintiffs' and Class members' right to privacy in their confidential communications, as protected by Fla. Stat. § 934.03.

71. Amazon is able, and Plaintiff seeks an Order requiring it, to destroy the recordings of Plaintiffs and Class members' interactions with Alexa Devices, and to implement procedures requiring consent from any user.

72. Plaintiff, individually and on behalf of the members of the Class seek: (1) an injunction requiring Amazon to obtain consent prior to recording minors' Alexa interactions and to delete those recordings already made, and to implement functionality sufficient to prevent unauthorized recordings in the future; (2) damages equal to $100 per day or $1,000, whichever is greater, under Fla. Stat. § 934.10; (3) punitive damages; and (4) costs and reasonable attorneys' fees under Fla. Stat. § 934.03.

73. Plaintiff, individually and on behalf of the members of the Class, bring this claim within four years of the alleged misconduct that occurred by Amazon, as set forth herein.

### THIRD CLAIM FOR RELIEF
**Violation of the Massachusetts Wiretap Statute, Mass. Gen. Laws ch. 272, § 99**
**(On Behalf of Plaintiffs Dolores Sheehan, Paul Sheehan, and Michael Bates, and the Massachusetts Subclass)**

74. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

75. Plaintiffs and Class members used Alexa Devices in their residences or otherwise had their private conversations overheard, recorded, intercepted, or monitored by an Alexa Device.

76. When Plaintiffs and Class members used Alexa Devices or otherwise had their communications recorded, stored, intercepted, or monitored by and Alexa Device, Amazon recorded their communications, transmitted them to cloud servers, and retained copies of them, in violation of Mass. Gen. Laws ch. 272, § 99 (C)(1), which prohibits any corporation who "willfully commits an

CLASS ACTION COMPLAINT - 15
CASE NO.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

interception, attempts to commit an interception, or procures any other person to commit an interception or to attempt to commit an interception of any wire or oral communication."

77. When Plaintiffs and Class members used Alexa Devices or otherwise had their communications recorded, stored, intercepted, or monitored by an Alexa Device, Amazon recorded their communications, transmitted them to cloud servers, retained copies of them, and utilized those recordings for Amazon's own commercial benefit, in violation of Mass. Gen. Laws ch. 272, § 99 (C)(3)(b), which prohibits any corporation who "willfully uses or attempts to use the contents of any wire or oral communication, knowing that the information was obtained through interception."

78. Amazon did not adequately disclose to Plaintiffs and Class members that it would record and store their communications that occurred in the vicinity of Alexa.

79. Plaintiffs and Class members did not believe that Amazon would record and store their interactions with Alexa.

80. Plaintiffs and Class members reasonably expected that their Alexa interactions would remain private.

81. Plaintiffs and Class members did not consent to have their communications recorded, stored, intercepted, or monitored by Amazon through the Alexa Device.

82. Amazon intentionally recorded and stored interactions Plaintiffs and Class members had with Alexa.

83. Amazon's conduct violated the statute complained of herein.

84. Amazon's conduct in violation of the state statute complained of herein caused injury to the dignity, well-being, and security of Plaintiffs and Class members.

85. By this conduct, Amazon intentionally intercepted and used oral communications without the consent of all parties to those communications, in violation of Massachusetts General Laws Chapter 272, Section 99.

86. Amazon violated Plaintiffs' and Class members' right to privacy in their confidential communications, as protected by Massachusetts General Laws Chapter 272, Section 99.

CLASS ACTION COMPLAINT - 16
CASE NO.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

87. Amazon is able, and Plaintiffs seek an Order requiring it, to destroy the recordings of Plaintiffs and Class members' interactions with Alexa Devices, and to implement procedures requiring consent from any user.

88. Plaintiffs, individually and on behalf of the members of the Class seek: (1) an injunction requiring Amazon to obtain consent prior to recording minors' Alexa interactions and to delete those recordings already made, and to implement functionality sufficient to prevent unauthorized records in the future; (2) damages equal to $100 per day or $1,000, whichever is greater, under Mass. Gen. Laws ch. 272, §99(Q); (3) punitive damages; and (4) costs and reasonable attorneys' fees under Mass. Gen. Laws ch. 272, § 99(Q).

89. Plaintiffs, individually and on behalf of the members of the Class, bring this claim within three years of the alleged misconduct that occurred by Amazon, as set forth herein.

**FOURTH CLAIM FOR RELIEF**
**Violation of the New Hampshire Wiretapping and Eavesdropping Statute,**
**N.H. Rev. Stat. § 570-A:2**
**(On Behalf of Plaintiffs Dennis Croteau and Jeannette Croteau,**
**and the New Hampshire Subclass)**

90. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

91. Plaintiffs and Class members used Alexa Devices in their residences or otherwise had their private conversations overheard, recorded, intercepted, or monitored by an Alexa Device.

92. When Plaintiffs and Class members used Alexa Devices or otherwise had their communications recorded, stored, intercepted, or monitored by an Alexa Device, Amazon recorded their communications, transmitted them to cloud servers, retained copies of them, in violation of N.H. Rev. Stat. § 570-A:2 (a) and (b), which prohibits the willful interception of any oral communication, and the willful use of any device to intercept any oral communication, respectively.

93. Amazon did not adequately disclose to Plaintiffs and Class members that it would record and store their communications that occurred in the vicinity of Alexa.

94. Plaintiffs and Class members did not believe that Amazon would record and store their interactions with Alexa.

CLASS ACTION COMPLAINT - 17
CASE NO.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

95. Plaintiffs and Class members reasonably expected that their Alexa interactions would remain private.

96. Plaintiffs and Class members did not consent to have their communications recorded, stored, intercepted, or monitored by Amazon through the Alexa Device.

97. Amazon intentionally recorded and stored interactions Plaintiffs and Class members had with Alexa.

98. Amazon's conduct violated the statute complained of herein.

99. Amazon's conduct in violation of the state statute complained of herein caused injury to the dignity, well-being, and security of Plaintiffs and Class members.

100. By this conduct, Amazon intentionally intercepted and used oral communications without the consent of all parties to those communications, in violation of N.H. Rev. Stat. § 570-A:2.

101. Amazon violated Plaintiffs' and Class members' right to privacy in their confidential communications, as protected by N.H. Rev. Stat. § 570-A:2.

102. Amazon is able, and Plaintiffs seek an Order requiring it, to destroy the recordings of Plaintiffs and Class members' interactions with Alexa Devices, and to implement procedures requiring consent from any user.

103. Plaintiffs, individually and on behalf of the members of the Class seek: (1) an injunction requiring Amazon to obtain consent prior to recording minors' Alexa interactions and to delete those recordings already made, and to implement functionality sufficient to prevent unauthorized recordings in the future; (2) damages equal to $100 per day or $1,000, whichever is greater, under N.H. Rev. Stat § 570-A:11; (3) punitive damages; and (4) costs and reasonable attorneys' fees under N.H. Rev. Stat. § 570-A:2.

104. Plaintiffs, individually and on behalf of the members of the Class, bring this claim within three years of the alleged misconduct that occurred by Amazon, as set forth herein.

CLASS ACTION COMPLAINT - 18
CASE NO.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Class, respectfully request that the Court enter an order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiffs as representative of the Class, and appointing their counsel as class counsel;

B. Declaring that Amazon's conduct, as set out above, violates the state statutes cited herein;

C. Ordering Amazon to delete all recordings of Class members, and to implement procedures to require consent before recording or storing protected communications;

D. Awarding damages, including nominal, statutory, and punitive damages where applicable, to Plaintiffs and the Class in an amount to be determined at trial;

E. Awarding Plaintiffs and the Class their reasonable litigation expenses and attorney's fees;

F. Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable;

G. Awarding such other further injunctive and declaratory relief as is necessary to protect the interests of Plaintiffs and the Class; and

H. Awarding such other and further relief as the Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

DATED: June 7, 2021                     Respectfully Submitted,

By: */s/ Bradley S. Keller*
Bradley S. Keller, WSBA #10665
**BYRNES KELLER CROMWELL LLP**
1000 Second Avenue
Seattle, Washington 98104
Telephone: (206) 622-2000
Facsimile: (206) 622-2522
bkeller@byrneskeller.com

CLASS ACTION COMPLAINT - 19
CASE NO.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

**LABATON SUCHAROW LLP**
Michael P. Canty (*pro hac vice* forthcoming)
Carol Villegas (*pro hac vice* forthcoming)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
mcanty@labaton.com
cvillegas@labaton.com

**THORNTON LAW FIRM LLP**
Guillaume Buell (*pro hac vice* forthcoming)
1 Lincoln Street
Boston, Massachusetts 02111
Telephone: (617) 720-1333
Facsimile: (617) 720-2445
gbuell@tenlaw.com

**GOLDMAN SCARLATO & PENNY, P.C.**
Mark Goldman (*pro hac vice* forthcoming)
Paul Scarlato (*pro hac vice* forthcoming)
Brian Penny (*pro hac vice* forthcoming)
8 Tower Bridge
161 Washington Street
Conshohocken, Pennsylvania 19428
Telephone: (484) 342-0700
Facsimile: (484) 580-8747
goldman@lawgsp.com
scarlato@lawgsp.com
penny@lawgsp.com

Alan L. Rosca (*pro hac vice* forthcoming)
23250 Chagrin Blvd.
Beachwood, OH 44122
Telephone: (888) 998-0530
Facsimile: (484) 580-8747

*Counsel for Plaintiffs*

CLASS ACTION COMPLAINT - 20
CASE NO.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000