UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KAELI GARNER, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>AMAZON.COM, INC., et al.,<br><br>  Defendant. | CASE NO. 2:21-cv-00750-RSL<br><br>**AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND ORDER** |

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**A.    General Principles**

1.    An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2.    As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible.

B. **ESI Disclosures**

Within 30 days of entry of this Order, or at a later time if agreed to by the parties, each party shall disclose:

1. <u>Custodians.</u> The custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under the custodian's control.

2. <u>Non-custodial Data Sources.</u> A list of non-custodial data sources (*e.g.*, structured databases, shared drives, servers), if any, likely to contain discoverable ESI.

3. <u>Third-Party Data Sources.</u> A list of third-party data sources, if any, likely to contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4. <u>Inaccessible Data.</u> A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

C. **ESI Discovery Procedures**

1. <u>On-site inspection of electronic media.</u> Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2. <u>Search methodology.</u> The parties shall timely confer to attempt to reach agreement on appropriate search methodology, including search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-

aided methodologies, before any such effort is undertaken. The parties shall continue to cooperate in revising the appropriateness of the search methodology.

      a.      Prior to running searches or implementing any other search methodology:

            i.      The producing party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information. To facilitate good-faith negotiations over the search terms or other search methodology, the producing party shall provide a search term hit list or hit report after global de-duplication (including the number of documents that hit on each term, the number of unique documents that hit on each term (documents that hit on a particular term and no other term on the list), and the total number of documents that would be returned by using the proposed search term list, with and without families).

            ii.      The requesting party is entitled to, within 14 days of the producing party's disclosure, request additional search terms or queries to those disclosed by the producing party along with a good faith explanation for the requested additional search terms or queries. Nothing herein shall require the producing party to agree with the requesting party's additional search terms or queries, nor shall the receiving party be required to agree with the producing party's proposed search terms or queries. Using the search term hit report or hit list identified in the preceding paragraph and any other method to determine the reasonableness or overbreadth of any particular search term or query (*e.g.*, sampling), the parties shall cooperate in good faith to reach agreement on a final set of search terms or queries to collect and produce relevant and responsive ESI. Any disputes over the final set of search terms or queries shall promptly be brought before the Court for resolution.

      b.    During discovery: The parties recognize that searching for relevant ESI is an iterative process. As such, if, during the course of discovery, the receiving party reasonably believes based on ESI already produced or discovery already taken that additional search terms or queries are necessary to collect additional relevant ESI, the receiving party may request additional search terms or queries. In such a case, consistent with Section C(2)(a)(ii) above, the producing party shall not be required to agree with the requesting party's additional search terms or queries and, using the search term hit report or hit list discussed in Section C(2)(a)(ii) above and any other method to determine the reasonableness or overbreadth of any particular search term or query (e.g., sampling), the parties shall cooperate in good faith to reach agreement on any additional search terms or queries. Any disputes over additional search terms or queries shall promptly be brought before the Court for resolution

      c.    Upon reasonable request, a party shall disclose information relating to network design, the types of databases, database dictionaries, the ESI document retention policy, or the backup and systems recovery routines, including, but not limited to, tape rotation and destruction/overwrite policy.

    3.    <u>Lost Data</u>. If a producing party becomes aware that any discoverable ESI or relevant data sources have been lost or destroyed, that party shall promptly advise the receiving party of that fact, along with a description of the data sources or ESI and the circumstances of such loss or destruction.

3. <u>Format.</u>

    a. ESI will be produced to the requesting party with searchable text, in a format decided between the parties as detailed below.

    b. Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, audio, video, photograph, database, and drawing files, will be produced in native format. Presentation files (*e.g.*, MS PowerPoint, Google Slides) shall either be produced in their native format or, if produced in image format, shall be produced both with and without speaker notes showing. Documents with tracked changes shall either be produced in their native format or, if produced in image format, shall be processed, imaged, and produced so that tracked changes and comments are shown and hidden content unhidden.

    c. Each document image file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history.

    d. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

    e. The parties shall produce their information in the following format: single-page black and white, Group IV, 300 DPI TIFF (or where necessary single-page color JPEG) images and associated multi-page text files containing extracted text or with appropriate software load files containing all information required by the litigation support system used by the receiving party.

f.      The full text of each electronic document shall be extracted ("Extracted Text") and produced in a text file. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

4.      <u>De-duplication.</u> The parties shall de-duplicate their ESI production across custodial and non-custodial data sources to remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level.  Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates.  The parties agree that an e-mail that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an e-mail that does not include content in those fields, even if all remaining content in the e-mail is identical. The duplicate custodian information and file path information removed during the de-duplication process tracked in a custodian all and duplicate file path fields, respectively,  in the database load file.

5.      <u>Email Threading.</u>  The parties may use analytics technology to identify email threads and need only review the unique most inclusive copy and related family members and may exclude lesser inclusive copies from review.  The producing party will produce all relevant emails in a thread, including lesser inclusive emails.

6.      <u>Metadata fields.</u> The parties agree that only the following metadata fields need be produced, and only to the extent it is reasonably accessible and non-privileged: document type; custodian and  custodian all (or storage location if no custodian); author; from; to; cc; bcc; title/subject; email subject; file name; file size; file extension; original file path; duplicate file path; date and time created; date and time sent; date and time modified; date and time received;

last saved by; and hash value. The list of metadata type is intended to be flexible and may be changed by agreement of the parties, after a meet and confer regarding sources of discovery, particularly in light of advances and changes in technology, vendor, and business practices. Other fields that should be included in the load file are: beginning bates; ending bates; beginning attach; ending attach; tracked changes; redacted; is embedded; path to native; and path to extracted text (or OCR).

7. <u>Embedded Objects.</u> Embedded files shall be produced as attachments to the document that contained the embedded file, with the parent/child relationship preserved. The embedded files will be marked with a "YES" in the load file under the "Is Embedded" metadata field. The parties agree logos need not be extracted as separate documents as long as they are displayed in the parent document.

8. <u>Attachments.</u> Attachments will be produced sequentially after the parent e-mail. Upon request from a receiving party, a party shall meet and confer on the request and will use reasonable efforts to collect and produce identified documents that are links in e-mails, including, but not limited to, Google G Suite, Microsoft O365, etc. The producing party shall make good faith efforts to ascertain prior to collection whether its proposed custodians routinely use links to documents in emails to ensure the efficient collection of linked documents into the corpus of the collected data.

9. <u>Compressed File Types.</u> Compressed file types (e.g., .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

10. <u>Hard-Copy Documents.</u> If the parties elect to produce hard-copy documents in an electronic format, hard copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (i.e., dat) that indicates document breaks and sets forth the custodian or custodian/location associated with

each produced document, and the beginning bates number, ending bates number, pages, and volume. If an original document contains color, and the color is necessary to understand the meaning or content of the document, the document shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. Hard-copy documents will be scanned using Optical Character Recognition technology and searchable ASCII text files will be produced (or Unicode text format if the text is in a foreign language), unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file will be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

**D.    Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1.    Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2.    The parties will supplement their disclosures in accordance with and to the extent necessary under Fed. R. Civ. P. 26(e).

3. Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

    a. Deleted, slack, fragmented, or other data only accessible by forensics.

    b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

    c. On-line access data such as temporary internet files, history, cache, cookies, and the like.

    d. Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

    e. Back-up data that Amazon represents are duplicative of data that are more accessible elsewhere.

    f. Server, system or network logs.

    g. Data remaining from systems that Amazon represents are no longer in use that is unintelligible on the systems in use.

    h. Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**E. Privilege**

1. A producing party shall create a privilege log of all documents fully withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order, and produced in Excel format. Privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available non-privileged metadata that the parties have agreed to produce, including author/recipient or to/from/cc/bcc names or email addresses; the subject matter or title; and date created. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the

Federal Rules of Civil Procedure. Privilege logs will be produced to all other parties on a rolling basis no later than 30 days after delivering a production unless an earlier deadline is agreed to by the parties.

2. Redactions need not be logged so long as the basis for the redaction is clear on the redacted document and a redaction field is included in the load file.

3. With respect to privileged or work-product information generated after the filing of the complaint in *Hall-O'Neil, et al. v. Amazon.com, Inc., et al.*, Case No. 2:19-cv-00910-RAJ-MLP (W.D. Wash.), parties are not required to include any such information in privilege logs.

4. Absent a showing of good cause, activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

5. Pursuant to Fed. R. Evid. 502(d), the production of any documents in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law.  Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party, and its production shall not constitute a waiver of such protection.

DATED: April 7, 2022

/s/ *Bradley S. Keller*
Bradley S. Keller, WSBA No. 10665
BYRNES KELLER CROMWELL LLP
1000 Second Avenue
Seattle, WA  98104
Telephone:  (206) 622-2000
Facsimile:  (206) 622-2522
Email: bkeller@byrneskeller.com

*Liaison Counsel for Plaintiffs and the Class*

/s/ *Brian D. Buckley*
Brian D. Buckley, WSBA No. 26423
FENWICK & WEST LLP
1191 Second Avenue, 10th Floor
Seattle, WA  98101
Telephone:  (206) 389.4510
Facsimile:  (206) 389.4511
Email: bbuckley@fenwick.com

| | |
|---|---|
| Paul J. Geller*<br>Stuart A. Davidson*<br>Maxwell H. Sawyer*<br>Alexander C. Cohen*<br>ROBBINS GELLER RUDMAN<br>  &amp; DOWD LLP<br>120 East Palmetto Park Road<br>Suite 500<br>Boca Raton, FL  33432<br>Telephone:  (561) 750-3000<br>Facsimile:  (561) 750-3364<br>Email: pgeller@rgrdlaw.com<br>       sdavidson@rgrdlaw.com<br>       msawyer@rgrdlaw.com<br>       acohen@rgrdlaw.com | Laurence F. Pulgram*<br>Jedediah Wakefield*<br>Armen N. Nercessian*<br>FENWICK & WEST LLP<br>555 California Street, 12th Floor<br>San Francisco, CA  94104<br>Telephone:  (415) 875-2300<br>Facsimile:  (415) 281.1350<br>Email: lpulgram@fenwick.com<br>       jwakefield@fenwick.com<br>       anercessian@fenwick.com<br><br>*Attorneys for Defendants Amazon.com, Inc. and Amazon.com Services, LLC* |
| Michael P. Canty*<br>Carol C. Villegas*<br>David Saldamando*<br>LABATON SUCHAROW LLP<br>140 Broadway<br>New York, NY  10005<br>Telephone:  (212) 907-0700<br>Facsimile:  (212) 818-0477<br>Email:  mcanty@labaton.com<br>       cvillegas@labaton.com<br>       dsaldamando@labaton.com | *  Admitted *pro hac vice* |

*Co-Lead Counsel for Plaintiffs and the Class*

*  Admitted *pro hac vice*

## ORDER

Based on the foregoing, IT IS SO ORDERED.

DATED this 8th day of April, 2022.

*[signature]*
The Honorable Robert S. Lasnik
UNITED STATES DISTRICT JUDGE