UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KAELI GARNER, *et al.*,<br><br>          Plaintiffs,<br><br>    v.<br><br>AMAZON.COM, INC., *et al.*,<br><br>          Defendants. | Cause No. C21-0750RSL<br><br>ORDER GRANTING IN PART PLAINTIFFS' MOTION TO COMPEL (Dkt. # 115) |

This matter comes before the Court on "Plaintiffs' Motion to Compel Defendants' Responses to Requests for Production." Dkt. # 115. Plaintiffs served their first Requests for Production ("RFP Set 1") on February 4, 2022. Defendants objected to a number of the requests, and plaintiffs filed a motion to compel. The parties were ultimately able to resolve their dispute regarding the meaning of "third parties," but plaintiffs now request that the Court overrule defendants' objections as to five categories of document requests involving (1) Alexa recordings and transcripts, (2) Amazon's disclosures to class members, (3) how Alexa devices listen and record, (4) customer complaints, (5) Amazon's disclosure of recordings, and (6) documents related to class certification and damages.

ORDER GRANTING IN PART PLAINTIFFS'
MOTION TO COMPEL (Dkt. # 115) - 1

Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] the Court finds as follows:

**1. Alexa Recordings and Transcripts**

As discussed in a prior discovery order, defendants refused to produce audio recordings and transcripts if (a) a named plaintiff is the account holder and both the account holder and another named plaintiff (described as the account holder's partner or spouse) requested the recordings/transcripts and (b) the account holder is not a named plaintiff. Dkt. # 123 at 2-3. The Court characterized the first type of refusal as "baffling," and defendants have since produced the recordings and transcripts associated with accounts held by a named plaintiff. Dkt. # 123 at 3; Dkt. # 130 at ¶ 15.

With regards to the recordings of plaintiffs Kaeli Garner, Ricky Babani, and Caron Watkins, they were apparently made through Alexa-enabled devices and accounts held by non-parties. Amazon has taken the position that these plaintiffs need to obtain the written consent of the non-party account holders – or at least to provide the non-party account holders with notice and an opportunity to object -- before the recordings will be produced. Dkt. # 129 at 4 and 7. For authority, Amazon cites "commonsense," arguing that because plaintiffs have a personal relationship with the account holders, requiring notice or written consent presents no burden to them. Dkt. # 129 at 8.

---

[1] This matter can be decided on the papers submitted. Defendants' request for oral argument is DENIED.

ORDER GRANTING IN PART PLAINTIFFS'
MOTION TO COMPEL (Dkt. # 115) - 2

Neither Amazon's privacy policies nor commonsense justifies such a procedure. Amazon notifies customers that they will release account information in certain circumstances, such as when "appropriate to comply with the law," and that if any other type of disclosure is in the offing, the customer "will receive notice when personal information about you might be shared with third parties [so the customer] will have an opportunity to choose not to share the information." Dkt. # 59 at 104. If Amazon believes its customers deserve or expect notice and an opportunity to object in the circumstances presented here, it could have and should have provided that notice and opportunity at any point over the last nine months. *See Kater v. Churchill Downs Inc.*, No. 15-CV-00612-RSL, 2020 WL 7220619, at *1 (W.D. Wash. Nov. 23, 2020) ("Amazon does not explain why it waited until now to take steps to notify its customers that plaintiffs are seeking their contact information. Amazon is and has been free to communicate with its customers at any time. Despite knowing as early as July 27, 2020, that plaintiffs were seeking its customers' identifying information (and despite receipt of the formal subpoena on August 20, 2020), Amazon has still not taken the steps it now deems necessary for customer privacy and its own business interests. As the Court previously noted, Google, upon receipt of a similar subpoena, immediately sent its customers an email notifying them that plaintiffs were seeking information related to their Google accounts, thereby providing its customers with an opportunity to raise objections before the production deadline. . . . Amazon's decision to eschew such a procedure remains unexplained. The issue before the Court at this juncture is whether Amazon should be compelled to comply with a valid third-party subpoena: it

ORDER GRANTING IN PART PLAINTIFFS'
MOTION TO COMPEL (Dkt. # 115) - 3

cannot forestall production on the ground that it chose to wait for the Court's ruling before providing notice to its customers."). At this point in the discovery process, Amazon will be compelled to supplement its response to RFP No. 35 by providing the recordings and transcripts related to Garner, Babani, and Watkins.

**2. Amazon's Disclosures to Class Members**

RFP Nos. 1 and 15 seek (a) all documents supporting defendants' contention that users of Alexa-enabled devices became bound by any terms of use or privacy policies and (b) all documents or communications alerting unregistered persons that their voices are being collected, captured, stored, or disclosed. Dkt. # 116-1 at 5 and 22. These documents are clearly relevant: defendants have raised affirmative defenses based on plaintiffs' purported consent to its recording practices. Defendants argue that the requests for production are indiscriminate, overly broad, and unduly burdensome because they seek "all" responsive documents or communications and that the Court has already refused to compel responses on that ground.

Plaintiffs' prior motion to compel requested that the Court overrule defendants' objection to the phrase "all documents and communications" as used in approximately thirty requests for production without making a showing that any particular universe of documents was needed in order to pursue a claim or invalidate a defense. Dkt. # 100 at 3. The Court specifically noted that, "[w]hile it may be entirely appropriate to require defendants to produce each and every document and communication which they contend bound Alexa users to their terms of use/privacy policy (RFP No. 1), forcing defendants to produce all documents and

ORDER GRANTING IN PART PLAINTIFFS'
MOTION TO COMPEL (Dkt. # 115) - 4

communications relating to the amount defendants charge for the use of Alexa on third party devices (RFP No. 28) would appear to have no benefit over simply producing 'documents sufficient to show' those amounts." Plaintiffs now focus on only two requests for production that seek exactly the type of information that needs to be exhaustively produced and have articulated both their relevance and importance to the issues in the case. The fact that the Court previously denied an omnibus request to compel that included these same RFPs is irrelevant in this context.

Defendants next assert that they have sufficiently responded to RFP Nos. 1 and 15 by providing "every version of the relevant account agreements, as well as records demonstrating how users agree to those terms," Dkt. # 129 at 10, and promising to "produce responsive account records demonstrating Plaintiffs' assent to the Amazon Conditions of Use, Alexa Terms of Use, and Amazon's Privacy Notice" once plaintiffs provide "proper authorization with respect to those Plaintiffs who base claims on their use of Alexa . . . through account shared with another plaintiff or held by non-parties in the same household," Dkt. # 116-9 at 4. Amazon's objection based on plaintiffs' failure to provide the written consent of the account holders is overruled for the reasons stated above. To the extent Amazon's past and promised productions accurately represent the universe of documents on which it intends to rely to show that users of Alexa-enabled devices agreed to the collection, capture, storage, and/or disclosure of their voice recordings, no further supplementation is necessary. Amazon will be bound by its production, however, when attempting to prove consent. If there are additional documents which defendants

ORDER GRANTING IN PART PLAINTIFFS'
MOTION TO COMPEL (Dkt. # 115) - 5

contend show plaintiffs' purported consent to its recording and use practices, it shall supplement its responses to RFP Nos. 1 and 15.

**3. Voice Identification**

Plaintiffs seek information regarding how Alexa-enabled devices identify specific voices or users, asking whether the devices can identify a speaker or voice in the absence of a wake word (RFP Nos. 4 and 19), whether they utilize an authentication process to limit usage to the registered user (RFP No. 5), and how they create, record, store, and transmit voice prints or user-specific voice profiles (RFP No. 18).[2] Plaintiffs claim that these requests seek information regarding how Alexa operates and how the devices wiretap plaintiffs. Dkt. # 133 at 7. In particular, plaintiffs contend that this information is essential to their ability to demonstrate that a recording or interception via an electronic device occurred for purposes of RCW 9.73.030. Those issues are already covered in RFP Nos. 20, 23, 36, and 37, however, and defendants have provided information regarding how Alexa devices detect wake words and receive/store audio inputs. Dkt. #116-9 at 16-17 and 24-25. As defendants point out, RFP Nos. 4, 5, 18, and 19 are focused on defendants' voice authentication capabilities, but there is no indication that those capabilities have any relevance to a claim or defense in this litigation. No supplementation will be required.

---

[2] Plaintiffs did not move to compel responses to RFP Nos. 14 and 15 in this section, and the Court has not considered the arguments made with respect to those RFPs.

ORDER GRANTING IN PART PLAINTIFFS'
MOTION TO COMPEL (Dkt. # 115) - 6

**4. Customer Complaints**

RFPs No. 6 and 7 seek all customer communications regarding recordings made in the absence of a wake word and the transmission of recordings. These communications are relevant to the issues of consent, Amazon's knowledge/intent, and damages. Defendants opted to produce the entire contents of their on-line user forum in response to these RFPs and have now agreed to produce post-June 2020 customer contacts that have tags indicating that the communication was about false wakes or the Alexa audio recording functions. Dkt. # 129 at 12. They assert that, if they were required to collect pre-June 2020 customer communications and identify additional responsive documents, "Amazon employees would have to manually review hundreds of thousands of records maintained by different business units at Amazon" to make the required determination. Dkt. # 131 at ¶ 4. They argue that this is a "heavy burden" and that, given "the low evidentiary value of customer interactions," RFPs No. 6 and 7 are not proportional to the needs of the case.

The Court disagrees. Defendants have taken the position that users of Alexa-enabled devices know or understand how the devices work and that their voice interactions will be recorded, permanently stored, and potentially reviewed by humans. Consumer complaints regarding these aspects of the product would suggest otherwise and would also help plaintiffs establish the scope and extent of damages at issue. These are critical issues in this case, and the documents sought are highly relevant. That defendants will need to review and tag pre-June

ORDER GRANTING IN PART PLAINTIFFS'
MOTION TO COMPEL (Dkt. # 115) - 7

2020 customer communications as they have been doing since June 2020 does not outweigh plaintiffs' need for this highly relevant information that is solely within Amazon's possession.

**5. Amazon's Disclosure of Recordings**

Plaintiffs have requested the production of all documents evidencing an agreement with a third-party regarding the transmission or review of Alexa recordings (RFP No. 8), relating to the method, manner, or means by which third parties gain access to the recordings (RFP No. 13), or showing any sale or trade of Alexa recordings or voice prints (RFP No. 16). Plaintiffs have also requested all documents that reveal the individuals involved in the collection, transmittal, sharing, disclosure, or other use of Alexa recordings. RFP No. 25.[3] They argue that evidence of disclosure "is fundamental to wiretapping claims" and will also go to damages. Dkt. # 115 at 11-12.

Defendants object to the extent the RFPs seek the actual names or identities of third-party reviewers, pointing out that a wiretap claim is based on the interception or recording of a conversation, not what the offending party does with the recording thereafter. *Kearney v. Kearney*, 95 Wn. App. 405, 412-13 (1999) ("Before 1977, former RCW 9.73.030 provided that is was illegal to record, to intercept, or to *divulge* private telephone conversations without the consent of all parties. The 1977 amendment deleted the word "divulge," thereby eliminating as an illegal action the disclosure or dissemination of illegally recorded telephone conversations.)

---

[3] Plaintiffs did not move to compel responses to RFP Nos. 27 and 41 in this section, and the Court has not considered the arguments made with respect to those RFPs here.

ORDER GRANTING IN PART PLAINTIFFS'
MOTION TO COMPEL (Dkt. # 115) - 8

(emphasis in original) (internal citation and footnote omitted). Plaintiffs argue that production is necessary to show that defendants disclosed private information and to allow plaintiffs to depose the individuals to determine what defendants seek when reviewing recordings and how they use the information obtained. That the information was disclosed can be shown without revealing the identity of the reviewers, as can Amazon's instructions to the reviewers and what Amazon does with the information obtained from the recordings. The objection is sustained regarding the identity of third-party reviewers.

Defendants also object to the individual requests for various reasons. With regards to RFP Nos. 8 and 13, defendants assert that the requested documents are not relevant, that they have already produced documents showing how human reviews are conducted, and that they have promised to identify any recordings from plaintiffs' accounts that were subjected to human review. With regards to RFP No. 16, defendants have told plaintiffs that there are no responsive documents. And with regards to RFP No. 25, defendants raise a relevance and overbreadth objection. Plaintiffs have not responded to these objections or identified any additional information – other than the identity of the individual human reviewers – that is needed. No further supplementation will be required.

**6. Documents Related to Class Certification and Damages**

Plaintiff have served three document requests aimed at discovery relevant to class certification and/or damages, particularly the number of Alexa devices sold, licensed, or activated during the class period (RFP No. 21), the number of recordings, voice prints, and voice

ORDER GRANTING IN PART PLAINTIFFS'
MOTION TO COMPEL (Dkt. # 115) - 9

profiles made during the class period (RFP No. 22), and documents showing how much defendants charge for the use of Alexa on any third-party device and/or the monetary value of the information received from Alexa devices (RFP No. 28). In addition, plaintiffs again seek the identity of all third parties who have accessed the recordings (RFP Nos. 27 and 41), arguing that the information is relevant to the calculation of damages.

Defendants object that the first three requests are irrelevant because they have admitted that the class is sufficiently numerous for purposes of Rule 23. The scope of the alleged wrongdoing also goes to damages, however, and plaintiffs are entitled to more accurate numbers regarding the alleged violations than a general concession that the recordings were "numerous." Defendants' assessment of the monetary value of the recordings it made and shared is also relevant to the calculation of damages. Defendants shall supplement their responses to RFP Nos. 21, 22, and 28. Plaintiffs have failed to show how the identity of the human reviewers is relevant to the issue of damages: no further response to RFP Nos. 27 and 41 will be required.

For all of the foregoing reasons, plaintiffs' motion to compel is GRANTED in part and DENIED in part. Defendants shall supplement their response to RFP Nos. 1, 6, 7, 15, 21, 22, 28, and 35 as set forth above.

Dated this 7th day of November, 2022.

Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART PLAINTIFFS'
MOTION TO COMPEL (Dkt. # 115) - 10