UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KAELI GARNER, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> AMAZON.COM, INC., *et al.*, <br><br> Defendants. | CASE NO. 2:21-cv-00750-RSL <br><br> ORDER REGARDING REQUESTS FOR PRODUCTION NOS. 70-75 |

This matter comes before the Court on "Plaintiffs' Motion to Compel Defendants' Responses to Requests for Production Nos. 70-75." Dkt. # 158.[1] Rule 26 of the Federal Rules of Civil Procedure governs the permissible scope of discovery in federal civil litigation. Rule 26(b) sets forth the threshold requirements that information sought to be discovered must appear "relevant to any party's claim or defense and proportional to the needs of the case . . . ." District courts enjoy wide discretion in deciding whether information sought in discovery is relevant, *i.e.*, has a tendency to make a fact of consequence in resolving the action more or less probable than it would be without the evidence. Fed. R. Ev. 401; *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005); *Cassirer v. Thyssen-Bornemisza Collection Found.*, 862 F.3d 951, 958 n.6

---

[1] This matter can be resolved on the papers submitted. Defendants' request for oral argument is DENIED. The Court has not considered defendants' surreply (Dkt. # 168) which seeks to reargue the relevance standard rather than strike inadmissible evidence or argument.

(9th Cir. 2017); *Shaw v. Experian Info. Solutions, Inc.*, 306 F.R.D. 293, 296 (S.D. Cal. 2015). Proportionality is evaluated in light of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

### A. Request for Production No. 70

Plaintiffs seek information regarding income or revenue derived from "Alexa Devices, voice profiles, voice services, recordings, transcripts, False Wakes, or any data derived from any of the foregoing," but excluding revenue from the use of an Alexa Device to make a purchase from or through Amazon. Dkt. # 165-1 at 9. Amazon raised a number of objections to this request, but ultimately stated:

> Subject to and without waiving the foregoing objections, Amazon responds as follows: Amazon does not earn income or revenue from the sale or trade of voice profiles, recordings, transcripts, or False Wakes, and after a diligent search and reasonable inquiry, Amazon has no documents in its possession, custody, or control showing income or revenue related to the sale or trade of those items. Amazon will produce documents sufficient to show Amazon's revenue from sales of Alexa Devices during the Relevant Time Period.

Dkt. # 165-1 at 10. Plaintiffs argue that they are seeking "documents showing how Amazon values data it collects and sells to advertisers, whether collected through Alexa or otherwise," so they may develop a model for calculating damages under the Washington Consumer Protection Act. Dkt. # 158 at 7. But Amazon has already said that it does not derive any income or revenues from voice data and it at least implies that it does not have any internal metrics by which it values voice profiles, recordings, or transcripts. These representations are not expressly limited to voice data from Alexa devices, nor are they

limited to unintentional interactions.[2] Although plaintiffs vaguely contest the accuracy of the representations (Dkt. # 166 at 8), they do not offer any evidence or argument that would justify disregarding Amazon's responses. Instead, plaintiffs have altered their request, now seeking data regarding how Amazon monetizes product orders placed through an Alexa device. That information was clearly excluded from the reach of Request for Production No. 70, however, and is not a proper subject for a motion to compel.

**B. Requests for Production Nos. 71-75**

Plaintiffs' Fourth Set of Requests for Production of Documents seeks information regarding Amazon's Ad Verification Program, specifically the type of data collected through the program (Request for Production No. 71), how and why Amazon decided to pay money to customers who participate in the program (Request for Production No. 72), how Amazon decided the amount to pay participants (Request for Production No. 73), how data collected through the program is used (Request for Production No. 74), and whether there is any relationship between the voice recordings at issue in this litigation and the data collected through the Ad Verification Program (Request for Production No. 75). Dkt. # 165-3. Plaintiffs justify this excursion into an entirely different program, one that is designed to collect data regarding advertisement placement on cell phones, on the ground that any payments Amazon makes for data is relevant to the value of plaintiffs' voice profiles and recordings.

The argument is unsound. Amazon's business model involves the collection of vast amounts of data regarding products, markets, consumers, shipping methods, logistics, advertising, *etc*., most of which would shed no light on the valuation of the voice data at

---

[2] If the Court has misconstrued Amazon's response, Amazon shall serve a clarification within three days of the date of this Order. <u>If Amazon does have a way of valuing or monetizing voice profiles, recordings, or transcripts from any device or service (other than voice profiles, recordings, or transcripts involved in ordering a product through Alexa), the related documents must be produced.</u>

ORDER REGARDING REQUESTS FOR
PRODUCTION NOS. 70-75 - 3

issue here. Plaintiffs make no attempt to explain how information regarding what Amazon pays for unrelated data could possibly be relevant to their damage calculations.

Citing *In re Google RTB Consumer Privacy Litig.*, No. 21-cv-02155-YGR (VKD), 2022 WL 4087514, at *7 (N.D. Cal. Sept. 6, 2022), plaintiffs argue that discovery into the Ad Verification Program should nevertheless be permitted because it might turn up something that could be used to construct a reliable damages model. In *In re Google RTB*, the court allowed discovery because participants in the two different programs at issue were potentially valuing the same kind of information, namely browsing histories, and that factor overcame the obvious differences in the two markets and the court's skepticism regarding plaintiffs' ability to generate a viable market rate for the information based on what was sought. Here, plaintiffs tacitly acknowledge that there is no overlap between the voice data at issue in this litigation and the information the Ad Verification Program collects regarding which advertisements are served to a consumer's mobile device. Dkt. # 166 at 10. In fact, Request for Production No. 75 asks whether there is any relationship between the two. Plaintiffs have no reason to suspect that the price Amazon pays for information regarding advertisement placement and the value it places on voice profiles or recordings have anything to do with each other, and they offer no theory or damage calculation that could plausibly convert one to the other. Plaintiffs are engaged in a classic fishing expedition, seeking documents from a program not at issue here in the vague hopes that it might be useful. Although relevance for discovery purposes is defined very broadly, it is not without boundaries. *See* Rule 26(b)(2); *Rivera v. NIBCO*, 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in fishing expeditions."). The Court will not compel responses to Requests for Production Nos. 71-75.

Dated this 20th day of June, 2023.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge