THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KAELI GARNER, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>AMAZON.COM, INC. and AMAZON.COM SERVICES LLC,<br><br>        Defendants. | Case No. 2:21-cv-00750-RSL<br><br>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>NOTE ON MOTION CALENDAR:<br>October 31, 2024<br><br>**ORAL ARGUMENT REQUESTED** |

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ....................................................................................................... 1

II.    FACTUAL BACKGROUND ....................................................................................... 3

       A.    Amazon's Alexa ................................................................................................ 3

             1.    Alexa Hardware ..................................................................................... 4

             2.    Alexa System Software .......................................................................... 4

       B.    Amazon Knowingly Intercepts Communications Not Intended for Alexa ................. 5

             1.    Conversations Not Intended for Alexa ................................................... 6

             2.    Amazon Knowingly Intercepts Communications Not Intended for
                   Alexa ...................................................................................................... 7

             3.    Amazon Knows Alexa's Interception of Private Communications
                   Violates the Privacy Interests of Registrants and Non-Registrants ................. 7

       C.    Amazon Intentionally Intercepts Communications Not Intended for Alexa for
             Its Own Benefit ................................................................................................ 8

       D.    Amazon Did Not Obtain Prior Consent from Registrants and Non-Registrants ......... 9

III.   LEGAL STANDARD ................................................................................................ 10

IV.    ARGUMENT ............................................................................................................ 10

       A.    The Proposed Classes Satisfy Rule 23(a)'s Requirements ....................................... 10

             1.    The Proposed Classes Are Sufficiently Numerous ....................................... 11

             2.    The Proposed Classes Share Common Questions of Fact and Law ................ 11

             3.    Plaintiffs' Claims Are Typical of the Proposed Classes ................................. 13

             4.    Plaintiffs and Their Counsel Are Adequate Representatives of the
                   Class ...................................................................................................... 14

       B.    The Registrant and Non-Registrant Classes Satisfy Rule 23(b)(3) ............................ 15

             1.    Common Issues Predominate for the Proposed Classes ................................ 15

                   a.    Common Issues Predominate for the Non-Registrant Classes ................ 16

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION
Case No. 2:21-cv-00750-RSL

i

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

(1)  Common Evidence Will Establish That Amazon Violated the State Wiretap Statutes .................................... 16

(2)  Common Issues Predominate Regarding the Relief Non-Registrants Seek .................................................. 19

2.  Common Issues Predominate for the Registrant Class ................................. 20

a.  Washington Law Governs the Registrant Class's Claim ................... 20

3.  Common Evidence Establishes Amazon's WCPA Liability .......................... 20

4.  Registrant Plaintiffs Can Establish Injury and Damages Using Common Evidence .................................................. 22

C.  The Class Action Device Is the Superior Method of Adjudication ............................ 23

D.  The Registrant Class Satisfies the Rule 23(b)(2) Requirements for Injunctive Relief .................................................. 24

V.  CONCLUSION .................................................. 25

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION
Case No. 2:21-cv-00750-RSL

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ades v. Omni Hotels Mgmt. Corp.*,
   2014 WL 4627271 (C.D. Cal. Sept. 8, 2014)........................................ 13, 14, 15, 16

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997)........................................................................................... 21

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds, Inc.*,
   568 U.S. 455 (2013)........................................................................................... 15

*Blough v. Shea Homes, Inc.*,
   2014 WL 3694231 (W.D. Wash. July 23, 2014) ................................................ 22

*Campbell v. Facebook Inc.*,
   315 F.R.D 250 (N.D. Cal. 2016)................................................................. 16, 17

*Castillo v. Bank of Am., NA*,
   980 F.3d 723 (9th Cir. 2020)............................................................................. 11

*DZ Rsrv. v. Meta Platforms, Inc.*,
   96 F.4th 1223 (9th Cir. 2024) ................................................................... 15, 21

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011).............................................................................. 14

*Gold v. Midland Credit Mgmt., Inc.*,
   306 F.R.D. 623 (N.D. Cal. 2014)...................................................................... 19

*Golden v. Am. Pro Energy*,
   2017 WL 10573989 (C.D. Cal. May 11, 2017) ................................................. 19

*In re Google Play Store Antitrust Litig.*,
   No. 3:21-md-02981 (N.D. Cal. Aug. 3, 2023) ................................................... 17

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
   719 P.2d 531 (Wash. 1986)............................................................................... 21

*Hawkins v. S2Verify*,
   2016 WL 3999458 (N.D. Cal. July 26, 2016) ............................................ 19, 24

*Hilsley v. Ocean Spray Cranberries, Inc.*,
   2018 WL 6300479 (S.D. Cal. Nov. 29, 2018) .................................................. 23

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION
Case No. 2:21-cv-00750-RSL

iii

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

*Hunichen v. Atonomi LLC*,
 2021 WL 5858811 (W.D. Wash. Nov. 12, 2021) ............................................. 16

*Just Film, Inc. v. Buono*,
 847 F.3d 1108 (9th Cir. 2017)........................................................................... 13

*Klay v. Humana, Inc.*,
 382 F.3d 1241 (11th Cir. 2004).......................................................................... 20

*Klem v. Wash. Mut. Bank*,
 295 P.3d 1179 (Wash. 2013).............................................................................. 21

*Kristensen v. Credit Payment Servs.*,
 12 F. Supp. 3d 1292 (D. Nev. 2014).................................................................. 17

*Kumandan v. Google LLC*,
 2023 WL 8587625 (N.D. Cal. Dec. 11, 2023) ................................................. 11

*Martinez v. ZoomInfo Techs., Inc.*,
 2022 WL 1078630 (W.D. Wash. Apr. 11, 2022) ............................................. 23

*Mason v. Mortg. Am., Inc.*,
 792 P.2d 142 (Wash. 1990)......................................................................... 22, 23

*McMillion v. Rash Curtis & Assocs.*,
 2017 WL 3895764 (N.D. Cal. Sept. 6, 2017) .................................................. 17

*Meyer v. Portfolio Recovery Assocs., LLC*,
 707 F.3d 1036 (9th Cir. 2012)........................................................................... 18

*Mut. Of Enumclaw Ins. Co. v. Gregg Roofing, Inc.*,
 315 P.3d 1143 (Wash. Ct. App. 2013) .............................................................. 23

*Ngethpharat v. State Farm Mut. Ins. Co.*,
 339 F.R.D. 154 (W.D. Wash. 2021) ................................................................. 15

*In re NJOY, Inc. Consumer Class Action Litig.*,
 120 F. Supp. 3d 1050 (C.D. Cal. 2015) ............................................................ 24

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
 31 F.4th 651 (9th Cir. 2022) ............................................................................. 10

*Panag v. Farmers Ins. Co. of Wash.*,
 204 P.3d 885 (Wash. 2009)................................................................................ 20

*Rodriguez v. Google LLC*,
 2024 WL 38302 (N.D. Cal. Jan. 3, 2024) ................................................... 16, 18

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION
Case No. 2:21-cv-00750-RSL

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

iv

*Romero v. Securus Techs., Inc.*,
  331 F.R.D. 391 (S.D. Cal. 2018)................................................................. 16, 17

*Schuchardt v. Law Off. of Rory W. Clark*,
  2016 WL 232435 (N.D. Cal. Jan. 20, 2016) ..................................................... 19

*Senne v. Kan. City Royals Baseball Corp.*,
  934 F.3d 918 (9th Cir. 2019)......................................................................... 20

*Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*,
  825 P.2d 714 (Wash. Ct. App. 1992) ............................................................. 22

*In re Stec Inc. Sec. Litig.*,
  2012 WL 6965372 (C.D. Cal. Mar. 7, 2012) ................................................... 11

*Tashiro-Townley v. Bank of N.Y. Mellon*,
  2016 WL 3551810 (W.D. Wash. June 30, 2016)................................................ 21

*In re Toys "R" Us - Del., Inc. - FACTA Litig.*,
  300 F.R.D. 347 (C.D. Cal. 2013) .................................................................. 19

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016)......................................................................... 15, 18, 19

*Van v LLR, Inc.*,
  61 F.4th 1053 (9th Cir. 2023) ....................................................................... 18

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).................................................................................... 11

*Weidenhamer v. Expedia, Inc.*,
  2015 WL 7157282 (W.D. Wash. Nov. 13, 2015) .......................................... 11, 13

*In re Yahoo Mail Litig.*,
  308 F.R.D 577 (N.D. Cal. 2015).................................................................... 15

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
  594 F.3d 1087 (9th Cir. 2010)....................................................................... 20

*Young v. Toyota Motor Sales, U.S.A.*,
  472 P.3d 990 (Wash. 2020)........................................................................... 21

*Zaklit v. Nationstar Mortg. LLC*,
  2017 WL 3174901 (C.D. Cal. July 24, 2017) ........................................ 13, 19, 24

**Statutes**

18 Pa. Cons. Stat. and Cons. Stat. § 5703, 5704 ............................................... 16

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION
Case No. 2:21-cv-00750-RSL

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

v

18 Pa. Cons. Stat. § 5725(a)(1) ............................................................................... 19

Cal. Penal Code §§ 631(a), 632(a) ......................................................................... 16

Cal. Penal Code § 637.2(a)(1) ................................................................................ 19

Fair Debt Collection Practice Act .......................................................................... 19

Fed. R. Civ. P. Rule 23 ................................................................................... *passim*

Fed. R. Civ. P. Rule 12 .......................................................................................... 24

Fla. Stat. §§ 934.03 ................................................................................................ 16

Fla. Stat. §§ 934.10 ................................................................................................ 19

Md. Code Ann. Cts. & Jud. Proc. § 10-402 .......................................................... 16

Md. Code Ann. Cts. & Jud. Proc. § 10-410 .......................................................... 19

N.H. Rev. Stat. Ann. § 570 ............................................................................... 16, 19

Wash. Consumer Protection Act, RCW § 19.86 ............................................. *passim*

Wash. RCW § 9.73 ........................................................................................... *passim*

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION
Case No. 2:21-cv-00750-RSL

vi

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1   Plaintiffs Kaeli Garner, Michael McNealy, Ricky Babani, Lorlie Tesoriero, Ronald Johnson,

2   and Caron Watkins (collectively, the "Non-Registrant Plaintiffs" or "Non-Registrants"), and Jodi

3   Brust, Diane McNealy, Jeffrey Hoyt, and Selena Johnson (the "Registrant Plaintiffs," or

4   "Registrants," and together with the Non-Registrants, "Plaintiffs") respectfully move this Court

5   pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure to certify two

6   Proposed Classes—the Non-Registrant Classes and the Nationwide Registrant Class (as defined

7   herein)—and appointing Labaton Keller Sucharow LLP and Robbins Geller Rudman & Dowd LLP

8   as Class Counsel pursuant to Rule 23(g).  Excluded from the Proposed Classes are Defendants,

9   Defendants' employees, officers, directors, legal representatives, heirs, successors, and wholly or

10  partially owned subsidiaries or affiliated companies.

11  ## I.      INTRODUCTION

12  Defendants Amazon.com, Inc. and Amazon.com Services LLC (collectively, "Amazon" or

13  "Defendants") developed Alexa—a voice-operated tool used to respond to requests and execute

14  commands—to illegally and surreptitiously intercept billions of private conversations.  Using Alexa,

15  Amazon recorded peoples' private conversations, created (with the assistance of unknown third-

16  party contractors) verbatim transcripts of those recorded conversations in Alexa's vicinity, and used

17  the recordings and transcripts for Amazon's commercial benefit.  Amazon amassed private

18  conversations of persons (both Registrants and Non-Registrants) without obtaining consent or

19  providing compensation for their valuable and private information.

20  This surreptitious recording was not accidental – it was known by Amazon.  Amazon

21  knowingly intercepted private conversations through Alexa devices —referring to the interception

22  as "false wakes"—to better train its algorithms without having to pay for this valuable data.  The

23  more data Amazon collects, the more Amazon benefits from Alexa.  In fact, Amazon employees

24  ███████████████████████████████████████████████████████████.

25  The Alexa software operates through various algorithms and machine learning platforms that

26  require large volumes of data inputs for continuous improvement training.  A central component of

27  this training involves improving Alexa's ability to distinguish between commands directed to Alexa

28

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION
Case No. 2:21-cv-00750-RSL

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1

and private conversations not intended for Alexa.  Machine learning-based algorithms can be trained in a variety of ways that do not involve surreptitious recording, but these methods are costly, including, *inter alia*: paying for employee interactions; providing free devices in exchange for use of the resulting recordings; use of purchased data sets; and use of company-created data.

Amazon unilaterally opted for a different, more cost-effective, training strategy: training its algorithms by intercepting as many private conversations as possible—even when Amazon knew the conversation was not directed to an Alexa Device and feeding the conversations into its machine learning models for algorithm training.  Amazon also allowed "human annotators" to **listen to** these conversations.  And even when purportedly allowing for user deletion of voice recordings, Amazon stored transcripts of these private conversations.  All of this was done without sufficient notice, without obtaining Registrants' consent and without obtaining the consent of Non-Registrants, for Amazon's collection and use of private conversations.

The Proposed Classes are defined as follows:

(i)    **State-Law Non-Registrant Classes:**  All [California, Florida, Maryland, New Hampshire, Pennsylvania, Washington] residents who never registered an Alexa device and resided with a Registrant while an Alexa device was active and operational.[1]

(ii)   **Nationwide Registrant Class:**  All persons in the United States who registered one or more Alexa devices.

The Proposed Classes satisfy the requirements of Rules 23(a), (b)(2), and (b)(3) of the Fed. R. Civ. P.  Specifically, the Non-Registrant Plaintiffs seek to certify the Non-Registrant Classes to bring wiretapping claims under the nearly-uniform laws of California, Florida, New Hampshire, Pennsylvania, and Washington who share common factors underlying their legal claims, including that Alexa recorded their private conversations that were not intended for or directed to Alexa.

Registrant Plaintiffs seek to certify the Nationwide Registrant Class to pursue a single claim (Amazon's violation of the Washington Consumer Protection Act ("WCPA")) based on Amazon's

---

[1] At least one Plaintiff resides in each of the States included in the Non-Registrant state Classes. *See* Declaration of Michael Canty ("Canty Decl.") ¶2.  All Exhibits ("Ex.") cited herein are attached to the Canty Decl.

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION
Case No. 2:21-cv-00750-RSL

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

2

1  uniform, unfair, and deceptive conduct (*i.e.*, Amazon's failure to disclose its retention and use of

2  Registrants' recordings for its own commercial gain) that resulted in the same harm.  In addition to

3  the common facts and law, Registrant Plaintiffs propose a common Class-wide damages model.

4     The overwhelming common facts and law satisfy Rule 23(a)(2)'s commonality requirement

5  and Rule 23(b)(3)'s predominance requirement.  Separately, Plaintiffs seek injunctive relief under

6  Rule 23(b)(2)[2] requiring Amazon to delete or otherwise stop using audio data, transcripts, or

7  information obtained via recordings of conversations not intended for Alexa.

8     The Proposed Classes easily satisfy all other requirements under Rule 23(a).  The Proposed

9  Classes contain millions of individuals, thus meeting the numerosity requirement under Rule

10  23(a)(1).  Plaintiffs' experiences are typical of the Proposed Classes, with no identifiable conflict

11  between them, fully satisfying Rule 23(a)(3).  In addition, all Plaintiffs have vigorously pursued the

12  litigation, retained competent legal counsel, and endured burdensome discovery requests, showing

13  each Plaintiff is an adequate class representative under Rule 23(a)(4).

14     For these reasons and the reasons provided further below, the Court should grant Plaintiffs'

15  Motion and certify the Registrant Class and each of the Non-Registrant Classes.

16  **II.     FACTUAL BACKGROUND**

17     Amazon is a multi-billion-dollar technology and e-commerce conglomerate.[3]  Amazon

18  develops and sells consumer products, including Amazon's Alexa.  Launched in 2014, Amazon

19  marketed Alexa as a virtual assistant that can respond to user requests.  *See* Ex. A at ███████; Exs.

20  B-C.

21     **A.     Amazon's Alexa**

22     Alexa Devices consist of the Alexa system (software) and hardware.  *See* Ex. D.  As

23  explained below, each device is materially identical for all relevant purposes.

24

25

26  [2] Rule 23(b)(2) does not require showings of superiority or predominance.

27  [3] *See* Amazon.com, Inc., Annual Report (Form 10-K) (Feb. 3, 2021).

28  PLAINTIFFS' MOTION FOR
    CLASS CERTIFICATION
    Case No. 2:21-cv-00750-RSL

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

3

1

       **1.**       **Alexa Hardware**

2

     Amazon designed Alexa Devices to listen for sounds and transmit the data they collect to

3

Amazon.  Generally, Alexa Devices contain a "seven-microphone circular array . . . for wake word

4

recognition," which enables devices to record sounds across large distances.[4]  While Alexa Devices

5

vary in shape and size, all contain at least one microphone to listen for a "wake word" (*i.e.*, word

6

that triggers Alexa).[5]  When the microphone hears the wake word, it activates Alexa and opens a

7

stream that transmits audio to Amazon's cloud.  *See* Exs. A at ████████████████████████

8

████████████████████████████████████████████████

9

████████████████; D; XX §III.  All Alexa Devices operate in the same manner because they

10

incorporate the same software.  *See* Ex. D; E at ██████

                **2.**       **Alexa System Software**

12

     Alexa, a cloud-based software incorporated into Alexa Devices, allows Amazon to intercept,

13

transcribe, use, and store communications.  *See* Exs. D; F; G.  This software operates with

14

numerous algorithms, most notably ████████████████████████████

15

██████████████████████████████.  *See id.*

16

     Each of these algorithms may independently ingest audio or transcripts of the audio

17

intercepted by Alexa through the same five-step process.  *First*, Alexa is activated when the

18

microphone on the Alexa Device perceives the wake word.[6]  *See* Exs. A at █████; D at ███.

19

*Second*, upon activation, ██████████████████████████████  *See id.*; Ex. G.

20

*Third*, Alexa ██████████████████████████████████████.  *See*

21

*id.*; Ex. E at ████████.  This model ██████████████████████████████

22

██████████████████████  *See* Exs. D at ███; G.  *Fourth*, the transcription is ███

23

████████████████████████████████████████████████

24

---

[4] Ted Karczewski, *Brining Far-Field Voice Technology from the Amazon Echo to Third-Party Devices*, Amazon Developer Blog (Apr. 13, 2017), https://developer.amazon.com/en-US/blogs/alexa/post/b80b4669-2675-4752-a171-fa6aaa7e5aff/bringing-far-field-voice-technology-from-the-amazon-echo-to-third-party-device.

[5] *See id.*

[6] Alexa Devices constantly record and overwrite all words and sounds until it thinks it detects the wake word.  At that point, the recording is continuous and streamed to AWS servers.  *See* Ex. XX §III.

25

26

27

28

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION
Case No. 2:21-cv-00750-RSL

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

4

1 ██████████████████████████████████████████████████████████

2 ████████  *See id*.  *Finally*, the information derived from the communication is ██████████

3 ████████████████ to generate a response by Alexa.  *See* Ex. D at ████.  After processing is

4 complete, Amazon stores a copy of the recorded communication, transcription, and intent (along

5 with other metadata) in ██████████████████████.  *See* Exs. E at ██████████ H at

6 ████████████.  This process occurs contemporaneously with the users' communication as it is

7 recorded by the Alexa device.  *See* Exs. A at ████████████████████; D at ████████████

8 ██████████████.

9      Amazon hopes that its machine learning models continuously improve.  But, to do that,

10 Amazon must ingest additional information.  Each time Alexa processes a communication, the

11 utterance helps improve the system.  *See* Ex. J.  For this reason, Amazon recorded and used billions

12 of conversations.  *See* Ex. K (confirming by ████████████████████████████

13 ██████████████████████).  Amazon continues to use this data, including to train products not

14 invented when the recordings were first transcribed.[7]

15     **B.**    **Amazon Knowingly Intercepts Communications Not Intended for Alexa**

16      Alexa processing extends beyond commands directed to Alexa.  Alexa routinely records

17 communications that ***do not contain*** the wake word.  As a result, Amazon frequently intercepts and

18 records communications not intended for Alexa.  *See* Ex. XX §III.  Although not intended for Alexa,

19 Amazon still uses these conversations for its own benefit—even those that Amazon identifies as

20 private.  In fact, Amazon purposely designed Alexa to intercept communications not intended for

21 Alexa, because without those unintended communications, the Alexa system would not work.  *See*

22 Ex. L at ██████████████████████████████████████████████████████████

23 ██████████████████████████████████████████████████████████████████████

24 ████████████████████████; Ex. M at ██████████████████████████████████

25 ██████████████████████████████████████████████████.

26 ─────────────────────

27 [7] *See, e.g.*, Amazon, *Build LLM-powered Alexa experiences*, https://developer.amazon.com/en-US/alexa/alexa-ai (last visited June 16, 2024).

28 PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION
Case No. 2:21-cv-00750-RSL

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1. **Conversations Not Intended for Alexa**

Amazon refers to communications not intended for Alexa as "false wakes." *See* Exs. N; O; P; Q at ███. These unintended conversations are intercepted by Amazon and processed in the same way as communications directed to Alexa. *See infra,* Section II(A)(2); Exs. N; O; P; Q at ███.

Each Plaintiff identified countless communications that were intercepted, transcribed, used, and/or stored by Amazon without Plaintiffs' knowledge or consent. For example:

- **Kaeli Garner:** On October 1, 2018, Plaintiff Kaeli Garner's private communication in her home with her roommate was intercepted, transcribed, and stored by Alexa. *See* Ex. R (█████████████████).

- **Michael McNealy:** On June 13, 2018, Plaintiff Michael McNealy's private communication in his home was intercepted, transcribed, and stored by Alexa. *See* Ex. S (███████████ ██████████████).

- **Diane McNealy:** On September 30, 2020, Plaintiff Diane McNealy's private communication in her home was intercepted, transcribed, and stored by Alexa. *See* Ex. T (██████████████████).

- **Ricky Babani:** On March 18, 2020, Plaintiff Ricky Babani's private communication in his home was intercepted, transcribed, and stored by Alexa. *See* Ex. U (██████████ ██████████).

- **Lorlie Tesoriero:** On August 1, 2018, Plaintiff Lorelie Tesoriero's private communication in her home was intercepted, transcribed, and stored by Alexa. *See* Ex. V (████████████ █████████).

- **Jeffrey Hoyt:** On November 19, 2018, Plaintiff Jeffrey Hoyt's private communication in his home was intercepted, transcribed, and stored by Alexa. *See* Ex. W ██████████ █████████████████████).

- **Ronald Johnson:** On January 3, 2020, Plaintiff Ronald Johnson's private communication in his home was intercepted, transcribed, and stored by Alexa. *See* Ex. X (█████████ ██████████████).

- **Selena Johnson:** On December 1, 2019, Plaintiff Selena Johnson's private communication in her home with her minor grandson was intercepted, transcribed, and stored by Alexa. *See* Ex. Y (████████████████).

- **Caron Watkins:** On May 13, 2021, Plaintiff Caron Watkins' private communication regarding her work as a city prosecutor was intercepted, transcribed, and stored by Alexa. *See* Ex. Z (██████████████████).

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION
Case No. 2:21-cv-00750-RSL

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

6

- **Jodi Brust:** On December 27, 2017, Plaintiff Jodi Brust's private communication in her home was intercepted, transcribed, and stored by Alexa. *See* Ex. AA.

### 2. Amazon Knowingly Intercepts Communications Not Intended for Alexa

Defendants are aware that Alexa intercepts private conversations. From the beginning, Amazon knew that false wakes were an unavoidable part of the Alexa experience. *See* Ex. J. Amazon, in fact, tracks false wakes using two internal metrics. *First*, Amazon affirmatively categorizes recordings as intended or not intended for Alexa. These labels are assigned by the ████████████ system, which Amazon designed to determine whether communications were ████████████████ *See* Exs. BB; CC at 73:9-13 (explaining ███████ ██████████████████████████████████████████████). Irrespective of Amazon's ████████████ determination, all communications—including those identified by Amazon as ████████████—are intercepted, transcribed, used, and stored. *See* Ex. BB. *Second*, Amazon tracks the number of communications not intended for Alexa by calculating a "████████████," or the rate at which Alexa intercepts unintended audio. *See* Exs. BB; DD; P (tracking the total number of ████████████).

### 3. Amazon Knows Alexa's Interception of Private Communications Violates the Privacy Interests of Registrants and Non-Registrants

Defendants are also aware their interception of conversations not intended for Alexa is a violation of privacy. *See* Ex. BB ████████████████████████████████ ████████████████████████████; Exs. EE; FF ████████████████████████ ████████████████████████████. Indeed, when considering ████████ for Alexa, Amazon employees recognized the ████████████████████████████ ████████████████████████████████████ Ex. GG.

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION
Case No. 2:21-cv-00750-RSL

7

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

**C.     Amazon Intentionally Intercepts Communications Not Intended for Alexa for Its Own Benefit**

Amazon continuously intercepts communications not intended for Alexa because such communications are useful and valuable to Defendants.  *See* Exs. A at 94:10-17 (describing ███ the Alexa product); J; L at 74:20-75:4 ███████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████ ). Alexa operates through several algorithms that may be improved and trained in various ways.  Defendants could have ███████████████████████ . *See* Ex. HH (identifying ███████████████ ). Amazon could have eliminated surreptitious recordings of Non-Registrants simply by not recording anything said by a voice for which Amazon did not have a ███████ (*i.e.*, registration).  *See* Ex. CC at ██████ . However, Amazon preferred to over-record to obtain as much data for its own purposes as possible, as evidenced by the fact Amazon continued to █████████████████████ ███████████████████████████████ *See id.*; Ex. BB.

Amazon wanted this data because large data sets better train algorithms like those embedded in Alexa.  *See* Ex. XX §III.  Amazon sought to mine and amass large sets of data to train their systems without having to pay employees or customers to generate data and without having to expend resources creating synthetic data.  *See* Exs. J; HH (explaining ████████████ ███████████████ ). Here, Amazon unilaterally decided to use the billions of utterances intercepted by Alexa to conduct this ██████████ . Because every communication— including that which was not intended for Alexa—is ██████████████ , every communication (including that which was captured because of a False Wake) is automatically ███ ██████ . *See* Section II(A)-(B).  Through Alexa's operation and its deliberate over-recording of conversations, Amazon amassed as much data as possible—even when speakers never intended to be recorded by Alexa.  *See* Ex. A at ██████████████████████████

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION
Case No. 2:21-cv-00750-RSL

8

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1  ███████████████████████████████████████; Ex. M at █████████████████████████

2  █████████████████████████████████████████████████████████

3      Amazon, in addition to using recordings of private conversations, also ████████

4  ███████████████████████████████████████—meaning Defendants could █

5  ████████████████████████████████████████████████, even for non-

6  Alexa products.  *See* Ex. II ████████████████████████████████████████

7  ████████████████████████).  Amazon's full ██ of private conversations defied its

8  recognition of ██████████████████████████████████████████████████

9  ████ Ex. JJ (employee explaining that the ████████████████████████████

10  ████████████████); *see* Exs. KK; LL.

11      Evidencing Amazon's dismissal of consumer privacy, Amazon used ████████████

12  ████████████████████ and to conduct ██████████████████████████.

13  *See* Ex. J; Ex. NN (explaining that ████████████████████████████████████

14  ████████████████████); Ex. OO.  Amazon never disclosed that, in addition to

15  recording and storing private communications, Amazon employed ████████████████████

16  ████████.

17      **D.**    **Amazon Did Not Obtain Prior Consent from Registrants and Non-Registrants**

18      Amazon failed to obtain consent from Non-Registrants and Registrants before intercepting

19  and using their private conversations.

20      **Non-Registrants.**  Amazon never obtained consent from Non-Registrants for the recording,

21  interception, transcription, use, or storage of their private conversations.  *See* Exs. R; S; U, V, X, Z

22  (████████████████).  Defendants did not take any steps to put Non-Registrants on notice of

23  Amazon's surreptitious practices.  *See* Ex. PP.  Moreover, Non-Registrants did not and could not

24  know how the highly technical Alexa software operated to contemporaneously transmit audio from

25  Alexa Devices to Amazon's cloud and automatically feed the audio into its algorithms for

26  Amazon's own use.  *See* Exs. R; S; U, V, X, Z (████████████████).

27

28

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION
Case No. 2:21-cv-00750-RSL

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

9

1    **Registrants.**  Amazon's terms of use and privacy policies are deficient because Amazon

2    failed to disclose Defendants' extensive technical uses and indefinite storage of Registrants' data.

3    *See* Ex. PP.  Specifically, Defendants do not inform Registrants: (i) of Amazon's use of human

4    annotators to listen to and review Registrants' recordings (both intended and not intended for

5    Alexa); and (ii) of Amazon's inability to delete communications upon request.

6    **III.   LEGAL STANDARD**

7          "Rule 23 provides a procedural mechanism for a federal court to adjudicate claims of

8    multiple parties at once, instead of in separate suits."  *Olean Wholesale Grocery Coop., Inc. v.*

9    *Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022).[8]  "To take advantage of Rule 23's

10   procedure for aggregating claims, plaintiffs must make two showings[:]" (1) that the class meets the

11   requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy; and (2) for a Rule

12   23(b)(3) class, that common issues predominate and a class action is the superior method of

13   adjudicating the dispute.  *Id.* at 663–64.  "[A] district court may conclude that the plaintiffs carried

14   their burden of satisfying [Rule 23]" where "each class member could have relied on [uniform

15   evidence] to establish liability if he or she had brought an individual action, and the evidence could

16   have sustained a reasonable jury finding on the merits of a common question."  *Id.* at 667-68.

17   **IV.   ARGUMENT**

18         **A.      The Proposed Classes Satisfy Rule 23(a)'s Requirements**

19         Under Rule 23(a)(1)–(4), a proposed class must meet four requirements: (1) "the class is so

20   numerous that joinder is impracticable;" (2) "there are questions of law or fact common to the

21   class;" (3) "the claims or defenses of the representative parties are typical of the claims or defenses

22   of the class;" and (4) "the representative parties will fairly and adequately protect the interests of the

23   class."  The Proposed Classes readily satisfy these requirements.

24

25

26

27   ---

[8] Unless otherwise noted, all internal citations, quotations, and footnotes are omitted and emphasis is added.

28   PLAINTIFFS' MOTION FOR
     CLASS CERTIFICATION
     Case No. 2:21-cv-00750-RSL

## 1.    The Proposed Classes Are Sufficiently Numerous

"As a general rule … classes of 40 or more are numerous enough" to satisfy the numerosity requirement. *Weidenhamer v. Expedia, Inc.*, 2015 WL 7157282, at *7 (W.D. Wash. Nov. 13, 2015). "[T]he exact size of the class need not be known so long as general knowledge and common sense indicate that it is large." *In re Stec Inc. Sec. Litig.*, 2012 WL 6965372, at *4 (C.D. Cal. Mar. 7, 2012). Here, Amazon admitted that the Proposed Classes are sufficiently numerous. *See* Ex. QQ (████).  The Registrant Class consists of millions of individuals who registered Alexa Devices. Because the Non-Registrant Classes include individuals who resided with a Registrant, there will likely be one or more Non-Registrants for each Registrant. *See* Ex. WW at ████████████████████████████████████████████████████████████████████████).  The Proposed Classes easily satisfy numerosity.

## 2.    The Proposed Classes Share Common Questions of Fact and Law

Commonality requires a showing that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  This requirement is construed "permissively," and "[a]ll questions of fact and law need not be common." *Kumandan v. Google LLC*, 2023 WL 8587625, at *8 (N.D. Cal. Dec. 11, 2023).  Instead, even "the existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.*  "A single common question of law or fact that resolves a central issue will be sufficient." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 728 (9th Cir. 2020).

Here, Non-Registrants and Registrants, respectively, share common questions of law and fact.  Those claims raise common issues that must be resolved with common evidence, meaning those issues will be determined in "one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  The common issues among Non-Registrants include:

> 1.    Whether Plaintiffs' evidence concerning false wakes establishes that Amazon intercepted communications of Non-Registrants that were not intended for Alexa;

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION
Case No. 2:21-cv-00750-RSL

11

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

2.      Whether Alexa Devices are wiretapping "devices" as defined by state wiretapping statutes;

3.      Whether Non-Registrants had a reasonable expectation of privacy over conversations occurring within a home;

4.      Whether Amazon intended Alexa to intercept Non-Registrants' communications that were not directed to Alexa;

5.      Whether Amazon knew Alexa intercepted Non-Registrants' communications that were not directed to Alexa, especially where Alexa itself determined those communications were unintended;

6.      Whether Amazon failed to obtain prior express consent from the Non-Registrants; and

7.      Whether Non-Registrants are entitled to statutory damages under the relevant state wiretapping statutes.

Registrants also share common issues of law and fact. Registrants bring a claim under the WCPA, which imposes liability for "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW § 19.86.020. The Registrant Plaintiffs' WCPA claim raises common issues, including:

1.      Whether Amazon's interception, indefinite storage, and use of Registrants' recordings (including conversations not intended for Alexa) was an act or practice that was unfair or deceptive;

2.      Whether Amazon omitted material information about the extent of Alexa's surreptitious recordings of communications not intended for Alexa;

3.      Whether Amazon omitted material information about its use and retention of intercepted recordings Alexa obtained, even if its software determined that the conversation was not intended for Alexa;

4.      Whether Amazon improperly benefited from its use and retention of intercepted recordings, even where its human reviewers or software determined that the conversation was not intended for Alexa;

5.      Whether Amazon's unfair and deceptive acts or practices impacted the public interest;

6.      Whether Registrants were injured by Amazon's omissions, acts, or practices that were likely to mislead or deceive a reasonable consumer

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION
Case No. 2:21-cv-00750-RSL

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

12

concerning Amazon's use and retention of intercepted conversations not intended for Alexa;

7.     Whether Registrants' damages model measures the damages due to Amazon's unfair and deceptive practices; and

8.     Whether Registrants have demonstrated that Amazon's actions in using and enjoying a continuing benefit of training its algorithms and machine learning platforms should enjoin further use of those algorithms and platforms.

Any one of these issues, alone, is sufficient to support the commonality requirement. Accordingly, commonality is satisfied as to the Proposed Classes.

### 3.     Plaintiffs' Claims Are Typical of the Proposed Classes

Typicality requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[T]he question for 'typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured in the same course of conduct.'" *Weidenhamer*, 2015 WL 7157282, at *10. "The requirement is permissive, such that representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017). Here, Plaintiffs' claims are typical of the Proposed Classes they seek to represent.

Non-Registrant Plaintiffs, like all members of the Non-Registrant Classes, never registered Alexa Devices (*see* Exs. R, S, U, V, X, Z) and each Non-Registrant resided near an Alexa Device resulting in surreptitious recording by the device. *Id.*; *see also Ades v. Omni Hotels Mgmt. Corp.*, 2014 WL 4627271, at *9 (C.D. Cal. Sept. 8, 2014) (typicality satisfied in wiretapping case); *Zaklit v. Nationstar Mortg. LLC*, 2017 WL 3174901, at *14 (C.D. Cal. July 24, 2017). Amazon intentionally intercepted Non-Registrants' private conversations for its own use and did so without Non-Registrants' consent, in violation of state wiretapping laws. Non-Registrants bring the same wiretapping claims arising from Amazon's use of Alexa to intercept their conversations. Finally,

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION
Case No. 2:21-cv-00750-RSL

1  Non-Registrants seek the same types of damages—statutory damages—for Amazon's violations of

2  the relevant state wiretap laws.

3  　　　In addition, Registrant Plaintiffs are typical of the Registrant Class.  Registrants share the

4  same material facts as Registrant Class members, bring a claim under the WCPA for the same

5  wrongdoing (Amazon's undisclosed retention and use of recordings not intended for Alexa), and

6  seek the same types of damages.  Specifically, each Registrant registered one or more Alexa

7  Devices and were subjected to the same terms and conditions, which inadequately described

8  Alexa's operation and Amazon's use and retention of recordings.  Alexa recorded each Registrants'

9  communications, both those intended and not intended for Alexa.  Although Alexa readily ████

10 ████████████████████████████████, Amazon still recorded those conversations, stored the

11 audio, reviewed, and transcribed the contents (including by third parties), and ████████████

12 ████████████████████████████████.  As a result, each Registrant suffered the

13 same injury, having been deprived of the inherent value of their personal data that Amazon

14 surreptitiously collected and used.  *See* Ex. J.

15 　　　Therefore, Plaintiffs are typical of the Registrant Class Members and Non-Registrant Class

16 Members.

17 　　　　　　**4.**　　　**Plaintiffs and Their Counsel Are Adequate Representatives of the Class**

18 　　　Adequacy requires a showing that the representative parties and their counsel will "fairly

19 and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4), (g).  This requirement

20 involves a two-prong test: "(1) do the named plaintiffs and their counsel have any conflicts of

21 interest with other class members and (2) will the named plaintiffs and their counsel prosecute the

22 action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th

23 Cir. 2011).

24 　　　Here, none of the named Plaintiffs "ha[ve] interests antagonistic to the class, and [P]laintiffs

25 have offered evidence that they will prosecute the action vigorously."  *Omni Hotels*, 2014 WL

26 4627271, at *9.  Registrant Plaintiffs bring the same claim for the same wrongdoing and seek

27 recovery for the same harm as the Registrant Class Members.  Similarly, Non-Registrant Plaintiffs

28 PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION
Case No. 2:21-cv-00750-RSL

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

14

1    bring the same type of wiretap claims for the same alleged wrongdoing.  Each Plaintiff has endured

2    depositions and extensive discovery requests and demands, fully demonstrating their commitment

3    to litigating this case on behalf of the Proposed Classes.

4         Lastly, Plaintiffs retained counsel with extensive "experience with class action actions,

5    including ones involving [wiretapping claims]" and data privacy generally.  *Id.*; *see also In re Yahoo*

6    *Mail Litig.*, 308 F.R.D 577, 595 (N.D. Cal. 2015); Exs. RR; SS, UU, VV.  Plaintiffs and their

7    counsel are adequate representatives of the Proposed Classes.

8         **B.      The Registrant and Non-Registrant Classes Satisfy Rule 23(b)(3)**

9         Rule 23(b)(3) requires a showing that (a) "the questions of law or fact common to class

10   members predominate over any questions affecting only individual members" (*i.e.*, the

11   predominance requirement) and (b) "a class action is superior to other available methods for fairly

12   and efficiently adjudicating the controversy" (*i.e.*, the superiority requirement).  The Proposed

13   Classes satisfy both requirements.

14                **1.      Common Issues Predominate for the Proposed Classes**

15        "The predominance inquiry tests whether proposed classes are sufficiently cohesive to

16   warrant adjudication by representation." *Ngethpharat v. State Farm Mut. Ins. Co.*, 339 F.R.D. 154,

17   167 (W.D. Wash. 2021).  However, Rule 23(b)(3) "does not require a plaintiff seeking class

18   certification to prove that each element of her claim is susceptible to classwide proof."  *Amgen, Inc.*

19   *v. Conn. Ret. Plans & Tr. Funds, Inc.*, 568 U.S. 455, 469 (2013).  Instead, "[w]hen one or more of

20   the central issues in the action are common to the class and can be said to predominate, the action

21   may be considered proper under Rule 23(b)(3) even though other important matters will have to be

22   tried separately, such as damages or some affirmative defenses peculiar to some individual class

23   members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted).  The key

24   question is whether those "common, aggregation-enabling, issues in the case are more prevalent or

25   important than the non-common, aggregation-defeating, individual issues."  *DZ Rsrv. v. Meta*

26   *Platforms, Inc.*, 96 F.4th 1223, 1238 (9th Cir. 2024) (quoting *Tyson Foods*, 577 U.S. at 453).

27

28   PLAINTIFFS' MOTION FOR
     CLASS CERTIFICATION
     Case No. 2:21-cv-00750-RSL

1      Here, for both the Registrant and Non-Registrant Classes, common issues predominate over

2  any hypothetical individual ones, satisfying Rule 23(b)(3)'s predominance requirement.

3                  a.      **Common Issues Predominate for the Non-Registrant Classes**

4      "The predominance analysis 'begins, of course, with the elements of the underlying cause of

5  action.'"  *Hunichen v. Atonomi LLC*, 2021 WL 5858811, at *8 (W.D. Wash. Nov. 12, 2021) (quoting

6  *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)).  Here, the Non-Registrant

7  Plaintiffs seek to bring wiretap claims under the laws of six states.  The elements of those wiretap

8  laws overlap substantially and do not conflict, with each having four essential elements: (i) the

9  defendant's willful or intentional; (ii) use of a device; (iii) to "intercept" or "record" a

10  communication; and (iv) without prior consent from all parties to the communication.  RCW §

11  9.73.030(1)(b); Fla. Stat. §§ 934.03(1)(a), (2)(d); N.H. Rev. Stat. Ann. §§ 570-A:2(I)(a), (I-a); Cal.

12  Penal Code §§ 631(a), 632(a); Md. Code Ann. Cts. & Jud. Proc. §§ 10-402(a)(1), (a)(3); 18 Pa. Stat.

13  and Cons. Stat. §§ 5703(1), 5704(4).

14      Here, the common factual and legal issues raised by the wiretap claims predominate for two

15  reasons: (1) Amazon's liability under the wiretap statutes depends almost entirely on common

16  evidence of Amazon's wronging, its intent in developing and deploying Alexa, and of Alexa's

17  surreptitious recording of communications without a wake word; and (2) statutory damages are

18  easily calculable on a per-State-Class member basis.  The overwhelming common issues of liability

19  and damages will, as described below, predominate over any hypothetical individual defenses

20  Amazon raises.

21              (1)    Common Evidence Will Establish That Amazon Violated the
22                     State Wiretap Statutes

23      Courts have previously recognized wiretapping claims as highly suitable for class treatment

24  given predominating common issues.  *See, e.g.*, *Romero v. Securus Techs., Inc.*, 331 F.R.D. 391, 411

25  (S.D. Cal. 2018); *Omni Hotels*, 2014 WL 4627271, at *12-13; *Campbell v. Facebook Inc.*, 315

26  F.R.D 250, 264–69 (N.D. Cal. 2016); *see also Rodriguez v. Google LLC*, 2024 WL 38302, at *8-9

27  (N.D. Cal. Jan. 3, 2024).  The Court should find the same here.

28  PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION
Case No. 2:21-cv-00750-RSL

1    Amazon's liability under the state wiretap laws depends almost entirely on its alleged

2    misconduct, meaning Non-Registrants will rely on common evidence to prove their claims.  For

3    instance, Amazon's intent to intercept or record communications depends entirely on its state of

4    mind, a common Class-wide issue.  *See, e.g.*, *Romero*, 331 F.R.D. at 411 (rejecting defendant's

5    argument that "whether it intentionally recorded calls" was an individualized question because "the

6    evidence before the court suggest[ed]" it may be established by "common proof"); *McMillion v.*

7    *Rash Curtis & Assocs.*, 2017 WL 3895764, at *5 (N.D. Cal. Sept. 6, 2017) ("[T]he question of

8    defendant's willfulness and knowledge is a common question").  Here, each Non-Registrant Class

9    member, in an individual claim,[9] would rely on the same common evidence of Amazon's actions,

10   knowledge, and communications concerning Alexa to show Amazon intended Alexa to broadly

11   record conversations, even those it identified as not intended for Alexa, because Amazon benefited

12   from the data obtained.  *See* Section II(A)-(B).

13   Similarly, consent is widely recognized to be a class-wide question that supports rather than

14   detracts from the predominance of common questions.  *See Kristensen v. Credit Payment Servs.*, 12

15   F. Supp. 3d 1292, 1307 (D. Nev. 2014) ("The Ninth Circuit has held that in the absence of any

16   evidence of consent by the defendant, consent is a common issue with a common answer.");

17   *McMillion*, 2017 WL 3895764, at *5 ("Defendant engaged in the same practice with respect to all

18   class members, and whether that practice was performed without prior express consent is common

19   to the classes.").  Here, Non-Registrants, by definition, did not register an Alexa device and,

20   consequently, were not presented with any of Amazon's purported disclosures concerning Alexa's

21   operation or surreptitious recording of conversations with no wake word.  *See* Section II.

22   Courts have rejected defendants' attempts to interject supposed individual issues into

23   questions of consent by citing supposedly public evidence.  *See Campbell*, 315 F.R.D. at 265–67;

24

---

25   [9] As Northern District of California Judge James Donato remarked last year, there is virtually no difference between an
     individual trial and a class trial, "aside from literally one jury instruction in the beginning of the case saying this is a

26   class action … [I]n terms of the liability … what's true for one member of the class if you win is true for all 21 million
     members of the class."  Transcript of Proceedings at 52:14-22, *In re Google Play Store Antitrust Litig.*, No. 3:21-md-

27   02981 (N.D. Cal. Aug. 3, 2023).

28   PLAINTIFFS' MOTION FOR
     CLASS CERTIFICATION
     Case No. 2:21-cv-00750-RSL

     BYRNES ♦ KELLER ♦ CROMWELL LLP
     38TH FLOOR
     1000 SECOND AVENUE
     SEATTLE, WASHINGTON 98104
     (206) 622-2000

     17

1    *Rodriguez*, 2024 WL 38302, at *8–9.  Where, as here, there is no evidence except for hypothetical

2    avenues of consent, courts deem the question of consent to be common to the class.  *Meyer v.*

3    *Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) (holding an implied consent

4    defense did not defeat predominance because the defendant "did not show a single instance where

5    express consent was given before the call was placed"); *see also Van v LLR, Inc.*, 61 F.4th 1053,

6    1068 (9th Cir. 2023) ("We do not permit a defendant to support its invocation of individualized

7    issues with mere speculation.").

8         Finally, whether Non-Registrants had a conversation recorded by Alexa is ascertainable on a

9    Class-wide basis using Defendants' own data.  Non-Registrants never registered Alexa Devices and,

10   therefore, accounts of the instances where Alexa recorded them unintentionally.  However, Amazon

11   ████████████████████████████████████ that will serve to confirm the

12   violation.  This data includes the ████████████████████████████████████████

13   ████████████████ of each communication.  Moreover, Amazon has a ████████████████

14   ██████████████████████████████████████.  *See* Ex.

15   CC at ████████; Ex. WW at ██████.  Indeed, Amazon's own data establishes that ████████████

16   ████████████████████████████████████.  *See* Ex. XX §III.  To ensure that

17   each Non-Registrant was recorded, Plaintiffs limited inclusion into the Class to those who resided

18   with a Registrant using an active Alexa device—making it almost certain they were surreptitiously

19   recorded given the sheer frequency of false wakes.

20        In similar circumstances, the Supreme Court has held that class members can uniformly rely

21   on an expert sample to establish a common element of their claims, and the common dependence on

22   that sample supports predominance.  *Tyson Foods*, 577 U.S. at 456–58.  In *Tyson Foods*, plaintiffs

23   used an expert's representative sample to establish the amount of time each class member spent

24   putting on and taking off protective clothing, time for which the plaintiffs alleged they were unpaid.

25   *Id.* at 450, 454.  The Court not only upheld the use of that sample, but also found the reliability of

26   the sample to be a common question supporting predominance.  *Id.* at 457.

27

28   PLAINTIFFS' MOTION FOR
     CLASS CERTIFICATION
     Case No. 2:21-cv-00750-RSL

Byrnes ♦ Keller ♦ Cromwell llp
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

18

Here, like in *Tyson Foods*, all Non-Registrant Plaintiffs and Class members commonly rely on Amazon's false wake metrics to establish that Alexa would have recorded their conversations surreptitiously, creating a common issue supporting predominance.  Collectively, common issues of fact and law predominate over any supposed individualized ones concerning Non-Registrants.

(2)   Common Issues Predominate Regarding the Relief Non-Registrants Seek

As with liability, Non-Registrants' damages will be easily established on a Class-wide basis because they seek statutory damages.  Under each of the relevant wiretap statutes, Non-Registrants can obtain statutory damages for any violation.  Cal. Penal Code § 637.2(a)(1) (awarding $5,000 per violation); Fla. Stat. § 934.10(1)(b) (stating that "liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher"); Md. Code Ann. Cts. & Jud. Proc. § 10-410(a)(1) (same); N.H. Rev. Stat. Ann. § 570-A:11(a) (same); 18 Pa. Cons. Stat. § 5725(a)(1) (same).

Non-Registrants seek a set amount in statutory damages, ensuring that any damages issues predominate.  *Hawkins v. S2Verify*, 2016 WL 3999458, at *6 (N.D. Cal. July 26, 2016) (holding that where plaintiffs "seek only statutory damages[,] [d]amages can … be proven through class-wide proof"); *Zaklit*, 2017 WL 3174901, at *9 ("Courts have been more willing to find predominance where, as here, the class seeks only statutory damages."); *see also Golden v. Am. Pro Energy*, 2017 WL 10573989, at *3 (C.D. Cal. May 11, 2017); *Schuchardt v. Law Off. of Rory W. Clark*, 2016 WL 232435, at *6 (N.D. Cal. Jan. 20, 2016) (finding predominance satisfied because "[i]f the [c]ourt were to find that the [defendant violated the statute], that single adjudication would reach the claims of all [c]lass [m]embers"); *Gold v. Midland Credit Mgmt., Inc.*, 306 F.R.D. 623, 633-34 (N.D. Cal. 2014) ("At bottom, the broad remedial purpose of the [Fair Debt Collection Practice Act] compels [the] conclu[sion] that the Rule 23(b)(3) requirement of predominance is satisfied where, as here, statutory damages are sought[.]"); *In re Toys "R" Us - Del., Inc. - FACTA Litig.*, 300 F.R.D. 347, 377 (C.D. Cal. 2013) .

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION
Case No. 2:21-cv-00750-RSL

19

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1    Damages, as with liability, are common, and those common questions predominate here.  As

2    such, the Court should certify the Non-Registrant Classes.

### 2.    Common Issues Predominate for the Registrant Class

4    The Registrants' claim similarly presents common issues of fact and law that predominate

5    over any hypothetical individual issues.  Registrants bring a single claim under the WCPA, alleging

6    Amazon acted unfairly and deceptively in the development, deployment, and use of Alexa Devices.

7    Here, common issues predominate for the Registrant Class for three reasons: (1) the Registrants'

8    claims are each governed by Washington law; (2) Amazon's liability under the WCPA depends on

9    common evidence and a rebuttable presumption of reliance; and (3) Plaintiffs have common

10   evidence of a Class-wide injury and damages.

### a.    Washington Law Governs the Registrant Class's Claim

12   When considering predominance, courts evaluate which law applies to the class.  *See Senne*

13   *v. Kan. City Royals Baseball Corp.*, 934 F.3d 918, 928 (9th Cir. 2019).  Here, the Court previously

14   held that Washington law applies to all Registrants.  *See* ECF No. 91 at 8-12 (holding Washington

15   law applied to Registrants under Amazon's contractual choice of law provision and, separately,

16   under Washington's choice of law rules).  As such, the Registrant Plaintiffs' claim will be governed

17   by uniform legal principles, supporting predominance.  *Senne*, 934 F.3d at 928; *see also Yokoyama*

18   *v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) (reversing denial of class

19   certification for single state-law consumer protection claim); *Klay v. Humana, Inc.*, 382 F.3d 1241,

20   1262 (11th Cir. 2004) (holding that where a class claim "is based on a principle of law that is

21   uniform among the states, class certification is a realistic possibility").

### 3.    Common Evidence Establishes Amazon's WCPA Liability

23   Amazon's liability under the WCPA further supports predominance because it depends

24   almost entirely on Amazon's own conduct.  "To prevail in a private CPA claim, the plaintiff must

25   prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the

26   public interest, (4) injury to a person's business or property, and (5) causation."  *Panag v. Farmers*

27   *Ins. Co. of Wash.*, 204 P.3d 885, 889 (Wash. 2009).

28

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION
Case No. 2:21-cv-00750-RSL

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20

In evaluating whether a defendant violated the WCPA, Washington courts do not look to whether the individual plaintiffs or class members were deceived, but rather, whether the alleged wrongdoing "ha[s] the capacity to deceive a significant portion of the public." *Tashiro-Townley v. Bank of N.Y. Mellon*, 2016 WL 3551810, at *2 (W.D. Wash. June 30, 2016); *Young v. Toyota Motor Sales, U.S.A.*, 472 P.3d 990, 994 (Wash. 2020) ("[A] plaintiff need not show that they—or anyone— were in fact deceived."). Likewise, because "an act or practice can be unfair without being deceptive... the CPA itself declares 'unfair acts or deceptive acts or practices' are sufficient to satisfy the acts or practices prong of a CPA action." *Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1187 (Wash. 2013).

In evaluating whether a defendant's wrongdoing impacted the "public interest," courts examine several factors, all of which examine a defendant's actions. *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 537-38 (Wash. 1986) (explaining that the "factors ... relevant to establish public interest" are: "(1) Were the alleged acts committed in the course of defendant's business? (2) Are the acts part of a pattern or generalized course of conduct? (3) Were repeated acts committed prior to the act involving plaintiff? (4) Is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff? (5) If the act complained of involved a single transaction, were many consumers affected or likely to be affected by it?").

Consequently, whether Amazon acted unfairly or deceptively in violation of the WCPA exclusively depends on evidence of Amazon's wrongdoing and its public impact, not on individual deception or reliance. *See DZ Rsrv.*, 96 F.4th at 1234 (holding that "consumer fraud victims often present a 'cohesive group' because ... the crux of each consumer's claim is that a company's mass marketing efforts, common to all consumers, misrepresented the company's product" (citation omitted)); *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997) ("Predominance is a test readily met in certain cases alleging consumer ... fraud.").

Here, Registrants show through common evidence that Amazon omitted information regarding how Alexa functioned and the extent to which Defendants collected, used, and profited

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION
Case No. 2:21-cv-00750-RSL

Byrnes ♦ Keller ♦ Cromwell LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

21

from the data obtained from users' Alexa Devices.  Exs. J; XX.  While Amazon purportedly explained that Alexa recorded communications to respond to inquiries, Amazon omitted or engaged in practices to hide that (i) Alexa recorded communications to retrieve and transcribe data, even during ███████████████████████████████; (ii) the recordings and transcriptions of the recordings would be ████████████████████████████████; and (iii) even when a Registrant could delete a voice recording, ████████████████████████ █████.  Further, Amazon had a vested interest in using Alexa Devices as data-mining tools to obtain information that it could ████████████████████████.  These omissions lead to a presumption of reliance under Washington law, tied to the reasonable consumer standard: "This presumption shifts the focus of the causation inquiry from what information each class member received to what the defendant 'allegedly concealed in light of what consumers reasonably expect,' a question capable of generating a common answer across the class without substantial individualized inquiries."  *Blough v. Shea Homes, Inc.* 2014 WL 3694231, at *13 (W.D. Wash. July 23, 2014) (citing *Gray's Harbor Adventist Christian Sch. v. Carrier Corp.*, 242 F.R.D. 568, 573 (W.D. Wash. 2007)).

Thus, the uniform evidence required to establish the elements of a WCPA claim supports the predominance of common issues.

### 4. Registrant Plaintiffs Can Establish Injury and Damages Using Common Evidence

In addition to liability, Registrants will use common evidence and expert testimony to establish Class-wide injury and damages due to Amazon's omissions, acts, and practices.  Under the WCPA, a plaintiff's injury "need not be great."  *Mason v. Mortg. Am., Inc.*, 792 P.2d 142, 148-49 (Wash. 1990).  "[W]ith regard to injury, . . . no monetary damages need be proven" and even "nonquantifiable injuries . . . would suffice for [the injury] element of the [WCPA]."  *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 825 P.2d 714, 720 (Wash. Ct. App. 1992).

Here, the Registrants assert they suffered monetary harm from Amazon's use of their audio recordings for its own benefit, depriving the Registrants of the value of their information.  *See*

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION
Case No. 2:21-cv-00750-RSL

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

22

1   *Martinez v. ZoomInfo Techs., Inc.*, 2022 WL 1078630, at *4 (W.D. Wash. Apr. 11, 2022)

2   (recognizing the "commercial value of [plaintiff's] persona" and finding standing where

3   "[defendant] use[d] . . . her persona [in ways that] deprive[d] her of its value").  Specifically, while

4   Amazon explained that Alexa recorded to respond to inquiries, Amazon omitted that it used Alexa

5   as a ██████████████████████████████████████████████████████

6   ████████████████████████████████████ .

7        Plaintiffs proffer expert testimony to establish the value of the information Amazon

8   surreptitiously obtained by misrepresenting the operation of its Alexa Devices.  By surreptitiously

9   taking that information for its own benefit, Amazon wrongly deprived the Registrants of the value

10  of that information.  *See* Ex. XX.  The loss of the value of that data constitutes a common injury for

11  the Registrants.  *See Mut. Of Enumclaw Ins. Co. v. Gregg Roofing, Inc.*, 315 P.3d 1143, 1150 (Wash.

12  Ct. App. 2013) ("[O]nce the [plaintiff] establishes the fact of loss with certainty … uncertainty

13  regarding the amount of loss will not prevent [his] recovery."); *Mason*, 792 P.2d at 148 (finding an

14  injury under the WCPA where plaintiff's "money [wa]s diminished because of the unlawful

15  conduct", although  the losses "[we]re minimal").

16       The common method of establishing damages further supports predominance.  As such, the

17  Court should certify the Registrant Class.

18       **C.      The Class Action Device Is the Superior Method of Adjudication**

19       "The superiority requirement tests whether classwide litigation of common issues will

20  reduce litigation costs and promote greater efficiency."  *Hilsley v. Ocean Spray Cranberries, Inc.*,

21  2018 WL 6300479, at *18 (S.D. Cal. Nov. 29, 2018).  "Superiority is met where the case involves

22  multiple claims for relatively small individual sums and where some or all of the plaintiffs may not

23  be able to proceed as individuals because of the disparity between their litigation costs and what

24  they hope to recover."  *Id.*

25       Here, both Registrants and Non-Registrants have a substantial disparity in the costs of

26  litigating against a sophisticated defendant like Amazon and the value of Plaintiffs' claims.  The

27  damages Registrants pursue for the lost value of their personal information are dwarfed by the costs

28
PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION
Case No. 2:21-cv-00750-RSL

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

23

1   of litigation. *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1123 (C.D. Cal.

2   2015) ("Given the small recovery any individual plaintiff might expect, moreover, concentrating the

3   litigation in a single forum is appropriate.").

4     The same is true for Non-Registrants, who, despite seeking statutory damages, would never

5   recover more than the costs of litigation should they have pursued their own individual actions. *See*

6   *Zaklit*, 2017 WL 3174901, at *10 ("[T]he Court is not persuaded that $5,000 in [statutory] damages

7   is so clearly sufficient to motivate individual litigation involving complex factual and legal issues as

8   to weigh against class certification"); *Hawkins*, 2016 WL 3999458, at *6.

9     Without the availability of a class action, neither Non-Registrants nor Registrants would

10   have the opportunity to bring their claims on behalf of themselves and the Proposed Classes.

11   Consequently, a class action is the superior device, especially given the uniformity of the claims and

12   factual disputes, satisfying the requirements of Rule 23(b)(3).

13     **D.**  **The Registrant Class Satisfies the Rule 23(b)(2) Requirements for Injunctive Relief**

14     Rule 23(b)(2) allows certification when "the party opposing the class has acted or refused to

15   act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate

16   respecting the class as a whole[.]"  Unlike Rule 23(b)(3), which focuses on the actions of the

17   individual class member, Rule 23(b)(2) focuses on the acts or omissions of the defendant,

18   eliminating the superiority and predominance requirements.  The Advisory Committee's notes to the

19   1966 amendment explains general applicability as "action or inaction . . . directed to a class . . .

20   even if it has taken effect or is threatened only as to one or a few members of the class, provided it

21   is based on grounds which have general application to the class."  Further, injunctive relief is

22   available under the Registrant Plaintiffs' WCPA claim.  RCW § 19.86.090.

23     Amazon acted uniformly in relation to the Registrant Class by surreptitiously recording

24   them and, without disclosure, ███████████████████████████████████

25   ████.  Monetary damages cannot undo the significant privacy violations imposed by Amazon's

26   willful retention and use of recorded private conversations.  Plaintiffs seek certification of a Rule

27

28
        BYRNES ♦ KELLER ♦ CROMWELL LLP
            38TH FLOOR
           1000 SECOND AVENUE
         SEATTLE, WASHINGTON 98104
            (206) 622-2000

1   12(b)(2) Registrant Class to (i) enjoin Amazon from using now or in the future any algorithm

2   trained using the surreptitious recordings, transcripts of the surreptitious recordings, and data from

3   the surreptitious recordings; and (ii) to require Amazon to destroy any recordings, transcripts, or

4   data stemming from the surreptitious recordings.

5   **V.      CONCLUSION**

6          The Court should certify the Registrant Class and each Non-Registrant Class, and appoint

7   named Plaintiffs as Class Representatives, and Labaton Keller Sucharow LLP and Robbins Geller

8   Rudman & Dowd LLP as Class Counsel.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION
Case No. 2:21-cv-00750-RSL

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

25

1  DATED: June 18, 2024

Respectfully submitted,

2

*/s/ Bradley S. Keller*

3

**BYRNES KELLER CROMWELL LLP**

4  BRADLEY S. KELLER (WSBA# 10665)
1000 Second Avenue

5  Seattle, WA  98104
Telephone:  206/622-2000

6  Fax: 206/622-2522

7  bkeller@byrneskeller.com

8  *Interim Liaison Counsel*

9  **LABATON KELLER SUCHAROW LLP**
MICHAEL P. CANTY

10  (admitted *pro hac vice*)
CAROL C. VILLEGAS

11  (admitted *pro hac vice*)
GUILLAUME BUELL

12  (admitted *pro hac vice*)
DAVID SALDAMANDO

13  (admitted *pro hac vice*)
DANIELLE IZZO

14  (admitted *pro hac vice*)
140 Broadway

15  New York, NY  10005
Telephone:  212/907-0700

16  212/818-0477 (fax)
mcanty@labaton.com

17  cvillegas@labaton.com

18  gbuell@labaton.com
dsaldamando@labaton.com

19  dizzo@labaton.com

20

21  **ROBBINS GELLER RUDMAN**
 **& DOWD LLP**

22  PAUL J. GELLER
STUART A. DAVIDSON

23  (admitted *pro hac vice*)
MARK J. DEARMAN

24  (admitted *pro hac vice*)
ALEXANDER C. COHEN

25  (admitted *pro hac vice*)
NICOLLE B. BRITO

26  (admitted *pro hac vice*)

27

28  PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION
Case No. 2:21-cv-00750-RSL

BYRNES ♦ KELLER ♦ CROMWELL llp
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

26

225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone:  561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
sdavidson@rgrdlaw.com
mdearman@rgrdlaw.com
acohen@rgrdlaw.com
nbrito@rgrdlaw.com

*Counsel for Plaintiffs and Interim Co-Lead
Class Counsel*

**BURSOR & FISHER, P.A.**
L. TIMOTHY FISHER
(admitted *pro hac vice*)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone:  925/300-4455
925/407-2700 (fax)
ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
ALEC M. LESLIE
(admitted *pro hac vice*)
MAX S. ROBERTS
(admitted *pro hac vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone:  646/837-7150
212/989-9163 (fax)
aleslie@bursor.com
mroberts@bursor.com

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
ROBERT K. SHELQUIST
(admitted *pro hac vice*)
REBECCA A. PETERSON
(admitted *pro hac vice*)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401-2159
Telephone: 612/339-6900
612/339-0981 (fax)
rkshelquist@locklaw.com
rapeterson@locklaw.com

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION
Case No. 2:21-cv-00750-RSL

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

27

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ZIMMERMAN REED LLP**
BRIAN C. GUDMUNDSON
(admitted *pro hac vice*)
MICHAEL J. LAIRD
(admitted *pro hac vice*)
1100 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: 612/341-0400
612/341-0844 (fax)
brian.gudmundson@zimmreed.com
michael.laird@zimmreed.com

*Interim Class Counsel*

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION
Case No. 2:21-cv-00750-RSL

28

Byrnes ♦ Keller ♦ Cromwell llp
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1

## <u>LOCAL RULE 7(e)(6) CERTIFICATION</u>

2       I certify that this reply memorandum contains 8,382 words, in compliance with the Local

3  Civil Rule 7(e)(3).

4  Dated: June 18, 2024

5                                      By: *<u>/s/ Bradley S. Keller</u>*
                                          Bradley S. Keller

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION
Case No. 2:21-cv-00750-RSL

29

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000