THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KAELI GARNER, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC. and AMAZON.COM SERVICES LLC,<br><br>　　　　　　　Defendants. | Case No. 2:21-cv-00750-RSL<br><br>**DECLARATION OF DR. SERGE EGELMAN IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY**<br><br>NOTE ON MOTION CALENDAR:<br>September 10, 2024 |

# DECLARATION OF DR. SERGE EGELMAN

I, Dr. Serge Egelman, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I have been retained as an expert in this matter by Plaintiffs. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would testify competently thereto.

2. In connection with my work in this matter, I submitted an expert report that, in part, relied on four studies that I previously co-authored as recently as five years ago and as long ago as twelve years ago: (i) ADRIENNE PORTER FELT, ET AL., I'VE GOT 99 PROBLEMS, BUT VIBRATION AIN'T ONE: A SURVEY OF SMARTPHONE USERS' CONCERNS (2012) (cited in the Egelman Report ¶ 46) ("*99 Problems*"); (ii) NATHAN MALKIN, ET AL., "WHAT CAN'T DATA BE USED FOR?": PRIVACY EXPECTATIONS ABOUT SMART TVS IN THE U.S. (2018) (cited in the Egelman Report ¶ 46) ("*Privacy Expectations*"); (iii) Nathan Malkin, et al., *Privacy Attitudes of Smart Speaker Users*, 250 PROCEEDINGS ON PRIVACY ENHANCING TECHS. 271 (2019) (cited in the Egelman Report ¶¶ 21, 36) ("*Privacy Attitudes*"); and (iv) MADIHA TABASSUM, ET AL., INVESTIGATING USERS' PREFERENCES AND EXPECTATIONS FOR ALWAYS-LISTENING VOICE ASSISTANTS (2019) (cited in the Egelman Report ¶ 45) ("*Users' Preferences*").

3. As part of my expert report, I reviewed each of these peer-reviewed publicly-available research publications. However, in preparing my expert report, I did not review the raw data and/or survey responses underlying the summary percentages cited in these publicly available studies. The raw data and survey responses were collected in conjunction with my employment at the University of California, Berkeley, they remain the property of the Regents of the University of California, and have no relation to my retention in this case. I am not aware of the location of the raw data and survey responses (*i.e.*, where that information may be stored) and am not able to

readily produce it, even if it were mine to produce (which it is not).

4. As to the *Privacy Expectations*, *Users' Preferences*, and *Privacy Attitudes* studies, I never saw, heard, or learned of every raw data point or response to the individual survey questions for these studies. Moreover, I did not review or access the raw data and/or individual survey responses in writing my report in this case. For these studies, the results were tabulated by other researchers at the University of California, Berkeley. As the senior author, it was not part of my role to tabulate, analyze, filter, or finalize the individual survey responses for these studies; I supervised a team of graduate students who performed the low-level analysis.

5. To the best of my knowledge, Berkeley would not retain this data (from twelve years ago) in the ordinary course of business, and without significant effort, I could not even tell you where this data is stored (in the event that it still exists somewhere). After a research paper undergoes the peer review process and is published, the underlying data is of little value.

6. As to the *99 Problems* study, which was done early on in my career, I likely would have seen, tabulated, and analyzed at least some of the individual survey responses. However, that study was published in 2012, almost a decade before I was even approached as a potential expert in this matter by counsel in the fall of 2021. Thus, as part of my work in this matter, I did not review, read, learn, see, hear, analyze, the underlying survey data from the *99 Problems* study, nor was I in any way, shape, or form exposed to the underlying survey data from the *99 Problems* study in connection with my work in this matter. As with the other publicly-available publications, I only relied on those *publications* in drafting my report, and thus did not examine any of the underlying data that was used—sometimes more than a decade ago—in drafting my report.

1  I declare under penalty of perjury that the foregoing is true and accurate to the best of my
2  knowledge.  Executed on September 4, 2024 in Berkley, California.

Serge Egelman (Sep 4, 2024 11:22 PDT)

Dr. Serge Egelman

DECLARATION OF DR. SERGE EGELMAN
Case No. 2:21-CV-00750-RSL

3

**BYRNES KELLER CROMWELL LLP**
1000 SECOND AVENUE, 38TH FLOOR, SEATTLE, WA 98104
TELEPHONE: 206/622-2000• FAX: 206/622-2522