THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KAELI GARNER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC., a Delaware Corporation, and AMAZON.COM SERVICES LLC, a Delaware Limited Liability Company,<br><br>Defendants. | Case No. 2:21-cv-00750-RSL<br><br>**AMAZON'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>NOTE ON MOTION CALENDAR:<br>NOVEMBER 21, 2024<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................3

    A.    The Alexa Service ..............................................................................3

          1.    How Alexa Works...............................................................3

          2.    Improvements To Alexa .....................................................4

    B.    Amazon's Disclosures And Agreements ............................................4

    C.    Public Information About Alexa .........................................................5

    D.    Plaintiffs' Varied Understandings And Uses Of Alexa ......................5

    E.    Plaintiffs' Lawsuit..............................................................................6

ANALYSIS ........................................................................................................7

    A.    Plaintiffs Lack Valid Individual Claims. ...........................................7

    B.    Plaintiffs' Proposed Classes Are Overbroad.....................................8

    C.    Garner And Johnson Cannot Represent Non-Registrant Classes. ..........9

    D.    Plaintiffs Cannot Establish Predominance.......................................10

          1.    Individualized Issues Predominate For The Non-Registrant Classes.................................................................................11

               a.    Identification Of Class Members .................................11

               b.    Agency And Estoppel .................................................13

               c.    Consent ......................................................................14

               d.    Content Of Recordings ...............................................16

               e.    Reasonable Expectations ............................................16

               f.    Damages.....................................................................18

           2.    Individualized Issues Predominate For The Registrant Class...................19

               a.    Injury.........................................................................19

               b.    Causation....................................................................20

               c.    Class Damages ...........................................................21

AMAZON'S OPPOSITION TO MOTION       - 1 -       FENWICK & WEST LLP
FOR CLASS CERTIFICATION                                           1191 SECOND AVENUE, 10TH FLOOR
CASE NO.: 2:19-CV-910-RAJ-MLP                                   SEATTLE, WASHINGTON  98101

**TABLE OF CONTENTS**
**(Continued)**

**Page**

E.      Plaintiffs Cannot Establish Superiority..................................................................22

F.      Plaintiffs Cannot Certify A Rule 23(b)(2) Registrant Class. ................................23

CONCLUSION...............................................................................................................23

AMAZON'S OPPOSITION TO MOTION       - ii -
FOR CLASS CERTIFICATION
CASE NO. 2:21-CV-00750-RSL

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)........................................................................................................7, 14

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997)...............................................................................................................10

*Blough v. Shea Homes*,
2014 WL 3694231 (W.D. Wash. July 23, 2014) ....................................................20, 21, 23

*Campbell v. Facebook Inc.*,
315 F.R.D 250 (N.D. Cal. 2016)...........................................................................................15

*Cashatt v. Ford Motor Co.*,
2020 WL 1987077 (W.D. Wash. Apr. 27, 2020)..................................................8, 10, 11, 19

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)..................................................................................................10, 18, 21

*Del Vecchio v. Amazon.com, Inc.*,
2012 WL 1997697 (W.D. Wash. June 1, 2012)...................................................................22

*E. Tex. Motor Freight Sys. v. Rodriguez*,
431 U.S. 395 (1977)...............................................................................................................10

*Easton v. Wells Fargo & Co.*,
2023 WL 6194043 (C.D. Cal. Aug. 18, 2023).......................................................................10

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ...........................................................................................7, 23

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) .........................................................................................................16

*Franklin v. Midwest Recovery Sys., LLC*,
2021 WL 1035121 (C.D. Cal. Feb. 5, 2021)........................................................................22

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014)..................................................................................................................7

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
105 Wn.2d 778 (1986)...........................................................................................................19

*Hartman v. United Bank Card, Inc.*,
2012 WL 4758052 (W.D. Wash. Oct. 4, 2012) ..............................................................18, 20

**TABLE OF AUTHORITIES**
**(Continued)**

Page(s)

*Harvey v. Centene Mgmt. Co. LLC*,
    2020 WL 2411510 (E.D. Wash. May 12, 2020) ............................................................... *passim*

*In re Google Inc. Gmail Litig.*,
    2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ...................................................................14, 15

*Kline v. Sec. Guards, Inc.*,
    386 F.3d 246 (3d Cir. 2004) ..................................................................................................16

*Lytle v. Nutramax Labs., Inc.*,
    2024 WL 3915361 (9th Cir. Aug. 23, 2024) ..........................................................................21

*Mazza v. American Honda Motor Co., Inc.*,
    666 F.3d 581 (9th Cir. 2012) ...............................................................................8, 9, 15, 20

*Mendell v. Am. Med. Response, Inc.*,
    2021 WL 1102423 (S.D. Cal. Mar. 22, 2021) .......................................................................17

*Meyer v. Portfolio Recovery Assocs., LLC*,
    707 F.3d 1036 (9th Cir. 2012) ...............................................................................................15

*Mills v. PPE Casino Resorts Maryland, LLC*,
    2017 WL 1862474 (D. Md. May 8, 2017) ..............................................................................16

*Nicosia v. Amazon.com, Inc.*,
    384 F. Supp. 3d 254 (E.D.N.Y. 2019) ....................................................................................13

*Norwood v. MultiCare Health Sys.*,
    548 P.3d 978 (Wash. Ct. App. 2024) ......................................................................................13

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee*,
    31 F.4th 651 (9th Cir. 2022) ....................................................................................................8

*Pollack v. Foto Fantasy, Inc.*,
    2010 WL 11595486 (C.D. Cal. July 15, 2010) .......................................................................17

*Poulos v. Caesars World, Inc.*,
    379 F.3d 654 (9th Cir. 2004) ..................................................................................................20

*Rodriguez v. Google*,
    2024 WL 38302 (N.D. Cal. Jan. 3, 2024) ...............................................................................15

*Rydman v. Champion Petfoods USA, Inc.*,
    2023 WL 3506133 (W.D. Wash. May 17, 2023) ..............................................................20, 23

**TABLE OF AUTHORITIES**
**(Continued)**

Page(s)

*State v. Christensen*,
  153 Wn.2d 186 (2004) ...................................................................................16

*State v. Clark*,
  129 Wn.2d 211 (1996) ...................................................................................17

*State v. David Smith*,
  85 Wn.2d 840 (1975) .....................................................................................16

*State v. John Garrett Smith*,
  189 Wn.2d 655 (2017) ...........................................................................14, 16

*State v. Kamara*,
  28 Wn. App. 2d 903 (2023) ...........................................................................16

*Tice v. Amazon.com, Inc.*,
  2020 WL 1625782 (C.D. Cal. Mar. 25, 2020) ..............................................13

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ...............................................................................1, 7, 8

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) .................................................................................11, 17

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .....................................................................7, 9, 10, 17

*Weidenhamer v. Expedia, Inc.*,
  2015 WL 7157282 (W.D. Wash. Nov. 13, 2015) ...........................................22

*Wetzel v. CertainTeed Corp*,
  2019 WL 3976204 (W.D. Wash. Mar. 25, 2019) ..................................... *passim*

*Wright v. Schock*,
  742 F.2d 541 (9th Cir. 1984) ...........................................................................8

**STATUTES AND RULES**

18 Pa. Cons. Stat. §5703 .......................................................................................14

Cal. Penal Code §631(a) ........................................................................................14

Cal. Penal Code §632(a) ........................................................................................14

Fed. R. Civ. P. 23 ........................................................................................ *passim*

# TABLE OF AUTHORITIES
**(Continued)**

**Page(s)**

Fla. Stat. §934.02(2).....................................................................................................16

Fla. Stat. §934.03(1)(a) ...............................................................................................14

Md. Code Cts. & Jud. Proc. §10-401(13) ...................................................................16

Md. Code Cts. & Jud. Proc. §10-402 ..........................................................................14

N.H. Rev. Stat. §570-A:1, II ........................................................................................16

N.H. Rev. Stat. §570-A:2, I & I-a ...............................................................................14

RCW §9.73.030 .....................................................................................................14, 16

AMAZON'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION
CASE NO. 2:21-CV-00750-RSL

- vi -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

**INTRODUCTION**

Class certification must be denied where individualized factual questions overwhelm common legal questions and prevent plaintiffs from proving liability on a class-wide basis. This case is a textbook example of that dynamic. Plaintiffs seek to represent tens of millions of unidentifiable people who *might* have been recorded by Amazon's Alexa service, *perhaps* without their knowledge and consent, *maybe* when they did not intend to activate Alexa, and *possibly* to their unspecified detriment. But Plaintiffs offer no feasible way to address the litany of critical individual questions their liability theories present.

Plaintiffs ask the Court to certify classes in two categories: (1) a nationwide class of every person who ever registered an Alexa-enabled device, on the theory that they lost the "value" of their voice recordings when their devices mistakenly detected the "wake-word" (so-called "false-wakes"); and (2) six state-specific classes of every person who ever lived with someone who registered an active Alexa-enabled device, on the theory that all such people had private conversations surreptitiously recorded in violation of state wiretap laws.

None of these classes satisfies Rule 23(b)(3), but the Court need not reach that issue, for two reasons. First, as Amazon will establish in its summary judgment motion, Plaintiffs all lack viable claims of their own, which means they cannot represent any class. Second, Plaintiffs' proposed classes cannot be certified, because they include many people who were never recorded by Alexa and therefore lack Article III standing. Under *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) and Ninth Circuit law, every class member must have Article III standing to pursue damages, and where (as here) a class is defined such that it *necessarily* includes members without standing, it cannot be certified. That ends the inquiry.

Even if that were not so, Plaintiffs cannot carry their burden to satisfy Rule 23(b)(3)'s demanding requirements. Individual questions regarding the circumstances of each class member will not just predominate over, but will completely overwhelm, anything that could be resolved on a common, class-wide basis. For the non-registrant classes, if the Court could somehow identify the millions of people who at one time lived in a house with an active Alexa device, each would be subject to individual fact-finding on several material issues. Some are bound by the Alexa

AMAZON'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION
CASE NO. 2:21-CV-00750-RSL

- 1 -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

terms, under agency or estoppel principles, by virtue of their relationship with an Alexa registrant. Some have consented, expressly or impliedly, to being recorded by the Alexa service. Some have no reasonable expectation that they are *not* being recorded, as the state wiretap laws require. Some have never been recorded in a way that violates the law; for example, Washington's wiretap statute requires interception of a "conversation," not just words or sounds. And some have never been recorded at all. The Court could make those factual determinations only by reviewing *billions* of individual Alexa recordings.

For registrants, each must satisfy the elements of the Washington Consumer Protection Act ("WCPA"), including that they were subjected to "unfair or deceptive" conduct, which caused them injury. The insurmountable hurdle for Plaintiffs is *injury*. Not all registrants were recorded by their Alexa-enabled devices—let alone in response to a false-wake—because, for example, some gifted those devices to others. Plaintiffs identify no way to determine *which registrants* were recorded without reviewing billions of individual recordings. Nor do they identify any way to determine *which recordings* constituted false-wakes. Plaintiffs claim that all recordings labeled as "audio not intended for Alexa" are "communications that do not contain the wake-word." That is false. Listening to recordings reveals that many *do* contain the wake-word and many are in fact intentional Alexa commands. Others contain no voice at all. Thus, the only way to determine if a registrant was recorded in response to a false-wake would be, again, to review billions of recordings. And even if there were a way to overcome this hurdle, it does not follow that each recording of a false-wake was an "unfair or deceptive act" that caused harm. There are infinite variations in registrants' knowledge and understanding of how Alexa operates, and many registrants were aware of, and unconcerned by, false-wakes, which defeats causation. The only way to test registrants' knowledge is through individual fact-finding.

Finally, Plaintiffs do not even purport to offer evidentiary proof or any model for measuring damages on a class-wide basis. Nor is it possible to do so. For registrants, Plaintiffs merely assert that recordings of false-wakes have "value," but never articulate how false-wakes can be reliably identified among billions of Alexa recordings, what the "value" of these recordings is or how it was "lost," or how conceivably to measure that value. And for non-registrants, Plaintiffs do not

AMAZON'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION
CASE NO. 2:21-CV-00750-RSL

- 2 -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

1  explain how they could estimate the number of class members, let alone the number of statutory

2  violations (as necessary to calculate class-wide statutory damages) without a person-by-person,

3  recording-by-recording analysis.  It is axiomatic that without a viable class-wide damages model,

4  a class cannot be certified.

5       Plaintiffs identify a handful of common questions, but they entirely fail to explain how

6  those questions are susceptible to common *answers* using common proof.  Courts in this District

7  routinely find class actions "unmanageable" when they would require even thousands—let alone

8  millions—of fact-finding mini-trials.  In such circumstances, a class action simply is not the

9  superior method to address those claims.  This is such a case, and certification should be denied.

## BACKGROUND

10

11  **A.    The Alexa Service**

12       Alexa is a voice-activated, cloud-based service that allows users to access online features

13  and resources.  Declaration of Nedim Fresko, ¶¶2-3.[1]  Alexa receives input from a local device,

14  transmits that input over the internet, and records and processes that input on computer servers to

15  perform a function.  *Id.* ¶¶4-6.

16       Users access Alexa through various devices, including the Amazon Echo family of devices.

17  *Id.* ¶¶10-11.  Amazon also sells Alexa-enabled Fire TV devices.  *Id.* ¶¶10, 12.  Alexa-enabled

18  devices include Echo Auto for cars, phones with the Alexa App, and some third-party

19  manufactured devices, such as some Sonos speakers and Samsung watches.  *Id.* ¶10; Declaration

20  of Y. Monica Chan, Ex-31, 4.

21       **1.    How Alexa Works**

22       To activate Alexa, users press a button or say a "wake-word," followed by a command.

23  Fresko Decl., ¶19.  The device streams audio to the cloud only if the wake-word is detected or the

24  button is pressed.  *Id.* ¶20.  The device alerts users that it has detected the wake-word by, among

25  other signals, flashing a blue light.  *Id.* ¶22; Declaration of Leila Rouhi, Ex-D.  Once activated,

26  audio starts streaming and continues until Alexa detects the end of the command and terminates

27

28  _____

[1]  The declarations in support of this brief might also support Amazon's summary judgment motion.

the stream.  Fresko Decl., ¶23.  Unless the user chooses otherwise, Alexa recordings are retained to provide and improve the service.

Like any technology, Alexa is not perfect.  Sometimes "false-wakes" occur when an Alexa device misidentifies an input (e.g., "a Lexus") as the wake-word.  *Id.* ¶24.  After a device detects the wake-word, if Amazon's second, more powerful "cloud-side wake-word verification" process cannot confirm the presence of the wake-word, it terminates the audio stream from the device and saves only a truncated, seconds-long portion of the audio, enough to determine why the device activated.  *Id.* ¶¶25-27.

### 2.    Improvements To Alexa

Storing Alexa recordings is integral to improving the service.  As widely disclosed and reported, Amazon uses recordings to train its speech-recognition and natural-language-understanding systems.  Rouhi Decl., ¶¶20-22.  This training relies partly on supervised machine learning where ███████████████████████████████████████ to help Alexa improve.  *Id.* ¶¶23, 125-127; *see* Chan Decl., ¶48.  Customers can easily opt out of human review, as ████████████ have.  Rouhi Decl., ¶25; Chan-Ex-36.

Customers have always been able to review and listen to stored recordings, including truncated recordings of suspected "false-wakes" labeled as "Audio was not intended for Alexa."  Rouhi Decl., ¶¶15-16; Fresko Decl., ¶29.  But that is just a label; suspected "false-wake" recordings often *do* contain the wake-word and often *were* intended for Alexa.  Rouhi Decl., ¶16; Fresko Decl., ¶28; *see* Chan-Ex-4, 118:16-122:4.  Customers can delete recordings, or they can choose not to store their recordings at all (as nearly ████████████ have).  Rouhi Decl., ¶¶17-18; Rouhi-Exs-F-H; Chan-Ex-35.

### B.    Amazon's Disclosures And Agreements

Use of Alexa is subject to Amazon's terms, including the Conditions of Use ("COUs"), Privacy Notice, and Alexa Terms of Use ("TOUs").  FACC, ¶¶95-100.  The Court held that Amazon adequately disclosed, and registrants consented to, Alexa recordings, including the fact of "false-wakes."  Dkt-91 ("MTDO"), 16; Fresko Decl., ¶¶63-84.

AMAZON'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION
CASE NO. 2:21-CV-00750-RSL

- 4 -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

1    People agree to Amazon's disclosures and terms in other ways. Users, whether or not they

2    are "registrants," agree to the COUs, Privacy Notice, and TOUs when they sign into the Alexa

3    App. Fresko Decl., ¶¶60-62. And customers who purchase Alexa devices on amazon.com must

4    also agree to the COUs, Privacy Notice, and TOUs at checkout, even if they never register the

5    device. *Id.* ¶¶58-59.

6    **C.    Public Information About Alexa**

7    Amazon has always disclosed that Alexa "use[s] your voice recordings to improve the

8    results provided to you and improve [your] services," and that customers can review and delete

9    recordings. Rouhi-Ex-T1; Rouhi-Ex-N5, '093-094; Rouhi-Ex-T14, '281. Amazon routinely

10   supplements its disclosures, e.g., by explaining that Alexa interactions are used for machine

11   learning, and as part of that process "humans review an extremely small sample of requests."

12   Rouhi-Ex-T18, '948. Amazon offers other resources regarding Alexa, including an online Alexa

13   Privacy Hub and YouTube videos. Rouhi Decl., ¶¶73-74; Rouhi-Exs-O-S; Chan-Ex-37.

14   People also learn about Alexa from countless other sources. For years, the media has

15   extensively reported on Alexa recordings, including false-wakes and human review. Chan-Ex-52

16   (over 1,000 articles on Alexa since launch); Chan-Ex-47 (2014 reporting that Alexa "records

17   snippets of what you say in the privacy of your home and stores it on Amazon's servers" in order

18   to "fine tune Alexa's performance"). In 2019, Amazon was sued in several high-profile cases

19   alleging that Alexa records consumers without consent. Chan Decl., ¶71. In 2020, plaintiffs' firms

20   solicited people through social media to sign up for claims relating to Alexa, and filed over 70,000

21   individual arbitrations against Amazon. *Id.* ¶¶57-58. ████████████████████████

22   ████████████    *Id.* Nonetheless, that solicitation campaign further reminded users about how

23   Alexa works. Chan-Exs-38-39.

24   **D.    Plaintiffs' Varied Understandings And Uses Of Alexa**

25   Plaintiffs differ in their understandings of, and expectations about, Alexa. Babani testified

26   that, before he started using Alexa, he generally knew about Alexa recordings, knew that they

27   could be reviewed by humans, and was comfortable with Amazon using recordings to improve the

28   service. Chan-Ex-5, 89:1-10, 90:23-93:19. Most Plaintiffs have continued to use Alexa even after

filing this lawsuit.  *Id.*, 22:2-7; Chan Decl., ¶45; Chan-Ex-32, 4; Chan-Ex-33, 4.  Hoyt registered a new device and used it throughout the litigation.  Rouhi Decl., ¶124(a); Chan-Ex-3, 21:14-22, 24:9-10, 67:5-8.

Plaintiffs also registered and used Alexa under different individual circumstances.  Despite being characterized as a non-registrant (FACC, ¶60), Garner purchased an Alexa-enabled device on amazon.com and registered it to her Amazon account in November 2017.  Rouhi Decl., ¶124(b); Chan-Ex-8, 51:22-52:3, 55:7-11, 60:14-19.  Thus, she consented to Amazon's terms *before* using her roommate's Alexa device in 2018.  Declaration of Michael Canty, Ex-R at Ex-A.

Plaintiffs' experiences also illustrate the challenges of accurately identifying voices and the content and circumstances of recordings.  Chan Decl., ¶¶19-38.  All Plaintiffs had difficulty identifying voices in recordings.  *Id.* ¶¶19-31; Chan-Ex-6, 129:5-11; Chan-Ex-9, 134:3-5.  For example, Brust mistook a recording from the TV show "Cougar Town" as containing her voice.  Chan Decl., ¶¶19, 46(d); Chan-Ex-15.  Garner misidentified her roommate's voice as her own.  Chan-Ex-8, 156:4-8.  Ronald Johnson initially claimed that Amazon recorded a "conversation" ▮▮▮▮▮▮▮▮▮ (Canty-Ex-X, Ex-A at 1 (annotating AMZ_GARNER_AU_00153924)), but later testified that the recording contains nothing but a cough.  Chan-Ex-10, 131:1-132:23, 133:17-134:1; Chan-Ex-16; Chan Decl., ¶47.

**E.    Plaintiffs' Lawsuit**

After the Court's dismissal rulings, Plaintiffs' remaining claims are: (1) registrants/non-registrants' WCPA claim; (2) non-registrants' state wiretap claims; and (3) non-registrants' Federal Wiretap Act ("FWA") claim.  MTDO, 27-28.  Plaintiffs are not seeking to certify a FWA class.

Plaintiffs ask the Court to certify a nationwide class of anyone who ever registered an Alexa-enabled device, on the theory that Amazon deprived registrants of the "inherent value" of false-wake recordings.  Mot., 14, 22.  Plaintiffs also seek to certify six state-specific non-registrant classes of anyone who has ever lived with a registrant while an Alexa-enabled device "was active and operational."  *Id.* at 2.  Those classes assert state wiretap claims and seek "statutory damages" for any "violation."  *Id.* at 2, 19.  Plaintiffs do not define any class period.

AMAZON'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION
CASE NO. 2:21-CV-00750-RSL

- 6 -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

## ANALYSIS

Fed. R. Civ. P. 23 governs class certification. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Under Rule 23(a), Plaintiffs must establish numerosity, commonality, typicality, and adequacy. *Id*. "Commonality" is subsumed by predominance, discussed below.

Plaintiffs also must satisfy Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Wetzel v. CertainTeed Corp*, 2019 WL 3976204, *9 (W.D. Wash. Mar. 25, 2019). "[P]laintiffs wishing to proceed through a class action must actually prove—not simply plead—that their proposed class satisfies each requirement of Rule 23, including (if applicable) the predominance requirement of Rule 23(b)(3)," and must meet that burden "before class certification." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275-76 (2014).

Rule 23 is not "a mere pleading standard." *Wal-Mart*, 564 U.S. at 350. It "imposes stringent requirements for certification that in practice excludes most claims" from class treatment. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013). Class certification "is proper only if the trial court is satisfied, after a rigorous analysis," that Rule 23's prerequisites are met. *Id*. at 350-51 (internal citation omitted). In that analysis, the Court "*must* consider the merits if they overlap with the Rule 23(a) requirements." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011).

## A.    Plaintiffs Lack Valid Individual Claims.

The Supreme Court has made clear that, to represent a class, representative plaintiffs must have viable claims of their own. *TransUnion*, 594 U.S. at 431, 439 ("Plaintiffs must maintain their personal interest in the dispute at all stages of litigation."); *accord Wetzel*, 2019 WL 3976204 at *14 ("A plaintiff who lacks standing to bring a claim in his own right cannot qualify as a class representative for a class of persons able to raise that claim.") (citation omitted). As Amazon will establish in its summary judgment motion, Plaintiffs have *no* viable individual claims. Discovery revealed that all Plaintiffs consented to recordings and none were harmed by false-wakes. If the

AMAZON'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION
CASE NO. 2:21-CV-00750-RSL

- 7 -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

1  Court agrees, it need not consider class certification.  Therefore, the Court should first rule on

2  summary judgment.  *Wright v. Schock*, 742 F.2d 541, 544 (9th Cir. 1984).

3  **B.    Plaintiffs' Proposed Classes Are Overbroad.**

4      Every class member must have Article III standing to recover damages.  *TransUnion*, 594

5  U.S. at 430 (reversing class certification).  Article III standing requires "an injury in fact" that is

6  "fairly traceable to the challenged conduct" of the defendant.  *Mazza v. American Honda Motor*

7  *Co., Inc.*, 666 F.3d 581, 594 (9th Cir. 2012) ("[N]o class may be certified that contains members

8  lacking Article III standing.").[2]  Courts sometimes describe this as a class being "overbroad."  *See*

9  *Cashatt v. Ford Motor Co.*, 2020 WL 1987077, *4 (W.D. Wash. Apr. 27, 2020) ("For example, a

10  class definition may be overbroad if it includes individuals who sustained no injury and therefore

11  lack standing to sue.").

12      As defined, Plaintiffs' proposed classes necessarily include vast swaths of people with no

13  standing.  For the registrant class, Plaintiffs' theory of harm is that members lost the "value of their

14  personal information" when Amazon retained recordings caused by false-wakes.  Mot., 23.  As the

15  Court ruled, "[e]ach plaintiff will ultimately have to show that [their] communications were

16  improperly recorded."  Dkt-123, 4.  Yet the proposed classes indisputably include many people

17  who were *never* recorded.  ███████████████  have enabled Alexa's "do-not-save-

18  recordings" function and have no recordings associated with their Alexa accounts, let alone

19  recordings caused by false-wakes.  Rouhi Decl., ¶18.  Other registrants have no recordings of their

20  voices because they chose to operate their Alexa-enabled devices without using Alexa (e.g., Fire

21  TV stick with a push-to-talk button on a physical remote) or gifted the device to someone else (as

22  Brust did).  Fresko Decl., ¶12; Rouhi Decl., ¶9; Chan-Ex-2, 84:10-88:5.  Under Plaintiffs' theory,

23  none of these class members suffered any harm, which defeats certification.

---

[2]  In *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee*, 31 F.4th 651 (9th Cir. 2022), the court overruled *Mazza* as it applies to classes seeking only injunctive or declaratory relief—where only one plaintiff needs Article III standing—but it otherwise affirmed that *Mazza* remains the law.  *Id*. at 682 n.32.  The *Olean* court found that the defined classes included only members potentially harmed by the defendants' anti-competitive conduct.  *Id*. at 682-84.  The court noted the long-standing rule that certification is not precluded by the *potential* that some class members ultimately might be shown not to have in fact suffered harm.  *Id*. at 669.  But *Olean* is factually inapposite because it was an antitrust case alleging that inflated prices harmed all purchasers, not a case where the classes, *as defined*, included members with no injury.  *Id*. at 679.

1    As for the non-registrant classes, Plaintiffs' theory is that ████████████████

2    ████████████████████████████████  and thus every member of a household with an

3    Alexa device was surreptitiously recorded.  Mot., 18.  But that is wrong, as Plaintiffs' own

4    experience confirms.  Garner registered a Fire TV stick while living with family members (Rouhi

5    Decl., ¶124(b); Chan-Ex-8, 55:7-11, 63:19-64:2), yet none of them were recorded by her device

6    (Chan-Exs-18-20).  Those family members did not suffer any conceivable harm and lack standing,

7    yet they are all class members.  There is no reason to believe that the Garner family's experience

8    is unique (indeed, Plaintiffs say her experience is typical), particularly given that many Alexa

9    devices are portable (e.g., phones, watches), used outside the home (e.g., in vehicles), or used in

10   locations (e.g., offices, workshops) that are not shared by the entire household.  Fresko Decl., ¶10.

11   Plaintiffs' overbroad class definitions also sweep in disabled and speech-impaired people who are

12   non-communicative for various reasons, none of whom could have had their voices recorded by

13   Alexa-enabled devices.  And because ████████████████  turned on the "do-not-save-

14   recordings" feature, *none* of their household members suffered injury from false-wakes.  Rouhi

15   Decl., ¶18.  Yet all those household members (likely in the millions) are class members.

16   A core premise of Plaintiffs' theories, and a necessary element of their claims, is that they

17   were harmed by being recorded.  Because millions of people in both classes were never recorded,

18   they suffered no possible injury and have no Article III standing.  Plaintiffs' classes are overbroad,

19   and the Court must deny class certification on this basis alone.  *Harvey v. Centene Mgmt. Co. LLC*,

20   2020 WL 2411510, *6 (E.D. Wash. May 12, 2020) ("That the proposed class would inevitably

21   contain many members who never suffered the alleged primary injury is itself fatal to Plaintiff's

22   motion") (citing *Mazza*, 666 F.3d at 595).

23   **C.    Garner And Johnson Cannot Represent Non-Registrant Classes.**

24   A would-be class representative must be "part of the class" and "possess the same interest

25   and suffer the same injury as the class members" whom she purports to represent.  *Wal-Mart*,

26   564 U.S. at 348-49.  Plaintiffs' "claims cannot be so different from the claims of absent class

27   members that their claims will not be advanced by Plaintiffs' proof of their own individual claim."

28   *Wetzel*, 2019 WL 3976204 at *12 (quotation omitted).

AMAZON'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION
CASE NO. 2:21-CV-00750-RSL

- 9 -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

Garner claims to be a non-registrant seeking to represent a class of California non-registrants. But Garner is in fact an Alexa *registrant*. In 2017, before using her roommate's device, Garner registered an Alexa-enabled Fire TV stick. Chan-Ex-8, 51:22-52:3, 55:7-11, 60:14-19. Johnson similarly seeks to represent a class of Pennsylvania non-registrants, but he is a registrant, with his own Amazon account, who installed the Alexa App on his phone. Chan-Ex-10, 28:11-24. Both are bound by the Washington choice-of-law provision in Amazon's terms and cannot assert claims under non-Washington law. MTDO, 12. As such, Garner and Johnson are not typical or adequate representatives for the California and Pennsylvania non-registrant classes and cannot represent them. *Wetzel*, 2019 WL 3976204 at *12; *accord E. Tex. Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403-04 (1977); *Easton v. Wells Fargo & Co.*, 2023 WL 6194043, *5-7 (C.D. Cal. Aug. 18, 2023). That leaves no Plaintiff with standing to represent those classes, and they cannot be certified.

**D.    Plaintiffs Cannot Establish Predominance.**

"For class actions seeking monetary damages, Rule 23(a)(2)'s commonality requirement is subsumed under Rule 23(b)(3)'s more stringent requirement that 'questions of law or fact common to class members predominate over any questions affecting only individual members.'" *Cashatt*, 2020 WL 1987077 at *5 (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 609 (1997)). "The predominance inquiry is 'far more demanding' than Rule 23(a)'s threshold commonality requirement and the court has a duty to take 'a close look' at whether common questions predominate over individual ones." *Harvey*, 2020 WL 2411510 at *5 (quoting *Amchem* and *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)).

A common question is one "that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. By contrast, "[a] question is 'individual' if members of the proposed class will need to present varying evidence." *Wetzel*, 2019 WL 3976204 at *15. "What matters to class certification … is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350-51. The predominance

AMAZON'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION
CASE NO. 2:21-CV-00750-RSL

- 10 -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

inquiry accordingly "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). If the question is close, because the plaintiff bears the burden of satisfying Rule 23, the class should *not* be certified. *Wetzel*, 2019 WL 3976204 at *17.

Here, the predominance question is not close. There are very few material issues that can be determined in "one stroke" and impact the entire class. Every class member would be required to "present varying evidence" that they are a class member, that they were harmed, and to what extent. This is a case where the "aggregation-defeating, individual issues" are *far* more prevalent than anything common to the class.

### 1. Individualized Issues Predominate For The Non-Registrant Classes.

#### a. Identification Of Class Members

Under a predominance analysis, there can be an important threshold question of how to determine who is in the class. *See, e.g.*, *Cashatt*, 2020 WL 1987077 at *4 ("A class definition should also be based on objective criteria that allows the plaintiff to identify its members. On the other hand, a class definition is likely inadequate if it requires extensive fact-finding just to identify members.") (citation omitted); *Harvey*, 2020 WL 2411510 at *6 ("Nor does Plaintiff suggest that identifying those to whom reimbursement is owed would be anything other than a laborious, record-intensive task," which defeats predominance). For the non-registrant classes, this threshold issue is a show-stopper.

Plaintiffs' proposed classes include anyone who has "never registered an Alexa device and resided with a Registrant while an Alexa device was active and operational." Mot., 2. That definition is so indefinite that it would be impossible to identify and locate non-registrant class members—who must number in the tens of millions—let alone estimate and tally up their individual damages.

First, Plaintiffs offer no means to identify class members who lived with a registrant *at any time* during the (undefined) class period, let alone to determine whether the registrant's Alexa device was active *at that specific time* and located in a common area. Plaintiffs suggest that

*Amazon* can identify non-registrants in recordings because Amazon ███████████████

███████████████████████████████████████ Mot., 18. ███████

██████████████████████████████████████████████████████

██████████████████████████ Declaration of Richard Stern, §V; Rouhi Decl., ¶33.

For example, an Alexa device's IP address would be exactly the same regardless of who was

speaking. Rouhi Decl., ¶38.[3]

These issues cannot be cured by asking class members to self-identify. Even if the Court

could somehow determine who to ask, people (including Plaintiffs) often misremember whether

they registered or used an Alexa device. For example, Watkins alleged that a ██████████

████████████ (Canty-Ex-Z, 4), but that product is not Alexa-enabled (Fresko Decl., n.1).

Brust ████████████████████████████ (Canty-Ex-AA, 3-

5), but later testified that two of them were gifts that she never used (Chan-Ex-2, 84:10-88:5).

Garner claimed to be a non-registrant but in fact registered an Alexa-enabled device. Rouhi Decl.,

¶124(b). Only individual discovery (including depositions) revealed these facts, and similar

discovery would be necessary for each of the millions of alleged non-registrants to determine

whether they fit the class definitions.

Second, Plaintiffs offer no means to ensure that each non-registrant was *recorded* by Alexa

in response to a false-wake. Plaintiffs claim that "Amazon's own data establishes that ██████

██████████████████████████████████████████ Mot., 18. That

assumption is obviously false, and Plaintiffs cite not one Amazon document or data-point in

support of it. Instead, they cite only their expert's report, which says nothing of the sort. Canty-

Ex-XX. Moreover, Garner's own experience refutes this assumption because *none* of her family

members were recorded by her device. Chan Decl., ¶46(g); Chan-Exs-18-20. There is no factual

basis to assume that every non-registrant in a household was recorded.

---

[3] Nor does Amazon have a ██████████████████ as Plaintiffs falsely suggest. Mot., 18. For a short time, Amazon had a feature called "Automatic-Voice-Recognition," ████████████████████████████████ Stern Decl., ¶43; Rouhi Decl., ¶32.

1    In short, there is no viable way to determine whether an Alexa recording of a false-wake

2    corresponds to any non-registered person.  If the Court were to certify the non-registrant classes,

3    the first step in administering those classes would be millions of mini-trials of unidentified people

4    to determine if they are in a class.  *Harvey*, 2020 WL 2411510 at *7.  And that is before the Court

5    addresses the myriad *other* individualized issues that underpin Plaintiffs' claims.

### b.    Agency And Estoppel

7    Many non-registrants also are bound by Amazon's terms through their relationships with

8    registrants.  "An agent can bind his or her principal to a contract when the agent has either actual

9    or apparent authority." *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 268-69 (E.D.N.Y. 2019)

10   (non-signatory bound by Amazon's terms when she gave friend "permission" to register her)

11   (citation omitted).  Moreover, registrants agree to the TOUs on behalf of "all other persons who

12   use Alexa under your account."  Rouhi-Exs-M13-15.  Similarly, "[e]quitable estoppel prevents a

13   party from claiming a contract's benefits while attempting to avoid the contract's burdens ...."

14   *Norwood v. MultiCare Health Sys.*, 548 P.3d 978, 984 (Wash. Ct. App. 2024).  In *Tice v.*

15   *Amazon.com, Inc.*, 2020 WL 1625782, *3 (C.D. Cal. Mar. 25, 2020), the court held that the

16   plaintiff was bound by the Alexa TOUs based on equitable estoppel, "when she voluntarily utilized

17   Alexa" through a device her husband registered.  Determining agency and estoppel would require

18   individualized examinations of the relationships between non-registrants and people who accepted

19   TOUs on their behalf, or whose Alexa devices they used.

20   The record confirms that agency and estoppel principles will apply to many non-registrants,

21   such as spouses, children, and roommates.  Mr. McNealy used Alexa after authorizing his wife to

22   register devices in his name.  Mrs. McNealy had his permission to "use [his] name and do anything

23   she wants."  Chan-Ex-6, 25:18-23, 70:9-25, 77:22-78:7.  Mr. Johnson authorized Mrs. Johnson to

24   register their Alexa-enabled device and was present during that process.  Chan-Ex-10, 54:17-23,

25   73:1-3; Canty-Ex-X, 5.  Determining agency and estoppel would thus require millions of mini-

26   inquiries to determine in which class a putative "non-registrant" actually belongs.

27

28

### c.    Consent

Under Washington's wiretap statute, Plaintiffs must prove that Amazon intercepted a private conversation *without consent*.  RCW §9.73.030.  The wiretap statutes in Florida, New Hampshire, California, Maryland, and Pennsylvania require the same basic showing.  N.H. Rev. Stat. §570-A:2, I & I-a; Cal. Penal Code §§631(a), 632(a); Md. Code Cts. & Jud. Proc. §10-402; Fla. Stat. §934.03(1)(a); 18 Pa. Cons. Stat. §5703.  Consent can be express or implied.  *State v. John Garrett Smith*, 189 Wn.2d 655, 665 (2017).

*In re Google Inc. Gmail Litig.*, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014), is instructive.  That court denied certification of wiretap claims predicated on Google's alleged "interception" of private emails, because individual questions regarding consent predominated.  *Id.*  Regarding *express* consent, individual issues predominated because users received different disclosures from Google.  Regarding the "intensely factual question" of *implied* consent, there was a "panoply of sources" that disclosed Google's alleged interception (e.g., "Google disclosures, third-party disclosures, and news articles").  That would require the court to evaluate "which of the various sources each individual user had been exposed [to] and whether each individual knew about and consented to the interception based on the sources to which she was exposed."  *Id.* at *16-18.

The same is true here, where individual questions of express and implied consent will overwhelm any common questions.  At least *some* non-registrants *expressly* agreed to Amazon's terms outside of the registration process, including by buying Alexa devices or signing into the Alexa App.  For example, when the Johnsons bought an Echo Dot, Mrs. Johnson registered it, but Mr. Johnson installed and used the Alexa App on his phone.  Chan-Ex-10, 28:11-24.  By doing so, he (ostensibly a non-registrant) "consented to the recordings."  MTDO, 17.

Additionally, even non-registrants receive notice from a "panoply of sources" about Alexa recordings and the possibility of "false-wakes."  ███████████████████████████████████████████████████████████████████████████████████████ Declaration of Nathan Bogusz, ¶¶7-8.  Amazon's Alexa Privacy Hub explains how Alexa works and addresses false-wakes.  Rouhi Decl., ¶¶70, 73; Declaration of Lorin Hitt, ¶86.  News and social media have extensively covered Alexa recordings and privacy for years.  In 2014, the Washington Post reported that "the things you ask

AMAZON'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION
CASE NO. 2:21-CV-00750-RSL

- 14 -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

Echo are recorded and kept on the company's servers unless you delete them." Chan-Ex-47. In April 2019, Bloomberg's high-profile article, "Amazon Workers Are Listening to What You Tell Alexa," discussed human review and gave examples of false-wake recordings. Chan-Ex-49 at 1-2. Amazon also was the target of several lawsuits and arbitrations about Alexa recordings, which were widely reported. Chan Decl., ¶71. And the Alexa service itself provides disclosures. For example, when Tesoriero asked, ███████████████████████ Alexa responded: ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████ Chan-Ex-30, row 1691.

Given this deluge of information, it is unsurprising that Plaintiffs themselves were on notice. Chan Decl., ¶45. *Before* using an Alexa device, Babani knew his utterances might be reviewed by humans and heard "rumors" about Alexa recordings. Chan-Ex-5, 22:2-7, 89:4-10; 91:4-10, 93:2-5, 93:16-19. Hoyt read news stories about Alexa over the years. Chan-Ex-3, 21:14-22, 24:9-10, 67:5-8, 72:13-21. Both men continued using Alexa even after filing this lawsuit. Similarly, Brust "saw on the news and on Facebook that Amazon had been recording and keeping these recordings" and heard about "third parties having access to this data." Chan-Ex-2, 18:19-20, 23:22-24. Because the Court must consider "all of the circumstances" to determine class members' knowledge, the consent issue "lead[s] to numerous individualized inquiries that will overwhelm any common questions." *Gmail*, 2014 WL 1102660 at *18; *Mazza*, 666 F.3d at 595 ("The relevant class must also exclude those members who learned of the [product's] allegedly omitted limitations before they purchased or leased the [product].").

Plaintiffs argue that "hypothetical avenues of consent" do not prevent class certification. Mot., 18. But in the cases Plaintiffs cite, unlike here, the defendants failed to show widespread public disclosures. *See, e.g.*, *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) (defendant "did not show a single instance where express consent was given."); *Campbell v. Facebook Inc.*, 315 F.R.D 250, 266 (N.D. Cal. 2016) (Facebook failed to show anywhere challenged practices were disclosed); *Rodriguez v. Google*, 2024 WL 38302, *8-9 (N.D. Cal. Jan. 3, 2024) (Google failed to show variety of sources where class members could have

1  learned of policy).  Here, the "avenues of consent" are not "hypothetical."  As noted above, the

2  record is replete with concrete evidence of express and implied consent.  Chan Decl., ¶¶39-42, 45,

3  62; Chan-Ex-31, 10-12.  ████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████████████████████████

5  ████████████████████████████████  Chan Decl., ¶¶59-60, 64-65; Chan-Exs-40-41; Chan-Exs-

6  45-46.

### d.    Content Of Recordings

8  Plaintiffs' state wiretap claims rely on unique elements that require individualized review

9  of each Alexa recording.  For example, Washington prohibits recording a "private conversation."

10  RCW §9.73.030.  But snippets of words, or even multiple-sentence exchanges, are not necessarily

11  a "conversation."  *State v. David Smith*, 85 Wn.2d 840, 844-47 (1975) (exchange with multiple

12  sentences not a "conversation"); *John Garrett Smith*, 189 Wn.2d at 658 (en banc) ("brief oral

13  exchange" between spouses not a "conversation"); *State v. Kamara*, 28 Wn. App. 2d 903, 911

14  (2023) (extended verbal exchanges, music, noises, TV, laughter not a "conversation"); Chan-Ex-

15  42; Chan-Ex-44; Chan-Ex-46.  Similarly, Maryland's wiretap statute only applies to "words

16  spoken to or by any person in private conversation."  Md. Code Cts. & Jud. Proc. §10-401(13).

17  Many suspected false-wake recordings are just unintelligible blips of sound or a few words

18  out of context.  Chan ¶¶43-44; Chan-Exs-12-14.  Very few involve "oral exchange, discourse, or

19  discussion" between people.  *David Smith*, 85 Wn.2d at 846.  Thus, to determine which recordings

20  violate the law, the Court must listen to *each* suspected false-wake recording and determine

21  whether it was in fact "false" and, if so, whether it contains a "conversation" or other required

22  element.  There is no class-wide way to conduct that analysis.

### e.    Reasonable Expectations

24  Under the state laws Plaintiffs invoke, non-registrants must demonstrate that they had a

25  reasonable expectation they would *not* be recorded.  *State v. Christensen*, 153 Wn.2d 186, 193

26  (2004); *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776-77 (2002); *Kline v. Sec. Guards, Inc.*, 386

27  F.3d 246, 257 (3d Cir. 2004); *Mills v. PPE Casino Resorts Maryland, LLC*, 2017 WL 1862474,

28  *4 (D. Md. May 8, 2017); N.H. Rev. Stat. §570-A:1, II; Fla. Stat. §934.02(2).  This is inherently a

AMAZON'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION
CASE NO. 2:21-CV-00750-RSL                - 16 -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

"fact-specific question." *Pollack v. Foto Fantasy, Inc.*, 2010 WL 11595486, *3 (C.D. Cal. July 15, 2010) ("Though 'objectively reasonable' is not a subjective standard, the inquiry requires deposing each customer and posing individual, fact-specific questions."); *Mendell v. Am. Med. Response, Inc.*, 2021 WL 1102423, *4 (S.D. Cal. Mar. 22, 2021) ("[R]easonableness" of expectations regarding "a conversation is generally a question of fact."). To assess "reasonable-ness," courts consider individualized facts including the duration, subject-matter, location, and presence of a third party during the communication. *State v. Clark*, 129 Wn.2d 211, 225-26 (1996).

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

Chan Decl., ¶¶61-62; Chan-Exs-42-43.

While Plaintiffs claim that "a reasonable expectation of privacy" is a "common question," Mot., 12, they fail to establish that it would generate "common *answers*." *Wal-Mart*, 564 U.S. at 350-51. Plaintiffs cite *Tyson Foods* for the notion that a common element can be established with an "expert sample." Mot., 18. But Plaintiffs offer no "expert sample" to establish "reasonable expectations" with common proof. On the contrary, the only "sample" they identify, the 2019 Egelman survey, shows that consumers' beliefs and expectations differ widely, with many reporting that Alexa recordings are not troubling and contain nothing sensitive. Chan-Ex-56, 264 (survey participants "did not feel that their currently stored recordings presented a grave privacy danger. The overwhelming majority did not consider their interactions sensitive, describing them as 'mundane' and stating anyone perusing them might get 'bored to death.'"). The content of the recordings also varies from unintelligible snippets of sound, to ████████████████ to ████████████████████ Chan-Exs-13-14; Chan-Ex-17; Chan-Ex-43.

A recent survey conducted under the direction of Dr. Dominique Hanssens similarly shows wide disparities in users' expectations and sentiment about how Alexa interactions are recorded, stored, and used. Declaration of Dominique Hanssens, ¶¶107-108. And the circumstances in which millions of people used Alexa, including where and who else was present, are subject to infinite variations. This evidence shows that class members' expectations vary widely and cannot be proven with common facts.

### f.    Damages

Plaintiffs must provide "evidentiary proof" that "damages are susceptible of measurement across the entire class," with a damages model consistent with their liability theories. *Comcast*, 569 U.S. at 28. Plaintiffs wholly fail on this element. They identify literally *no* method or model to measure damages on a class-wide basis for non-registrants.

Plaintiffs argue that non-registrants "seek a set amount in statutory damages," but they never identify that amount or how it would be calculated. Mot., 19. That is understandable, because there is no class-wide method to determine the *number* (or identity) of non-registrant class members or the *number* of violations for *each* class member, which are highly individualized questions that can be answered, if at all, only by reviewing billions of recordings. In *Hartman v. United Bank Card, Inc.*, 2012 WL 4758052 (W.D. Wash. Oct. 4, 2012), the court declined to certify a class of people who allegedly received unsolicited calls in violation of Washington's auto-dialer statute, because it would require a call-by-call analysis, including (1) whether the particular call was answered, (2) whether a recorded message was left, (3) if so, which automated message was played, and (4) whether the telephone was in Washington. *Id*. at *15. As the court noted, "[t]hese issues, and their resolutions, are critical to the determination of Defendants' liability with respect to each call, but are not issues that may be resolved on a classwide basis." *Id*.

Here, the only way to tally statutory "violations" is to listen to Alexa recordings one-by-one to determine whether each contains a class member's voice, whether it was the result of a false-wake, and whether the content and circumstances of the recording violate the applicable state law. There is no feasible way the Court could conduct that inquiry. For example, Babani took "several hours over several days" to review recordings, and Garner reviewed "13 hours of recordings." Chan-Ex-5, 95:12-15; Chan-Ex-8, 97:7-8. Even after that review, Plaintiffs often "don't have a clue" who is speaking in a recording, or they misconstrue the content. Chan-Ex-6, 129:5-11. In short, there simply is no feasible way to calculate damages on a class-wide basis for non-registrants.

AMAZON'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION
CASE NO. 2:21-CV-00750-RSL

- 18 -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

### 2.    Individualized Issues Predominate For The Registrant Class.

Plaintiffs' proposed registrant class includes "[a]ll persons in the United States who registered one or more Alexa devices." Mot., 2. That is *tens of millions* of people. For that class, only Plaintiffs' WCPA claim survived dismissal. The Court's consideration of predominance with respect to that claim "begins with the elements of Plaintiffs' asserted cause of action." *Wetzel*, 2019 WL 3976204 at *15. To prevail under the WCPA, Plaintiffs must establish (among other elements) an "unfair or deceptive act or practice," causation, and injury. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986). Each of those elements raises overwhelming individualized questions.

### a.    Injury

Establishing harm on a class-wide basis is the steepest hill for Plaintiffs to climb because injury is a highly individualized issue. *See, e.g.*, *Wetzel*, 2019 WL 3976204 at *17 ("[T]he court will still need to conduct individualized inquiries with respect to the injury prong of Plaintiffs' CPA claim."); *Harvey*, 2020 WL 2411510 at *6-7 ("In short, though a class action would no doubt resolve some class-wide issues in a single proceeding, it would then entail thousands of individualized determinations of whether, and if so to what extent, a member was injured …"); *Cashatt*, 2020 WL 1987077 at *6 ("More problems arise from the breadth of Plaintiffs' class, which encompasses [members] with utterly distinct types of injuries …").

That is certainly true here. Because the registrant class is vastly overbroad, it includes many registrants who were *never recorded at all*, let alone by a false-wake that captured a private conversation. For the same reason they lack standing, those people could not possibly have been "injured in [their] person or property" under the WCPA. *Hangman*, 105 Wn.2d at 780. Moreover, registrants can opt out of human review ███████████████ or choose not to have their recordings stored at all ██████████ Rouhi Decl., ¶¶18, 25. Those people plainly have not been injured either.

And even those registrants who *were* recorded are seeking damages for the "value" of each "false-wake" recording of their voice. Mot., 12, 14. But the Court cannot know if a registrant experienced any true "false-wake" recordings, or how many, without listening to every recording.

AMAZON'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION
CASE NO. 2:21-CV-00750-RSL

- 19 -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

*See Hartman*, 2012 WL 4758052 at *15. Plaintiffs' experiences annotating their own recordings showed that to be an extremely laborious and error-ridden process. Chan Decl., ¶¶19-38. In short, these "myriad variations in injury" across registrants "necessitate individual evidentiary showings of injury," which destroys predominance. *Blough v. Shea Homes*, 2014 WL 3694231, *15 (W.D. Wash. July 23, 2014).

### b.    Causation

A "plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." *Blough*, 2014 WL 3694231 at *11. Plaintiffs try to satisfy this element by arguing that they are relying only on *omissions* and therefore are entitled to "a presumption of reliance." Mot., 22. They claim that Amazon "omitted or engaged in practices to hide" how Alexa functions and how Amazon uses recordings. *Id*. But Plaintiffs cannot fall back on the "presumption of reliance," for two reasons.

First, the presumption does not apply where a plaintiff alleges a mix of misrepresentations and omissions. *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 666 (9th Cir. 2004). Plaintiffs clearly assert both. Mot., 22-23 ("Amazon … misrepresent[ed] the operation of its Alexa Devices"). Therefore, Plaintiffs have the burden to prove a "causal nexus" between Amazon's conduct and their injury. *Blough*, 2014 WL 3694231 at *12.

Second, even if the presumption applied, it is rebuttable. *Rydman v. Champion Petfoods USA, Inc.*, 2023 WL 3506133, *7 (W.D. Wash. May 17, 2023). It is unreasonable to presume reliance "when class members were exposed to quite disparate information" about the product. *Mazza*, 666 F.3d at 596. As Plaintiffs' own experiences reveal, users are exposed to widely varying information about the Alexa service. Chan Decl., ¶¶39-42. Over the last decade, Alexa has been the subject of countless, varied disclosures, marketing, advertisements, and media coverage. *Id*. ¶¶66-72; Chan-Ex-52; Hitt Decl., ¶¶113-118. According to the 2019 survey by Plaintiffs' expert, 89.7% of participants knew that their recordings would be kept, 44% knew they could review them, and "accidental recordings regularly occur." Chan Decl., ¶76; Chan-Ex-56.

In *Blough*, the court noted that causation was further complicated because "the misrepresentation [] concerned one aspect … among the many features of a Trilogy home that

appealed to its purchasers." 2014 WL 3694231 at *12. Similarly, people buy Alexa devices for many different reasons—some to use its myriad Internet-based features, others to turn off the lights—and many are undaunted by the risk of occasional false-wakes. In Egelman's study, when given the option to delete recordings (including from false-wakes), *more than 85% of participants* chose to keep some or all recordings. Chan-Ex-56, 256-267. Dr. Hanssens' current survey has similar findings. Most registrants (around 55%) expected their recordings to be kept and used to improve the service, and, among those individuals, most (around 58%) expected false-wake recordings. Hanssens Decl., ¶52.

There undeniably will be "substantial variations" in class members' knowledge about Alexa, including false-wakes, and whether Amazon's practices could cause them any concern or harm. It would be effectively impossible to determine what each registrant was or was not "exposed to," and whether it was "unfair or deceptive" under the WCPA, without millions of mini-trials. *Blough*, 2014 WL 3694231 at *12 ("The individual fact-finding that would be required to establish this causal nexus for each class member would likely overwhelm whatever efficiencies may be obtained by resolving the common issues related to Plaintiffs' CPA claim on a classwide basis.") (quotation omitted); *Wetzel*, 2019 WL 3976204 at *16 ("[T]he variations among purchase experiences, knowledge, and motivations of class members would result in an unmanageable number of mini-trials even under an omissions-based theory of causation.").

### c. Class Damages

Again, Plaintiffs must *prove* (not merely *plead*) that their "damages are susceptible of measurement across the entire class." *Comcast*, 569 U.S. at 28. They cannot meet that burden and have not genuinely tried.

At the certification stage, Plaintiffs "must chart out a path to obtain all necessary data and demonstrate that the proposed method will be viable as applied to the facts of a given case." *Lytle v. Nutramax Labs., Inc.*, 2024 WL 3915361, at *13 (9th Cir. Aug. 23, 2024). "Merely gesturing at a model or describing a general method" is insufficient. *Id.* The "failure to present a model" to evaluate class-wide injury "weighs against a finding that common issues predominate." *Weidenhamer v. Expedia, Inc.*, 2015 WL 7157282, *15 (W.D. Wash. Nov. 13, 2015).

AMAZON'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION
CASE NO. 2:21-CV-00750-RSL

- 21 -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

Plaintiffs claim that, despite *consenting* to being recorded, registrants somehow lost the "value of their personal information" as a result of false-wakes. Mot., 23. As discussed, there is no way to determine what is a true "false-wake," and whether it contained a specific person's voice, without a recording-by-recording review. Even after hours of review of their *own* recordings, Plaintiffs could not get it right. Chan Decl., ¶¶19-38; Chan-Ex-5, 95:12-15; Chan-Ex-8, 97:7-8. Thus, it would be functionally impossible to determine how many of the *billions* of Alexa recordings of registrants are true false-wakes.

But, beyond that, Plaintiffs never say what "value" they "lost" or how, or how they would try to determine that value. Plaintiffs merely "gesture" to their experts, who are no help. Hochman states without elaboration that ████████████████ Canty-Ex-J, 20. ████████ ████████████████████████ is irrelevant; to claim damages, *class members* must have *lost* value. *Del Vecchio v. Amazon.com, Inc.*, 2012 WL 1997697, *4 (W.D. Wash. June 1, 2012) ("It is not enough to allege only that the information has value to Defendant; the term 'loss' requires that Plaintiffs suffer a detriment."). Egelman and Hoffman do not attempt to value Alexa recordings specifically (let alone "false-wake" recordings), or offer any possible valuation method to measure anything lost by *Alexa registrants*. Canty-Exs-J, PP, XX, 44; Chan Decl., ¶¶73-75, Chan-Exs-53-55. As Amazon's expert, Professor Lorin Hitt, observed, ████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████ Hitt Decl., ¶34. Nor could they. Even if recordings had some "inherent value" (a doubtful proposition for which there is *no* evidence), as Professor Hitt noted, ████████████████████████████ ████████████████████████████████████████ *Id.* ¶43.

Because "Plaintiffs offer no damages model at all," the Court must deny class certification. *Franklin v. Midwest Recovery Sys., LLC*, 2021 WL 1035121, *7 (C.D. Cal. Feb. 2, 2021).

**E.    Plaintiffs Cannot Establish Superiority.**

In addition to predominance, Plaintiffs must establish superiority, and one consideration is whether the case is "manageable." *Wetzel*, 2019 WL 3976204 at *18. Plaintiffs unsurprisingly do not address manageability. They presumably recognize that their proposed classes each comprise

AMAZON'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION
CASE NO. 2:21-CV-00750-RSL

- 22 -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

tens of millions of people, and the process will be utterly unmanageable if the Court must resolve even *one* of the *many* individualized issues through fact-finding. *Harvey*, 2020 WL 2411510 at *7 ("Even if adjudicating those claims in a federal court were the most efficient approach, the scores of individualized determinations required for the Court to award relief render a class action inappropriate."); *Blough*, 2014 WL 3694231 at *16 ("Here, the evidentiary showings that would be necessary to establish liability for each putative class member's CPA claim would swamp the benefits to be obtained through class adjudication."); *Wetzel*, 2019 WL 3976204 at *20 ("Plaintiffs' inability to locate absent class members or even estimate their numbers also makes calculating or estimating aggregate class damages nearly impossible."). Again, this is not hypothetical: Amazon defended thousands of individual Alexa arbitration claims—███

████████████████████████████████████████████████████████████████████

███ Chan Decl., ¶58.

Not every case is suitable for class action treatment; indeed, most are not. In *Blough*, Judge Martinez expressed his "sincere sympathy" for the "plight of [people] living in allegedly shoddily built homes," but still could not find "that a class action is the best, or indeed even a feasible mechanism to enable them to seek redress." 2014 WL 3694231 at *16.

### F.    Plaintiffs Cannot Certify A Rule 23(b)(2) Registrant Class.

As an afterthought, Plaintiffs tack on a Rule 23(b)(2) injunctive relief class under their WCPA claim. That is not permissible. "Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." *Ellis*, 657 F.3d at 986; *Rydman*, 2023 WL 3506133 at *10 n.13. There is no genuine argument that Plaintiffs' WCPA claim *primarily* seeks injunctive relief. This case has always been about money and the purported "value" of Plaintiffs' recordings. Indeed, Plaintiffs' complaint seeks "damages and reasonable attorneys' fees" under the WCPA and says *nothing* about injunctive relief. FACC, ¶¶162-175. Plaintiffs cannot pursue a Rule 23(b)(2) class.

### CONCLUSION

The Court should deny class certification.

1    Dated: October 7, 2024         FENWICK & WEST LLP

2

3                                   By: */s/ Brian D. Buckley*
                                        Brian D. Buckley, WSBA No. 26423
4

5                                   Y. Monica Chan, WSBA No. 58900
                                    401 Union Street, 5th Floor
                                    Seattle, WA 98101
6                                   Telephone: 206.389.4510
                                    Facsimile: 206.389.4511
7                                   Email:      bbuckley@fenwick.com

8                                   Jedediah Wakefield (admitted *pro hac vice*)
                                    Tyler G. Newby (admitted *pro hac vice*)
9                                   Armen N. Nercessian (admitted *pro hac vice*)
                                    Garner F. Kropp (admitted *pro hac vice*)
10                                   555 California Street, 12th Floor
                                    San Francisco, CA 94104
11                                   Telephone: 415.875.2300
                                    Facsimile: 415.281.1350
12                                   Email:      jwakefield@fenwick.com
                                                tnewby@fenwick.com
13                                               anercessian@fenwick.com
                                                gkropp@fenwick.com
14

15                                   Melissa Lawton (admitted *pro hac vice*)
                                    Janie Yoo Miller (admitted *pro hac vice*)
16                                   Esther D. Galan (admitted *pro hac vice*)
                                    730 Arizona, 1st Floor
17                                   Santa Monica, CA 90401
                                    Telephone: 310.434.5400
18                                   Email:      mlawton@fenwick.com
                                                jmiller@fenwick.com
19                                               egalan@fenwick.com

20                                   *Counsel for Defendants*
                                    AMAZON.COM, INC. and AMAZON.COM
21                                   SERVICES LLC

22

23

24

25

26

27

28

1

## **LCR 7(e) WORD-COUNT CERTIFICATION**

2      As required by Western District of Washington Local Civil Rule 7(e), I certify that this

3  memorandum does not exceed 8,400 words.

4      Dated:  October 7, 2024

5                                           FENWICK & WEST LLP

6

7                                    By: */s/ Brian D. Buckley*
                                         Brian D. Buckley, WSBA No. 26423

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28