THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KAELI GARNER, *et al.*,

Plaintiffs,

v.

AMAZON.COM, INC., a Delaware Corporation, and AMAZON.COM SERVICES LLC, a Delaware Limited Liability Company,

Defendants.

Case No. 2:21-cv-00750-RSL

**AMAZON'S MOTION TO EXCLUDE TESTIMONY OF SERGE EGELMAN**

NOTE ON MOTION CALENDAR:
November 4, 2024

**ORAL ARGUMENT REQUESTED**

AMAZON'S MOTION TO
EXCLUDE EGELMAN TESTIMONY
CASE NO. 2:21-CV-00750-RSL

Fenwick & West LLP
401 Union Street, 5th Floor
Seattle, Washington 98101

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..............................................................................................................1

II. EGELMAN'S OPINIONS..................................................................................................2

III. ARGUMENT ......................................................................................................................3

    A. Legal Standard. ......................................................................................................3

    B. The Court Should Exclude Egelman's Opinions On Voice Identification Technology (Opinions ¶¶ 47–51, 52(C))..............................4

    C. The Court Should Exclude Egelman's Opinions About The Frequency and Content of False Wake Recordings (¶18). ..........................5

    D. Egelman's Opinions On Consumers' Awareness Of Voice Recordings Are Unreliable (¶¶ 36–37, 41). ........................................................5

    E. The Court Should Exclude Egelman's Opinions That Consumers Object to Amazon's Retention and Use of Alexa Recordings (¶¶ 7(f), 27, 36, 41–46). ............................................................6

    F. The Court Should Exclude Egelman's Legal Conclusions About Whether Users Consented To Alexa's Terms And Conditions (¶¶ 27, 52(B), 53). ....................................................................................................9

    G. Egelman's Mere Repetition Of The Contents Of Documents Are Not Proper Expert Opinions (¶¶ 9, 12–19, 29, 33, 36). ...............................9

    H. The Court Should Exclude Egelman's Opinions About Amazon's Beliefs..................................................................................................10

IV. CONCLUSION.................................................................................................................13

AMAZON'S MOTION TO
EXCLUDE EGELMAN TESTIMONY -i-
CASE NO. 2:21-CV-00750-RSL

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Claar v. Burlington Northern R. Co.*,
  29 F.3d 499 (9th Cir. 1994) ................................................................................................6

*Daubert v. Merrell Dow Pharm, Inc.*,
  509 U.S. 579 (1993) ..................................................................................................3, 12

*Daubert v. Merrell Dow Pharm., Inc.* (*Daubert II*),
  43 F.3d 1311 (9th Cir. 1995) ..............................................................................................9

*Easton v. Asplundh Tree Experts*,
  No. C16-1694RSM, 2017 WL 4005833 (W.D. Wash. Sept. 12, 2017) ..................................9

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ..............................................................................................3

*Fontana v. City of Federal Way*,
  No. C11-998 RAJ, 2014 WL 202104 (W.D. Wash. Jan. 17, 2014) ........................................3

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ............................................................................................................4

*Gray v. Amazon.com, Inc.*,
  653 F. Supp. 3d 847 (W.D. Wash. 2023), *aff'd*, No. 23-35377,
  2024 WL 2206454 (9th Cir. May 16, 2024) .........................................................................9

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ............................................................................................................3

*Li v. Ne. Univ.*,
  No. 2:22-CV-00444-LK, 2023 WL 3722227 (W.D. Wash. May 30, 2023) ..........................10

*Morrison v. Washington*,
  No. 3:20-cv-06015-JHC, 2023 WL 5287647 (W.D. Wash. Aug. 17, 2023) ...........................6

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) ...............................................................................................3

*Rhine v. Buttigieg*,
  No. 2:20-cv-01761, 2022 WL 77229817 (W.D. Wash. Sept. 15, 2022) ................................10

*Rogers v. Raymark Indus.*,
  922 F.2d 1426 (9th Cir. 1991) .............................................................................................3

*Rydman v. Champion Petfoods USA Inc.*,
   No. C18-1578 TSZ, 2023 WL 3172466 (W.D. Wash. May 1, 2023) ........................................ 10

*U.S. v. Seschillie*,
   310 F.3d 1208 (9th Cir. 2002) ................................................................................................ 10

*United States v. Hermanek*,
   289 F.3d 1076 (9th Cir. 2002) .................................................................................................. 9

**OTHER AUTHORITIES**

Fed. R. Evid. 403 ............................................................................................................................ 12

Fed. R. Evid. 702 ..................................................................................................................... 1, 3, 12

Fed. R. Evid. 704 .............................................................................................................................. 9

AMAZON'S MOTION TO
EXCLUDE EGELMAN TESTIMONY
CASE NO. 2:21-CV-00750-RSL

-iii-

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

## I. INTRODUCTION

Egelman's opinions fail to clear the bar set for admissibility by Rule 702 and should be excluded. Plaintiffs rely on the opinions of Dr. Serge Egelman to support their arguments that putative class members are uniformly unaware of Amazon's retention and use of Alexa recordings, that everyone living in a home with an Alexa device will be recorded even when they do not intend to use Alexa, and that Amazon can somehow identify all such users based on Alexa recordings. Although Egelman has qualified as an expert in other contexts, in this case his opinions cover areas in which he is admittedly *unqualified*, or merely purport to regurgitate facts from documents fed to him by Plaintiffs' counsel.

First, Plaintiffs rely on Egelman to suggest that Amazon could identify all persons recorded by Alexa because recordings are "personally identifiable." But Egelman lacks expertise in this area, and admitted in his deposition that he had no basis to testify that Amazon can use voice recordings to identify all Alexa users.

Second, Plaintiffs rely on Egelman to claim that every person living in a home with an Alexa device has been recorded by a false wake—an opinion that the evidence in this case disproves, and that Egelman fails to support with any reliable or logical basis.

Third, Egelman purports to know what consumers understand about Alexa, and how they feel about Alexa recordings and privacy. But he conducted no interviews, surveys, or studies of any kind for this case, and relies on irrelevant papers about unrelated products. Egelman is not a consumer mind reader, and the Court should exclude his conjecture about what people believed. Moreover, the one survey he conducted of Alexa users several years ago undermines his opinions.

Fourth, Egelman claims that Amazon failed to disclose how Alexa works or get consent to make and use recordings, but he applied no valid principles or methods in arriving at that opinion. Egelman admits that he read *none* of the terms, conditions, privacy notices, FAQs, and other Amazon materials explaining how Alexa works, including Amazon's ample disclosures about audio recordings and false wakes. The Court has already ruled that Registrants were informed of and consented to Alexa recordings and false wakes, and other courts have agreed that Amazon's

disclosures are binding on Alexa users. Egelman's wholly unsupported opinions to the contrary must be excluded.

Fifth, Egelman purports to offer a factual narrative about how Alexa works, including the fact that Alexa devices are designed to activate when they detect the "wake word" (typically, "Alexa"), that audio recordings are retained and used to improve the Alexa service, and that Alexa devices sometimes activate when they mistakenly detect the wake word—so called "false-wakes." But none of this is expert testimony, and it is improper to use an expert to regurgitate facts.

Finally, Egelman seeks to offer opinions about what *Amazon believed* about consumer privacy. He purports to proffer that opinion by relying on documents that do not support his views, and in all events, he lacks any specialized knowledge or expertise to opine on what Amazon thought or believed.

The Court should exclude Egelman's opinions from its consideration of class certification.[1]

## II.   EGELMAN'S OPINIONS

Paragraphs 7(a)–(f) of Egelman's report summarize his opinions. Dkt. 255_52; Declaration of Garner Kropp in Support of Motion to Exclude Testimony of Serge Egelman, Ex. A ("Egelman Rep."). Egelman opines in paragraphs 7(a)–(c) that: (1) Amazon "intercepts" audio when it "should not do so" (Mot. at 5; Egelman Rep. ¶ 7(a)), (2) Amazon uses this data for "its own purposes … in defiance of its customers' reasonable expectations" (*Id.* ¶ 7(b), 32), and (3) Amazon "believed" that individuals hired by Amazon "may have accessed and copied these recordings inappropriately" and Amazon understood it was "risky" to allow human review (*Id.* ¶ 7(c), 30, 52(E)). Egelman further asserts that recordings are "inherently personally identifiable" (*Id.* ¶ 7(d), ¶¶ 47–51) and that Amazon collected recordings without consent (*Id.* ¶ 7(e)). Finally, he opines that "consumers would have found these practices objectionable" and "egregious." *Id.* ¶ 7(f), 52(E).

---

[1] Amazon reserves its rights to challenge the admissibility of Egelman's opinion testimony if Plaintiffs seek to introduce it in proceedings on the merits of their claims.

AMAZON'S MOTION TO
EXCLUDE EGELMAN TESTIMONY
CASE NO. 2:21-CV-00750-RSL

2

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

Plaintiffs rely on Egelman's opinions in their motion for class certification ("Mot.") to support their assertions that: (1) Amazon "frequently intercepts and records communications" that are "not intended for Alexa" (Mot. at 5); (2) Amazon "benefits" from this data (Mot. at 8); (3) Amazon "omitted information" from its disclosures about the alleged benefit (Mot. at 21–22); (4) Amazon can identify class members from their voices (Mot. at 18) and (5) "residing within proximity of an Alexa-enabled device will result in a false wake" (*id.*).

**III.     ARGUMENT**

Egelman's opinions are not reliable on these topics because he admittedly lacks the necessary qualifications to offer those opinions, the materials he relies on in his report contradict them, and he applied no other principles or methods to arrive at them.

**A.     Legal Standard.**

Plaintiffs must show through a preponderance of evidence that Egelman is qualified and that his opinions are both reliable and relevant. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm, Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *see also Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022) (plaintiffs must proffer admissible evidence in support of class certification satisfying the requirements under Rules of Evidence 401, 403, and 702); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (district court "correctly applied the evidentiary standard set forth in Daubert…" at the class certification stage).

The expert must be qualified to testify on a topic "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. General knowledge is not enough—an expert must have "specialized knowledge" that will help a factfinder determine the precise issues at hand. *See Rogers v. Raymark Indus.*, 922 F.2d 1426, 1429–30 (9th Cir. 1991). Further, expert testimony must use the "same level of intellectual rigor" of an expert in the relevant field. *Daubert*, 509 U.S. at 589; Fed. R. Evid. 702 Advisory Committee's Note (2000). Thus, an expert "cannot express an opinion relying on data that requires expertise in another field." *See Fontana v. City of Federal Way*, No. C11-998 RAJ, 2014 WL 202104, *6 (W.D. Wash. Jan. 17, 2014). The court may not

---

AMAZON'S MOTION TO
EXCLUDE EGELMAN TESTIMONY
CASE NO. 2:21-CV-00750-RSL

3

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

### B. The Court Should Exclude Egelman's Opinions On Voice Identification Technology (Opinions ¶¶ 47–51, 52(C)).

In his report, Egelman offers opinions that voice recordings are "inherently personally identifiable information." Egelman Rep. ¶¶ 47–51. Plaintiffs attempt to rely on that generalized statement to suggest that Amazon could identify all people whose voices were recorded in Alexa interactions. Mot. at 18. But Egelman is not qualified to give this opinion. *See generally* Egelman Rep. ¶¶ 2–5.

Egelman's professional and academic background do not qualify him to opine on voice identification technology—that is, the ability to identify specific persons by matching recordings to their voice. None of his professional experience touches on voice identification or voice prints. *Id*. ¶ 2, App'x A. And he admits that he is not an expert in how to train machine learning systems for voice recognition technology, and that technology to match voices with individuals is "outside of [his] expertise." Kropp Decl., Ex. B (Excerpts of September 6, 2024 Serge Egelman Deposition Transcript ("Egelman Tr.")) at 248:8–250:21.

Even if Egelman were qualified, his opinion on voice identification is unreliable. He alludes to his relationship with the Institutional Review Board (IRB) at U.C. Berkeley to support the general proposition that voice recordings are "personally identifiable." Egelman Rep. ¶ 51. He further claims that technology can identify and match a voice using "short utterances of 1-2 seconds" in many cases. *Id*. ¶¶ 47–48, 50. But at his deposition, he admitted that this is not true, acknowledging that a sample of a person's voice (tied to that person's identity) is first required to ascertain the identity of any voice in a recording. Egelman Tr. at 250:23–251:21. He identifies no database of voice samples that could be used to match voice recordings to specific people. When asked whether Amazon has the technology to "identify speakers based only on Alexa recordings," he began speculating, admitting he is not sure, but that Amazon AWS (a completely unrelated service) hosts "a lot of data." *Id*. at 251:9–14.

AMAZON'S MOTION TO
EXCLUDE EGELMAN TESTIMONY
CASE NO. 2:21-CV-00750-RSL

4

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

1  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *Id*. at 258:3–260:19.

The Court should exclude Egelman's opinions about voice recognition in section VIII of his report (Egelman Rep. ¶¶ 47–51).

### C. The Court Should Exclude Egelman's Opinions About The Frequency and Content of False Wake Recordings (¶18).

Plaintiffs cite to Egelman for the proposition that "residing within proximity of an Alexa-enabled device will result in a false wake." Mot. at 18. In fact, Egelman never says that, but what he does say about the frequency of false wakes is baseless and illogical. Citing an Amazon document ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Egelman concludes that "each and every Alexa device will inappropriately intercept and transmit contemporaneously captured audio streams at least once per month." Egelman Rep. ¶ 18. But that is not how averages work; by Egelman's reasoning, if the average American family has two kids, every family would have children. That, of course, is not the case; some families have three, four or more children and others have none. Likewise, some Alexa devices in a home will experience no false wakes in a month depending on the unique characteristics of their use. Egelman also admitted in his deposition that multiple factors "probably" affect the likelihood of a false wake occurring in any particular home, including the presence of background noise, the acoustic environment, the diction or accent of people speaking, and their proximity to the device. Egelman Tr. at 215:10–217:2. Egelman's unsupported speculation that every Alexa-enabled device will generate false wakes must be excluded.

### D. Egelman's Opinions On Consumers' Awareness Of Voice Recordings Are Unreliable (¶¶ 36–37, 41).

Egelman's testimony on consumers' awareness of Alexa recording is purely speculative. Egelman states that "the public is likely unaware" of Amazon's recording practices. *See* Egelman Rep. § VI. Specifically, he opines that users are unaware that "Amazon retains data indefinitely by default," and only Registrants can opt out of this practice. *Id.* ¶ 36. He further opines that few consumers know these controls exist and the "controls do not display all of the data Amazon

AMAZON'S MOTION TO
EXCLUDE EGELMAN TESTIMONY                       5
CASE NO. 2:21-CV-00750-RSL

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

collects." *Id*. ¶¶ 36, 41. He concludes that "Amazon should make people aware of how and who and what data they are collecting to allow people to make an informed decision about whether to use their service." *Id*. ¶ 37. Egelman bases this opinion solely on his "experience."

Because Egelman's opinions that consumers lack awareness of what Alexa records lack a sufficient factual basis, the Court must exclude them. *See Morrison v. Washington*, No. 3:20-cv-06015-JHC, 2023 WL 5287647, *4 (W.D. Wash. Aug. 17, 2023) (requiring the court to "determine whether there is a sufficient factual foundation for the expert's testimony to be reliable"). He did not consider third party media coverage or other information about Alexa, and did not survey or speak with users about what they knew. *See* Egelman Tr. at 58:8–15, 23:25–24:9. He did not recall reviewing Amazon's Conditions of Use or Privacy Notices (*id*. at 42:15–43:8, 184:5–20), the Alexa Terms of Use (*id.* at 43:17–44:2), any Alexa privacy reminder emails (*id.* at 44:6–8), the Alexa Welcome Screens (*id.* at 44:9–11), any instructional videos about Alexa (*id.* at 44:12–20), or the Alexa FAQs (*id.* at 44:3–5, 70:23–71:7). Nor was he familiar with the Alexa companion App—where users must agree to Alexa terms while setting up their Alexa-enabled devices. *See id*. at 57:1–6. Because Egelman asserted his opinions without reviewing *any* relevant data, he cannot demonstrate a reliable (or any) methodology for these opinions. *Claar v. Burlington Northern R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994) (experts must "explain the reasoning and methods underlying their conclusions"). Therefore, the Court should exclude Egelman's opinions in paragraphs 36–37, and 41 of his report.

E.  **The Court Should Exclude Egelman's Opinions That Consumers Object to Amazon's Retention and Use of Alexa Recordings (¶¶ 7(f), 27, 36, 41–46).**

With no factual basis, Egelman opines that customers would object to Amazon's retention and use of Alexa recordings. The Court should exclude these opinions because Egelman bases them on irrelevant studies that do not support them, and three studies that contradicts them. Egelman Rep. ¶¶ 27, 42–45.

The following studies relied on by Egelman concern technologies that are fundamentally different from voice assistants like Alexa. They include articles about:

AMAZON'S MOTION TO
EXCLUDE EGELMAN TESTIMONY
CASE NO. 2:21-CV-00750-RSL

6

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

- Privacy risks of smartphones, which do not discuss voice assistants (*id.* ¶ 42[2]);
- Consumers' concerns about data collection practices of "wearable devices," like smart watches, which are not at issue in this case (*id.* ¶¶ 27, 43, 44[3]);
- Privacy concerns of childcare professionals who visit smart homes, which are different form the Non-Registrant class proposed by Plaintiffs (*id.* ¶ 27[4]);
- Smart home technology including thermostats and security cameras, studied in international populations (*id.* ¶ 27[5]);
- Devices that do not need a wake word to operate, such as surveillance cameras (*see id.* ¶ 27[6]);
- Bystanders in homes with non-voice assistant sensors and devices that can be remotely accessed (*id.* ¶ 27[7]); and
- A hypothetical technology that does not yet exist (*see id.* ¶ 45[8]).

Egelman does not even attempt to explain how any of these studies, which are focused on irrelevant technologies or survey distinct populations, support his opinions about the expectations of individuals living in homes with voice assistants like Alexa. Obviously, consumers would be surprised to be recorded by a refrigerator or thermostat, as opposed to a device that is designed to listen for, transmit, and respond to their voice commands. Because Egelman has not "adequately explained" his "methodology" in relying on these irrelevant studies, the Court should exclude his opinions at paragraphs 27, and 41–45.

---

[2] Porter et al. (2012).
[3] Egelman Rep. ¶ 27 cites to Denning et al. (2014) in footnote 36 and ¶ 43 cites to Lee et al. (2016) in footnote 66.
[4] Bernd et al. (2020) and Bernd et al. (2022).
[5] Marky et al. (2020) and Windl et al. (2022).
[6] Alshehri et al. (2022).
[7] Yao et al. (2019).
[8] Egelman Rep. ¶ 45 cites to Tabassum et al. (2019) in footnote 70, which explores potential future generations of voice assistants that are "always listening."

AMAZON'S MOTION TO
EXCLUDE EGELMAN TESTIMONY
CASE NO. 2:21-CV-00750-RSL

7

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

Egelman also relies on three studies, Malkin et al. (2018)[9], Huang, et al. (2020)[10], and Malkin et al. (2019)[11] that *contradict* the opinions he claims they support. He cites these articles to support his claim that "consumers would have found [Amazon's] practices objectionable," that Amazon failed to get consent for these practices, that consumers "view audio captured within their homes as highly-sensitive and private," that users "did not know that their recordings were being permanently stored," and that individuals "objected to the inappropriate collection of data from within their homes." Egelman Rep. ¶¶ 7(f), 27, 36, 46. But the studies demonstrate that—while consumers have a wide variety of understandings and attitudes about voice assistants—many consumers are aware of and accept that manufacturers like Amazon record and use audio data to improve their services. The studies further show that most consumers do not consider audio captured by such devices to be sensitive.

The survey results in Malkin et al. (2018), an article co-authored by Egelman, demonstrated that many consumers were (1) aware that audio data from smart devices was used to improve the machine learning algorithms and (2) found this practice acceptable.[12] Additionally, Huang et al. (2020) showed that consumers of shared smart speakers trust manufacturers and support sharing their audio data to improve the service.[13]

Malkin et al. (2019), another article co-authored by Egelman, arrived at similar results. The survey in this article demonstrated that many consumers are aware that providers of voice assistants like Amazon collect and store voice recordings and that consumers accept this behavior.[14] The study further found that "[t]he overwhelming majority [of consumers] did not consider their interactions sensitive, describing them as 'mundane.'"[15] When confronted with the results that conflicted with his opinions, Egelman admitted that the results of the study found that consumers categorized their recordings as non-sensitive, almost half of the survey respondents

---

[9] Egelman Rep. ¶ 46 cites to Malkin et al. (2018) in footnote 73.
[10] *Id*. ¶ 27 cites to Huang et al. (2020) in footnote 35.
[11] *Id*. ¶ 36 cites to Malkin et al. (2019), at 255, 264 in footnote 54.
[12] Malkin et al. (2018) at 4 (Figure 3).
[13] Huang et al. (2020).
[14] Malkin et al. (2019) at 255, 264.
[15] *Id*.

AMAZON'S MOTION TO
EXCLUDE EGELMAN TESTIMONY
CASE NO. 2:21-CV-00750-RSL

8

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

understood that recordings were kept "indefinitely," and that some respondents preferred that such recordings were kept. *See* Egelman Tr. at 101:19–102:11, 113:17–115:5, 122:9–123:18.

Because these results contradict Egelman's opinions and he fails to explain how this evidence forms the basis of his opinions, he has not "adequately explained" his "methodology" in relying on these articles in support of paragraphs 7(f), 27, 36 and 46. *See United States v. Hermanek*, 289 F.3d 1076, 1094 (9th Cir. 2002).

### F. The Court Should Exclude Egelman's Legal Conclusions About Whether Users Consented To Alexa's Terms And Conditions (¶¶ 27, 52(B), 53).

The Court should also exclude Egelman's improper legal conclusions about whether users expressly or impliedly consented to Alexa recordings. *See* Egelman Rep. ¶¶ 52(B), 53. Egelman claims that Amazon fails to "ensure customers are informed and consent to the collection of the data and how it may be used…" and that Non-Registrants "could not consent." *Id*. ¶ 27; *see* Egelman Tr. at 267:8–269:7. As discussed above, he reviewed none of the disclosures that Amazon provides. Moreover, his opinion merely repackages Plaintiffs' legal arguments on elements of their wiretapping claims and is inadmissible. Fed. R. Evid. 704, Advisory Committee Note (1972); *Easton v. Asplundh Tree Experts*, No. C16-1694RSM, 2017 WL 4005833, *3 (W.D. Wash. Sept. 12, 2017). Worse, the opinion directly contradicts the May 6, 2022 Order dismissing Registrants' state wiretap claims. Dkt. 91 at 16 (noting Amazon's disclosures that "the devices sometimes detect the wake word even when it was not actually spoken."); *see Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 856 (W.D. Wash. 2023), *aff'd*, No. 23-35377, 2024 WL 2206454 (9th Cir. May 16, 2024) (holding that users were bound to Alexa Terms of Use and Amazon Privacy Notice disclosing use of recordings and that "Plaintiffs' notice argument lacks merit.").

### G. Egelman's Mere Repetition Of The Contents Of Documents Are Not Proper Expert Opinions (¶¶ 9, 12–19, 29, 33, 36).

The Court should also exclude many of Egelman's "opinions" because they amount to nothing more than a recitation of other documents. Testimony does not become expert knowledge "just because it's uttered by a scientist." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311,

AMAZON'S MOTION TO
EXCLUDE EGELMAN TESTIMONY
CASE NO. 2:21-CV-00750-RSL

9

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

1315–16 (9th Cir. 1995) (*Daubert II*). When the subject "does not need expert illumination and the proponent is otherwise able to elicit testimony about the subject," the district court must exclude the testimony. *U.S. v. Seschillie*, 310 F.3d 1208, 1212 (9th Cir. 2002). For this reason, courts exclude expert testimony that parrots documents without adding more. Merely summarizing "internal documents … which could be analyzed just as effectively by the jury" is not helpful expert testimony. *Rydman v. Champion Petfoods USA Inc.*, No. C18-1578 TSZ, 2023 WL 3172466, *8 (W.D. Wash. May 1, 2023); *see also Li v. Ne. Univ.*, No. 2:22-CV-00444-LK, 2023 WL 3722227, *23 (W.D. Wash. May 30, 2023) (excluding expert testimony that "merely provided [a] summary of the evidence"); *Rhine v. Buttigieg*, No. 2:20-cv-01761, 2022 WL 77229817, *3 (W.D. Wash. Sept. 15, 2022) (same).

Here, Egelman merely quotes from Amazon's internal documents without providing any further analysis. Such regurgitation in the following paragraphs is unhelpful and should be excluded:

- Paragraphs 9, 12, 13, 17, 18, 19 (referencing cited documents to describe wake word technology and false wakes);
- Paragraphs 14, 15, 36 (quoting from cited documents to describe Amazon's storage of voice recordings and related policies);
- Paragraphs 16, 29 (quoting from cited document to describe human review practices); and
- Paragraph 33 (citing an excerpt from an internal document regarding human review).

**H.    The Court Should Exclude Egelman's Opinions About Amazon's Beliefs.**

In addition to attempting to repackage Amazon documents to fit with Plaintiffs' narrative, Egelman purports to interpret Amazon's subjective beliefs and motivations about the use of Alexa recordings, concluding that Amazon believed its practices were "a bad idea." The following opinions should be excluded:

- Paragraph 15 (citing an email to assert that Amazon believed "storing voice recordings" was a "bad idea for privacy reasons") *but see* Egelman Tr. at 194:3–

AMAZON'S MOTION TO
EXCLUDE EGELMAN TESTIMONY
CASE NO. 2:21-CV-00750-RSL

10

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

  195:12 (acknowledging that the email simply discusses Amazon's development of a feature that lets people opt out of storing recordings);

- Paragraph 16 (citing the same document to assert that "Amazon is not sure of all the places where employees and/or contractors store voice data" and that there is "additional risk that those human reviewers may have made copies of some of the audio for their own unauthorized purposes") *but see* Egelman Tr. at 196:14–200:13 (admitting that the cited email simply shows one employee asking for the location of data);

- Paragraph 21 (citing the same document to assert that "Amazon admits that it was not fulfilling its 'customer promise' of not storing voice recordings" when the document never states that Amazon was not fulfilling customer promises) (Egelman Rep. ¶ 21, n.25);

- Paragraph 20 (citing an internal Amazon email regarding the development of enhanced privacy handling for Alexa data to support his assertion that Amazon understood it was a problem to collect false wake utterances, when the document contains no such claim) (Egelman Rep. ¶ 20 n.24);

- Paragraph 22 (citing an internal Amazon meeting invite discussing ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ for follow-up mode for the baseless assertion that "[d]ue to known privacy issues, Amazon created a research project in late 2020 to identify alternative systems," related to recordings) *but see* Egelman Tr. at 223:25–226:25 (admitting that the document is not discussing an alternative solution to storing recordings);

- Paragraph 23 (citing an internal document to assert that Amazon "inappropriately received ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓") *but see* Egelman Tr. at 228:7–231:8 (admitting that he "did not know the context of this" email and that the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓);

- Paragraph 23 (citing another internal document to assert that Amazon was "still collecting audio inappropriately" when the quoted portion of the document merely

AMAZON'S MOTION TO
EXCLUDE EGELMAN TESTIMONY
CASE NO. 2:21-CV-00750-RSL

11

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

|   |   |
|---|---|
| 1 | describes Amazon's efforts to implement new storage policies) (*see* Egelman Rep. |
| 2 | ¶ 23 n.29); |
| 3 | • Paragraph 24 (citing internal documents to assert that "proper data protection |
| 4 | safeguards were still not in place" in November 2020 and Amazon's control "were |
| 5 | illusory" when the documents merely describe Amazon's effort to continue |
| 6 | improving internal controls) (*see* Egelman Rep. ¶ 24 n.30–31); *see also* ¶ 25 n.32– |
| 7 | 33 (same); |
| 8 | • Paragraphs 26 and 38 (citing internal documents to suggest Amazon is collecting |
| 9 | user data to benefit itself "for its own purposes" and "secondary purposes"); *see* |
| 10 | *also* Egelman Rep. ¶¶ 28, 31–32 (same); *but see* Egelman Tr. at 263:6–264:6 |
| 11 | (admitting that Amazon uses data from Alexa devices to fulfill user requests and to |
| 12 | improve the Alexa service); *see also id.* at 272:19–273:14 (admitting that |
| 13 | "improving products benefits customers in certain cases"); |
| 14 | • Paragraph 35 (taking internal documents out of context to support his assertion that |
| 15 | Amazon employees "acknowledge" that background noises captured from in-home |
| 16 | Alexa devices "need to occur on device 'for privacy reasons'") (Egelman Rep. ¶ 35 |
| 17 | n.47–48); and |
| 18 | • Paragraph 39 (relying on an internal document to assert that it was not strictly |
| 19 | necessary to collect Alexa audio recordings, but that it was just more "cost- |
| 20 | effective" to do so when this document explores alternatives to review of data that |
| 21 | are not currently feasible) (Egelman Rep. ¶ 39 n.60); *see also* ¶ 40 (claiming |
| 22 | Amazon was concerned about revenue without any support); ¶ 52(D) (same). |

Plaintiffs cannot meet their burden of showing that these and similar opinions about Amazon's beliefs and motivations are supported by reliable or admissible evidence. *Daubert*, 509 U.S. at 597; *see* Fed. R. Evid. 403, 702. The Court should exclude Egelman's unhelpful, unreliable, and misleading characterization of Amazon documents and speculation about Amazon's beliefs, including in paragraphs 15–16, 20–26, 28, 31–32, 35, 38–40, 52(D) of his report.

AMAZON'S MOTION TO
EXCLUDE EGELMAN TESTIMONY         12
CASE NO. 2:21-CV-00750-RSL

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

## IV. CONCLUSION

For the reasons stated above, Amazon requests that the Court exclude Egelman's report in its entirety.

Dated: October 7, 2024                         FENWICK & WEST LLP


By: *s/Y. Monica Chan*
Y. Monica Chan, WSBA No. 58900

Brian D. Buckley, WSBA No. 26423
401 Union Street, 5th Floor
Seattle, WA  98101
Telephone:      206.389.4510
Facsimile: 206.389.4511
Email:    bbuckley@fenwick.com

Jedediah Wakefield (admitted pro hac vice)
Tyler G. Newby (admitted pro hac vice)
Armen N. Nercessian (admitted pro hac vice)
Garner F. Kropp (admitted pro hac vice)
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:      415.875.2300
Facsimile: 415.281.1350
Email:
   jwakefield@fenwick.com
   tnewby@fenwick.com
   anercessian@fenwick.com
   gkropp@fenwick.com

Melissa Lawton (admitted pro hac vice)
Janie Yoo Miller (admitted pro hac vice)
Esther D. Galan (admitted pro hac vice)
730 Arizona, 1st Floor
Santa Monica, CA  90401
Telephone:  310.434.5400
Email:
   mlawton@fenwick.com
   jmiller@fenwick.com
   egalan@fenwick.com

Counsel for Defendants
AMAZON.COM, INC. and AMAZON.COM SERVICES LLC

AMAZON'S MOTION TO
EXCLUDE EGELMAN TESTIMONY
CASE NO. 2:21-CV-00750-RSL

13

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON  98101

**LCR 7 WORD-COUNT CERTIFICATION**

As required by Western District of Washington Local Civil Rule 7, I certify that this brief contains 4,194 words.

Dated: October 7, 2024

                                                FENWICK & WEST LLP

                                                By: *s/Y. Monica Chan*
                                                       Y. Monica Chan, WSBA No. 58900