# Kropp Exhibit B

# [Redacted]

```
1                 UNITED STATES DISTRICT COURT

2                WESTERN DISTRICT OF WASHINGTON

3

4    KAELI GARNER, et al.,           ) Case No.

5                 Plaintiffs,        ) 2:21-cv-00750-RSL

6            vs.                     )

7    AMAZON.COM, INC. and AMAZON.COM )

8    SERVICES LLC,                   )

9                 Defendants.        )

10

11         HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

12                      DEPOSITION OF

13                   SERGE EGELMAN, Ph.D

14                        Volume I

15                Friday, September 6, 2024

16                        9:02 a.m.

17

18

19

20

21

22

23    Reported by:  Michael C. Rowell, California CSR #13494

24               NCRA Registered Diplomate Reporter

25             NCRA Certified Realtime Captioner
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                    23

| | | |
|---|---|---|
| 1 | expert on that. | 09:22:36 |
| 2 | Q.  And have you ever been prevented from | 09:22:37 |
| 3 | testifying on surveys or survey methodology in any case? | 09:22:42 |
| 4 | MS. IZZO:  Objection to the form. | 09:22:48 |
| 5 | THE WITNESS:  Prevented in what sense? | 09:22:50 |
| 6 | BY MR. WAKEFIELD: | 09:22:53 |
| 7 | Q.  Based on an objection that you were not | 09:22:53 |
| 8 | qualified? | 09:22:56 |
| 9 | A.  Not based on qualifications, no. | 09:22:56 |
| 10 | Q.  What about, have you ever been prevented from | 09:22:58 |
| 11 | testifying about a survey based on a claim that the | 09:23:00 |
| 12 | survey methodology was not acceptable? | 09:23:04 |
| 13 | A.  The only time that I -- I mean, I guess I'm | 09:23:07 |
| 14 | interpreting "prevented" as having conflicts of interest | 09:23:11 |
| 15 | and I have turned down -- | 09:23:15 |
| 16 | Q.  Oh. | 09:23:15 |
| 17 | A.  -- work in that regard, but a court has never | 09:23:16 |
| 18 | prevented me from testifying in a case, to my knowledge. | 09:23:19 |
| 19 | Q.  Yeah, and I should have -- bad question on my | 09:23:21 |
| 20 | part, but you got to the crux of it, so thank you. | 09:23:24 |
| 21 | So, you -- you've never been excluded from | 09:23:32 |
| 22 | testifying by a court regarding surveys or survey | 09:23:35 |
| 23 | methodology, correct? | 09:23:38 |
| 24 | A.  Not to my knowledge. | 09:23:39 |
| 25 | Q.  Okay.  Did you perform any survey for this | 09:23:40 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                    24

| | | |
|---|---|---|
| 1 | case? | 09:23:45 |
| 2 | A.  No.  As I previously stated, I only reviewed | 09:23:46 |
| 3 | documents. | 09:23:49 |
| 4 | Q.  Okay.  And did you consider doing any survey | 09:23:50 |
| 5 | for this case? | 09:23:53 |
| 6 | A.  No.  Same answer to your question about | 09:23:55 |
| 7 | forensic analysis, it just didn't seem necessary. | 09:23:57 |
| 8 | Q.  Okay. | 09:23:59 |
| 9 | A.  And I wasn't asked to. | 09:24:00 |
| 10 | Q.  You also were an expert for Plaintiffs in the | 09:24:01 |
| 11 | Vizio versus Consumer -- Vizio, Inc. Consumer Privacy | 09:24:13 |
| 12 | Litigation; is that right? | 09:24:19 |
| 13 | A.  Yep. | 09:24:20 |
| 14 | Q.  Is that correct?  Sorry. | 09:24:27 |
| 15 | A.  Oh, yeah, sorry, I -- I already answered. | 09:24:28 |
| 16 | Yes, yes. | 09:24:30 |
| 17 | Q.  I'm sorry.  My -- I'll turn up my audio. | 09:24:31 |
| 18 | And that was -- that involved testimony about | 09:24:42 |
| 19 | the willingness to pay for privacy; is that right? | 09:24:48 |
| 20 | A.  Yeah, I've done a few studies that have been | 09:24:52 |
| 21 | pretty well cited about consumers' willingness to pay -- | 09:24:58 |
| 22 | you know, pay for privacy and how consumers value | 09:25:02 |
| 23 | privacy.  And so I haven't done these in a while, but | 09:25:04 |
| 24 | there were a few cases, you know, ten years ago -- close | 09:25:07 |
| 25 | to ten years ago, where I had been asked to provide an | 09:25:10 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                    42

| | | |
|---|---|---|
| 1 | BY MR. WAKEFIELD: | 09:48:02 |
| 2 | Q.  No, we don't have to do that.  You were -- | 09:48:08 |
| 3 | it's your understanding that there were document | 09:48:12 |
| 4 | requests served.  You're not sure if you've seen them, | 09:48:14 |
| 5 | correct? | 09:48:19 |
| 6 | A.  That's correct. | 09:48:20 |
| 7 | Q.  As you sit here now, are you aware of any | 09:48:20 |
| 8 | documents that are responsive to those requests that you | 09:48:23 |
| 9 | have that were not provided? | 09:48:26 |
| 10 | MS. IZZO:  Objection to the form. | 09:48:29 |
| 11 | THE WITNESS:  Without knowing what specific | 09:48:30 |
| 12 | documents we're even talking about, I'm not sure I'm | 09:48:31 |
| 13 | supposed to answer that question. | 09:48:36 |
| 14 | BY MR. WAKEFIELD: | 09:48:37 |
| 15 | Q.  Okay.  Well, we can circle back to this later. | 09:48:37 |
| 16 | So, among the documents that you identified in | 09:48:56 |
| 17 | your report, I did not see -- and I just want to confirm | 09:49:00 |
| 18 | that you did not consider these things -- the Amazon | 09:49:09 |
| 19 | conditions of use. | 09:49:14 |
| 20 | Do you recall looking at those for this | 09:49:15 |
| 21 | engagement? | 09:49:16 |
| 22 | A.  I don't remember, but if they're not cited in | 09:49:17 |
| 23 | my report, that just means I didn't rely on them in | 09:49:18 |
| 24 | drafting the report. | 09:49:20 |
| 25 | Q.  Okay.  Did you consider Amazon's conditions of | 09:49:21 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                    43

| | | |
|---|---|---|
| 1 | use? | 09:49:25 |
| 2 | A.  I don't remember whether I saw them, so it's | 09:49:28 |
| 3 | hard to say -- you know, I mean, I doubt I -- I doubt I | 09:49:33 |
| 4 | considered them. | 09:49:38 |
| 5 | Q.  Okay.  Did you consider Amazon's privacy | 09:49:39 |
| 6 | notices? | 09:49:43 |
| 7 | A.  I don't believe so. | 09:49:45 |
| 8 | Q.  Okay. | 09:49:47 |
| 9 | A.  But, again, without going through and seeing | 09:49:47 |
| 10 | what I cited in the report, it's hard to answer that | 09:49:49 |
| 11 | question. | 09:49:53 |
| 12 | Q.  Okay.  And that -- I don't recall them being | 09:49:53 |
| 13 | cited and looked for them, same is true -- same is true | 09:49:57 |
| 14 | for the other documents, I'm going to ask you about. | 09:50:01 |
| 15 | A.  I didn't memorize the Bates numbers, if that's | 09:50:04 |
| 16 | what you're asking. | 09:50:07 |
| 17 | Q.  Right.  Did you considerate the Alexa Terms of | 09:50:07 |
| 18 | Use? | 09:50:12 |
| 19 | A.  Again, I -- you know, we could go through the | 09:50:13 |
| 20 | citations in the report on what documents I actually | 09:50:17 |
| 21 | relied on, what documents were shared with me, and which | 09:50:20 |
| 22 | I considered but did not ultimately rely on in writing | 09:50:22 |
| 23 | the report.  It's hard to tell you that off the top of | 09:50:25 |
| 24 | my head. | 09:50:31 |
| 25 | Q.  Okay.  So as you sit here now, you don't know | 09:50:31 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                    44

| | | |
|---|---|---|
| 1 | if you looked at the Alexa Terms of Use. | 09:50:34 |
| 2 | A. I honestly don't remember. | 09:50:36 |
| 3 | Q. Okay. Do you know if you considered the Alexa | 09:50:38 |
| 4 | Frequently Asked Questions? | 09:50:42 |
| 5 | A. I don't remember. | 09:50:43 |
| 6 | Q. Okay. Do you recall reviewing any privacy | 09:50:44 |
| 7 | reminder emails that Amazon sends out to Alexa users? | 09:50:46 |
| 8 | A. I don't remember. | 09:50:51 |
| 9 | Q. Do you recall reviewing the welcome screen | 09:50:57 |
| 10 | that users see when they're setting up an Alexa device? | 09:50:59 |
| 11 | A. Honestly don't remember. | 09:51:04 |
| 12 | Q. Okay. Did you review any instructional videos | 09:51:05 |
| 13 | or informational videos about Alexa? | 09:51:13 |
| 14 | A. I don't believe any videos were shared with | 09:51:16 |
| 15 | me. | 09:51:18 |
| 16 | Q. Okay. And did you just -- regardless of | 09:51:19 |
| 17 | whether they were shared with you, did you go online and | 09:51:24 |
| 18 | look for such videos? | 09:51:26 |
| 19 | A. I don't believe so. I don't think I would | 09:51:28 |
| 20 | have felt the need to do that. | 09:51:29 |
| 21 | Q. Okay. I believe you testified earlier that | 09:51:32 |
| 22 | you -- you have offered some opinions about how | 09:51:49 |
| 23 | customers would -- about customer preferences concerning | 09:51:52 |
| 24 | voice recordings; is that right? | 09:52:00 |
| 25 | A. Yep. | 09:52:02 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of Serge Engelman, Ph.D.

Conducted on September 6, 2024                                57

| | | |
|---|---|---|
| 1 | Q.  And I believe you answered this, but just to | 10:22:54 |
| 2 | double-check, did you run any of these -- these checks | 10:22:58 |
| 3 | on any Alexa applications? | 10:23:01 |
| 4 | A.  I was not asked to. | 10:23:04 |
| 5 | Q.  And you did not, correct? | 10:23:06 |
| 6 | A.  And I did not. | 10:23:08 |
| 7 | Q.  Okay.  Before reviewing documents to prepare | 10:23:09 |
| 8 | the report in this case, did you have an understanding | 10:23:20 |
| 9 | of how Alexa functioned? | 10:23:24 |
| 10 | A.  Yes. | 10:23:28 |
| 11 | Q.  Yes.  And you had been involved in the -- the | 10:23:29 |
| 12 | privacy attitudes survey, which we'll get to later. | 10:23:31 |
| 13 | Is that part of what formed the basis of your | 10:23:40 |
| 14 | understanding of how Alexa works? | 10:23:42 |
| 15 | MS. IZZO:  Objection to the form. | 10:23:45 |
| 16 | THE WITNESS:  I -- in terms of what | 10:23:46 |
| 17 | specifically formed the basis, I mean, the underlying | 10:23:48 |
| 18 | technology is somewhat well-known. | 10:23:51 |
| 19 | I mean, this is a common application of | 10:23:54 |
| 20 | machine learning, is, you know, doing speech | 10:23:56 |
| 21 | recognition, and -- and so I don't believe, you know, | 10:24:00 |
| 22 | in -- in describing, you know, how Alexa works, I don't | 10:24:03 |
| 23 | think I needed to rely on any documents.  But since | 10:24:06 |
| 24 | those documents were presented to me, I certainly cited, | 10:24:08 |
| 25 | you know, the ones that explained how the system works. | 10:24:11 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                     58

| | | |
|---|---|---|
| 1 | But, yes, I had existing knowledge of how that | 10:24:14 |
| 2 | system works. | 10:24:17 |
| 3 | BY MR. WAKEFIELD: | 10:24:17 |
| 4 | Q.  So, even before getting documents in this | 10:24:17 |
| 5 | case, you -- you had an understanding of -- of how Alexa | 10:24:20 |
| 6 | works; is that right? | 10:24:24 |
| 7 | A.  That's correct. | 10:24:25 |
| 8 | Q.  Okay.  Had you also heard -- you mentioned | 10:24:26 |
| 9 | media reporting about technology. | 10:24:29 |
| 10 | Had you come across media reporting about | 10:24:33 |
| 11 | Alexa before your engagement in this case? | 10:24:38 |
| 12 | A.  I can't name specific articles, but almost | 10:24:43 |
| 13 | certainly.  There's been a lot of popular reporting over | 10:24:47 |
| 14 | the past, I guess, decade about these types of | 10:24:49 |
| 15 | technologies. | 10:24:52 |
| 16 | Q.  Right. | 10:24:54 |
| 17 | And before your engagement in this case, had | 10:24:55 |
| 18 | you ever read any of Amazon's disclosures concerning | 10:24:59 |
| 19 | Alexa's function or privacy, such as terms and | 10:25:05 |
| 20 | conditions or privacy notices? | 10:25:08 |
| 21 | A.  I honestly don't -- | 10:25:10 |
| 22 | MS. IZZO:  Objection to the form. | 10:25:13 |
| 23 | THE WITNESS:  I honestly don't remember. | 10:25:14 |
| 24 | BY MR. WAKEFIELD: | 10:25:17 |
| 25 | Q.  Okay.  Do you have any Alexa-enabled devices | 10:25:18 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                    70

| | | |
|---|---|---|
| 1 | BY MR. WAKEFIELD: | 10:40:08 |
| 2 | Q.  Okay.  But assuming that a public disclosure | 10:40:08 |
| 3 | does accurately disclose what a company is doing, isn't | 10:40:11 |
| 4 | reading it one of the ways you could learn about | 10:40:17 |
| 5 | privacy? | 10:40:20 |
| 6 | A.  That -- that's a load-bearing assumption | 10:40:21 |
| 7 | there.  I mean, it's well documented in, I don't know, | 10:40:25 |
| 8 | probably 40, 50 years of research literature that most | 10:40:28 |
| 9 | consumer privacy notices are written at a level that's | 10:40:32 |
| 10 | way beyond consumer understanding. | 10:40:35 |
| 11 | Most consumers don't know how to find these | 10:40:38 |
| 12 | documents.  They don't read them because they're lengthy | 10:40:41 |
| 13 | and -- and often ambiguous, and because of the | 10:40:45 |
| 14 | ambiguity, even if they do read and understand them, | 10:40:49 |
| 15 | they usually have a very poor description of the actual | 10:40:51 |
| 16 | privacy practices. | 10:40:53 |
| 17 | So, there has been a trend of, you know, | 10:40:55 |
| 18 | conglomerates having privacy, you know, policies that | 10:40:58 |
| 19 | encompass all of their services, so that when you read | 10:41:02 |
| 20 | the privacy policy, there's really no indication of what | 10:41:05 |
| 21 | data is collected when you use one specific service | 10:41:08 |
| 22 | versus another. | 10:41:11 |
| 23 | Q.  Okay.  Are you aware that Amazon provides FAQs | 10:41:12 |
| 24 | specifically about Alexa and Echo devices? | 10:41:17 |
| 25 | A.  I assume that they do.  In terms of, you know, | 10:41:22 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                    71

| | |
|---|---|
| 1 | specifics, I haven't read the specifics, but yeah, I | 10:41:27 |
| 2 | assume that they have some documentation about that. | 10:41:30 |
| 3 | Q.  Okay.  And it wasn't part of your -- the scope | 10:41:31 |
| 4 | of your work here to review those disclosures and opine | 10:41:34 |
| 5 | about whether they were ambiguous or clear to users, | 10:41:37 |
| 6 | right? | 10:41:42 |
| 7 | A.  No, it was not. | 10:41:43 |
| 8 | Q.  Okay.  You mentioned media reporting about | 10:41:44 |
| 9 | things.  That's -- that's another way that people can | 10:41:49 |
| 10 | learn about privacy issues or controls for their | 10:41:52 |
| 11 | devices, right? | 10:41:56 |
| 12 | A.  Yes -- | 10:41:57 |
| 13 | MS. IZZO:  Objection to the form. | 10:41:58 |
| 14 | THE WITNESS:  Yes, that's correct. | 10:42:00 |
| 15 | BY MR. WAKEFIELD: | 10:42:00 |
| 16 | Q.  Okay.  What about blog postings?  Is that | 10:42:02 |
| 17 | another way, or would you include blogs as part of | 10:42:05 |
| 18 | media? | 10:42:08 |
| 19 | MS. IZZO:  Objection to form. | 10:42:09 |
| 20 | THE WITNESS:  I mean, in terms of where the | 10:42:12 |
| 21 | average consumer gets their information, I -- I can't | 10:42:13 |
| 22 | really opine on that. | 10:42:16 |
| 23 | BY MR. WAKEFIELD: | 10:42:18 |
| 24 | Q.  Okay.  Consumers can get information from | 10:42:23 |
| 25 | social media, such as YouTube videos, right? | 10:42:25 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                    101

| | | |
|---|---|---|
| 1 | your testimony, are you aware of what steps Amazon took | 11:21:19 |
| 2 | to delete -- to address that concern? | 11:21:23 |
| 3 | MS. IZZO:  Objection to the form. | 11:21:29 |
| 4 | THE WITNESS:  As I document in my report, | 11:21:30 |
| 5 | there's discussion about changing policies throughout | 11:21:32 |
| 6 | the class period, but my understanding is, you know, | 11:21:34 |
| 7 | through the end of the class period, most of this was | 11:21:38 |
| 8 | not actually implemented yet. | 11:21:42 |
| 9 | BY MR. WAKEFIELD: | 11:21:43 |
| 10 | Q.  What is your understanding of what the end of | 11:21:43 |
| 11 | the class period is? | 11:21:45 |
| 12 | A.  I would need to go back to the report.  I'm | 11:21:47 |
| 13 | pretty sure it was a defined period, as is usually the | 11:21:49 |
| 14 | case in these. | 11:21:52 |
| 15 | Q.  Okay. | 11:21:55 |
| 16 | A.  Do you want me to go back to the report to | 11:22:03 |
| 17 | answer that or... | 11:22:05 |
| 18 | Q.  We don't have to right now. | 11:22:06 |
| 19 | So, let's look at some of the conclusions of | 11:22:17 |
| 20 | the Privacy Attitudes of Smart Speaker Users from 2019, | 11:22:19 |
| 21 | Exhibit 4. | 11:22:26 |
| 22 | At page 251, there are some bullet or dash | 11:22:26 |
| 23 | findings.  Do you see those? | 11:22:39 |
| 24 | A.  Yep. | 11:22:45 |
| 25 | Q.  It begins with, "Our contributions include | 11:22:46 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                    102

| | | |
|---|---|---|
| 1 | findings that" -- do you see that? | 11:22:54 |
| 2 | A. Yes, sorry. I already said yes. | 11:22:57 |
| 3 | Q. Okay. And one of the conclusions, it's the | 11:22:59 |
| 4 | third bullet point, is, "On the whole, data currently | 11:23:03 |
| 5 | stored with voice assistance is not considered | 11:23:07 |
| 6 | sensitive," right? | 11:23:10 |
| 7 | A. Yeah, that's what it says. | 11:23:18 |
| 8 | Q. Okay. And that was a conclusion of the study, | 11:23:21 |
| 9 | right? | 11:23:22 |
| 10 | A. Yeah, I'd presume, given that that's listed | 11:23:26 |
| 11 | here as -- as one of the contributions, yes. | 11:23:28 |
| 12 | Q. Okay. | 11:23:28 |
| 13 | A. But that's on the whole. I mean, there's | 11:23:35 |
| 14 | certainly, you know -- yes, if 90 percent of your | 11:23:36 |
| 15 | recordings are recorded, you know, intentionally, then | 11:23:39 |
| 16 | you could say, on the whole, you know, the recordings | 11:23:43 |
| 17 | were record -- recorded intentionally, and that ignores | 11:23:45 |
| 18 | the fact that 10 percent were not. | 11:23:48 |
| 19 | Q. Okay. Well, we'll get to the -- the issue of | 11:23:53 |
| 20 | accidental false wake recordings in a moment. | 11:23:59 |
| 21 | The final bullet on page 251, though, was | 11:24:12 |
| 22 | the -- "The majority embraced proposals for alternative | 11:24:17 |
| 23 | privacy features, stating they would adopt automatic | 11:24:22 |
| 24 | deletion of their recordings." | 11:24:26 |
| 25 | Do you see that? | 11:24:29 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                          113

| | | |
|---|---|---|
| 1 | breakdown between mistaken detections of the wake word | 11:37:00 |
| 2 | versus a user saying the wake word when they didn't want | 11:37:03 |
| 3 | the device to wake up, correct? | 11:37:07 |
| 4 | A.  We -- I -- I would need to read the whole | 11:37:12 |
| 5 | paper, but I don't remember whether we reported on that. | 11:37:15 |
| 6 | Q.  Okay.  These participants, after doing this | 11:37:18 |
| 7 | study, certainly were aware that accidental activations | 11:37:29 |
| 8 | occurred and -- and that recordings were kept, right? | 11:37:36 |
| 9 | A.  Yeah, after participating in the study, we -- | 11:37:42 |
| 10 | you know, we at first asked their perceptions of what | 11:37:46 |
| 11 | happens to the recordings, and then we informed them | 11:37:48 |
| 12 | afterwards that, yes, by default, the recordings were | 11:37:50 |
| 13 | kept indefinitely, even the false activation ones; and | 11:37:53 |
| 14 | we asked their opinions about that. | 11:37:57 |
| 15 | Q.  Okay.  Let's talk about some of the opinions | 11:38:01 |
| 16 | and perception questions you asked. | 11:38:09 |
| 17 | So, in 6.1, you asked about user perceptions | 11:38:11 |
| 18 | of retention.  And you found that -- under the question, | 11:38:17 |
| 19 | "After you ask the assistant a question or say a | 11:38:29 |
| 20 | command, what do you believe happens to the audio of | 11:38:32 |
| 21 | your interaction?" | 11:38:35 |
| 22 | That was a question, correct? | 11:38:37 |
| 23 | A.  I'm trying to find it. | 11:38:40 |
| 24 | Q.  It's under 6.1 on page 255. | 11:38:41 |
| 25 | A.  Yep, yes. | 11:38:50 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                                    114

| | |
|---|---|
| 1   Q.  And almost half of respondents, 48.3 percent, | 11:38:52 |
| 2   correctly answered that recordings are kept | 11:38:56 |
| 3   indefinitely, right? | 11:38:59 |
| 4   A.  And half said that they didn't believe -- and | 11:39:01 |
| 5   half did not know that.  Yes, that's correct. | 11:39:04 |
| 6   Q.  Right.  Of the -- of the responses you got, | 11:39:07 |
| 7   the one that had the highest percentage was people | 11:39:13 |
| 8   answering that recordings are kept indefinitely, right? | 11:39:17 |
| 9   That was more than the people who felt they were only | 11:39:21 |
| 10  saved temporarily or that weren't sure, correct? | 11:39:24 |
| 11       It's a dumb question.  48 percent is more than | 11:39:31 |
| 12  41 percent, right? | 11:39:34 |
| 13       MS. IZZO:  Where are you seeing 41 percent? | 11:39:36 |
| 14  Sorry, I'm not seeing that. | 11:39:39 |
| 15       THE WITNESS:  That's complicated, because then | 11:39:40 |
| 16  there's a question of statistical significance.  So, | 11:39:43 |
| 17  when you're randomly sampling from the population, you | 11:39:46 |
| 18  know, just comparing percentages like that isn't | 11:39:48 |
| 19  meaningful. | 11:39:52 |
| 20       You would need to do statistical tests to say | 11:39:52 |
| 21  whether or not that 48 percent is, you know -- among the | 11:39:55 |
| 22  general population is likely to really outnumber the | 11:39:57 |
| 23  others. | 11:40:02 |
| 24       I would have to read more to see how we asked | 11:40:03 |
| 25  the question and whether we actually looked for | 11:40:05 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                    115

| | | |
|---|---|---|
| 1 | statistical significance there. | 11:40:09 |
| 2 | Q. Okay. But in any event, 48.3 answered that | 11:40:10 |
| 3 | recordings are kept indefinitely, and 41.4 answered that | 11:40:15 |
| 4 | audio is saved temporarily, right? | 11:40:20 |
| 5 | A. That's what we reported in the paper. | 11:40:25 |
| 6 | Q. All right. And that -- that was correct at | 11:40:27 |
| 7 | the time? You were correctly stating the results of | 11:40:33 |
| 8 | your survey, right? | 11:40:35 |
| 9 | A. I was correct -- yes, we were correctly | 11:40:36 |
| 10 | stating the results of the survey. How those numbers | 11:40:38 |
| 11 | generalize to the overall population is -- is a separate | 11:40:42 |
| 12 | matter. | 11:40:46 |
| 13 | Q. Okay. Now, in the question, "After you asked | 11:40:46 |
| 14 | the assistant a question or say a command, what do you | 11:41:02 |
| 15 | believe happens to the audio," the survey participants | 11:41:08 |
| 16 | were choosing from among specified answers, right, at | 11:41:12 |
| 17 | page -- you can see the answers in the questionnaire at | 11:41:18 |
| 18 | page 268, if you want to take a look. | 11:41:21 |
| 19 | A. Yeah. | 11:41:23 |
| 20 | Q. Right-hand -- it's on the right column, about | 11:41:28 |
| 21 | halfway down the page. | 11:41:31 |
| 22 | A. Yes, there were four options. | 11:41:38 |
| 23 | Q. Yeah, and one was -- so the answers they could | 11:41:40 |
| 24 | choose from is: It doesn't get saved at all; it gets | 11:41:43 |
| 25 | saved temporarily; it gets saved indefinitely; or, I | 11:41:47 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of Serge Engelman, Ph.D.

Conducted on September 6, 2024                    122

| | | |
|---|---|---|
| 1 | 48 percent understood that they would be kept | 11:49:17 |
| 2 | indefinitely, whereas 52 percent did not have that same | 11:49:22 |
| 3 | understanding. | 11:49:26 |
| 4 | Q.   Okay.  Only 4.3 percent thought that | 11:49:26 |
| 5 | recordings were not saved, right? | 11:49:30 |
| 6 | A.   Yeah, that's included in that 52 percent that | 11:49:31 |
| 7 | did not understand the recordings would be kept | 11:49:34 |
| 8 | indefinitely. | 11:49:36 |
| 9 | Q.   Okay.  In Section 6.2 about Current Data | 11:49:37 |
| 10 | Retention Policies, you begin that "Participants shared | 11:49:48 |
| 11 | a range of opinions about the voice assistants' current | 11:49:56 |
| 12 | retention policies"; is that right? | 11:50:00 |
| 13 | A.   That's what it says there. | 11:50:02 |
| 14 | Q.   Right, so opinions among survey respondents | 11:50:05 |
| 15 | were not uniform, correct? | 11:50:08 |
| 16 | A.   Uh-huh.  I mean, it says there's a range of | 11:50:09 |
| 17 | opinions, and I talked about before, you know, in terms | 11:50:13 |
| 18 | of the raw data, there's some select quotes here, and | 11:50:15 |
| 19 | but the responses are coded.  And so we -- you know, we | 11:50:18 |
| 20 | describe the broad categories of the responses and how | 11:50:23 |
| 21 | they fell into those categories. | 11:50:26 |
| 22 | Q.   Right.  Some users preferred that their | 11:50:28 |
| 23 | recordings be kept; isn't that right? | 11:50:33 |
| 24 | A.   There are a range of preferences, yes. | 11:50:37 |
| 25 | Q.   Okay.  So, in the second paragraph of the -- | 11:50:41 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                        123

| | | |
|---|---|---|
| 1 | of Section 6.2, the paper states that, "Some are more | 11:50:58 |
| 2 | accepting of the data retention because they saw its | 11:51:03 |
| 3 | benefits and found them worthwhile," right? | 11:51:06 |
| 4 | A.  Yeah.  As I said, there's -- there are a range | 11:51:15 |
| 5 | of privacy preferences. | 11:51:18 |
| 6 | Q.  Right.  And one -- one user -- one participant | 11:51:19 |
| 7 | said, "I think they are using the recordings to create a | 11:51:23 |
| 8 | voice profile so Alexa gets better at understanding what | 11:51:26 |
| 9 | I say, so I will keep all recordings." | 11:51:30 |
| 10 | Do you see that? | 11:51:35 |
| 11 | A.  Yeah, we -- we established that a small number | 11:51:36 |
| 12 | of participants, you know, were okay with it, but | 11:51:39 |
| 13 | predominantly, that wasn't the case. | 11:51:43 |
| 14 | Q.  Well, we'll get to that. | 11:51:45 |
| 15 | Another user stated, "I think having | 11:51:49 |
| 16 | recordings stored may help with the technology, and we | 11:51:53 |
| 17 | all have to do our part to advance it," right? | 11:51:56 |
| 18 | A.  That's what it says. | 11:51:59 |
| 19 | Q.  Right.  And so, those were folks who not only | 11:52:00 |
| 20 | knew about the retention of recordings but knew they | 11:52:07 |
| 21 | were being used to improve Alexa? | 11:52:09 |
| 22 | A.  Those are -- | 11:52:15 |
| 23 | MS. IZZO:  Objection to the form. | 11:52:15 |
| 24 | THE WITNESS:  Yeah, those are quotes from 2 | 11:52:17 |
| 25 | out of 116 participants, yes. | 11:52:19 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                                184

| | | |
|---|---|---|
| 1 | disclosed," because, obviously, doing a study in 2019, | 14:16:30 |
| 2 | you know, a large proportion of people who own these | 14:16:33 |
| 3 | devices were not aware of that. | 14:16:36 |
| 4 | BY MR. WAKEFIELD: | 14:16:46 |
| 5 |    Q.  The largest single answer in that survey was | 14:16:46 |
| 6 | that they thought they were kept indefinitely.  Others | 14:16:49 |
| 7 | didn't know -- others thought that recordings were made | 14:16:52 |
| 8 | and kept temporarily.  More than 80 percent knew that | 14:16:54 |
| 9 | the recordings were being made and kept for some amount | 14:16:57 |
| 10 | of time -- | 14:17:02 |
| 11 |    A.  Where is -- where is that? | 14:17:02 |
| 12 |    Q.  It's in the survey that we just spent hours | 14:17:03 |
| 13 | on, but in any event, as you sit here now, you're not | 14:17:05 |
| 14 | aware of what disclosures Amazon made in 2014, 2015, or | 14:17:09 |
| 15 | 2016, about keeping voice recordings; is that right? | 14:17:16 |
| 16 |    MS. IZZO:  Objection to form. | 14:17:21 |
| 17 |    THE WITNESS:  At the beginning of this, we | 14:17:23 |
| 18 | already established that I did not look at, you know, | 14:17:25 |
| 19 | Amazon's terms and conditions or privacy policies, which | 14:17:27 |
| 20 | most consumers don't either.  So... | 14:17:30 |
| 21 | BY MR. WAKEFIELD: | 14:17:37 |
| 22 |    Q.  Are you aware that the Washington Post | 14:17:37 |
| 23 | reported about Echo when it first was coming out, that | 14:17:39 |
| 24 | it's a product that records snippets of what you say in | 14:17:44 |
| 25 | the privacy of your home and stores it on Amazon's | 14:17:47 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                    194

| Line | | Time |
|---|---|---|
| 1 | █████████████████████████████ | 14:30:57 |
| 2 | ██████████████████████ | 14:31:01 |
| 3 | ████████████████████ | 14:31:04 |
| 4 | ████████████████████████ | 14:31:07 |
| 5 | ███████████████████ | 14:31:15 |
| 6 | █████████████████████████████ | 14:31:20 |
| 7 | ████████ | 14:31:24 |
| 8 | ███████████████████████ | 14:31:27 |
| 9 | █████████████████████████████ | 14:31:29 |
| 10 | ████████████ | 14:31:31 |
| 11 | ███████████████████████ | 14:31:34 |
| 12 | ████████████████████ | 14:31:39 |
| 13 | █████████████████████████ | 14:31:42 |
| 14 | ███ | 14:31:48 |
| 15 | ████████████████ | 14:31:50 |
| 16 | ██ | 14:31:51 |
| 17 | ██████████████ | 14:31:51 |
| 18 | ████████████████████ | 14:31:52 |
| 19 | █████████████████████████ | 14:31:55 |
| 20 | █████████████████████████ | 14:31:58 |
| 21 | █████████████████████████ | 14:32:02 |
| 22 | ███████████████████████ | 14:32:04 |
| 23 | █████████████████ | 14:32:08 |
| 24 | ████████████████ | 14:32:12 |
| 25 | /// | 14:32:15 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                              195

| Line | Text | Time |
|---|---|---|
| 1 | ███████████ | 14:32:15 |
| 2 | ████████████████████████ | 14:32:17 |
| 3 | ████████████████████████ | 14:32:27 |
| 4 | ███████████████████████████ | 14:32:32 |
| 5 | ████ | 14:32:35 |
| 6 | ████████████████ | 14:32:36 |
| 7 | ██████████████████████████████ | 14:32:41 |
| 8 | ██████████████████████████████ | 14:32:44 |
| 9 | ██████████████████████████████ | 14:32:47 |
| 10 | █ | 14:32:51 |
| 11 | ████████ | 14:32:51 |
| 12 | ████████ | 14:32:53 |

13       Q.   Right.   In other reports you've done, do you       14:32:55

14  put in pincites to the specific parts of documents that       14:32:59

15  support your views?                                           14:33:02

16       MS. IZZO:   Objection to form.                           14:33:04

17       THE WITNESS:   Sometimes, sometimes not.   I'm           14:33:04

18  not a lawyer.   I -- usually in -- in the science             14:33:06

19  literature, pincites are not a thing that anyone usually      14:33:10

20  uses -- well, in computer science, anyway, pincites are       14:33:13

21  absolutely not a thing that appear in research papers.        14:33:19

22       I've only started using pincites in this type            14:33:23

23  of work.   I don't have a copy of the blue book.   I'm not    14:33:26

24  a lawyer.   So, yes, my usage of pincites is                  14:33:28

25  inconsistent.                                                 14:33:32

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                                  196

| | | |
|---|---|---|
| 1 | BY MR. WAKEFIELD: | 14:33:33 |
| 2 |     Q.  All right. | 14:33:34 |
| 3 |     MS. IZZO:  We have been going for almost | 14:33:34 |
| 4 | another hour.  We'd like to take a break, but -- | 14:33:36 |
| 5 |     MR. WAKEFIELD:  This is a good time.  I was | 14:33:38 |
| 6 | going to move on to another document. | 14:33:40 |
| 7 |     MS. IZZO:  Okay.  We can go off the record. | 14:33:41 |
| 8 |     THE VIDEOGRAPHER:  All right.  Going off | 14:33:45 |
| 9 | record at 2:33. | 14:33:47 |
| 10 |     (Whereupon, a recess was taken.) | 14:33:53 |
| 11 |     THE VIDEOGRAPHER:  We are back on record at | 14:44:55 |
| 12 | 2:44. | 14:45:02 |
| 13 | BY MR. WAKEFIELD: | 14:45:03 |
| 14 | ██████████████████████████ | 14:45:04 |
| 15 | ████████████████████ | 14:45:07 |
| 16 | █████████████████████████ | 14:45:12 |
| 17 | ███████████████████████████ | 14:45:25 |
| 18 | ██████████████████████████ | 14:45:28 |
| 19 | ████████████████████ | 14:45:32 |
| 20 | ██████████ | 14:45:36 |
| 21 | ████████████████ | 14:45:37 |
| 22 | █████████████████████ | 14:45:40 |
| 23 | ████████████████████████ | 14:45:46 |
| 24 | ████ | 14:45:56 |
| 25 |     So, where does this document indicate that | 14:46:01 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024

197

| | | |
|---|---|---|
| 1 | ████████████████████████ | 14:46:08 |
| 2 | ███ | 14:46:17 |
| 3 | ████████████ | 14:46:19 |
| 4 | ██████████████████ | 14:46:27 |
| 5 | ███████████████████████ | 14:46:34 |
| 6 | ██████████████████████████ | 14:46:39 |
| 7 | ██████████████████████████ | 14:46:43 |
| 8 | ████████████████████ | 14:46:46 |
| 9 | █████████████████████ | 14:46:50 |
| 10 | ███████████████ | 14:46:56 |
| 11 | ████████████████████████ | 14:46:56 |
| 12 | ███ | 14:47:00 |
| 13 | ██████████████████████ | 14:47:00 |
| 14 | █████████████████ | 14:47:03 |
| 15 | █████████████████ | 14:47:06 |
| 16 | ███████████████████████ | 14:47:10 |
| 17 | █████ | 14:47:15 |
| 18 | ███████████ | 14:47:17 |
| 19 | ██████████████ | 14:47:18 |
| 20 | ████████████████ | 14:47:33 |
| 21 | ████████████████████████ | 14:47:36 |
| 22 | █████████████ | 14:47:39 |
| 23 | █████████████████ | 14:47:42 |
| 24 | ████████████████████ | 14:47:44 |
| 25 | ██████████████ | 14:47:48 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                    198

| # | | Time |
|---|---|------|
| 1 | █████████████████████████ | 14:47:52 |
| 2 | ███████████████████████████████ | 14:47:55 |
| 3 | ████████████████████████ | 14:47:58 |
| 4 | ██████████████ | 14:48:00 |
| 5 | ██████████████████████████████ | 14:48:01 |
| 6 | ████████████████████████████ | 14:48:06 |
| 7 | █████████████████ | 14:48:11 |
| 8 | ██████████████████ | 14:48:13 |
| 9 | ███████ | 14:48:14 |
| 10 | ██████████████████████ | 14:48:19 |
| 11 | █████████████████████ | 14:48:21 |
| 12 | ████████████████████████████ | 14:48:26 |
| 13 | ███████████████████████████ | 14:48:30 |
| 14 | ██████████████████████ | 14:48:34 |
| 15 | ███████████████████████████████ | 14:48:37 |
| 16 | ████████████████████ | 14:48:46 |
| 17 | ██████████████████████████ | 14:48:55 |
| 18 | ███████████████████████████ | 14:48:58 |
| 19 | ████████████████████████████ | 14:49:04 |
| 20 | ████████████ | 14:49:08 |
| 21 | ███████████████ | 14:49:10 |
| 22 | ████████████████████ | 14:49:13 |
| 23 | ████████████████████████████████ | 14:49:15 |
| 24 | █████████████████████████████ | 14:49:18 |
| 25 | ██████████████████████████ | 14:49:25 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                    199

| # | | Time |
|---|---|---|
| 1 | █████████████████████ | 14:49:29 |
| 2 | ████████ | 14:49:33 |
| 3 | ██████████████████████████████ | 14:49:33 |
| 4 | █████ | 14:49:36 |
| 5 | █████ | 14:49:37 |
| 6 | ██████████████████████████████ | 14:49:38 |
| 7 | ███████████████████████ | 14:49:42 |
| 8 | ████████████████████████████ | 14:49:46 |
| 9 | ████████████████████████████ | 14:49:52 |
| 10 | ████████████████████████ | 14:49:56 |
| 11 | ███████████████████████████ | 14:49:59 |
| 12 | ██████████████████████████ | 14:50:02 |
| 13 | ██████████████████ | 14:50:05 |
| 14 | ████████████████ | 14:50:08 |
| 15 | ██████████████████████ | 14:50:15 |
| 16 | ██ | 14:50:21 |
| 17 | ████████████████████████ | 14:50:23 |
| 18 | ████████████████████ | 14:50:25 |
| 19 | █████████████████████ | 14:50:30 |
| 20 | █████████████████████████████ | 14:50:32 |
| 21 | ██████ | 14:50:35 |
| 22 | ████████████████ | 14:50:36 |
| 23 | █████████████████████████ | 14:50:37 |
| 24 | ███ | 14:50:39 |
| 25 | /// | 14:50:39 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                          200

| | | |
|---|---|---|
| 1 | ████████████ | 14:50:39 |
| 2 | ██████████████████████ | 14:50:40 |
| 3 | ███████████████████████ | 14:50:45 |
| 4 | ███████████████████ | 14:50:48 |
| 5 | ███ | 14:50:51 |
| 6 | ███████████ | 14:50:53 |
| 7 | ██████████████ | 14:50:54 |
| 8 | ███████████████████████ | 14:50:56 |
| 9 | ███████████████████████ | 14:50:58 |
| 10 | ████████████████████ | 14:51:01 |
| 11 | ███████████████████████ | 14:51:05 |
| 12 | ████████████████████████ | 14:51:08 |
| 13 | █████████████ | 14:51:11 |

14    BY MR. WAKEFIELD:                                14:51:12

15        Q.  Right.  And we discussed earlier that doing an    14:51:12

16    analysis of potential risks and discussing how to    14:51:14

17    mitigate that risk is a good privacy practice, correct?    14:51:19

18            MS. IZZO:  Objection to form.            14:51:24

19            THE WITNESS:  Generally speaking, yes.    14:51:25

20    BY MR. WAKEFIELD:                                14:51:27

21        Q.  Yeah.  One of the documents that you cite is    14:51:27

22    the document -- in footnote 16, is document ending in    14:51:38

23    008, which is Exhibit 5, which we've already marked.    14:51:45

24        A.  Let me open that up.  Sorry.  Exhibit 5.    14:51:55

25    Exhibit 5 is Tab 3.                              14:52:16

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                               215

| Line | | Time |
|---|---|---|
| 1 | thing. | 15:11:26 |
| 2 | ████████████████████████ | 15:11:29 |
| 3 | █████████████████████████ | 15:11:32 |
| 4 | █████████████████████████ | 15:11:34 |
| 5 | ████████████████ | 15:11:38 |
| 6 | ████████████ | 15:11:40 |
| 7 | ████ | 15:11:42 |
| 8 | ███████████████ | 15:11:43 |
| 9 | █████████ | 15:11:44 |
| 10 | ████████████████ | 15:11:45 |
| 11 | █████████████████████████ | 15:11:48 |
| 12 | ███████████████████ | 15:11:51 |
| 13 | ███████████████████ | 15:11:54 |
| 14 | ████████████████████ | 15:11:57 |
| 15 | ███████████ | 15:12:03 |
| 16 | ██████████ | 15:12:06 |
| 17 | █████████████ | 15:12:08 |
| 18 | ███████████████████ | 15:12:09 |
| 19 | ███████████████████ | 15:12:12 |
| 20 | ██████████████ | 15:12:15 |
| 21 | █████████████████████ | 15:12:19 |
| 22 | █████████████████████ | 15:12:22 |
| 23 | ████████████████ | 15:12:24 |
| 24 | ██ | 15:12:27 |
| 25 | ██████████████ | 15:12:28 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of Serge Engelman, Ph.D.

Conducted on September 6, 2024                    216

| | | |
|---|---|---|
| 1 | BY MR. WAKEFIELD: | 15:12:34 |
| 2 | Q.  Can the volume at which statements are made | 15:12:34 |
| 3 | around the device affect whether a false wake is more or | 15:12:37 |
| 4 | less likely? | 15:12:41 |
| 5 | MS. IZZO:  Objection to form. | 15:12:42 |
| 6 | THE WITNESS:  I don't know the answer to that. | 15:12:44 |
| 7 | BY MR. WAKEFIELD: | 15:12:46 |
| 8 | Q.  Can the accent or diction of the speaker | 15:12:46 |
| 9 | affect the likelihood of a false wake? | 15:12:49 |
| 10 | MS. IZZO:  Objection to form. | 15:12:51 |
| 11 | THE WITNESS:  Probably. | 15:12:52 |
| 12 | BY MR. WAKEFIELD: | 15:12:53 |
| 13 | Q.  Can the presence of background noise in the | 15:12:53 |
| 14 | home or -- or other environment affect the likelihood of | 15:12:56 |
| 15 | a false wake? | 15:13:00 |
| 16 | MS. IZZO:  Objection to form. | 15:13:02 |
| 17 | THE WITNESS:  Probably. | 15:13:04 |
| 18 | BY MR. WAKEFIELD: | 15:13:05 |
| 19 | Q.  Can the acoustics of the room itself where the | 15:13:07 |
| 20 | device is located affect the probability of a false | 15:13:10 |
| 21 | wake? | 15:13:13 |
| 22 | A.  Probably. | 15:13:16 |
| 23 | Q.  Can the proximity of a person to the device | 15:13:17 |
| 24 | when speaking affect the proximity -- the probability of | 15:13:21 |
| 25 | a false wake? | 15:13:23 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                                217

| | | |
|---|---|---|
| 1 | MS. IZZO:  Objection to form. | 15:13:27 |
| 2 | THE WITNESS:  Yeah, probably. | 15:13:28 |
| 3 | BY MR. WAKEFIELD: | 15:13:29 |
| 4 | Q.  Okay.  Are you aware of what disclosures | 15:13:30 |
| 5 | Amazon has made about false wakes? | 15:13:40 |
| 6 | A.  No, I -- we already discussed this.  I am not | 15:13:45 |
| 7 | aware of what disclosures Amazon has made. | 15:13:47 |
| 8 | Q.  Would it surprise you to know that Amazon has | 15:13:50 |
| 9 | told people that they can review recordings and delete | 15:13:56 |
| 10 | them if they want, including recordings from false | 15:14:00 |
| 11 | wakes? | 15:14:04 |
| 12 | MS. IZZO:  Objection to form. | 15:14:04 |
| 13 | THE WITNESS:  I mean, we already have | 15:14:05 |
| 14 | established that that feature has existed, but that most | 15:14:07 |
| 15 | consumers -- you know, many consumers were not aware of | 15:14:09 |
| 16 | that feature and haven't used it.  But I think that's | 15:14:11 |
| 17 | also somewhat orthogonal to this as well, because it's | 15:14:14 |
| 18 | not just that there's a false wake that's occurring. | 15:14:18 |
| 19 | It's the things that Amazon does with the data | 15:14:21 |
| 20 | after the fact that it's determined that the face -- | 15:14:23 |
| 21 | false wake had occurred. | 15:14:27 |
| 22 | BY MR. WAKEFIELD: | 15:14:28 |
| 23 | Q.  Okay.  What is your understanding of what | 15:14:29 |
| 24 | Amazon does when cloud-side verification is unable to | 15:14:34 |
| 25 | confirm the presence of the wake word? | 15:14:39 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                    223

| # | | Time |
|---|---|---|
| 1 | ▬▬ | 15:22:28 |
| 2 | ▬▬▬▬▬▬▬ | 15:22:29 |
| 3 | ▬▬▬▬▬ | 15:22:36 |
| 4 | ▬▬▬▬▬▬▬▬ | 15:22:38 |
| 5 | ▬▬▬▬▬▬▬▬ | 15:22:42 |
| 6 | ▬▬▬▬▬▬▬▬▬ | 15:22:46 |
| 7 | ▬▬▬▬▬▬▬ | 15:22:50 |
| 8 | ▬▬▬▬▬ | 15:22:54 |
| 9 | ▬▬▬▬▬▬ | 15:22:56 |
| 10 | ▬▬▬▬▬▬▬▬ | 15:22:58 |
| 11 | ▬▬▬▬▬▬ | 15:23:01 |
| 12 | ▬▬▬▬▬ | 15:23:04 |
| 13 | ▬▬▬▬▬▬▬▬▬ | 15:23:08 |
| 14 | ▬▬ | 15:23:12 |
| 15 | ▬▬▬ | 15:23:13 |
| 16 | ▬▬▬▬▬▬▬ | 15:23:14 |
| 17 | ▬▬▬▬ | 15:23:20 |
| 18 | ▬▬▬▬ | 15:23:23 |
| 19 | ▬▬▬▬▬▬▬ | 15:23:24 |
| 20 | ▬▬▬▬▬▬▬▬ | 15:23:27 |
| 21 | ▬▬▬▬▬▬▬▬ | 15:23:32 |
| 22 | ▬▬▬▬▬▬▬ | 15:23:37 |
| 23 | ▬▬▬▬ | 15:23:42 |
| 24 | ▬▬ | 15:23:42 |
| 25 | ▬▬▬▬▬▬▬ | 15:23:43 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024

224

| | | |
|---|---|---|
| 1 | ███████████████████ | 15:23:47 |
| 2 | ███████████████████ | 15:23:52 |
| 3 | ███████████████████ | 15:23:54 |
| 4 | ███████████████████ | 15:23:58 |
| 5 | ███████████████████ | 15:24:01 |
| 6 | ███████████████████ | 15:24:06 |
| 7 | ███████████████████ | 15:24:08 |
| 8 | ███████████████████ | 15:24:12 |
| 9 | ███████████████████ | 15:24:16 |
| 10 | ███████████████████ | 15:24:18 |
| 11 | ███████████████████ | 15:24:20 |
| 12 | ███████████████████ | 15:24:22 |
| 13 | ███████████████████ | 15:24:23 |
| 14 | ███████████████████ | 15:24:25 |
| 15 | ███████████████████ | 15:24:28 |
| 16 | ███████████████████ | 15:24:31 |
| 17 | ███████████████████ | 15:24:35 |
| 18 | ███████████████████ | 15:24:40 |
| 19 | ███████████████████ | 15:24:45 |
| 20 | ███████████████████ | 15:24:47 |
| 21 | ███████████████████ | 15:24:51 |
| 22 | ███████████████████ | 15:24:54 |
| 23 | ███████████████████ | 15:24:58 |
| 24 | ███████████████████ | 15:25:00 |
| 25 | ███████████████████ | 15:25:03 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                    225

| | | |
|---|---|---|
| 1 | ████████████████████████████████ | 15:25:05 |
| 2 | ████████████████████ | 15:25:09 |
| 3 | MS. IZZO:  Objection to form. | 15:25:14 |
| 4 | BY MR. WAKEFIELD: | 15:25:15 |
| 5 | Q.  Let me -- do you know what follow-up mode is? | 15:25:16 |
| 6 | A.  Yes. | 15:25:18 |
| 7 | Q.  What is it? | 15:25:18 |
| 8 | A.  It's after the user has interacted with the | 15:25:19 |
| 9 | device, and then they can -- it's sort of a, you know, | 15:25:22 |
| 10 | request and response, and you can interact with the | 15:25:25 |
| 11 | device without having to say the wake word every time, | 15:25:27 |
| 12 | and I guess that's -- to answer a previous question, | 15:25:30 |
| 13 | that's, you know, one technology where it's, you know, | 15:25:33 |
| 14 | wake word free, where we're using wake word free | 15:25:36 |
| 15 | dialogue. | 15:25:42 |
| 16 | ████████████████████████████ | 15:25:42 |
| 17 | ████████████████████████████████ | 15:25:47 |
| 18 | ████████████████████████████████ | 15:25:55 |
| 19 | ██████████████████ | 15:26:00 |
| 20 | ██████████████████████ | 15:26:04 |
| 21 | ██████████████████████████████████ | 15:26:07 |
| 22 | ██████████████████████ | 15:26:11 |
| 23 | ████████████████████████████ | 15:26:14 |
| 24 | ██████████████████████████████████ | 15:26:17 |
| 25 | ████████████████████████████ | 15:26:20 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                                226

| | | |
|---|---|---|
| 1 | ██████████████████████████ | 15:26:24 |
| 2 | ████ | 15:26:27 |
| 3 | ████████████████████████ | 15:26:28 |
| 4 | ███████████████████████████ | 15:26:31 |
| 5 | ███████████████████████████ | 15:26:33 |
| 6 | ████████████████████ | 15:26:36 |
| 7 | █████████████████████████ | 15:26:40 |
| 8 | ███████████████████████████ | 15:26:42 |
| 9 | ███████████████████████████ | 15:26:46 |
| 10 | ██████████████ | 15:26:49 |
| 11 | ████████████████████ | 15:26:50 |
| 12 | ██████████████████████████ | 15:26:53 |
| 13 | ██████████████████████████ | 15:26:58 |
| 14 | ████████████████████████ | 15:27:04 |
| 15 | ████ | 15:27:07 |
| 16 | MS. IZZO:  Objection to form.  He just stated | 15:27:08 |
| 17 | his understanding of the document. | 15:27:11 |
| 18 | █████████████████████ | 15:27:13 |
| 19 | ████████████████████ | 15:27:14 |
| 20 | ████████████████████ | 15:27:18 |
| 21 | ██████████████████████████ | 15:27:21 |
| 22 | ██████████████████████████ | 15:27:24 |
| 23 | █████████████████████████ | 15:27:28 |
| 24 | ████████████████████████ | 15:27:30 |
| 25 | ██████ | 15:27:33 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                          228

| | | |
|---|---|---|
| 1 | BY MR. WAKEFIELD: | 15:28:48 |
| 2 | Q.  Okay, Dr. Egelman, let me know when you have | 15:28:50 |
| 3 | Exhibit 8. | 15:28:51 |
| 4 | A.  Yep. | 15:28:52 |
| 5 | Q.  Okay.  Do you have it? | 15:28:53 |
| 6 | A.  Oh, sorry, I already said yes.  Sorry. | 15:29:26 |
| 7 | Q.  Sorry.  So, you cite Exhibit 8 at the top of | 15:29:28 |
| 8 | paragraph 23. | 15:29:36 |
| 9 | A.  Let me open it up. | 15:29:42 |
| 10 | ██████████████████████████████████ | 15:29:43 |
| 11 | ██████████████████████████████████████ | 15:29:47 |
| 12 | ██████████████████████ | 15:29:50 |
| 13 | A.  Sorry.  I'm looking at my report. | 15:29:59 |
| 14 | Sorry, where in my report are you looking? | 15:30:04 |
| 15 | Q.  Top of paragraph 23. | 15:30:07 |
| 16 | A.  Yep. | 15:30:22 |
| 17 | Q.  Okay.  In that cite, you cite one document for | 15:30:22 |
| 18 | that point, paragraph -- footnote 28, which is | 15:30:29 |
| 19 | Exhibit 8. | 15:30:33 |
| 20 | A.  Uh-huh. | 15:30:34 |
| 21 | █████████████████████████████████ | 15:30:34 |
| 22 | █████████████████████████████████ | 15:30:43 |
| 23 | ████████████ | 15:30:51 |
| 24 | ██████████████████████████████ | 15:30:52 |
| 25 | █████████████████████████████████ | 15:30:54 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                    229

| 1 | ███████████████████████████████ | 15:30:59 |
| 2 | ███████████████████████████████ | 15:31:05 |
| 3 | ████████████████████████ | 15:31:09 |
| 4 | ██████████████████████████ | 15:31:12 |
| 5 | ██████████████████████████ | 15:31:13 |
| 6 | ████████████████████ | 15:31:19 |
| 7 | ███████████ | 15:31:22 |
| 8 | ████████████████████ | 15:31:27 |
| 9 | ██████████████████████████ | 15:31:29 |
| 10 | ██████████████████████████ | 15:31:31 |
| 11 | ████████████████████████ | 15:31:36 |
| 12 | ██████████████████████████ | 15:31:38 |
| 13 | ███████████████████████████████ | 15:31:43 |
| 14 | ██████████████████ | 15:31:46 |
| 15 | ███████████████████ | 15:31:50 |
| 16 | █████████████ | 15:31:55 |
| 17 | ██████████████████████████ | 15:31:58 |
| 18 | █████████ | 15:32:03 |
| 19 | ███████ | 15:32:04 |
| 20 | ██████████ | 15:32:06 |
| 21 | ██████████████████████████ | 15:32:08 |
| 22 | ███████████████████████████ | 15:32:11 |
| 23 | ████████ | 15:32:14 |
| 24 | ██████████████████████████ | 15:32:18 |
| 25 | ███████████████████ | 15:32:20 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                    230

| | |
|---|---|
| 1 | 15:32:22 |
| 2 | 15:32:28 |
| 3 | 15:32:29 |
| 4 | 15:32:32 |
| 5 | 15:32:33 |
| 6 | 15:32:37 |
| 7 | 15:32:41 |
| 8 | 15:32:42 |
| 9 | 15:32:44 |
| 10 | 15:32:48 |

11    Q.   Right.   Do you think it's inappropriate for    15:32:52

12  Amazon to receive and retain recordings that contain the    15:32:57

13  wake word?    15:33:04

14    A.   Oh --    15:33:06

15    MS. IZZO:   Objection to form.    15:33:07

16    THE WITNESS:   I mean, if it's just the wake    15:33:08

17  word that was intended for the device, then probably    15:33:10

18  not.    15:33:13

19  BY MR. WAKEFIELD:    15:33:13

20    Q.   Okay.   Now, if someone says the wake word and    15:33:14

21  then decides not to give a command because they change    15:33:28

22  their mind or something, or someone else starts talking,    15:33:30

23  then you could end up with just some background noise,    15:33:34

24  right?    15:33:36

25    MS. IZZO:   Objection to form.    15:33:38

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                                    231

| | | |
|---|---|---|
| 1 | THE WITNESS:  Yeah, that -- that's true, yeah. | 15:33:40 |
| 2 | BY MR. WAKEFIELD: | 15:33:43 |
| 3 | Q.  Okay.  And you also would have -- there | 15:33:45 |
| 4 | wouldn't be an expressed intent in that interaction, if | 15:33:47 |
| 5 | no one gave a command, right? | 15:33:52 |
| 6 | MS. IZZO:  Objection to form. | 15:33:54 |
| 7 | THE WITNESS:  I mean, it depends on the | 15:33:55 |
| 8 | context, I think. | 15:33:57 |
| 9 | BY MR. WAKEFIELD: | 15:33:58 |
| 10 | ███████████████████████████ | 15:34:03 |
| 11 | ████████████ | 15:34:09 |
| 12 | ██████ | 15:34:11 |
| 13 | ██████████████████████ | 15:34:12 |
| 14 | █████████████ | 15:34:12 |
| 15 | THE REPORTER:  Can we back up and ask that | 15:34:12 |
| 16 | again? | 15:34:12 |
| 17 | MR. WAKEFIELD:  Yeah. | 15:34:20 |
| 18 | BY MR. WAKEFIELD: | 15:34:20 |
| 19 | ████████████████████ | 15:34:20 |
| 20 | ███████████████████████████ | 15:34:24 |
| 21 | ████ | 15:34:29 |
| 22 | ███████████████████████████ | 15:34:29 |
| 23 | ██████████ | 15:34:32 |
| 24 | ██████████████ | 15:34:33 |
| 25 | ██████████████████████ | 15:35:19 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of Serge Engelman, Ph.D.

Conducted on September 6, 2024                    248

| | | |
|---|---|---|
| 1 | Usually, the audio itself is transformed, I mean, with | 16:23:59 |
| 2 | like speech recognition, it usually involves applying a | 16:24:03 |
| 3 | Fourier transform to the data and comparing it to the | 16:24:08 |
| 4 | statistical models of an individual's voice. | 16:24:13 |
| 5 | There are many different methods, but in terms | 16:24:17 |
| 6 | of like the specific algorithms that are used, that's -- | 16:24:19 |
| 7 | that's outside my area of expertise. | 16:24:23 |
| 8 | Q.   Okay.  Do you know whether in developing | 16:24:24 |
| 9 | systems to recognize a speaker, a person speaking, there | 16:24:26 |
| 10 | is often human annotation to teach the machine learning? | 16:24:31 |
| 11 | MS. IZZO:  Objection to form. | 16:24:39 |
| 12 | THE WITNESS:  I think it really depends on, | 16:24:39 |
| 13 | you know, the -- the system being used.  I mean, is | 16:24:42 |
| 14 | there a specific thing that you're asking about? | 16:24:45 |
| 15 | BY MR. WAKEFIELD: | 16:24:47 |
| 16 | Q.   Yeah, well, I'm -- in other words, how -- how | 16:24:48 |
| 17 | does a machine learning system get a ground truth about | 16:24:50 |
| 18 | whether a voice is the same voice from a recording as | 16:24:53 |
| 19 | another voice in a different recording? | 16:24:59 |
| 20 | A.   Oh, labeled training sets. | 16:25:03 |
| 21 | Q.   All right.  In that case, there's probably | 16:25:05 |
| 22 | someone listening to them and labeling them, right? | 16:25:09 |
| 23 | A.   I mean, that's one way.  Again, like I already | 16:25:12 |
| 24 | said, I'm not an expert on this topic specifically.  I'm | 16:25:15 |
| 25 | sure that there are other techniques that are used.  I | 16:25:18 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                    249

| | | |
|---|---|---|
| 1 | am actually not sure what the state-of-the-art is, but, | 16:25:20 |
| 2 | you know, I know enough to be able to say that voice | 16:25:23 |
| 3 | recordings are personally identifiable data and that | 16:25:26 |
| 4 | technology exists that's in widespread deployment that | 16:25:29 |
| 5 | allows speakers to be identified based on, you know, one | 16:25:31 |
| 6 | or two sense -- one or two seconds of audio. | 16:25:37 |
| 7 | Q.  Okay.  Are you aware -- let me ask a different | 16:25:39 |
| 8 | question. | 16:25:46 |
| 9 | Would it surprise you to know that the | 16:25:46 |
| 10 | Plaintiffs in this case misidentified recordings of | 16:25:49 |
| 11 | their own voices? | 16:25:51 |
| 12 | MS. IZZO:  Objection to form. | 16:25:54 |
| 13 | THE WITNESS:  I mean, that wouldn't really | 16:25:56 |
| 14 | surprise me necessarily, no. | 16:25:58 |
| 15 | BY MR. WAKEFIELD: | 16:26:00 |
| 16 | Q.  Okay.  Do you have any understanding of the | 16:26:00 |
| 17 | degree of accuracy of systems that try to match voice | 16:26:06 |
| 18 | recordings to identify a speaker? | 16:26:11 |
| 19 | A.  No, I already said, like, I'm not sure of the | 16:26:14 |
| 20 | state-of-the-art.  That's outside of my expertise, but | 16:26:17 |
| 21 | certainly, these systems are accurate enough that, you | 16:26:19 |
| 22 | know, varying commercial deployment, you know. | 16:26:22 |
| 23 | When I call my bank, I know that they use this | 16:26:25 |
| 24 | when I talk to them on the phone.  Many banks are doing | 16:26:28 |
| 25 | this.  There are lots of applications for this | 16:26:31 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                    250

| | | |
|---|---|---|
| 1 | technology.  It's pretty widespread. | 16:26:33 |
| 2 | Q.  Okay.  So, your bank has some technology to | 16:26:35 |
| 3 | recognize you by your voice? | 16:26:39 |
| 4 | A.  Yes. | 16:26:42 |
| 5 | MS. IZZO:  Objection to form. | 16:26:42 |
| 6 | BY MR. WAKEFIELD: | 16:26:43 |
| 7 | Q.  Is that right? | 16:26:44 |
| 8 | A.  Yes. | 16:26:45 |
| 9 | Q.  And did you have to provide voice data to your | 16:26:45 |
| 10 | bank so that they had a sample? | 16:26:52 |
| 11 | MS. IZZO:  Objection to form. | 16:26:57 |
| 12 | THE WITNESS:  Whether I specifically went | 16:26:59 |
| 13 | through some training exercise with them to give them | 16:27:01 |
| 14 | lots of samples of my voice?  No, I didn't do that.  I | 16:27:03 |
| 15 | believe that they train these models based on your calls | 16:27:07 |
| 16 | to the bank over time. | 16:27:10 |
| 17 | But, certainly, yes, they're trained -- once | 16:27:11 |
| 18 | they authenticate me, they probably use that data to | 16:27:14 |
| 19 | update the models.  But, again, like, the specifics of | 16:27:19 |
| 20 | the commercial applications of this are outside the | 16:27:20 |
| 21 | scope of the report and my expertise. | 16:27:24 |
| 22 | BY MR. WAKEFIELD: | 16:27:26 |
| 23 | Q.  Okay.  In order to determine if a recording -- | 16:27:27 |
| 24 | let me ask a different question. | 16:27:33 |
| 25 | In order to try to determine if a recording is | 16:27:35 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                                            251

| | | |
|---|---|---|
| 1 | from a specific person using an automated system, you | 16:27:40 |
| 2 | would need a sample of that person's voice identified as | 16:27:49 |
| 3 | that person, right? | 16:27:53 |
| 4 |       MS. IZZO:  Objection to form. | 16:27:56 |
| 5 |       THE WITNESS:  I mean, my understanding, yes, | 16:27:58 |
| 6 | but, again, as I said, like, I'm not an expert in that | 16:28:01 |
| 7 | technology specifically. | 16:28:05 |
| 8 | BY MR. WAKEFIELD: | 16:28:08 |
| 9 |    Q.  Do you have any basis to believe that Amazon | 16:28:13 |
| 10 | has technology to definitively identify speakers based | 16:28:15 |
| 11 | only on Alexa recordings? | 16:28:20 |
| 12 |    A.  I don't know about based on Alexa recordings, | 16:28:25 |
| 13 | but I know that AWS offers services to do this.  I mean, | 16:28:27 |
| 14 | Amazon has the technology to do this. | 16:28:32 |
| 15 |    Q.  All right.  What would they -- in order to do | 16:28:35 |
| 16 | that with Alexa recordings, wouldn't you need a sample | 16:28:37 |
| 17 | identified by the person that you're trying to confirm a | 16:28:43 |
| 18 | match to to see -- in other words, if you want to know | 16:28:46 |
| 19 | if this recording that you have is of Dr. Egelman, | 16:28:50 |
| 20 | wouldn't you need to know what Dr. Egelman sounds like? | 16:28:55 |
| 21 |    A.  Yes, presumably, yeah. | 16:29:01 |
| 22 |    Q.  Yeah, right.  And I meant -- let me ask | 16:29:03 |
| 23 | another question. | 16:29:06 |
| 24 |       So, is DNA evidence personally identifiable | 16:29:07 |
| 25 | information? | 16:29:09 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                    258

| | | |
|---|---|---|
| 1 | Okay.  Do you have Exhibit 10 in front of you? | 16:37:17 |
| 2 | A.  I do. | 16:37:19 |
| 3 | ████████████████████████████ | 16:37:20 |
| 4 | ████████████████████████████ | 16:37:30 |
| 5 | ████████████████████████████ | 16:37:36 |
| 6 | ████████████ | 16:37:38 |
| 7 | ██████████████████████ | 16:37:42 |
| 8 | ██████████████████████████████ | 16:37:45 |
| 9 | █████████████████████████████ | 16:37:49 |
| 10 | █████████████████████████████ | 16:37:59 |
| 11 | ██████████████████ | 16:38:05 |
| 12 | MS. IZZO:  Objection to form. | 16:38:08 |
| 13 | BY MR. WAKEFIELD: | 16:38:09 |
| 14 | Q.  It's just acknowledging that it is | 16:38:09 |
| 15 | identifiable? | 16:38:11 |
| 16 | MS. IZZO:  Same objection. | 16:38:12 |
| 17 | THE WITNESS:  I -- I believe Amazon does | 16:38:15 |
| 18 | actually have a way.  They do have enough data at their | 16:38:17 |
| 19 | fingertips that they could identify people if they so | 16:38:20 |
| 20 | chose. | 16:38:23 |
| 21 | BY MR. WAKEFIELD: | 16:38:25 |
| 22 | Q.  You think Amazon could identify every person | 16:38:28 |
| 23 | in an Alexa voice recording? | 16:38:31 |
| 24 | A.  I didn't state that.  I said that they could | 16:38:34 |
| 25 | identify people if they so chose.  Whether they're | 16:38:36 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                    259

| | | |
|---|---|---|
| 1 | successful in identifying everyone, probably doubtful, | 16:38:40 |
| 2 | but Amazon also sits on a lot of data. | 16:38:43 |
| 3 | Q. Okay. What sort of data are you aware of that | 16:38:51 |
| 4 | Amazon could -- could use to identify a specific person | 16:38:53 |
| 5 | in a voice recording? | 16:38:57 |
| 6 | MS. IZZO: Objection to form. | 16:39:00 |
| 7 | THE WITNESS: Amazon hosts most -- a large | 16:39:03 |
| 8 | portion of the web, right, across its many different | 16:39:06 |
| 9 | services. Like, a lot of the web runs across AWS. | 16:39:09 |
| 10 | Amazon is sitting on a lot of data, not just | 16:39:14 |
| 11 | what was collected through Alexa, and thus, they do have | 16:39:17 |
| 12 | information at their fingertips that they could use to | 16:39:21 |
| 13 | identify a large number of people based on their voices, | 16:39:23 |
| 14 | if they so chose. | 16:39:26 |
| 15 | BY MR. WAKEFIELD: | 16:39:29 |
| 16 | Q. Okay. So, you're referring to all of the data | 16:39:29 |
| 17 | that's hosted in AWS? | 16:39:31 |
| 18 | A. Yeah. You just -- the question, as I | 16:39:34 |
| 19 | understand it, is whether they have the capability to | 16:39:36 |
| 20 | identify large amounts of people, and, yes, as a | 16:39:39 |
| 21 | company, Amazon absolutely has a lot of data that they | 16:39:42 |
| 22 | could use to do that. | 16:39:45 |
| 23 | Q. Okay. Setting aside third-party data that's | 16:39:46 |
| 24 | hosted on Amazon.com, which presumably they have agreed | 16:39:53 |
| 25 | not to use and cannot use for such purposes -- | 16:39:58 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of Serge Engelman, Ph.D.

Conducted on September 6, 2024                      260

| | | |
|---|---|---|
| 1 | A.  No true Scots. | 16:40:02 |
| 2 | Q.  Then what other -- what other Amazon data do | 16:40:05 |
| 3 | you think Amazon could use to try to identify speakers | 16:40:12 |
| 4 | in Alexa voice recordings? | 16:40:16 |
| 5 | A.  I mean, again, that's kind of a load-bearing | 16:40:19 |
| 6 | caveat there.  I mean, Amazon does sit on a lot of data. | 16:40:23 |
| 7 | A lot of it is from AWS, which, yes, contractually, they | 16:40:26 |
| 8 | are not supposed to be, you know, poking around with | 16:40:30 |
| 9 | that third-party data because it belongs to other | 16:40:31 |
| 10 | people.  But, you know, the potential -- the capability | 16:40:34 |
| 11 | is there, if they so chose to do that. | 16:40:37 |
| 12 | Q.  Right.  It -- it might -- it might be illegal | 16:40:40 |
| 13 | to do that, right? | 16:40:46 |
| 14 | MS. IZZO:  Objection to form. | 16:40:47 |
| 15 | THE WITNESS:  Yeah.  I mean, we're not | 16:40:49 |
| 16 | talking -- again -- well, I'm not making a legal | 16:40:51 |
| 17 | conclusion here.  The question was whether they have the | 16:40:55 |
| 18 | capability, and yeah, I think they certainly have the | 16:40:57 |
| 19 | capability. | 16:40:59 |
| 20 | BY MR. WAKEFIELD: | 16:41:05 |
| 21 | Q.  So, for example, if they host your bank's | 16:41:05 |
| 22 | systems with your -- where your bank has your voice | 16:41:07 |
| 23 | recording data, one way would be that they would break | 16:41:11 |
| 24 | into your bank's voice profile and try to match it to | 16:41:15 |
| 25 | voice recordings? | 16:41:20 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of Serge Engelman, Ph.D.

Conducted on September 6, 2024

263

| | | |
|---|---|---|
| 1 | ██████████████████████ | 16:44:08 |
| 2 | ███████████████████████ | 16:44:10 |
| 3 | █████████████████████ | 16:44:13 |
| 4 | █████ | 16:44:16 |
| 5 | ██████ | 16:44:37 |
| 6 | ████████████ | 16:44:57 |
| 7 | ████████ | 16:45:05 |
| 8 | ██ | 16:45:13 |
| 9 | ████████████████ | 16:45:15 |
| 10 | ███████████████████████ | 16:45:27 |
| 11 | ███████████████ | 16:45:33 |
| 12 | ██████████ | 16:45:36 |
| 13 | █████ | 16:45:37 |
| 14 | ███ | 16:45:38 |
| 15 | ███████████████ | 16:45:38 |
| 16 | █████████████████ | 16:45:46 |
| 17 | █████████████ | 16:45:49 |
| 18 | ███████████ | 16:45:56 |
| 19 | ███████████████ | 16:46:00 |
| 20 | ████████████ | 16:46:04 |
| 21 | █████████████ | 16:46:07 |
| 22 | ████████████████ | 16:46:10 |
| 23 | ████████████████ | 16:46:12 |
| 24 | ██████ | 16:46:15 |
| 25 | ████████████ | 16:46:20 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of Serge Engelman, Ph.D.

Conducted on September 6, 2024                    264

| | | |
|---|---|---|
| 1 | ████████████████████████████ | 16:46:27 |
| 2 | ████████████████████████████ | 16:46:34 |
| 3 | ████████████████████████ | 16:46:42 |
| 4 | ████████████████████ | 16:46:46 |
| 5 | ████████████████████████████ | 16:46:48 |
| 6 | ████████████████████████████ | 16:46:50 |

```
 7      Q.   Okay.  And we -- in the next paragraph, in 27,    16:46:53

 8   you say that collecting customer data to train and        16:47:08

 9   improve machine learning models is an industry standard   16:47:10

10   practice, right?                                          16:47:13

11      A.   Yep.                                              16:47:16

12      Q.   But it's incumbent on the collector to ensure     16:47:16

13   customers are informed and consent?                       16:47:21

14      A.   Yep.                                              16:47:22

15      Q.   Right?                                            16:47:23

16      A.   Yeah.  That -- yeah, that's what it says.         16:47:25

17      Q.   Yeah, and then you say that Amazon failed to      16:47:28

18   do that here.                                             16:47:31

19      A.   Yeah.                                             16:47:35

20      Q.   And we've already established that you did not    16:47:38

21   review any of Amazon's terms or disclosures or videos or  16:47:40

22   FAQs, right?                                              16:47:46

23      A.   We established also that consumers have, you      16:47:49

24   know, expectations about what's happening to their -- to  16:47:53

25   their data, and that, you know, Amazon was concerned      16:47:55
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of Serge Engelman, Ph.D.

Conducted on September 6, 2024                    267

| | | |
|---|---|---|
| 1 | broadly, that's what Amazon failed to do. | 16:50:12 |
| 2 | Are you -- are you confining that to the use | 16:50:16 |
| 3 | of recordings associated with suspected false wakes? | 16:50:20 |
| 4 | MS. IZZO:  Objection to form. | 16:50:26 |
| 5 | THE WITNESS:  Yeah, I don't -- wait, I don't | 16:50:27 |
| 6 | understand what the question is. | 16:50:29 |
| 7 | BY MR. WAKEFIELD: | 16:50:30 |
| 8 | Q.  Right.  So, I was talking about different ways | 16:50:31 |
| 9 | that people can consent to the use of recordings to -- | 16:50:33 |
| 10 | for machine learning, for Alexa -- to improve Alexa. | 16:50:42 |
| 11 | MS. IZZO:  And I just want to be specific | 16:50:49 |
| 12 | about "people."  Sorry.  You keep referring to people, | 16:50:51 |
| 13 | but we're looking at two sentences which talk about two | 16:50:53 |
| 14 | different groups of people.  So I just want to make sure | 16:50:56 |
| 15 | that we're all following. | 16:50:58 |
| 16 | MR. WAKEFIELD:  Yeah, well, so, okay.  I am | 16:51:00 |
| 17 | specifically talking about paragraph 27, starting at | 16:51:03 |
| 18 | page 11, where you said, "While collecting customer data | 16:51:07 |
| 19 | to train and improve machine learning models is an | 16:51:14 |
| 20 | industry standard practice, it's incumbent on the | 16:51:16 |
| 21 | collector to ensure customers are informed and consent | 16:51:20 |
| 22 | to the collection of the data and how it may be used." | 16:51:24 |
| 23 | And then you go on to say Amazon failed to do | 16:51:29 |
| 24 | that here. | 16:51:31 |
| 25 | A.  Yeah. | 16:51:34 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of Serge Engelman, Ph.D.

Conducted on September 6, 2024                           268

| | | |
|---|---|---|
| 1 | Q.   Is that opinion, that Amazon failed to do that | 16:51:34 |
| 2 | here, about false wakes? | 16:51:38 |
| 3 | A.   I think in general, the fact that, you know, | 16:51:42 |
| 4 | data is being reused for secondary purposes was not | 16:51:45 |
| 5 | apparent to many consumers. | 16:51:49 |
| 6 | Q.   So, that would include just any use of any | 16:51:59 |
| 7 | intentional Alexa command to improve the Alexa service? | 16:52:03 |
| 8 | A.   Beyond -- | 16:52:08 |
| 9 | MS. IZZO:   Form. | 16:52:09 |
| 10 | THE WITNESS:   Yeah, beyond fulfilling the | 16:52:09 |
| 11 | immediate query, sure. | 16:52:12 |
| 12 | BY MR. WAKEFIELD: | 16:52:14 |
| 13 | Q.   Okay.   And is it your opinion that Amazon | 16:52:15 |
| 14 | failed to disclose that and failed to get consent to | 16:52:18 |
| 15 | that? | 16:52:20 |
| 16 | A.   I mean, based on the internal discussions | 16:52:22 |
| 17 | among Amazon employees, they seem to also agree with | 16:52:25 |
| 18 | that assessment. | 16:52:28 |
| 19 | Q.   So, what is the basis for your assertion that | 16:52:38 |
| 20 | individuals who did not register Alexa devices or | 16:52:44 |
| 21 | accounts could not consent? | 16:52:48 |
| 22 | A.   Because they wouldn't have access to the, you | 16:52:53 |
| 23 | know, various settings, for instance, to opt out.   So, | 16:52:55 |
| 24 | when Amazon did, you know, add a feature to, you know, | 16:53:01 |
| 25 | say, opt out of this, there's no way that bystanders who | 16:53:03 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of Serge Engelman, Ph.D.

Conducted on September 6, 2024                        269

| | | |
|---|---|---|
| 1 | don't have access to those settings would have been able | 16:53:06 |
| 2 | to use that feature.  And, you know, again, like I cite | 16:53:09 |
| 3 | I don't know how many papers, but this is a -- this is | 16:53:13 |
| 4 | somewhat well established, that, you know, consumers | 16:53:17 |
| 5 | care about this and don't believe that they're -- | 16:53:20 |
| 6 | they're being adequately informed about the uses of | 16:53:23 |
| 7 | their data. | 16:53:25 |
| 8 | Q.  Okay.  So, are you aware that the -- the | 16:53:28 |
| 9 | proposed classes in this case are, one, people who | 16:53:31 |
| 10 | registered devices, and then, two, people who lived with | 16:53:37 |
| 11 | someone but didn't -- who had -- who had registered an | 16:53:42 |
| 12 | Alexa device -- | 16:53:48 |
| 13 | A.  Yeah. | 16:53:48 |
| 14 | Q.  -- but who did not themselves register an | 16:53:48 |
| 15 | Alexa device. | 16:53:53 |
| 16 | A.  I was not -- | 16:53:54 |
| 17 | Q.  You were not aware of that?  Okay. | 16:53:55 |
| 18 | A.  I was not aware of that. | 16:53:56 |
| 19 | Q.  So, excluding bystanders -- | 16:53:58 |
| 20 | A.  Yeah. | 16:53:59 |
| 21 | Q.  -- and now talking about people who live in a | 16:54:00 |
| 22 | home or apartment or residence with someone who has | 16:54:02 |
| 23 | registered an Alexa device, is it your opinion that | 16:54:09 |
| 24 | those people could not consent? | 16:54:10 |
| 25 | A.  I mean, yeah, I thought we already established | 16:54:18 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                           272

```
1    could control settings, opt in and out, review        16:56:51

2    recordings, delete them, all of that, right?          16:56:57

3         MS. IZZO:  Objection to form.                     16:57:00

4         THE WITNESS:  Yeah, I mean, but that's --         16:57:02

5    that's somewhat posthoc, right?  If they're reviewing  16:57:06

6    the recordings, if they have the ability to review the 16:57:09

7    recordings, that presupposes that those recordings     16:57:12

8    exist.                                                  16:57:14

9    BY MR. WAKEFIELD:                                       16:57:18

10       Q.  In a household, a person could also authorize  16:57:27

11   someone else in their home to register a device for    16:57:30

12   them, right?                                            16:57:33

13        MS. IZZO:  Objection to form.                      16:57:35

14        THE WITNESS:  Yeah, regardless of who             16:57:38

15   registers the device, I mean, that doesn't really change 16:57:40

16   the data collection, you know, practice, the behaviors 16:57:42

17   of that device.                                         16:57:46

18   BY MR. WAKEFIELD:                                       16:57:47

19   ████████████████████████████████████                  16:57:56

20   █████████████████████████████████                      16:58:08

21   █████████████████████████████████████                  16:58:11

22   ███████████████████████████████████                    16:58:17

23   ██████████████████████████████████████                16:58:21

24   ██████████████████████████████████████                16:58:25

25   █████████                                               16:58:31
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Serge Engelman, Ph.D.
Conducted on September 6, 2024                    273

| | | |
|---|---|---|
| 1 | ███████████████████ | 16:58:32 |
| 2 | Q.  Right.  Improving products improves their | 16:58:33 |
| 3 | value for the customers too, right? | 16:58:37 |
| 4 | MS. IZZO:  Objection to form. | 16:58:40 |
| 5 | THE WITNESS:  And I already said this is the, | 16:58:41 |
| 6 | you know, "the ends justify the means" argument, right? | 16:58:46 |
| 7 | BY MR. WAKEFIELD: | 16:58:48 |
| 8 | Q.  I'm not making an argument.  I'm asking, as a | 16:58:48 |
| 9 | factual matter, doesn't it benefit customers to have | 16:58:51 |
| 10 | improved products? | 16:58:54 |
| 11 | MS. IZZO:  Objection to form, asked and | 16:58:57 |
| 12 | answered. | 16:58:58 |
| 13 | THE WITNESS:  Improving -- yes, improving | 16:58:59 |
| 14 | products benefits customers in certain cases, yeah. | 16:59:02 |
| 15 | BY MR. WAKEFIELD: | 16:59:06 |
| 16 | Q.  Okay.  Let me jump to Tab 88 and mark that | 16:59:12 |
| 17 | next. | 16:59:22 |
| 18 | (Whereupon, Exhibit 11 was marked for | 16:59:23 |
| 19 | identification.) | 16:59:24 |
| 20 | TECHNICIAN NEWELL:  Stand by. | 16:59:26 |
| 21 | Okay.  Exhibit 11, Tab 88 is now in the file | 16:59:38 |
| 22 | share. | 16:59:42 |
| 23 | BY MR. WAKEFIELD: | 16:59:49 |
| 24 | Q.  Dr. Egelman, let me know when you have | 16:59:50 |
| 25 | Exhibit 11 in front of you. | 16:59:51 |