THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KAELI GARNER, *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>AMAZON.COM, INC. and AMAZON.COM SERVICES LLC,<br><br>　　　　　　Defendants. | Case No. 2:21-cv-00750-RSL<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF DR. SERGE EGELMAN**<br><br>NOTE ON MOTION CALENDAR: December 12, 2024 |

PLAINTIFFS' OPPOSITION TO MOTION TO
EXCLUDE – DR. SERGE EGELMAN
Case No. 2:21-CV-00750-RSL

**BYRNES KELLER CROMWELL LLP**
1000 SECOND AVENUE, 38TH FLOOR, SEATTLE, WA 98104
TELEPHONE: 206/622-2000• FAX: 206/622-2522

# **TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ........................................................................................................................... 1

LEGAL STANDARD ..................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.    Dr. Egelman Can Opine On Voice Identification Technology As An Expert In Data Privacy, And His Opinion Is Reliable And Should Not Be Excluded (¶¶ 47-51, 52(C)) ................................................................................................................ 2

    II.    Dr. Egelman's Opinion Regarding The Frequency Of False Wakes Is Reliable And Should Not Be Excluded (¶ 18) ............................................................................. 4

    III.    Dr. Egelman's Opinion Regarding Consumers' Lack Of Awareness Of Voice Recordings Is Based On Sufficient Facts And Data And Should Not Be Excluded (¶¶ 36-37, 41) ................................................................................................ 4

    IV.    Dr. Egelman's Opinion Regarding Consumers' Objection To Amazon's Privacy Misconduct Is Based On Sufficient Facts And Data And Should Not Be Excluded (¶¶ 7(f), 27, 36, 41-46) .................................................................................. 6

    V.    Dr. Egelman's Opinion Regarding The Lack Of Consent Should Not Be excluded (¶¶ 27, 52(B), 53) ............................................................................................ 9

    VI.    Dr. Egelman's Opinions Synthesize And Interpret Documentary Evidence And Should Not Be Excluded (¶¶ 9, 12-19, 29, 33, 36) ................................................ 10

    VII.    Dr. Egelman's Opinions Regarding Amazon's Awareness Of Its Privacy Misconduct Should Not Be Excluded (¶¶ 15-16, 20-24, 26, 35, 38-39) ...................... 11

CONCLUSION ............................................................................................................................. 11

PLAINTIFFS' OPPOSITION TO MOTION TO
EXCLUDE – DR. SERGE EGELMAN
Case No. 2:21-cv-00750-RSL

**BYRNES KELLER CROMWELL LLP**
1000 SECOND AVENUE, 38TH FLOOR, SEATTLE, WA 98104
TELEPHONE: 206/622-2000• FAX: 206/622-2522

I

**TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*,
 738 F.3d 960 (9th Cir. 2013) .................................................................................................. 4

*Brooks v. Thomson Reuters Corp.*,
 2023 WL 5667884 (N.D. Cal. Aug. 9, 2023) .......................................................................... 3

*Brown v. Google, LLC*,
 2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) ............................................................... 10, 11

*City of Pomona v. SQM N. Am. Corp.*,
 750 F.3d 1036 (9th Cir. 2014) ................................................................................................ 4

*Cline v. Boston Scientific Corp.*,
 2021 WL 1197794 (W.D. Ark. Mar. 29, 2021) .................................................................... 11

*Collegenet, Inc. v. XAP Corp.*,
 442 F. Supp. 2d 1070 (D. Or. 2006) ....................................................................................... 3

*Elosu v. Middlefork Ranch Inc.*,
 26 F.4th 1017 (9th Cir. 2022) ............................................................................................. 1, 4

*Garner v. Amazon.com, Inc.*,
 603 F. Supp. 3d 985 (W.D. Wash. 2022) ............................................................................... 9

*Gray v. Amazon.com Inc.*,
 653 F. Supp. 3d 847 (W.D. Wash. 2023) ............................................................................... 9

*Hunton v. Am. Zurich Ins. Co.*,
 2018 WL 1182550 (D. Ariz. Mar. 7, 2018) .......................................................................... 11

*In re MyFord Touch Consumer Litig.*,
 291 F. Supp. 3d 936 (N.D. Cal. 2018) ........................................................................... 5, 7, 9

*In re Silicone Gel Breast Implants Prod. Liab. Litig.*,
 318 F. Supp. 2d 879 (C.D. Cal. 2004) .................................................................................... 3

*Int'l Watchman, Inc. v. NATO Strap Co.*,
 2014 WL 12600471 (N.D. Ohio Dec. 19, 2014) .................................................................... 7

*King v. National Gen. Ins. Co.*,
 2024 WL 4445137 (Oct. 8, 2024) ......................................................................................... 10

PLAINTIFFS' OPPOSITION TO MOTION TO
EXCLUDE – DR. SERGE EGELMAN
Case No. 2:21-cv-00750-RSL

**BYRNES KELLER CROMWELL LLP**
1000 Second Avenue, 38th Floor, Seattle, WA 98104
Telephone: 206/622-2000• Fax: 206/622-2522

ii

*Lifeguard Licensing Corp. v. Kozak*,
  2017 WL 908199 (S.D.N.Y. Mar. 7, 2017) ................................................................................ 7

*Medvedeva v. City of Kirkland*,
  2015 WL 11233199 (W.D. Wash. May 18, 2015) ............................................................. 2, 10

*Micro Chemical, Inc. v. Lextron, Inc.*,
  317 F.3d 1387 (Fed. Cir. 20023) ............................................................................................. 8

*Multimedia Patent Trust v. Apple Inc.*,
  2012 WL 12868251 (S.D. Cal. Nov. 19, 2012) ................................................................. 8, 11

*Pelican Int'l, Inc. v. Hobie Cat Co.*,
  655 F. Supp. 3d 1002 (S.D. Cal. 2023) ........................................................................ 5, 9, 10

*Primiano v. Cook*,
  598 F.3d 558 (9th Cir. 2010) (cleaned up) ............................................................................. 2

*See In re Google RTB Consumer Priv. Litig.*,
  2024 WL 2242690 (N.D. Cal. Apr. 4, 2024) ........................................................................... 5

*Summit 6, LLC v. Samsung Elecs. Co.*,
  802 F.3d 1283 (Fed. Cir. 2015) ............................................................................................... 3

*United States v. Nelson*,
  2021 WL 75757 (N.D. Cal. Jan. 8, 2021) ............................................................................... 2

*United States v. School*,
  166 F.3d 964 (9th Cir. 1999) ................................................................................................. 10

*United States v. Vallejo*, 237 F.3d 1008 (9th Cir. 2001),
  *amended on denial of reh'g*, 246 F.3d 1150 (9th Cir. 2001) .................................................. 5

*VirnetX, Inc. v. Cisco Sys., Inc.*,
  767 F.3d 1308 (Fed. Cir. 2014) ............................................................................................... 4

*West v. BNSF Railway Co.*,
  2024 WL 4652206 (E.D. Wash. Nov. 1, 2024) ................................................................... 1, 2

**STATUTES**

18 U.S.C. § 2710(a)(3) ................................................................................................................ 3

740 ILCS 14/10 ........................................................................................................................... 3

Cal. Civ. Code § 1798.140(v)(1)(E) ........................................................................................... 3

PLAINTIFFS' OPPOSITION TO MOTION TO
EXCLUDE – DR. SERGE EGELMAN
Case No. 2:21-cv-00750-RSL

**BYRNES KELLER CROMWELL LLP**
1000 SECOND AVENUE, 38TH FLOOR, SEATTLE, WA 98104
TELEPHONE: 206/622-2000• FAX: 206/622-2522

iii

**RULES**

Fed. R. Evid. 702 ................................................................................................................. 1, 2, 5, 11

**REGULATIONS**

45 C.F.R. § 164.514(b)(2)(i)(P) .................................................................................................... 3

**OTHER AUTHORITIES**

Fed. R. Evid. 702 Committee Note (1) (2023) ............................................................................. 9

Fed. R. Evid. 702 Committee Note (2000) ............................................................................... 2, 8

PLAINTIFFS' OPPOSITION TO MOTION TO
EXCLUDE – DR. SERGE EGELMAN
Case No. 2:21-cv-00750-RSL

**BYRNES KELLER CROMWELL LLP**
1000 SECOND AVENUE, 38TH FLOOR, SEATTLE, WA 98104
TELEPHONE: 206/622-2000• FAX: 206/622-2522

iv

**INTRODUCTION**

Amazon moves to exclude the testimony of Dr. Serge Egelman, a data privacy expert with nearly two decades of experience in the field. ECF No. 255-52 ("Egelman Rep.") ¶ 3. Amazon's alleged bases for exclusion run the gamut, including that Dr. Egelman is unqualified to opine on certain topics despite his extensive experience in the field; supposedly did not consider all the evidence Amazon wants; and allegedly improperly quoted documents while analyzing and interpreting them. Amazon's arguments boil down to this: it does not like what Dr. Egelman has to say. Nor should it. Dr. Egelman's report lends substantial support to Plaintiffs' claims that Amazon improperly recorded, transcribed stored, used, and profited off of Plaintiffs' and Class Members' Alexa device recordings specifically from false wakes. Amazon's disagreement with or dislike of Dr. Egelman's testimony is not a basis to strike it.

"Ultimately, the test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) (cleaned up). So, arguments that Dr. Egelman came to the wrong conclusions (he did not) or reviewed the wrong evidence (he did not) are irrelevant. What is relevant is Dr. Egelman's two decades of data privacy experience, his review of substantial documentation from Amazon and a number of peer-reviewed studies, and his well-supported conclusions based on that experience and evidence. All of this makes the entirety of Dr. Egelman's report admissible under Fed. R. Evid. 702. Amazon's Motion should be denied.

**LEGAL STANDARD**

"In evaluating whether the proffered expert testimony will facilitate the trier of fact's understanding of the evidence or determination of a fact in issue under [Fed. R. Evid.] 702, the Court assesses both the relevance and reliability of the testimony." *West v. BNSF Railway Co.*, 2024 WL 4652206, at *2 (E.D. Wash. Nov. 1, 2024). Expert testimony is admissible if:

> (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is

PLAINTIFFS' OPPOSITION TO MOTION TO EXCLUDE – DR. SERGE EGELMAN
Case No. 2:21-CV-00750-RSL

**BYRNES KELLER CROMWELL LLP**
1000 SECOND AVENUE, 38TH FLOOR, SEATTLE, WA 98104
TELEPHONE: 206/622-2000• FAX: 206/622-2522

1

> the product of reliable principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case.

*Id*. While an expert "may not provide legal conclusions, or opinions on an ultimate issue of law," "[e]xperts are not barred from providing testimony embracing an ultimate issue in a case to be decided by the trier of fact." *Medvedeva v. City of Kirkland*, 2015 WL 11233199, at *2 (W.D. Wash. May 18, 2015) (Lasnik, J.) (cleaned up). "A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 Committee Note (2000).

"The trial court has broad latitude in determining whether an expert's testimony is reliable, as well as in deciding how to determine the reliability of this testimony." *Medvedeva*, 2015 WL 11233199, at *1. However, "[t]he test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (cleaned up). "When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Id.* at 565. "Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge. A district court should not make credibility determinations that are reserved for the jury." *United States v. Nelson*, 2021 WL 75757, at *2 (N.D. Cal. Jan. 8, 2021).

## ARGUMENT

**I.   DR. EGELMAN CAN OPINE ON VOICE IDENTIFICATION TECHNOLOGY AS AN EXPERT IN DATA PRIVACY, AND HIS OPINION IS RELIABLE AND SHOULD NOT BE EXCLUDED (¶¶ 47-51, 52(C))**

*First*, Amazon contends Dr. Egelman should not be able to opine that "voice recordings are inherently personal information" because "none of [Dr. Egelman's] professional experience touches on voice identification and voice prints." *See* Mtn. at 4:5-12 (cleaned up). Not so. Dr. Egelman is being offered as an expert in data privacy based on "nearly twenty years" of experience researching "consumer privacy," including "peer-reviewed research." Egelman Rep. ¶¶ 3, 52; *see also id.* ¶¶ 3-4 (describing Dr. Egelman's data privacy credentials). Whether a piece of information constitutes "personally identifiable information" certainly falls within the purview of data privacy, given

PLAINTIFFS' OPPOSITION TO MOTION TO EXCLUDE – DR. SERGE EGELMAN
Case No. 2:21-cv-00750-RSL

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor, Seattle, WA 98104
Telephone: 206/622-2000 • Fax: 206/622-2522

2

numerous federal and state privacy statutes and regulations touch on this exact issue (*i.e.*, what constitutes "personally identifiable information")—and many even define "personal information" to include one's voice. *See*, *e.g.*, 45 C.F.R. § 164.514(b)(2)(i)(P); Cal. Civ. Code § 1798.140(v)(1)(E); *see also* 18 U.S.C. § 2710(a)(3); 740 ILCS 14/10 (definition of "biometric identifier").

Thus, as a data privacy expert, Dr. Egelman may opine on whether voice recordings are "personally identifiable information." *See Collegenet, Inc. v. XAP Corp.*, 442 F. Supp. 2d 1070, 1073 (D. Or. 2006) ("Hughes works in the field of informational privacy and is a frequent worldwide lecturer and speaker on privacy and e-commerce law … [T]he Court finds Hughes is qualified to give his opinion regarding privacy issues."); *Brooks v. Thomson Reuters Corp.*, 2023 WL 5667884, at *5 (N.D. Cal. Aug. 9, 2023) ("Prof. Turow's expertise also rests on solid credentials and qualifications as a privacy and marketing scholar: he has researched, taught, presented, and been awarded on his work on privacy and digital audience targeting."); *In re Silicone Gel Breast Implants Prod. Liab. Litig.*, 318 F. Supp. 2d 879, 889 (C.D. Cal. 2004) ("[Expert] qualifications are construed broadly … A court abuses its discretion when it excludes expert testimony solely on the ground that the witness's qualifications are not sufficiently specific if the witness is generally qualified.").

*Second*, Dr. Egelman's opinion that "[v]oice prints and recordings are widely-known to be personally-identifiable data" is reliable and admissible. Egelman Rep. ¶ 49. Dr. Egelman based his opinion on Amazon's own documents, the privacy practices used at several other institutions, and various data privacy statutes that, as noted above, classify "personal information" to include one's voice. *Id.* ¶¶ 49-51. Dr. Egelman also based his opinion on the common-sense fact that "[n]o two individuals sound identical" and "each individual has his or her own speaking style," which is why "one can use voice as a bio-metric." *Id*. ¶ 47 (internal quotations omitted). Amazon's criticisms of Dr. Egelman's opinion—aside from being meritless—go to the weight of his conclusion, not the admissibility. *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1299 (Fed. Cir. 2015) ("To the extent Mr. Benoit's credibility, data, or factual assumptions have flaws, these flaws go to the weight of the evidence, not to its admissibility."); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1328

PLAINTIFFS' OPPOSITION TO MOTION TO
EXCLUDE – DR. SERGE EGELMAN
Case No. 2:21-CV-00750-RSL

BYRNES KELLER CROMWELL LLP
1000 SECOND AVENUE, 38TH FLOOR, SEATTLE, WA 98104
TELEPHONE: 206/622-2000• FAX: 206/622-2522

3

(Fed. Cir. 2014) ("[Q]uestions regarding which facts are most relevant … are properly left to the jury.").

## II. DR. EGELMAN'S OPINION REGARDING THE FREQUENCY OF FALSE WAKES IS RELIABLE AND SHOULD NOT BE EXCLUDED (¶ 18)

Amazon argues that Dr. Egelman's opinion that ████████████████ ████████████████████████████████████████████████████████████████ is "unsupported speculation" and not based on "how averages work." Mtn. at 5:11-21. In making this argument, however, Amazon improperly inserts the word "average" into a document where it is not present. In actuality, the document Dr. Egelman cites shows that ████████████████ ████████████████████████████████████████████ Egelman Rep. ¶ 18 (citing AMZ_GARNER_00052921 at 52922). In other words, Dr. Egelman opines—consistent with what Amazon knew from the moment it designed the first Alexa product—that *every* Alexa device experiences false wakes, not just that Alexa devices experience false wakes on average. In any event, whether this document speaks to an actual or average wake rate is a factual question not to be resolved by the Court at the class certification stage or on a motion to exclude expert testimony. *See Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) ("Ultimately, the test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology.") (internal quotations removed); *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 968-69 (9th Cir. 2013) (denying motion to exclude the expert's extrapolation of his methodology to damages because the defendant's challenges did not attack the expert's credentials, qualifications, or methodology, and therefore did not "go to admissibility"); *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) ("A factual dispute is best settled by a battle of the experts before the fact finder, not by judicial fiat.").

## III. DR. EGELMAN'S OPINION REGARDING CONSUMERS' LACK OF AWARENESS OF VOICE RECORDINGS IS BASED ON SUFFICIENT FACTS AND DATA AND SHOULD NOT BE EXCLUDED (¶¶ 36-37, 41)

Defendant argues that because Dr. Egelman "asserted his opinions [that consumers lack awareness of what Alexa records] without reviewing any relevant data, he cannot demonstrate a

reliable (or any) methodology for these opinions." Mtn. at 6:15-16 (emphasis removed). This is incorrect.

*First*, Dr. Egelman *did rely* on sufficient facts and data to reach this conclusion. Specifically, Dr. Egelman relied on several peer-reviewed studies, including studies that examined "existing Alexa users." Egelman Rep. ¶ 36. One study of Alexa users in particular (Malkin et al. (2019)) found that "almost half [of the survey respondents] did not know that their recordings were being permanently stored and that they could review them; only a quarter reported reviewing interactions, and very few had ever deleted any." *Id*. (cleaned up). Given that "an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation," Dr. Egelman was well within the scope of Fed. R. Evid. 702 to proffer his opinions based on these studies. *See United States v. Vallejo*, 237 F.3d 1008, 1021 (9th Cir. 2001), *amended on denial of reh'g*, 246 F.3d 1150 (9th Cir. 2001) (cleaned up). This is on top of Dr. Egelman's two decades of work in the data privacy field, which leaves him able to opine on the expectations of Alexa users. *See In re Google RTB Consumer Priv. Litig.*, 2024 WL 2242690, at *4 (N.D. Cal. Apr. 4, 2024) ("Professor Richards is an expert on consumer privacy expectations and the history of evolving privacy norms in the United States. He is certainly qualified by relevant knowledge, skill, experience, training, or education to comment on the reasonable privacy expectations of Google's account holders.") (cleaned up).

*Second*, Amazon's complaint is not with what Dr. Egelman reviewed, but with what he did *not* review: Amazon's various terms and conditions and privacy policies, as well as some third-party media coverage. Mtn. at 6:7-15. Putting aside for a moment whether any of that was sufficient to disclose the aggrieved of conduct—it clearly was not given the substantial number of survey respondents who remained unaware—"an argument that an expert should have addressed different evidence at best, goes to the weight or credibility of the expert's analysis, not its admissibility." *Pelican Int'l, Inc. v. Hobie Cat Co.*, 655 F. Supp. 3d 1002, 1033 (S.D. Cal. 2023) (cleaned up); *see also In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 969 (N.D. Cal. 2018) ("Though Ford criticizes Mr. Boedeker's decision not to analyze used car sales data, that objection goes to the

PLAINTIFFS' OPPOSITION TO MOTION TO EXCLUDE – DR. SERGE EGELMAN
Case No. 2:21-cv-00750-RSL

**BYRNES KELLER CROMWELL LLP**
1000 Second Avenue, 38th Floor, Seattle, WA 98104
Telephone: 206/622-2000• Fax: 206/622-2522

5

weight of his opinion, not its admissibility. His value analysis is sufficiently reliable to survive *Daubert*.").

### IV. DR. EGELMAN'S OPINION REGARDING CONSUMERS' OBJECTION TO AMAZON'S PRIVACY MISCONDUCT IS BASED ON SUFFICIENT FACTS AND DATA AND SHOULD NOT BE EXCLUDED (¶¶ 7(F), 27, 36, 41-46)

Amazon argues "[t]he Court should exclude [Dr. Egelman's opinion that consumers would object to Amazon's retention and use of Alexa recordings] because Egelman bases them on irrelevant studies that do not support them, and three studies that contradict them." Mtn. at 6:22-24. Amazon is mistaken.

*First*, Amazon argues Dr. Egelman relied on some studies that "concern technologies that are fundamentally different from voice assistants like Alexa." Mtn. at 6:26-27. As an initial matter, Amazon ignores the many studies Dr. Egelman cited that concern Amazon Alexa or voice assistants in general. *See, e.g.*, Egelman Rep. ¶¶ 27 n.35 (Huang et al. (2020)), 36 n.54, 45 n.70, 46 n.73. And even as to the studies that were not specific to Alexa, they still involved voice assistant technologies, including, for example, those technologies used in smartphones (*e.g.*, Apple iPhones using Siri). Egelman Rep. ¶ 42. Dr. Egelman also relied on a study "specifically on in-home virtual assistants, similar to Amazon Alexa," which asked questions "around a generic device … [that] could very well apply to Amazon's Alexa." *Id.* ¶¶ 45, 45 n.69.[1] The other surveys examine consumers of other smart devices, and thus, still support Dr. Egelman's conclusion that consumers "strenuously object to their data being captured without their consent or awareness." Egelman Rep. ¶ 27. Dr. Egelman's opinions remain anchored in the unrebutted facts that Amazon stores undeleted voice recordings and stores transcripts (whether the recording itself was deleted) in perpetuity for its own commercial gain which is contrary to a reasonable person's understanding.

In any event, Amazon's argument that Dr. Egelman examined consumers of similar technology versus the exact technology at issue goes to weight, not admissibility. *See, e.g., In re*

---

[1] Amazon claims that the Tabassum study in footnote 70 of the Egelman Report "explores potential future generations of voice assistants that are 'always listening.'" Mtn. at 7 n.8. But Amazon Alexa ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *See* ECF No. 255-3 at 189:3-6.

PLAINTIFFS' OPPOSITION TO MOTION TO
EXCLUDE – DR. SERGE EGELMAN
Case No. 2:21-cv-00750-RSL

BYRNES KELLER CROMWELL LLP
1000 SECOND AVENUE, 38TH FLOOR, SEATTLE, WA 98104
TELEPHONE: 206/622-2000• FAX: 206/622-2522

6

*MyFord Touch Consumer Litig.*, 291 F. Supp. 3d at 973 ("Ford's argument is essentially that *better* evidence exists to determine historic market value, but that is an argument going to the weight of Mr. Boedeker's analysis, not its admissibility under Daubert.") (emphasis in original); *Lifeguard Licensing Corp. v. Kozak*, 2017 WL 908199, at *5 (S.D.N.Y. Mar. 7, 2017) ("The plaintiffs' objections to the universes used in the defendants' experts' surveys … do not counsel in favor of excluding the reports."); *Int'l Watchman, Inc. v. NATO Strap Co.*, 2014 WL 12600471, at *2 (N.D. Ohio Dec. 19, 2014) ("[T]he Court finds that any challenge to the relevant universe can be argued to the jury through cross-examination.  Because the issue affects weight, as opposed to admissibility, the argument is rejected.").

*Second*, Amazon's cherry-picked quotes from several of the studies Dr. Egelman cites do not undermine his opinions. *See* Mtn. at 8:1-21.  As to Malkin et al. (2018), Amazon cites a *single figure* for its argument that many consumers were "aware that audio data from smart devices was used to improve the machine learning algorithms and [] found this practice acceptable." Mtn. at 8:13-14. On the whole though, the study found, among other things that: (i) "[o]verall, respondents felt strongly that it would be unacceptable for [] data to be shared," including with "hardware manufacturers" like Amazon (Malkin et al. (2018) at 6); (ii) 60% of survey respondents were either unsure or did not think their voice recordings would be accessed by a human being (Malkin et al. (2018) at 4 (Fig. 2)); and (iii) more than 70% of survey respondents believed their voice recordings would be analyzed on the smart device itself, as opposed to being transmitted and analyzed elsewhere (Malkin et al. (2018) at 4 (Fig. 1)).  Even the figure Amazon cites shows the majority of consumers in almost every category do not find it acceptable to have others access their data. Malkin et al. (2018) at 4 (Fig. 3).

As to Huang et al. (2020), Amazon contends this study shows "consumers of shared smart speakers trust manufacturers and support sharing their audio data to improve the service"—although it fails to cite a specific page of this study for that proposition.  Mtn. at 8:15-16.  Huang surveyed consumers who used Amazon Alexa products, or competitor voice assistant products.  Huang et al. (2020) at 4 (Table 1).  Huang found that:

PLAINTIFFS' OPPOSITION TO MOTION TO EXCLUDE – DR. SERGE EGELMAN
Case No. 2:21-cv-00750-RSL

**BYRNES KELLER CROMWELL LLP**
1000 SECOND AVENUE, 38TH FLOOR, SEATTLE, WA 98104
TELEPHONE: 206/622-2000• FAX: 206/622-2522

7

> A popular concern identified by the participants was the collection of data by speaker manufacturers. Consistent with previous findings [] our participants were also concerned about the uncertainty and scope of the data being collected. Unique to our study is the finding that participants were concerned with the usage of the collected data by the speaker company.

*Id.* at 6.

As to Malkin et al. (2019), Amazon contends this study shows "many consumers are aware that providers of voice assistants like Amazon collect and store voice recordings and that consumers accept this behavior," and that "the overwhelming majority of consumers did not consider their interactions sensitive." Mtn. at 8:18-21 (cleaned up). But this study also found that "almost as many people incorrectly believed that their audio is only saved temporarily," or were unsure about the same. Malkin et al. (2019) at 255. And many participants found it completely or somewhat unacceptable for their "recordings being stored forever." *Id.* at 256. In addition, whether the recordings are "sensitive" is not an issue in the case—any impermissible use of the voice recordings is actionable. And, the study found respondents "felt markedly different about stored interactions of people other than themselves," like children and guests. *Id.* at 264. Finally, even if some respondents did not object to the use of their recordings to improve the service, Plaintiffs also allege Amazon used this data for a host of other purposes unrelated to Alexa without Plaintiffs' knowledge. No study suggests consumers would approve of such use of their data.

Thus, each of the studies Dr. Egelman cites support his opinions. That Amazon has a different (incorrect) view of the evidence is not a basis to strike Dr. Egelman's opinions. *Micro Chemical, Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 20023) ("[I]t is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Multimedia Patent Trust v. Apple Inc.*, 2012 WL 12868251, at *2 (S.D. Cal. Nov. 19, 2012) ("[D]isagreement with an expert's version of the facts is not a proper basis to exclude his testimony under *Daubert*."); Fed. R. Evid. 702 Committee Note (2000) ("The emphasis in the amendment on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.").

PLAINTIFFS' OPPOSITION TO MOTION TO EXCLUDE – DR. SERGE EGELMAN
Case No. 2:21-cv-00750-RSL

8

**BYRNES KELLER CROMWELL LLP**
1000 SECOND AVENUE, 38TH FLOOR, SEATTLE, WA 98104
TELEPHONE: 206/622-2000• FAX: 206/622-2522

### V.  DR. EGELMAN'S OPINION REGARDING THE LACK OF CONSENT SHOULD NOT BE EXCLUDED (¶¶ 27, 52(B), 53)

Amazon argues "[t]he Court should also exclude Egelman's improper legal conclusions about whether users expressly or impliedly consented to Alexa recordings." Mtn. at 9:9-10. Amazon's argument rests on shaky ground.

*First*, Amazon contends Dr. Egelman's opinion "contradicts the May 6, 2022 Order dismissing Registrants' state wiretap claims." Mtn. at 9:17-18. Not so. The Court previously found "Registered user plaintiffs … consented *to the recordings*." *Garner v. Amazon.com, Inc.*, 603 F. Supp. 3d 985, 999 (W.D. Wash. 2022) (emphasis added). The Court did not rule on "[w]hether Amazon adequately disclosed how long it stores the recordings and what it does with them after they are made" because the Washington wiretap claim only "focuses on whether the recordings were unlawfully made and does not address or prohibit post-recording activities." *Id*. In fact, the Court found that (i) the Unregistered Plaintiffs plausibly alleged "their conversations were recorded without consent," and (ii) the Registered Plaintiffs plausibly alleged "that Amazon failed to accurately describe what it does with voice interactions, intentional or not" for the purposes of their WCPA claim. *Id.* at 999-1000. Thus, Dr. Egelman's opinion is well within the confines of the Court's May 6, 2022 Order.[2]

*Second*, Amazon claims Dr. Egelman's opinion on this topic should be struck because "he reviewed none of the disclosures that Amazon provides" and "his opinion merely repackages Plaintiffs' legal arguments on elements of their wiretapping claims." Mtn. at 9:13-15. As to the former, again, Dr. Egelman is not required to review every piece of documentary evidence to make his opinion reliable. Fed. R. Evid. 702 Committee Note (1) (2023); *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d at 969; *Pelican International, Inc.* 655 F. Supp. 3d at 1033. This is especially true where, as here, Plaintiffs have submitted separate expert testimony that a reasonable consumer would not understand Amazon's various terms and privacy policies to disclose the aggrieved of

---

[2] In *Gray v. Amazon.com Inc.*, 653 F. Supp. 3d 847, 858 (W.D. Wash. 2023), the court found Amazon disclosed its "use of Alexa-captured voice data for advertising purposes." This is different than Plaintiffs' allegations here, which concern Amazon's (undisclosed) permanent storage of recording transcripts and use of the same to improve Alexa devices—including by divulging the same to human reviewers—without users' consent. *Garner*, 603 F. Supp. 3d at 1001; *see also* ECF No. 255 at 1.

PLAINTIFFS' OPPOSITION TO MOTION TO EXCLUDE – DR. SERGE EGELMAN
Case No. 2:21-CV-00750-RSL

9

**BYRNES KELLER CROMWELL LLP**
1000 SECOND AVENUE, 38TH FLOOR, SEATTLE, WA 98104
TELEPHONE: 206/622-2000• FAX: 206/622-2522

conduct. *See generally* ECF No. 255-44 (expert report of David Hoffman). Thus, Amazon's arguments "at best, go[] to the weight or credibility of [Dr. Egelman's] analysis, not its admissibility." *Pelican International, Inc.* 655 F. Supp. 3d at 1033 (internal quotations omitted).

As to the latter, Dr. Egelman does not make any legal arguments, but instead cites documentary evidence for his conclusion that Amazon failed to procure consent for the aggrieved of practices. Egelman Rep. ¶ 27. Dr. Egelman is not prohibited from "providing testimony embracing an ultimate issue in a case to be decided by the trier of fact." *Medvedeva*, 2015 WL 112233199, at *2 (cleaned up).

### VI. DR. EGELMAN'S OPINIONS SYNTHESIZE AND INTERPRET DOCUMENTARY EVIDENCE AND SHOULD NOT BE EXCLUDED (¶¶ 9, 12-19, 29, 33, 36)

Amazon seeks to exclude many paragraphs of Dr. Egelman's report because they allegedly "amount to nothing more than a recitation of other documents." Mtn. at 9:26-27-11. This argument fails. While Dr. Egelman's report does reference documents produced in discovery, he does not just regurgitate what those documents say. Instead, Dr. Egelman's "opinions analyze the[] [documents] by synthesizing information from a variety of different sources, including both [Amazon's] internal documents and public documents," as well as drawing from his own personal experiences based on nearly twenty years of research in the field. *Brown v. Google, LLC*, 2022 WL 17961497, at *12 (N.D. Cal. Dec. 12, 2022) (denying to exclude an expert's opinions despite a challenge that the expert "merely regurgitate[d] attorney argument[s]"); *see also* Egelman Rep. ¶¶ 9, 12, 13, 14, 15, 16, 17, 18, 19, 29, 33, 36. After synthesizing Amazon's internal and public documents, Dr. Egelman put into his report his own "interpretation and meaning of certain trends seen within [Amazon] and the risks associated with such trends." *Brown*, 2022 WL 17961497, at *12; *see also King v. National Gen. Ins. Co.*, 2024 WL 4445137, at *10 (Oct. 8, 2024) (declining to strike expert testimony where expert declaration "synthesize[s] and interpret[s] technical documents … using [expert's] knowledge); *United States v. School*, 166 F.3d 964, 973 (9th Cir. 1999) (noting function of expert is to "interpret and analyze factual evidence") (cleaned up).

### VII. DR. EGELMAN'S OPINIONS REGARDING AMAZON'S AWARENESS OF ITS PRIVACY MISCONDUCT SHOULD NOT BE EXCLUDED (¶¶ 15-16, 20-24, 26, 35, 38-39)

Amazon seeks to exclude some of Dr. Egelman's opinions that "purport[] to interpret Amazon's subjective beliefs and motivations about the use of Alexa recordings." Mtn. at 10:24-25. Contrary to Amazon's arguments, Dr. Egelman is not engaged in "speculation." Mtn. at 12:26. Instead, as above Dr. Egelman analyzed and synthesized the relevant documents and put into his report his own "interpretation and meaning of" the evidence. *Brown*, 2022 WL 17961497, at *12. This is permissible and within the scope of Fed. R. Evid. 702. To the extent Amazon disagrees with Dr. Egelman's conclusions, that is not a basis to exclude his opinions altogether. *See, e.g., Multimedia Patent Trust*, 2012 WL 12868251, at *2 ("[D]isagreement with an expert's version of the facts is not a proper basis to exclude his testimony under *Daubert*.").

Further, Dr. Egelman is not opining on Amazon's beliefs as to the privacy misconduct at issue. Instead, Dr. Egelman is opining that Amazon knew the Alexa devices were recording false wakes and that the recordings were being analyzed and used, which reinforces Dr. Egelman's conclusions that this conduct was in fact occurring. *See* Egelman Rep. ¶¶ 15-16, 20-24, 26, 35, 38-39; *see also Hunton v. Am. Zurich Ins. Co.*, 2018 WL 1182550, at *2 (D. Ariz. Mar. 7, 2018) (finding that while expert could not opine on whether party "acted knowingly," he could "present evidence, including in the form of expert opinions, of pervasive claims handling failures"); *Cline v. Boston Scientific Corp.*, 2021 WL 1197794, at *3 (W.D. Ark. Mar. 29, 2021) ("Dr. Mays's report does not contain impermissible state-of-mind opinions about the makers of Marlex polypropylene. He has merely paraphrased the MSDS warning and explained how his own scientific opinion about the product reinforces the validity of the warning.").

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court deny Defendants' Motion.

| | | |
|---|---|---|
| 1 | Dated: November 21, 2024 | Respectfully submitted, |
| 2 | | **BYRNES KELLER CROMWELL LLP** |
| 3 | | By: /s/ *Bradley S. Keller* |
| | |     Bradley S. Keller |

BRADLEY S. KELLER (WSBA# 10665)
1000 Second Avenue, 38th Floor
Seattle, WA 98104
Telephone: 206/622-2000
206/622-2522 (fax)
bkeller@byrneskeller.com

*Interim Liaison Counsel*

**ROBBINS GELLER RUDMAN & DOWD LLP**
PAUL J. GELLER
STUART A. DAVIDSON
(admitted *pro hac vice*)
MARK J. DEARMAN
(admitted *pro hac vice*)
ALEXANDER C. COHEN
(admitted *pro hac vice*)
NICOLLE B. BRITO
(admitted *pro hac vice*)
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
sdavidson@rgrdlaw.com
mdearman@rgrdlaw.com
acohen@rgrdlaw.com
nbrito@rgrdlaw.com

**LABATON KELLER SUCHAROW LLP**
MICHAEL P. CANTY
(admitted *pro hac vice*)
CAROL C. VILLEGAS
(admitted *pro hac vice*)
GUILLAUME BUELL
(admitted *pro hac vice*)
DAVID SALDAMANDO
(admitted *pro hac vice*)
DANIELLE IZZO
(admitted *pro hac vice*)
140 Broadway, 34th Floor
New York, NY 10005
Telephone: 212/907-0700
212/818-0477 (fax)
mcanty@labaton.com

PLAINTIFFS' OPPOSITION TO MOTION TO
EXCLUDE – DR. SERGE EGELMAN
Case No. 2:21-CV-00750-RSL

**BYRNES KELLER CROMWELL LLP**
1000 SECOND AVENUE, 38TH FLOOR, SEATTLE, WA 98104
TELEPHONE: 206/622-2000• FAX: 206/622-2522

12

villegas@labaton.com
gbuell@labaton.com
dsaldamando@labaton.com
dizzo@labaton.com

*Interim Co-Lead Class Counsel*

**BURSOR & FISHER, P.A.**
L. TIMOTHY FISHER
(admitted *pro hac vice*)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: 925/300-4455
925/407-2700 (fax)
ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
ALEC M. LESLIE
(admitted *pro hac vice*)
MAX S. ROBERTS
(admitted *pro hac vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: 646/837-7150
212/989-9163 (fax)
aleslie@bursor.com
mroberts@bursor.com

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
ROBERT K. SHELQUIST
(admitted pro hac vice)
REBECCA A. PETERSON
(admitted pro hac vice)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401-2159
Telephone: 612/339-6900
612/339-0981 (fax)
rkshelquist@locklaw.com
rapeterson@locklaw.com

**ZIMMERMAN REED, LLP**
BRIAN C. GUDMUNDSON
(admitted *pro hac vice*)
JASON P. JOHNSTON
(admitted *pro hac vice*)
MICHAEL J. LAIRD
(admitted *pro hac vice*)
1100 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: 612/341-0400
612/341-0844 (fax)
brian.gudmundson@zimmreed.com
jason.johnston@zimmreed.com
michael.laird@zimmreed.com

**ZIMMERMAN REED LLP**
CALEB MARKER (admitted *pro hac vice*)
2381 Rosecrans Avenue, Suite 328
Manhattan Beach, CA 90245
Telephone: 877/500-8780
caleb.marker@zimmreed.com

*Interim Class Counsel*

---

PLAINTIFFS' OPPOSITION TO MOTION TO
EXCLUDE – DR. SERGE EGELMAN
Case No. 2:21-CV-00750-RSL

**BYRNES KELLER CROMWELL LLP**
1000 SECOND AVENUE, 38TH FLOOR, SEATTLE, WA 98104
TELEPHONE: 206/622-2000• FAX: 206/622-2522

14

**LOCAL RULE 7.1(E) CERTIFICATION**

I hereby certify that this memorandum contains 4,199 words, in compliance with Local Civil Rule 7(e)(4).

By: */s/ Bradley S. Keller*
Bradley S. Keller

PLAINTIFFS' OPPOSITION TO MOTION TO EXCLUDE – DR. SERGE EGELMAN
Case No. 2:21-CV-00750-RSL

**BYRNES KELLER CROMWELL LLP**
1000 SECOND AVENUE, 38TH FLOOR, SEATTLE, WA 98104
TELEPHONE: 206/622-2000• FAX: 206/622-2522

15