THE HONORABLE ROBERT S. LASNIK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| KAELI GARNER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC. and AMAZON.COM SERVICES LLC,<br><br>Defendants. | Case No. 2:21-cv-00750-RSL<br><br>**PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' PROFFERED EXPERT REPORT, OPINION, AND TESTIMONY OF LORIN HITT**<br><br>NOTE ON MOTION CALENDAR:<br>March 13, 2025<br><br>**ORAL ARGUMENT REQUESTED** |



**BYRNES KELLER CROMWELL LLP**
1000 SECOND AVENUE, 38TH FLOOR, SEATTLE, WA 98104
TELEPHONE: 206/622-2000• FAX: 206/622-2522

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

I. INTRODUCTION ........ 1

II. LEGAL STANDARD ........ 2

III. ARGUMENT ........ 3

A. Hitt's Report Is Untimely ........ 3

B. Hitt Lacks Qualifications ........ 3

1. Legal Conclusions ........ 4

2. Computer Science Conclusions (Report ¶¶15-29, 77-80) ........ 4

3. Data Marketplace Conclusions (Report ¶¶36–46, 57–72) ........ 5

4. Hitt's Economics Expertise Has No Bearing Here ........ 5

C. Hitt's Report Improperly Opines on Legal ........ 6

D. Hitt's Report Lacks a Reliable Methodology ........ 6

1. Hitt Failed To Conduct Independent Analysis ........ 6

2. Hitt's Sources Contradict His Conclusions ........ 7

3. There is an "Analytical Gap" Between Hitt's Remaining Conclusions and Cited Sources ........ 9

E. Hitt's Only Attempt To Provide A Methodology Fails ........ 11

IV. CONCLUSION ........ 13




**BYRNES KELLER CROMWELL LLP**
1000 SECOND AVENUE, 38TH FLOOR, SEATTLE, WA 98104
TELEPHONE: 206/622-2000• FAX: 206/622-2522

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bunker v. Ford Motor Co.*,
640 F. App'x 661 (9th Cir. 2016) .......... 3

*Call Delivery Sys., LLC v. Morgan*,
2022 WL 1252412 (C.D. Cal. Mar. 7, 2022) .......... 7

*Cook v. Cnty. of Los Angeles*,
2022 WL 1470574 (C.D. Cal. Mar. 21, 2022) .......... 3

*Daubert v. Merrell Dow Pharms., Inc.*,
43 F.3d 1311 (9th Cir. 1995) .......... 5

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .......... 1, 2

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) .......... 2

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F. 3d 589 (9th Cir. 2020) .......... 6

*In re Google RTB Consumer Priv. Litig.*,
2024 U.S. Dist. LEXIS 119157 (N.D. Cal. Apr. 4, 2024) .......... 1, 6

*Henricksen v. ConocoPhillips Co.*,
605 F. Supp. 2d 1142 (E.D. Wash. 2009) .......... 7

*Mariscal v. Graco, Inc.*,
2014 WL 4245949 (N.D. Cal. Aug. 27, 2014) .......... 7

*Newkirk v. ConAgra Foods, Inc.*,
727 F. Supp. 2d 1006 (E.D. Wash. 2010) .......... 6

*In re Silicone Gel Breast Implants Prods. Liab. Litig.*,
318 F. Supp. 2d 879 (C.D. Cal. 2004) .......... 2

*ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*,
648 F. App'x 609 (9th Cir. 2016) .......... 6

*Turner v. Nuance Commc'ns*,
2024 U.S. Dist. LEXIS 94614 (N.D. Cal. May 28, 2024) .......... 12

*Winston v. Lee*,
470 U.S. 753 (1985) .......... 11



**BYRNES KELLER CROMWELL LLP**
1000 Second Avenue, 38th Floor, Seattle, WA 98104
Telephone: 206/622-2000• Fax: 206/622-2522

**Statutes and Rules**

Electronic Communications Privacy Act of 1986 (ECPA), 18 U.S.C. §§ 2510-2523 .................. 12

Federal Rule of Evidence 403 .................................................................................... 3

Federal Rule of Evidence 702 .................................................................................. 1, 2, 3

Wash. Rev. Code §9.73.030 ........................................................................................ 12

**Other Authorities**

Factiva ........................................................................................................................ 9

Kirsten Martin and Katie Shilton, *Why Experience Matters to Privacy: How Context-Based Experience Moderates Consumer Privacy Expectations for Mobile Applications* (Apr. 26, 2015) ............................................................... 8

Madiha Tabassum, Tomasz Kosiński, Alisa Frik, Nathan Malkin, Primal Wijesekera, Serge Egelman, and Heather Richter Lipford. 2020. *Investigating Users' Preferences and Expectations for Always-Listening Voice Assistants*. Proc. ACM Interact. Mob. Wearable Ubiquitous Tech. 3, 4, Article 153 (Dec. 2019) ........................................................................................................ 11

N. Malkin, J. Bernd, M. Johnson, S. Egelman. "What can't data Be used for?": privacy expectations about smart TVs in the U.S. Proc. 3rd Euro. Workshop Useable Secur., Internet Society, London, England (Apr. 2018), 10.14722/eurousec.2018.23016 ................................................................. 11

Spyros Kokolakis, *Privacy attitudes and privacy behavior: A review of current research on the privacy paradox phenomenon,* Computers & Security (vol. 64, Jan. 2017) ..................................................... 8



**BYRNES KELLER CROMWELL LLP**
1000 SECOND AVENUE, 38TH FLOOR, SEATTLE, WA 98104
TELEPHONE: 206/622-2000• FAX: 206/622-2522

Plaintiffs Kaeli Garner, Jodi Brust, Michael McNealy, Ricky Babani, Jeffrey Hoyt, Lorlie Tesoriero, Selena Johnson, Ronald Johnson, and Caron Watkins (collectively, "Plaintiffs") respectfully move the Court to exclude the proffered opinion, testimony,[1] and Expert Report of Lorin Hitt Ph.D. ("Hitt"), dated October 2, 2024 (ECF No. 300, the "Report")[2], submitted on behalf of Defendants Amazon.com, Inc. and Amazon.com Services LLC ("Defendants" or "Amazon"). Plaintiffs make this motion pursuant to Federal Rule of Evidence 702 ("Rule 702") and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).[3]

## I. INTRODUCTION

Hitt purports to rebut Plaintiffs' experts' opinions, submitted by David Hoffman, Jonathan Hochman, and Dr. Serge Egelman (together, "Plaintiffs' Experts"). However, Hitt's rebuttal attempt is improper and must be excluded for the following reasons:

**First**, Hitt—an economist—lacks the qualifications and expertise necessary to support his highly technical opinions which concern privacy law, machine learning, artificial intelligence, and economic markets for data. Nonetheless, Hitt reaches highly technical conclusions in these areas, including legal conclusions that contradict the actual law. *See In re Google RTB Consumer Priv. Litig.,* 2024 U.S. Dist. LEXIS 119157 (N.D. Cal. Apr. 4, 2024) (excluding expert opinion on class members' state of mind regarding privacy violation, because "whether someone has a reasonable expectation of privacy is an objective, and therefore common, inquiry."). Hitt's irrelevant opinions will only confuse and mislead the jury and should be excluded for that reason alone.

**Second**, Hitt's Report should be excluded because it is unreliable. Hitt's Report lacks independent analysis and, instead, relies on a panoply of sources that actually *undermine* his opinions. Hitt fails to address (or even acknowledge) the contradictions between his Report's citations and ultimate conclusions. Hitt cites several sources which fail to analyze data regarding voice recordings

---

[1] All references to Exhibits are to the Declaration of Danielle Izzo, dated February 12, 2025, filed simultaneously herewith.

[2] *E.g.*, Deposition Transcript of Lorin M. Hitt, Ph.D. on November 13, 2024, attached hereto as **Exhibit A** ("Hitt Tr.").

[3] Internal citations and quotations are omitted and all emphasis is added throughout.



BYRNES KELLER CROMWELL LLP
1000 SECOND AVENUE, 38TH FLOOR, SEATTLE, WA 98104
TELEPHONE: 206/622-2000• FAX: 206/622-2522

or in-home privacy, creating an analytical gap between the cited data and the facts of this case. Finally, Hitt did not select the data to be cited in his Report, but inappropriately delegated that responsibility to a third party, Cornerstone Research.

**Third**, Hitt's Report is unreliable because its purported methodology ignores critical facts. Hitt alleges without support that individuals conduct implicit cost benefit analyses upon using Alexa.[4] Hitt also fails to consider critical facts in weighing the costs and benefits. Most notably, Hitt fails to address the fact that Amazon misrepresented Alexa's true characteristics to consumers (*e.g.*, failing to disclose that recordings would be reviewed by humans). By failing to consider this and other critical facts, Hitt's methodology is unhelpful to the trier of fact, its probative value is substantially outweighed by unfair prejudice and confusion of the issues, and is otherwise fatally flawed.

## II. LEGAL STANDARD

Expert testimony is only admissible if "[a] witness [] is qualified [] by knowledge, skill, experience, training, or education" and "if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. Under Rule 702, expert testimony may be excluded, if it is unreliable, irrelevant, or unnecessary. *Daubert* 509 U.S. at 591-92, 597. "[T]he trial court must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011). Amazon bears the burden of establishing by a preponderance of evidence that Hitt's opinions meet the admissibility standards of Rule 702. *See In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 318 F. Supp. 2d 879, 889 (C.D. Cal. 2004).

[4] Terms not defined herein are defined as in the operative Complaint ("Complaint," ECF No. 59).


BYRNES KELLER CROMWELL LLP
1000 SECOND AVENUE, 38TH FLOOR, SEATTLE, WA 98104
TELEPHONE: 206/622-2000• FAX: 206/622-2522

## III. ARGUMENT

Hitt's Report is flawed and should be excluded in its entirety. Because of these flaws, Hitt's conclusions contradict each other and create confusion unhelpful to a fact finder pursuant to Fed. R. Evid. 403 and 702. Hitt's Report argues that [redacted]. However, this conclusion cannot square with Hitt's circular analysis. Hitt explicitly acknowledges that [redacted] Report ¶29, 77-82. This acknowledgment upends the overall premise of Hitt's Report and demonstrates that Hitt's conclusions should be excluded.

### A. Hitt's Report Is Untimely

Hitt's Report is not a proper rebuttal expert report and must be excluded because it offers affirmative opinions about issues not raised by Plaintiffs' Experts. *See, e.g.,* Report ¶¶29, 34 n. 61, 37, 74, 77, 81–82, 99–100, 104–07, 111–12. "[C]ourts in this Circuit hold that expert testimony that goes directly to an issue to be presented in a party's case-in-chief and which could have been anticipated is not proper rebuttal testimony." *See Cook v. Cnty. of Los Angeles*, 2022 WL 1470574, at *4 (C.D. Cal. Mar. 21, 2022). Hitt's Report presents several new arguments that were anticipated prior to the expert disclosure deadline and go directly to issues presented in Amazon's case-in-chief. *See* Hitt Tr. at 14:15–15:1.

### B. Hitt Lacks Qualifications

Hitt purports to opine on consumers' privacy preferences and whether, given those preferences, consumers could be harmed by Amazon's privacy invasions. In doing so, Hitt draws several conclusions which extend far beyond his stated area of expertise: economics. The law is clear that unqualified opinions must be excluded. Fed. R. Evid. 702; *Bunker v. Ford Motor Co.*, 640 F. App'x 661, 662 (9th Cir. 2016) (affirming exclusion of expert testimony where the expert "had no experience" with the type of systems at issue, "none of [expert's] previous engagements related" to those type of systems, and thus the expert "was not qualified to testify" about such systems).



BYRNES KELLER CROMWELL LLP
1000 SECOND AVENUE, 38TH FLOOR, SEATTLE, WA 98104
TELEPHONE: 206/622-2000• FAX: 206/622-2522

Because the entirety of Hitt's Report is based on these improper conclusions, his Report should be excluded.

**1. Legal Conclusions**

Hitt opines that [redacted] Report ¶31. Hitt is not qualified to offer these types of opinions, which concern the elements of legal claims (*e.g.*, privacy claims) and the evidentiary support necessary to succeed on these claims at trial. Hitt is neither a judge nor a lawyer and is not otherwise a legal expert. Whether the evidence provides these elements of Plaintiffs' claims is a question the jury will answer. Hitt has no business opining on what the law requires or what type of evidence is necessary to state a claim for invasion of privacy and/or intrusion upon seclusion. As such, his conclusions should be excluded.

**2. Computer Science Conclusions (Report ¶¶15-29, 77-80)**

Hitt is also not a computer science or machine learning expert. Report ¶¶1–6; Hitt Tr. at 7:24–8:14. Yet, Hitt asserts that [redacted] and that [redacted] Report ¶¶79, 132. Hitt also makes assertions regarding the hardware necessary to reduce False Wakes, claiming [redacted] *Id.* ¶131.

These statements are fact-intensive and highly technical, requiring expert understanding of computer science, algorithm development, and hardware design—all topics outside the scope of economic principles. Lacking expertise, Hitt relies on the out-of-context testimony from one Amazon employee who alleged, [redacted] *Id.* ¶76. Hitt also defers to two studies that assess factors impacting the prevalence of False Wakes, *id.* ¶131 n. 200–203, and out-of-context statements

taken from Jonathan Hochman's deposition. *Id.* ¶132 n. 205. Lacking the expertise necessary to analyze his own supporting evidence, Hitt assumes these statements are accurate and uses them to form the foundation of his cost benefit analysis, fatally contaminating the resulting conclusions.

**3. Data Marketplace Conclusions (Report ¶¶36–46, 57–72)**

Finally, Hitt lacks the qualifications to opine on a market for or the sale of voice recordings, like False Wakes. Hitt's stated expertise includes the value of [redacted] Report ¶6. Hitt's expertise with physical products and tangible software does not automatically extend to individual's personal datapoints (*i.e.*, the value of voice recordings, personal data, or the marketplace for either). *Id.* ¶¶1–6. Despite Hitt's lack of expertise, he draws conclusions based on his own assumptions about [redacted]—an area Hitt has not previously studied. *Id.* ¶70. Hitt concludes that [redacted] *Id.* ¶¶56–59, never mentioning that [redacted] *See* Exhibit B ¶¶80, 94.

**4. Hitt's Economics Expertise Has No Bearing Here**

Hitt's Report must also be excluded because his area of expertise (economics) has no bearing on any issue in this case. Expert reports, like Hitt's, that fail to "speak[] clearly and directly to an issue in dispute in the case" must be excluded. *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1321 n.17 (9th Cir. 1995). Hitt's generalized discussion of economic principles does not "speak directly to" the core issues in this case because his Report is devoid of any testing or analysis—such as review of Amazon's systems and source code, or survey of Class Members—to support an application of those principles to any of the facts in this case. There is simply no way for Hitt to bridge the gap between general economics concepts and, for example, [redacted]



BYRNES KELLER CROMWELL LLP
1000 SECOND AVENUE, 38TH FLOOR, SEATTLE, WA 98104
TELEPHONE: 206/622-2000• FAX: 206/622-2522

[redacted], without conducting the underlying work needed to test those conclusions.

### C. Hitt's Report Improperly Opines on Legal

Hitt's ultimate opinion [redacted] Report ¶31. Hitt lacks the expertise to opine on whether an invasion of privacy exists and whether Plaintiffs (or Class Members) suffered such an invasion of privacy, especially given that this inquiry requires a legal analysis. Courts in this Circuit hold that this requires evaluating (1) whether a reasonable person would have an expectation of privacy; and (2) whether a reasonable person would find the conduct highly offensive. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F. 3d 589, 601–03 (9th Cir. 2020). Hitt cannot substitute his own divergent beliefs on how he feels these claims should be evaluated for the true legal requirements. *See In re Google RTB Consumer Priv. Litig.,* 2024 U.S. Dist. LEXIS 119157. Allowing Hitt's opinions to be presented to the jury will undoubtably confuse them as to what the law requires and lead them to believe this type of pseudo-science is necessary because Hitt purports to be an expert on these topics. For this reason alone, Hitt's entire report should be excluded.

### D. Hitt's Report Lacks a Reliable Methodology

Hitt's Report should also be excluded as unreliable because it "has not cited to reliable sources for [the] underlying facts or data[.]" *Newkirk v. ConAgra Foods, Inc.*, 727 F. Supp. 2d 1006, 1016 (E.D. Wash. 2010), *aff'd*, 438 F. App'x 607 (9th Cir. 2011). Specifically, Hitt cites various sources that either provide no support for his conclusions or leave "too great an analytical gap between the data and the opinion proffered." *See ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*, 648 F. App'x 609, 613–14 (9th Cir. 2016).

#### 1. Hitt Failed To Conduct Independent Analysis

Hitt failed to conduct an independent review of the evidence to support his conclusions, instead relying on a research team at Cornerstone Research to coordinate with Amazon and identify

relevant documents. Hitt Tr. at 14:15–17:10. When questioned about the process for procuring evidence to support his own opinions, Hitt expressed a complete lack of knowledge, stating [redacted] *Id.* at 16:20–17:2. An expert cannot produce reliable conclusions while abdicating responsibility for reviewing the underlying facts and evidence. *See Call Delivery Sys., LLC v. Morgan*, 2022 WL 1252412, at *1–2 (C.D. Cal. Mar. 7, 2022) (expert testimony that failed to independently verify facts or review the algorithm at issue lacks the necessary foundation.). Hitt's failure to consider or address Amazon's own findings regarding the reasons provided by customers for no longer using their Alexa devices [redacted][5] clearly demonstrates that Hitt's conclusions are not based on a full review of the factual record and are thus unreliable.

Hitt also failed to conduct his own research regarding Plaintiffs' privacy preferences. Rather than examine the relevant facts to determine the extent to which Plaintiffs value their privacy, Hitt attempts to extrapolate conclusions from sources that discuss privacy issues in completely different contexts (*i.e.* data collection from ***public*** websites) which have no relation to the recording of conversations in ***private*** homes. *See Mariscal v. Graco, Inc.*, 2014 WL 4245949, at *7 (N.D. Cal. Aug. 27, 2014) (explaining that courts may "exclude witness testimony that is based on 'unsupported assumptions and unsound extrapolation'"). In fact, many of the articles cited by Hitt ***contradict*** his own conclusions or are silent on the issues that Hitt cites them for.

**2. Hitt's Sources Contradict His Conclusions**

Hitt cites—but fails to address—sources that contradict several of his conclusions, an independent ground to exclude Hitt's Report. *See Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1175 (E.D. Wash. 2009) (excluding expert testimony as unreliable where cited studies "singly or in combination, do not support the [expert's] conclusions they make in the face of the overwhelming body of contradictory and inconsistent [] evidence").

---

[5] **Exhibit C** at AMZ_GARNER_03812164.

For example, Hitt concludes based solely on documentary citations (not experience or knowledge) that [redacted] Report ¶¶30–31. Hitt supports this conclusion by citing to several studies which purportedly demonstrate that [redacted] *Id.* ¶49. However, no such conclusion was reached in any of the studies Hitt cited. To the contrary, one study Hitt cited found that [redacted][6] Another article cited explicitly states that the study discussed [redacted][7] This does not square with Hitt's conclusion that Plaintiffs are [redacted] Report ¶51.

Hitt also claims that the [redacted] *Id.* ¶71. However, Hitt's supporting quote for this claim states that [redacted] *Id.* ¶70 n. 106. Amazon appears to be keenly aware of the need for such incentives, as evidenced by [redacted] Hitt Tr. at 228:15–25. Hitt fails to consider such contradictory evidence or provide any evidence that an additional incentive would not be required to purchase natural voice recordings of people in their own homes given the nature and sensitivity of those voice recordings. *Id.* at 229:1–5; Report ¶¶70–72.

---

[6] *Id.*; Spyros Kokolakis, *Privacy attitudes and privacy behavior: A review of current research on the privacy paradox phenomenon*, Computers & Security, p. 4 (vol. 64, Jan. 2017).

[7] *See* Report ¶52 n. 78; Kirsten Martin and Katie Shilton, *Why Experience Matters to Privacy: How Context-Based Experience Moderates Consumer Privacy Expectations for Mobile Applications* at 7 (Apr. 26, 2015).

### 3. There is an "Analytical Gap" Between Hitt's Remaining Conclusions and Cited Sources

Hitt's sources are incapable of supporting the specific conclusions he attempts to draw because they are devoid of any data or analysis concerning the privacy of voice recordings. *See* Report ¶48, n.70, ¶49. Hitt cannot rely on generalized studies to extrapolate the privacy considerations related to private recordings generally or False Wake recordings specifically or the privacy preferences of those who used Alexa devices. In one example that highlights this flaw, Hitt attempts to draw conclusions about data contained in False Wake recordings from a study discussing the privacy preferences of individuals concerning personal information related to their purchase of a camera or jacket. *See id.* ¶48, n.70. This data has no relation to the voice recordings and transcripts at issue in this case, which disclosed the personal details of Alexa's users lives, including bank information, intimate moments with partners, and other private conversations. *See* Complaint ¶¶90, 338.

Similarly, [redacted] Report ¶81. But the data provided to [redacted] *See* Complaint ¶¶12–13, 103. Hitt's failure to address this key element of the privacy issues relevant to this case pervades his entire report. Hitt's Report requires generalizations about privacy preferences in ***other*** contexts to take the place of a scientifically reasonable analysis of privacy preferences surrounding False Wake recordings that Hitt did not conduct. For these reasons, Hitt's opinions must be excluded in their entirety.

Even when relying on evidence collected specifically to support his conclusions, Hitt's claims rely on impermissible "analytical gaps." To demonstrate [redacted] Report ¶84. Hitt provides no basis for [redacted]



BYRNES KELLER CROMWELL LLP
1000 SECOND AVENUE, 38TH FLOOR, SEATTLE, WA 98104
TELEPHONE: 206/622-2000• FAX: 206/622-2522

[redacted] Hitt Tr. at 158:1, 176:18. Hitt acknowledges that he "[redacted] and cannot state for certain they relate to Amazon's use of the False Wake recordings. Report ¶86. At best, the chart provides a vague indication of how many publications related to Alexa recordings were released at a given time without any clear understanding of how many of these publications relate to the False Wake recordings at issue. Notably, none of the articles disclosed that, [redacted] In addition, Hitt conducted no independent survey of Plaintiffs to determine if any of them actually read the publications relied on for his conclusions. These oversights evidence a series of "analytical gaps" that make all subsequent conclusions unreliable. Any opinions that rely on these conclusions should be excluded.

Hitt's analysis of Alexa's usage over time also lacks sufficient foundation to demonstrate there was no user reaction to the discovery of Amazon's use of the False Wake recordings. The charts Hitt relied on only show the number of Alexa devices purchased, the number of active Alexa accounts, and the number of user interactions. *Id.* ¶¶93–97. Hitt acknowledged that the charts [redacted] Hitt Tr. at 187:24–5. In fact, there is evidence to suggest this is exactly what happened, but Hitt failed to address its existence in his Report. *See* Exhibit C at '2164. Amazon's own internal study [redacted] *See id.* Moreover, Hitt never reviewed or identified the total number of inactive accounts. Hitt Tr. at 189:1–12. Without such information, Hitt cannot reliably claim that [redacted]



BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor, Seattle, WA 98104
Telephone: 206/622-2000• Fax: 206/622-2522

In the few instances Hitt cites sources that seemingly support his conclusions, he fails to distinguish the facts of this case rendering that research inapplicable. For example, Hitt references studies showing that participants may change their willingness to disclose personal information based on the surrounding context but makes no mention of how to account for instances like this one where Amazon *expressly disclaimed* disclosure of the information. *See* Complaint ¶12. Hitt's Report also fails to address the privacy concerns of unregistered persons who were given no opportunity to consent to the disclosure of their private conversations. Hitt's failure to consider and address these discrepancies renders his conclusions unreliable.

**E. Hitt's Only Attempt To Provide A Methodology Fails**

Hitt asserts that [redacted]. *See* Report ¶¶48–63. Hitt even extrapolates that conclusion to [redacted]. However, Hitt's reasoning is flawed because Hitt fails to consider the ***actual*** costs and benefits that Plaintiffs and the Class would have (and did) consider.

Hitt's analysis also fails because it is inherently contradictory. The application of a cost-benefit analysis suggests that there is ***some non-zero value*** to assess, so Hitt's methodology concedes that the recordings he analyzes have value. *Id.* ¶90. Moreover, Hitt never actually conducted a cost-benefit analysis. Instead, Hitt assumes that [redacted] This is pure speculation and is undermined by research showing that individuals consider conversations conducted within their homes private.[8] Similarly, sources such as the private market, Complaint ¶¶115–120, and legal systems assign value to this data. *See, e.g.*, *Winston v. Lee*, 470 U.S. 753, 758–59 (1985) ("[T]he right to be let alone . . .

[8] Madiha Tabassum, Tomasz Kosiński, Alisa Frik, Nathan Malkin, Primal Wijesekera, Serge Egelman, and Heather Richter Lipford. 2020. Investigating Users' Preferences and Expectations for Always-Listening Voice Assistants. Proc. ACM Interact. Mob. Wearable Ubiquitous Tech. 3, 4, Article 153 (Dec. 2019), 23 pages; N. Malkin, J. Bernd, M. Johnson, S. Egelman. "What can't data Be used for?": privacy expectations about smart TVs in the U.S. Proc. 3rd Euro. Workshop Useable Secur., Internet Society, London, England (Apr. 2018), 10.14722/eurousec.2018.23016.


BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor, Seattle, WA 98104
Telephone: 206/622-2000• Fax: 206/622-2522

[is] the right most valued by civilized men.").[9] Hitt's unreliable conclusions also fail for the following reasons:

**First**, Hitt ignores the fact that unregistered persons were never presented with Amazon's terms and further fails to consider that Amazon uniformly ***assured registered users*** that their conversations would not be recorded without the use of a wake word. Complaint ¶12. Thus, Hitt's regurgitation of generic research purportedly concerning general privacy preferences (in many cases, in the context of public websites, rather than private residences) is irrelevant.

**Second**, Hitt highlights the purported benefits Plaintiffs received [redacted] Report ¶77. That improvements [redacted] may have benefits says nothing about whether people value their privacy—or would consider the benefits sufficient knowing that [redacted]

**Third**, Hitt improperly concludes that people do not value their privacy because some individuals [redacted] *Id.* ¶31. But Hitt conducted no survey or other polling of Alexa users to support the application of his conclusions to this specific case. There is no reason to suggest that Alexa users would behave as Hitt claims. Indeed, unregistered people did not have a choice in the matter because they were not the owners of the devices.

This conclusion also contradicts Hitt's cost-benefit analysis. That a user may choose to incur the costs of sharing personal information in exchange for the benefits provided by a given product does not mean those users do not value their privacy. Hitt's observation has even less relevance to situations (like here) where Amazon provided concrete assurances that data will not be collected

[9] In particular, there are numerous laws that recognize that people value the privacy of their personal conversations. *See, e.g.*, *Turner v. Nuance Commc'ns*, No. 22-cv-05827-DMR, 2024 U.S. Dist. LEXIS 94614 (N.D. Cal. May 28, 2024) ("[A]dvances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications . . . The Legislature thus enacted CIPA 'to protect the right of privacy . . . from what it perceived as 'a serious threat to the free exercise of personal liberties [that] cannot be tolerated in a free and civilized society.'"); Electronic Communications Privacy Act of 1986 (ECPA), 18 U.S.C. §§ 2510-2523; Wash. Rev. Code §9.73.030.



BYRNES KELLER CROMWELL LLP
1000 SECOND AVENUE, 38TH FLOOR, SEATTLE, WA 98104
TELEPHONE: 206/622-2000• FAX: 206/622-2522

absent certain conditions (such as the use of a wake word). Complaint ¶12. Likewise, the fact that some Plaintiffs may have continued to use an Alexa device after discovering that their private conversations were being recorded and reviewed by third parties, says nothing—*ex ante* it cannot demonstrate they place no value on privacy and *ex post* this decision can be explained by either: (a) a belief that the conduct would cease, *see id*. ¶80, or (b) the cost of switching digital assistants after having purchased the Alexa product. Finally, this conclusion has no bearing on the relevant issues in this case, which concerns whether Alexa users' sensitive voice recordings and associated data was surreptitiously collected by Amazon without consent.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court exclude Hitt's Report in its entirety.

Dated: February 13, 2025

Respectfully submitted,

**BYRNES KELLER CROMWELL LLP**

By: */s/ Bradley S. Keller*
Bradley S. Keller

BRADLEY S. KELLER (WSBA# 10665)
1000 Second Avenue, 38th Floor
Seattle, WA 98104
Telephone: 206/622-2000
206/622-2522 (fax)
bkeller@byrneskeller.com

*Interim Liaison Counsel*

**LABATON KELLER SUCHAROW LLP**
MICHAEL P. CANTY
(admitted *pro hac vice*)
CAROL C. VILLEGAS
(admitted *pro hac vice*)
GUILLAUME BUELL
(admitted *pro hac vice*)
DAVID SALDAMANDO
(admitted *pro hac vice*)
DANIELLE IZZO
(admitted *pro hac vice*)
GLORIA J. MEDINA
(admitted *pro hac vice*)

140 Broadway, 34th Floor
New York, NY 10005
Telephone: 212/907-0700
212/818-0477 (fax)
mcanty@labaton.com
cvillegas@labaton.com
gbuell@labaton.com
dsaldamando@labaton.com
dizzo@labaton.com
gmedina@labaton.com

**ROBBINS GELLER RUDMAN & DOWD LLP**
PAUL J. GELLER
STUART A. DAVIDSON
(admitted *pro hac vice*)
MARK J. DEARMAN
(admitted *pro hac vice*)
ALEXANDER C. COHEN
(admitted *pro hac vice*)
NICOLLE B. BRITO
(admitted *pro hac vice*)
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
sdavidson@rgrdlaw.com
mdearman@rgrdlaw.com
acohen@rgrdlaw.com
nbrito@rgrdlaw.com

*Counsel for Plaintiffs and Interim Co-Lead Class Counsel*

**BURSOR & FISHER, P.A.**
L. TIMOTHY FISHER
(admitted *pro hac vice*)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: 925/300-4455
925/407-2700 (fax)
ltfisher@bursor.com

**BURSOR & FISHE R, P.A.**
ALEC M. LESLIE
(admitted *pro hac vice*)
MAX S. ROBERTS
(admitted *pro hac vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: 646/837-7150
212/989-9163 (fax)

aleslie@bursor.com
mroberts@bursor.com

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
ROBERT K. SHELQUIST
(admitted *pro hac vice*)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401-2159
Telephone: 612/339-6900
612/339-0981 (fax)
rkshelquist@locklaw.com

**ZIMMERMAN REED LLP**
BRIAN C. GUDMUNDSON (admitted *pro hac vice*)
MICHAEL J. LAIRD (admitted *pro hac vice*)
1100 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: 612/341-0400
612/341-0844 (fax)
brian.gudmundson@zimmreed.com
michael.laird@zimmreed.com

*Interim Class Counsel*

**LOCAL RULE 7(e)(5) CERTIFICATION**

I hereby certify that this memorandum contains 4,578 words, in compliance with Local Civil Rule 7(e)(5).

Dated: February 13, 2025

By: */s/ Bradley S. Keller*
Bradley S. Keller



**BYRNES KELLER CROMWELL LLP**
1000 Second Avenue, 38th Floor, Seattle, WA 98104
Telephone: 206/622-2000• Fax: 206/622-2522