THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KAELI GARNER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC., a Delaware Corporation, and AMAZON.COM SERVICES LLC, a Delaware Limited Liability Company,<br><br>Defendants. | Case No. 2:21-cv-00750-RSL<br><br>**AMAZON'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF LORIN HITT**<br><br><u>NOTE ON MOTION CALENDAR:</u><br>April 4, 2025<br><br>**ORAL ARGUMENT REQUESTED** |



FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

# TABLE OF CONTENTS


| | Page |
|---|---|
| INTRODUCTION | 1 |
| BACKGROUND | 1 |
| ARGUMENT | 2 |
| A. Hitt's Opinions Are Relevant. | 3 |
| B. Hitt Is Qualified. | 4 |
| C. Hitt Uses Reliable Facts And A Reliable Methodology. | 5 |
| 1. Hitt Properly Used Research Support. | 5 |
| 2. Hitt's Citations Support His Conclusions. | 6 |
| 3. Hitt Uses A Reliable Methodology. | 9 |
| D. Hitt's Opinions Are Not Legal Conclusions. | 10 |
| E. Hitt's Opinions Are Timely. | 11 |
| F. Plaintiffs' Motion Is Procedurally Defective. | 11 |
| CONCLUSION | 11 |
| LCR 7(E) WORD-COUNT CERTIFICATION | 13 |

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Alaska Rent-A-Car, Inc., v. Avis Budget Grp., Inc.*,
738 F.3d 960 (9th Cir. 2013) ....................2, 3, 6, 7

*Chen-Oster v. Goldman, Sachs & Co.*,
No. 10 Civ. 6950, 2022 WL 814074 (S.D.N.Y. Mar. 17, 2022) ....................6

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ....................3

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ....................2, 6, 11

*Elosu v. Middlefork Ranch Inc.*,
26 F.4th 1017 (9th Cir. 2022) ....................3, 6

*Hyer v. City & Cnty. of Honolulu*,
118 F.4th 1044 (9th Cir. 2024) ....................10

*Lytle v. Nutramax Labs., Inc.*,
114 F.4th 1011 (9th Cir. 2024) ....................1, 3

*Manpower, Inc. v. Ins. Co. of Pennsylvania*,
732 F.3d 796 (7th Cir. 2013) ....................5

*PNC Fin. Svcs. Grp., Inc. v. Plaid, Inc.*,
No. 2:20-cv-1977, 2024 WL 3691607 (W.D. Pa. Aug. 7, 2024) ....................6

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997) ....................5

*United States v. Gomez*,
725 F.3d 1121 (9th Cir. 2013) ....................5, 6

### STATUTES AND RULES

Fed. R. Evid. 702 ....................2

Fed. R. Evid. 703 ....................5

Fed. R. Evid. 704 ....................10

L.R. 7(d)(5), 7(e)(4) ....................11

## TABLE OF AUTHORITIES

**Page(s)**

**OTHER AUTHORITIES**

Martin, Kirsten, and Katie Shilton, *Why Experience Matters to Privacy: How Context-Based Experience Moderates Consumer Privacy Expectations for Mobile Applications,* 67 J. of the Ass'n for Inf. Science and Techn.1871 (2016) ....................8

## INTRODUCTION

Plaintiffs provide no basis to exclude the expert opinions detailed in Dr. Lorin Hitt's report and declaration submitted in opposition to Plaintiffs' motion for class certification (ECF No. 300). Hitt analyzes a crucial issue in class certification: whether Plaintiffs and their experts have proposed a model to measure the value of voice recordings to putative class members using common evidence. *See Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011, 1032 (9th Cir. 2024). Hitt concludes that they have not, and explains why no such model could exist.

Hitt is qualified to offer that opinion. He is the only economist in this case, and he wrote a book chapter on the valuation of personal data. *See*, *e.g.*, Hitt Report, Appx A. at "Other Publications" (authoring "Valuation of Personal Data" in *The Cambridge Handbook of Marketing and the Law*). Plaintiffs try to turn a fatal flaw in their class certification motion into a basis for arguing that Hitt's opinion is irrelevant. Conceding that they propose no model for calculating damages on a classwide basis for their Washington Consumer Protection Act claim, they argue that "economics has no bearing on any issue in this case." Pls.' Mot. to Exclude Testimony of Lorin Hitt ("Mot.") at 5 (cleaned up). Plaintiffs' failure to offer any damages expert does not make Hitt's testimony irrelevant. To the contrary, Hitt demonstrates the inadequacy of Plaintiffs' unsupported statements that their recordings "have value" as a method to measure damages on a classwide basis using common proof.

The methods Hitt used in forming his opinion are reliable. While Plaintiffs contest snippets of Hitt's report and his sources, those sources support his conclusions. Even if they did not, those objections go to the weight of his opinions, not their admissibility. Plaintiffs' motion should be denied.

## BACKGROUND

Hitt is a leading academic in the economics of information. For decades, Hitt has taught undergraduate, graduate, and Ph.D classes in information, decision-making, and economics at the Massachusetts Institute of Technology and University of Pennsylvania. Dkt. 300, Rebuttal Report and Declaration of Prof. Lorin Hitt ("Hitt Report"), Appx. A, at "Teaching Experience." He has published dozens of articles about economic markets, including the markets of data and software,

in leading peer-review journals like *Quarterly Journal of Economics*, *Information Systems Research*, and *Management Science*. *Id.*, at "Articles Published in Refereed Journals." He also published chapters of books discussing methods to value intangible assets like data. *Id.*, at "Other Publications."

Hitt provided a report and declaration rebutting the opinions of Plaintiffs and their experts that the alleged damages—the value of Alexa voice recordings that Amazon allegedly deprived from class members—can be measured on a classwide basis. Hitt Report ¶ 26. Hitt first opines that, contrary to one of Plaintiffs' apparent theories, any value *to Amazon* of Alexa recordings[1] does not approximate the value of recordings to putative class members. *Id.* ¶¶ 29, 33-82 (Section V). Next, Hitt rebuts Plaintiffs' experts' flawed assumption that preferences for privacy are the same across putative class members. Hitt opines that no model can measure purported damages across a class of Alexa users without individualized inquiry into the preferences of each class member. *Id.* ¶¶ 30-31, 83-132 (Sections VI and VII(A)-(D)).

Hitt's extensive experience in the field of economics and his analysis in this case support his opinions. Hitt conducted a trend analysis to measure how popular news about Amazon's retention and use of voice recordings affected Alexa [redacted]. Hitt Report ¶¶ 83-98. Hitt concludes that the news had no negative effect among Alexa users. *Id.* ¶ 83. Hitt also applies common economic methods and principles in privacy research, like but-for causation (*id.* ¶¶ 39-46), the privacy paradox (e.g., *id.* ¶¶ 47-51), context-specific markets (e.g., *id.* ¶¶ 47-59, 66-72), and heterogeneity (*id.* ¶¶ 99-132). Throughout his report, Hitt critiques each of Plaintiffs' experts directly; Hitt addresses Mr. Jonathan Hochman's opinions 37 times, Prof. David Hoffman's opinions 21 times, and Dr. Serge Egelman's opinions 6 times.

## ARGUMENT

A qualified expert may provide opinion testimony provided that the opinion is relevant and reliable. *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). An expert opinion is relevant if it has a "valid connection to the pertinent inquiry." *Alaska Rent-*

[1] Contrary to Plaintiffs' argument (Mot. at 1), Hitt never opines that voice recordings have no value to Amazon.

*A-Car, Inc., v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). An expert opinion is reliable "if the knowledge underlying [the opinion] has a reliable basis in the knowledge and experience of the relevant discipline." *Id.* In applying this test, a court must not consider "the correctness of the expert's conclusions but the soundness of [his] methodology." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) (quotation marks and citation omitted).

**A. Hitt's Opinions Are Relevant.**

To certify a damages class, plaintiffs must prove that damages can be measured across the entire class with a damages model consistent with their theories of liability. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)*; Lytle*, 114 F.4th at 1032. A court cannot certify a proposed class if the plaintiffs have no reliable model to measure classwide damages with common evidence. *Lytle*, 114 F.4th at 1032. Plaintiffs try to distract from their failure to propose a common damages model by contending that Hitt's opinions are irrelevant and that economics "has no bearing on any issue in this case." Mot. at 5. This strains credulity. At this stage, the Court must determine what factors determine the value (if any) of voice recordings to class members, and whether those factors apply uniformly across the classes. That is an economic exercise. If an economist cannot weigh in on the measure of damages, no one can.

Hitt shows that Plaintiffs have no model for measuring classwide damages using common evidence. At most, Hochman and Egelman give conclusory opinions that Plaintiffs' recordings have indeterminate "value." As Hitt points out, Plaintiffs do not, and cannot, show how the value of the recordings to *Plaintiffs* can be measured using common evidence or how Amazon's collection and alleged use of those recordings diminished that value. Hitt Report ¶ 63. For example, Hochman points to other businesses' plans to pay consumers who agree to share their marketing data. Hitt Report ¶ 63 (citing Hochman Report, ¶¶ 83, 95). Hitt shows that the value of information is context-specific, and third parties' (theoretical) payments to consumers for marketing data does not approximate what price putative class members would accept for their voice recordings. Hitt Report ¶¶ 64-68. Hitt also explains that the surveys that Egelman relies on demonstrate the individualized nature of valuing voice recordings, because almost half of respondents were not concerned by Amazon's retention of voice recordings. *Id.* ¶ 122 (citing

Egelman's article, "Privacy Attitudes of Smart Speaker Users," *Proceedings on Privacy Enhancing Technologies*, no. 4, 2019, pp. 250–271).

Plaintiffs also argue that Hitt's opinions are not relevant because they are just "generic" economic principles and do not consider the facts of this case. Mot. at 5-6, 9-11, 12. Not so. Hitt reached his conclusions after reviewing and applying all relevant facts from this case, like the Alexa technology (Hitt Report ¶¶ 10-18), Plaintiffs' allegations (*id.* ¶¶ 19-21), Plaintiffs' depositions (*e.g.*, *id.* ¶¶ 42, 50, 56, 99), Plaintiffs' experts' reports (*e.g.*, *id.* ¶¶ 22-24, 119-128, 133-135), and public awareness of Alexa features (*id.* ¶¶ 83-99).

**B. Hitt Is Qualified.**

Hitt is the only economist testifying for either side in this case and is the *only* person here qualified to testify on a model, or lack thereof, for measuring classwide damages. Hitt's background is unimpeachable. He has a doctorate in Management from MIT, specializing in Information Technology and Economics and has taught the economics of information at preeminent business schools. Hitt Report, Appx. A, at "Educational History," "Teaching Experience." In this work, Hitt conducts statistical analyses and works with algorithms and machine learning to manipulate datasets. Declaration of Garner Kropp ("Kropp Decl."), Ex. 1 (Excerpts of Nov. 13, 2024 Hitt Deposition Transcript ("Hitt Tr.")) at 57:15-58:5. Hitt's decades-long career in both the relevant tools (modeling markets) and the relevant good (personal information) qualifies him to offer those opinions.

Plaintiffs claim that Hitt's work in "information goods and services" and "information hardware" does not apply to "personal datapoints," as if these are different concepts. Mot. at 5.[2] This argument ignores Hitt's extensive experience studying markets generally and markets for personal information specifically. Hitt wrote a book chapter "discussing proposed methods in consumer class actions to assess potential harm from unauthorized access and misuse of personal information." Hitt Report ¶ 6. Hitt has also published research on the economic principles needed

[2] Section headings in Plaintiffs' motion do not match the paragraphs of Hitt's report that Plaintiffs discuss in their motion.

to model the market for voice recordings, like modeling consumer demand, determining pricing, and evaluating privacy concerns in consumer choice. *Id.* ¶ 4.

Plaintiffs' objection that Hitt is not qualified to conduct a "fact-intensive and highly technical" review of Alexa technology misconstrues his opinions. Mot. at 4-5. Hitt did not engage in a "highly technical review" of Alexa technology. He demonstrated a sufficient understanding of Alexa as a basis to provide his opinions on the market for voice recordings. *See* Hitt Report ¶ 6.

**C. Hitt Uses Reliable Facts And A Reliable Methodology.**

Hitt rigorously supports his conclusions with dozens of peer-reviewed sources like the *Journal of Consumer Affairs*, (e.g., Hitt Report ¶ 48 n.71), primary sources like Amazon's document productions (e.g., *id.* ¶ 69 n.103), and Plaintiffs' depositions (e.g., *id.* ¶ 107 n.153). Considering these sources, he applied well-known economic tools and principles, like the privacy paradox (*id.* ¶¶ 47-51) and context-specific markets (e.g., *id.* ¶¶ 47-59, 66-72). Plaintiffs argue there are three flaws with this approach. First, they say Hitt should not have used research support working under his direction. Mot. at 6-7. Second, they claim that Hitt's citations do not support his report. *Id.*, at 7-11. And third, Plaintiffs debate the applicability of the principles of cost-benefit analysis to this case. *Id.,* at 11-13. None undermines the reliability of Hitt's opinions.

**1. Hitt Properly Used Research Support.**

An expert does not personally need to collect all the information he uses. Fed. R. Evid. 703; *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1142 (9th Cir. 1997). An expert's testimony is admissible "[a]s long as he is applying his training and experience to the sources before him and reaching an independent judgment." *United States v. Gomez*, 725 F.3d 1121, 1129 (9th Cir. 2013) (quoting *United States v. Johnson*, 587 F.3d 625, 635 (4th Cir. 2009)); *see also Manpower, Inc. v. Ins. Co. of Pennsylvania*, 732 F.3d 796, 810 (7th Cir. 2013) ("[W]e find nothing remarkable about a paid expert preparing a report with the assistance of staff.").

As many experts do, Hitt used support staff to help him prepare his report. Hitt directed a research team at Cornerstone Research to assist his document collection and analyses. Hitt Report ¶ 28; Hitt Tr. at 16:22-25. Testifying experts often work with support staff, and courts have held

that Cornerstone Research's support of other experts does not invalidate their opinions. *See Chen-Oster v. Goldman, Sachs & Co.*, No. 10 Civ. 6950, 2022 WL 814074, at *15 (S.D.N.Y. Mar. 17, 2022) (rejecting the argument that an expert may not use support from Cornerstone Research); *PNC Fin. Svcs. Grp., Inc. v. Plaid, Inc.*, No. 2:20-cv-1977, 2024 WL 3691607, at *16 (W.D. Pa. Aug. 7, 2024) (same). Hitt's report reflects his own conclusions from his professional experience and the facts of the case he reviewed. *See* Hitt Report ¶ 28.

Plaintiffs object that Cornerstone helped Hitt collect documents, relying on an inapposite case where the expert reviewed no pleadings, deposition testimony, or the technology at issue and based his opinions on only a conversation with the party and its counsel. *See* Mot. at 6, 7 (citing *Call Delivery Sys., LLC v. Morgan*, No. 2:20-cv-04637, 2022 WL 1252412, at *1–2 (C.D. Cal. Mar. 7, 2022)). Unlike that case, Hitt reviewed the pleadings, deposition testimony (including testimony from the Named Plaintiffs), and technology in this case. He reached independent conclusions from those documents, and the mere fact that someone else assembled these documents is not a basis to exclude his opinions. *See Gomez*, 725 F.3d at 1129.

**2. Hitt's Citations Support His Conclusions.**

An expert must base his opinions on "sufficient facts or data," which is a question of "foundation, not corroboration." *Elosu*, 26 F.4th at 1024-25. If a party contests an expert's conclusions, the "traditional and appropriate" means of attack are cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof before exclusion of the expert's testimony. *Daubert*, 509 U.S. at 596; *see Alaska Rent-A-Car*, 738 F.3d at 969-70.

Hitt supports his conclusions with documentary evidence and the economic principles he has applied over thirty years. He applied accepted principles of market pricing and found that none of Plaintiffs' experts propose any method to determine putative class members' value of voice recordings. Hitt Report ¶¶ 33-82. He compared [redacted] against periods of high-intensity news coverage about Alexa and found no negative response to information about the conduct at issue in this case. *Id.* ¶¶ 83-98. Hitt considered those findings as well as the testimony of the Plaintiffs' and their experts to conclude that privacy preferences vary among putative class members, and any damages measurement must consider several individualized

factors. *Id.* ¶¶ 99-132. Hitt does not claim that no putative class member cares about privacy, as Plaintiffs contend. Rather, Hitt opines that their attitudes are not uniform, and that Plaintiffs have offered no model using common evidence for determining the value to each class member of their recordings.

Plaintiffs argue that pieces of some documents that Hitt cites do not support his conclusions. *See* Mot. 7-11. This fails for three reasons. First, quibbling about whether a document supports a conclusion must be addressed by cross examination or a dueling expert and not a motion to exclude the report entirely. *See Alaska Rent-A-Car*, 738 F.3d at 969-70. Plaintiffs never asked Hitt about any of the documents they raise in their motion. *See* Hitt Tr. at "Index."

Second, Plaintiffs quibble with only a handful of sentences in a 64-page report with hundreds of footnotes. By Plaintiffs' admission, a court needs an "overwhelming body of contradictory and inconsistent evidence" to exclude an expert report. *See* Mot. at 7. Even if the documents that Plaintiffs point out do not support Hitt's opinions (they do), the few that Plaintiffs point out are not the "overwhelming" evidence needed to excluded Hitt's report.

Third, Plaintiffs fail to show that Hitt's report contradicts with or has an analytical gap from its citations.

**The Purported Contradictions.** Plaintiffs repeatedly mischaracterize Hitt's report and its citations to give the appearance of contradictions that do not exist. For example, Plaintiffs claim that Hitt baselessly concludes that "people [have] little or no concern about [personal] information being publicly available." Mot. at 8 (citing Hitt Report ¶ 49). What Hitt actually testifies is that people who share information publicly demonstrate that they have little concern with *that* information being kept private. He writes, "For example, some studies have noted that many people voluntarily share personal information on social media (including their name, date of birth, city of residence, education…. This behavior is consistent with people having little or no concern about this information being publicly available." Hitt Report ¶ 49.

In their second example, Plaintiffs conflate two distinct conclusions. Mot. at 8 (comparing Hitt Report ¶¶ 51 and 52 n.78). Hitt's citations support each conclusion. Hitt concludes that Plaintiffs' actions are not consistent with damage from Amazon's retention and use of voice

recordings, citing Plaintiff Diane McNealy's admission that she continued to use her Alexa device while knowing that Amazon retained and used voice recordings. Hitt Report ¶ 51 n.77 (quoting the deposition of D. McNealy). Separately, Hitt writes that a person's privacy preferences vary in different contexts, citing an academic paper that describes "the privacy calculus," where an individual performs cost-benefit analysis of sharing information in one context by "taking contextual variables into account." Kirsten Martin and Katie Shilton, *Why Experience Matters to Privacy: How Context-Based Experience Moderates Consumer Privacy Expectations for Mobile Applications*, 67 J. of the Ass'n for Inf. Science and Techn. 1871, 1874 (2016) (cited by Hitt Report ¶ 52 n.78).

In a third example, Plaintiffs claim that Hitt fails to support his claim that Amazon would need to compensate participants to provide voice recordings in a synthetic setting. Mot. at 8 (citing Hitt Report ¶ 71). But in the next sentence, Plaintiffs admit that Hitt's citation says that studies need to provide "an incentive" to recruit participants. Mot. at 8 (citing Hitt Report ¶ 70). "Incentive" is another word for "compensation." Plaintiffs manufacture contradictions where none exists.

**The Purported Analytical Gap.** Plaintiffs then argue that Hitt's analysis cannot apply to the market for voice recordings. First, Plaintiffs contend that Hitt's sources are too general to apply to Alexa. Mot. at 8-9. Not so. Hitt describes accepted economic principles, like the privacy paradox, and shows how those principles manifest with Alexa users, including the Plaintiffs. Hitt Report ¶¶ 48-51. Moreover, Plaintiffs compare Hitt's opinions to the allegations in their Complaint, not the evidence in the case, which Hitt considered. *See* Mot. at 9 (comparing Hitt Report ¶¶ 48, 81 to Compl. ¶¶ 12-13, 90, 338).

Second, Plaintiffs misconstrue Hitt's statistical analysis of [redacted]. Hitt developed a timeline of mass media mentions of key terms from Plaintiffs' allegations, like retention and human review of voice recordings. Hitt Report ¶ 84. He then manually reviewed each hit and removed articles that did not apply to Amazon's retention or use of voice recordings, yielding 765 articles. *Id.* ¶ 85. Hitt analyzed when these articles were published and found points of high-volume news coverage, like discussion of false wakes in May 2018 and human review of

voice recordings in April 2019. *Id.* ¶ 86. Comparing those points in news coverage to trends in Alexa [redacted], Hitt finds no negative response to widespread discussion about the conduct at issue in this case. *Id.* ¶¶ 90-98. Hitt reaches this conclusion with common statistical tests like the Chow test. *Id.* ¶ 93 n.143.

This approach is analytically sound. Plaintiffs cannot fault it for considering articles covering conduct other than false wakes (*See* Mot. at 10) because Plaintiffs' allegations cover other conduct, like human review of voice recordings. Plaintiffs also miss the mark when arguing that this analysis cannot rule out that some users stopped using Alexa after this reporting. *See id.*, at 10. Plaintiffs' argument about what some individual users may have done does not discredit Hitt's conclusion about the population as a whole. In fact, Plaintiffs' argument highlights the individualized inquiry required to assess damages to the proposed classes.

**3. Hitt Uses A Reliable Methodology.**

Hitt's report describes the economic principle of "revealed preferences," where researchers draw conclusions about consumers' valuation of goods and services by observing their behavior. Hitt Report ¶¶ 48-49 (citing seven academic sources describing the principle and applying it to consumer privacy). If a consumer uses a good, an economist can infer that the benefits outweigh the costs of the good to that consumer. *Id.* ¶¶ 83, 90-91. When a consumer uses Alexa while aware of its voice recording retention and use, the consumer decided that the benefits of the Alexa service outweigh the costs of sharing voice recordings (i.e., the consumer's value of voice recordings). *Id.* ¶¶ 90, 107. Hitt observes that individual Plaintiffs and the population as a whole continued to use Alexa while aware of Amazon's retention and use of voice recordings, showing that many users place little or no value on their voice recordings, or that the benefits of Alexa use outweighed whatever value users placed on voice recordings. *Id.* ¶¶ 90, 92, 105, 107-08. Thus, valuations of voice recordings vary across putative class members. Hitt Report ¶ 109.

Plaintiffs claim two flaws in Hitt's review of consumers' cost-benefit decisions, and neither argument succeeds. First, Plaintiffs claim Hitt overlooks that unregistered users do not need to read Amazon's terms. Mot. at 12. But Hitt considers all Alexa users, including non-registered users who learned about retention and use of recordings from public reporting and their own use

of Alexa devices. Hitt Report ¶¶ 107-08. And second, Plaintiffs claim that Amazon's use of voice recordings to improve the system is an irrelevant benefit. Mot. at 12. It is relevant. Some users willingly provide Amazon their voice recordings for free so that Amazon can improve the user experience. Hitt Report ¶ 124.

Like all consumers, Alexa users weigh different factors when deciding whether to use a good. Plaintiffs have the burden to show that putative class members weigh those factors in the same way, and Hitt shows that Plaintiffs have not met this burden.

**D. Hitt's Opinions Are Not Legal Conclusions.**

"An opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704. Expert testimony is not an impermissible legal opinion if it does not use terms that 'have a specialized meaning in law' or 'represent an attempt to instruct the jury on the law, or how to apply the law to the facts of the case ....'" *Hyer v. City & Cnty. of Honolulu*, 118 F.4th 1044, 1059 (9th Cir. 2024) (quoting *United States v. Diaz*, 876 F.3d 1194, 1199 (9th Cir. 2017)).

Hitt opines that damages cannot be measured without factors specific to each putative class member. Hitt Report ¶ 31. Hitt details those factors, like whether the class member knew that Amazon retained and used voice recordings (e.g., *id.* ¶¶ 83-98, 108-18), whether the class member was concerned that Amazon retained and used voice recordings (*id.* ¶¶ 122-28), and whether the class member experienced false wakes (*id.* ¶¶ 130-32).

These are not legal conclusions, as Plaintiffs claim. *See* Mot. at 4, 6. "Individualized inquiries" is not a term of art, and Hitt's analysis of those inquiries does not supplant the Court's determination if Plaintiffs' proposed classes will be certified. *See Hyer*, 118 F.4th at 1059. Plaintiffs mischaracterize Hitt's testimony as "his own divergent beliefs" about what an invasion of privacy is. *See* Mot. at 6. Hitt never states or relies on his personal beliefs about privacy or Alexa. Hitt Tr. at 74:2-8. Instead, he relies on well-trod principles in privacy research like the privacy paradox and revealed preferences to conclude that many putative class members place low or zero value on their voice recordings. Hitt Report ¶¶ 42, 49-50, 83-98, 107, 117. Just because Hitt's opinion relates to an ultimate issue does not render it an impermissible legal opinion. *See* Fed. R. Evid. 704.

**E. Hitt's Opinions Are Timely.**

The parties stipulated to a scheduling order which set the dates for filing class certification and opposition papers, "including expert reports in opposition to class certification." Dkt. 248; *see* Dkt. 289 (Order extending class certification deadlines). Amazon met the deadline by timely filing Hitt's report on October 7, 2024, the same day Amazon filed its opposition to class certification. Dkt. 300.

Regardless, Hitt's report does not offer affirmative opinions, as Plaintiffs argue. *See* Mot. at 3. Hitt addresses the testimony of Hochman, Hoffman, and Egelman dozens of times throughout his report and describes economic concepts and analyses which he applies to rebut the opinions of Plaintiffs' experts. Hitt Tr. at 96:3-21 (describing the "economic framework" that informs his rebuttal of Plaintiffs' experts, even when not referring to their testimony directly). Plaintiffs' argument even cites to Hitt's passages that refer to Plaintiffs' experts. *See* Mot. at 3 (citing, e.g., Hitt Report ¶ 29 ("[N]one of Plaintiffs' experts have provided a common class-wide damages model, let alone one that is consistent with Plaintiffs' theory of harm."), 34 n.61 (summarizing deposition testimony from Egelman, Hoffman, and Hochman); 37, 74, 100).

**F. Plaintiffs' Motion Is Procedurally Defective.**

The Court should disregard Plaintiffs' motion in its entirety because Plaintiffs repeatedly support their argument with allegations from their Complaint, not facts in the record. *See* Mot. at 9, 11, 12, 13. The Court should also disregard Plaintiffs' motion because it is overlength. *Daubert* motions may not exceed 4,200 words, and Plaintiffs' motion is 4,578 words. *See* L.R. 7(d)(5), 7(e)(4).

## CONCLUSION

Amazon respectfully requests that the Court deny Plaintiffs' Motion in its entirety.

///

///

///

///

///

Dated: March 24, 2025

FENWICK & WEST LLP

By: */s/ Brian D. Buckley*
Brian D. Buckley, WSBA No. 26423

Y. Monica Chan, WSBA No. 58900
401 Union Street, 5th Floor
Seattle, WA 98101
Telephone: 206.389.4510
Facsimile: 206.389.4511
Email: bbuckley@fenwick.com

Jedediah Wakefield (admitted *pro hac vice*)
Tyler G. Newby (admitted *pro hac vice*)
Armen N. Nercessian (admitted *pro hac vice*)
Garner F. Kropp (admitted *pro hac vice*)
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350
Email: jwakefield@fenwick.com
tnewby@fenwick.com
anercessian@fenwick.com
gkropp@fenwick.com

Melissa Lawton (admitted *pro hac vice*)
Janie Yoo Miller (admitted *pro hac vice*)
Esther Galan (admitted *pro hac vice*)
730 Arizona Avenue, 1st Floor
Santa Monica, CA 90401
Telephone: 310.434.5400
Email: mlawton@fenwick.com
jmiller@fenwick.com
egalan@fenwick.com

*Counsel for Defendants*
AMAZON.COM, INC. and AMAZON.COM SERVICES LLC

**LCR 7(E) WORD-COUNT CERTIFICATION**

As required by Western District of Washington Local Civil Rules 7(e), I certify that this memorandum contains 4,081 words.

Dated: March 24, 2025

FENWICK & WEST LLP

By: */s/ Brian D. Buckley*
Brian D. Buckley, WSBA No. 26423