1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KAELI GARNER, *et al.*,

                 Plaintiffs,

      v.

AMAZON.COM, INC., *et al.*,

                Defendants.

Case No. 2:21-cv-00750-RSL

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

This matter comes before the Court on "Plaintiffs' Motion for Class Certification." Dkt. # 257. Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] the Court finds as follows:

## I. BACKGROUND

Defendants developed Alexa, a voice-activated, cloud-based service that can access online resources to respond to inquiries and execute commands. When Alexa's microphones pick up a "wake" word, the device turns on a blue light and begins to stream audio to Amazon's cloud. The audio is transcribed, and the resulting text strings are processed by an algorithm to generate instructions to the Alexa system about how to respond to the user. After a request has

---

[1] This matter can be resolved on the papers submitted. The parties' requests for oral argument are DENIED.

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 1

been made, processed, and responded to, defendants store a copy of the audio file, the

transcription, the instructions, and associated metadata in an internal Amazon database. The

recordings are used to train defendants' speech-recognition and natural-language-understanding

systems, a process that involves human review of approximately 0.01% of Alexa interactions. At

this time, customers have the ability to delete recordings, to choose not to have their recordings

stored at all, and/or to opt out of human review.

Sometimes Alexa begins streaming when a wake word was not, in fact, used. These

events are called "false wakes." When the audio stream hits the cloud, a cloud-side wake word

verification process attempts to confirm the presence of a wake word. If it cannot, the audio

stream is terminated, the recording is labeled "not intended for Alexa," and the system saves "a

truncated snippet of audio, *i.e.*, only enough to determine what triggered the device to activate,

. . . both for use in improving the Alexa service and wake word models and to provide users with

visibility into what the Alexa device recorded when the streaming indicator was activated." Dkt.

# 310 at ¶ 27.

Plaintiffs assert that both the permanent storage of Alexa interactions and the false wakes

are intentional design elements of the service, used to amass huge numbers of voice recordings

that can be fed into algorithms and machine learning platforms for continuous improvement

training. By 2020, Alexa was processing 2.8 billion communications a week, and defendants

retained and continue to use the recorded data to train Alexa and the next generation assistants.

Plaintiffs further assert that Amazon failed to provide sufficient notice of the recording, saving,

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 2

human review, and/or use of the audio captured by the Alexa service in violation of six states' wiretap laws or Washington's Consumer Protection Act ("CPA"). They seek certification of six classes of non-registrants, defined as residents of California, Florida, Maryland, New Hampshire, Pennsylvania, or Washington who never registered an Alexa device and resided with a registrant while an Alexa device was active and operational, to pursue wiretap claims under state law. The non-registrant classes seek to recover statutory damages. Plaintiffs also seek certification of a nationwide class of everyone who registered one or more Alexa devices to pursue a CPA claim for unfair or deceptive trade practices. The registrant class seeks (a) compensation for the value of the false wake recordings defendants have compiled and (b) injunctive relief.

Defendants argue that the named plaintiffs' claims are not viable because they consented to the recordings at issue and were not harmed by the recording, storage, and/or use of communications not intended for Alexa (*i.e.*, false wakes). They also argue that all of the proposed classes are too broad in that they sweep in putative class members who were never recorded at all and therefore lack Article III standing. Defendants challenge Kaeli Garner's and Ronald Johnson's ability to represent a class of California or Pennsylvania non-registrants, respectively, because both of them registered an Alexa-enabled device. Finally, defendants maintain that the common questions of law and fact raised by plaintiffs' claims do not predominate over questions affecting only individual members of the putative class and that

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 3

1  class treatment would be unmanageable and is therefore not superior to individual litigation.

2  ## II. THRESHOLD ISSUES

3
4  ### A. Viability of Named Plaintiffs' Claims

5      Defendants opted not to support their challenge to the viability of the named plaintiffs'

6  claims in response to the motion for class certification, instead filing a separate motion for

7  summary judgment that did not become ripe for consideration until months after the certification

8
9  issue was ready to be resolved. The Court declines the invitation to first rule on the summary

10  judgment motion.

11
12  ### B. Article III Standing

13      Defendants argue that the putative classes are overbroad because they contain class

14  members who were never recorded and therefore lack Article III standing to pursue either a

15
16  wiretap or a CPA claim. Dkt. # 28 at 22. Article III, § 2 of the United States Constitution limits

17  the federal judicial power to "cases" and "controversies." Standing is a judicially-created

18  doctrine designed to protect the separation of powers concerns embodied in the text of Article

19
20  III. *Allen v. Wright*, 468 U.S. 737, 752 (1984) ("[T]he law of Art. III standing is built on a single

21  basic idea—the idea of separation of powers.") (abrogated on other grounds by *Lexmark Intern.,*

22  *Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)); *see also INS v. Chadha*, 462 U.S.

23
24  919, 946 (1983) ("[S]eparation of powers was not simply an abstract generalization in the minds

25  of the Framers: it was woven into the documents that they drafted in Philadelphia in the summer

26  of 1787.") (quoting *Buckley v. Valeo*, 424 U.S. 1, 124 (1976)). Standing protects separation of

27
28
ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 4

powers by ensuring that plaintiffs have an adequate stake in the outcome of the litigation. *TransUnion v. Ramirez*, 594 U.S. 413, 423-24 (2021).

To satisfy Article III standing, plaintiffs must demonstrate that they have (1) suffered an injury in fact, which is (2) fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). An injury in fact exists where the plaintiff suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560.

The Ninth Circuit has clarified that in class actions seeking injunctive or other equitable relief, only one plaintiff is required to demonstrate standing. *Olean Wholesale Grocery Coop. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 n. 32 (9th Cir. 2022). If the class seeks damages, however, all members must have Article III standing. *TransUnion*, 594 U.S. at 431; *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 594 (9th Cir. 2012). While it is clear that federal courts lack the power to grant relief to a plaintiff who suffered no injury, the Supreme Court has not yet addressed "the distinct question whether every class member must demonstrate standing *before* a court certifies a class." *TransUnion*, 594 U.S. at 431 n.4 (emphasis in original) (citing *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1277 (11th Cir. 2019)). In *Cordoba*, the Eleventh Circuit held that, although a district court need not separate out uninjured class members before granting class certification (and may instead wait until a later stage of the proceeding to determine which class members have suffered a redressable injury), if it appears that a large

portion of the class might not have standing, the court must consider under Rule 23(b)(3) whether the individualized standing issues will predominate over the common issues in the case prior to certification. 942 F.3d at 1276–77. The Ninth Circuit agrees, rejecting the argument that a class cannot be certified if it includes more than a *de minimis* number of uninjured class members in favor of a "rigorous analysis whether the common question predominates over any individual questions, including individualized questions about injury or entitlement to damages." *Olean*, 31 F.4th at 669.

The proposed classes each contain tens of millions of people. Defendants argue that some of those people use Alexa through a push-to-talk button (rather than through a wake word), may have gifted the device to someone else, or may be non-verbal so that they could not have had their voices recorded. They also argue that 900,000 Alexa users have taken advantage of a "do-not-save recordings" function. Putting aside the unknown efficacy of the "do-not-save recordings" function, the option did not exist until September 2020, and there is no reason to assume that the 900,000 were not recorded before that date. Nor is there any information from which the Court could hazard a guess regarding the number of Alexa users who use only push-to-talk, are disabled, or never used a device they were given or purchased. Plaintiffs estimate, based on defendants' alleged design preferences in favor of over-recording, the business need for voice recordings, and defendants' calculated "false wake rate," that Alexa-enabled devices record communications that were not intended for Alexa at least once a month. Even if there are some people who own or live with an Alexa device who were never recorded, there is no reason

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 6

to suspect, much less presume, that a significant or more than *de minimis* portion of the proposed classes escaped recording. The problem of individualized standing issues will be considered under the predominance analysis of Rule 23(b)(3).

## III. PREREQUISITES OF A CLASS

The party seeking certification must demonstrate that all four prerequisites of Rule 23(a) are met, as well as one of the requirements of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Rule 23(a) "requires that plaintiffs demonstrate numerosity, commonality, typicality, and adequacy of representation in order to maintain a class action." *Mazza*, 666 F.3d at 588 (9th Cir. 2012). Although the Court will not decide the underlying merits of a case at the class certification stage, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974), it will undertake a "rigorous analysis" to ensure the party seeking certification affirmatively complies with the Rule, which frequently requires peeking at the merits of plaintiff's claims, *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350-51 (2011) (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). In the Ninth Circuit, "plaintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." *Olean*, 31 F.4th at 665. "[A]ny admissible evidence" may be offered by members of the putative class in support of class certification. *Id.* (citing *Tyson Foods, Inc. v.*

1  *Bouaphakeo*, 577 U.S. 442, 454-55 (2016)).

2  **A. Numerosity**

3
4  Rule 23(a)(1) tests whether "the class is so numerous that joinder of all members is

5  impracticable." Defendants do not contest numerosity.

6  **B. Commonality**

7
8  Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P.

9  23(a)(2). Although the plain text of the Rule constrains itself to searching for common

10  "questions," the key inquiry is actually whether the class proceeding will "generate common

11  "answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (quoting Richard A.

12
13  Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 132

14  (2009)) (alteration in original). However, this does not mean that every question raised and

15  answered must be shared in common: all that is required is "a single *significant* question of law

16
17  or fact." *Mazza*, 666 F.3d at 589 (emphasis added); *see also Castillo v. Bank of Am., NA*, 980

18  F.3d 723, 728 (9th Cir. 2020) ("Even a single common question of law or fact that resolves a

19
20  central issue will be sufficient to satisfy this mandatory requirement.").

21  The Court finds that the following questions are shared in common by each non-

22  registrant class and will likely generate a common answer for the entire class:

23
24  1. whether plaintiffs' common evidence establishes that defendants intended to and knew

25  that Alexa intercepted communications of non-registrants that were not meant for Alexa;

26
27
28

and

2. whether Alexa devices are wiretapping "devices" as defined by the applicable state wiretapping statutes.

With regards to the registrant class, the following common questions are likely to generate common answers:

1. whether defendants adequately disclosed information regarding their interception, indefinite storage, and use of registrants' recordings (including conversations not intended for Alexa);

2. whether defendants' failure to adequately disclose information regarding the interception, indefinite storage, and use of registrants' recordings was an unfair or deceptive act or practice;

3. whether defendants' unfair and deceptive acts or practices impacted the public interest;

4. whether registrants' valuation of the utterances defendants compiled without compensation is reasonable and whether the loss of that value is an injury to each class members' business or property; and

5. whether registrants have demonstrated that defendants' actions in using intercepted recordings to train its algorithms and machine learning platforms should be enjoined.

The Court finds commonality satisfied in this case.

**C. Typicality**

Typicality asks whether "the claims or defenses of the representative parties are typical of

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 9

the clams or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality

requirement is to assure that the interest of the named representative aligns with the interests of

the class." *Wolin v. Jaguar Land Rover N. Am.*, *LLC*, 617 F.3d 1168, 1175 (citing *Hanon v.*

*Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). The analysis is guided by whether

(1) "other members have the same or similar injury," (2) "the action is based on conduct which

is not unique to the named plaintiffs," and (3) "other class members have been injured by the

same course of conduct." *Gonzalez v. United States Immigration and Customs Enf't*, 975 F.3d

788, 809 (9th Cir. 2020) (quoting *Hanon*, 976 F.2d at 508). "Rule 23(a) is 'permissive' and

requires nothing more than that a class plaintiff's claims be 'reasonably coextensive with those

of absent class members.'" *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.

1998)).

Defendants argue that Kaeli Garner and Ronald Johnson are not part of the classes they

seek to represent and therefore do not "possess the same interest and [did not] suffer the same

injury as the [absent] class members." *Dukes*, 564 U.S. at 348-49. Ms. Garner seeks to represent

a class of California non-registrants. At her deposition, Ms. Garner did not dispute evidence

suggesting that she had purchased and registered an Alexa-enabled Fire TV stick in late 2017.

Dkt. # 302-8 at 8 and 11. Defendants argue that she is therefore a registrant, that she is bound by

a Washington choice-of-law provision contained in the terms and conditions to which she

assented, and that she cannot assert claims under California law on behalf of herself or the non-

registrant class. It appears that Ms. Garner is not typical of the California non-registrant class

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 10

because she is, in fact, a registrant and subject to the terms and conditions to which registrants agree. Because Ms. Garner is the only plaintiff offered as a representative for non-registrants located in California, that class cannot be certified.

With regards to Mr. Johnson, he seeks to represent a class of Pennsylvania non-registrants. Mr. Johnson acknowledged at his deposition that he had an Alexa app on his phone at some point in time. Dkt. # 302-10 at 4. Defendants provided evidence that use of the Alexa app requires consent to the same terms and conditions of use as the registrants whose wiretap claims have already been dismissed by the Court. Dkt. # 310 at ¶¶ 60-62; Dkt. # 91 at 16-17. Mr. Johnson is not, therefore typical of other non-registrants in Pennsylvania. In the absence of a representative, a Pennsylvania class of non-registrants cannot be certified.

**D. Adequate Representation**

The representative parties—meaning the named plaintiff as well as class counsel—must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see also* Fed. R. Civ. P. 23(g)(4). Except with regards to Ms. Garner and Mr. Johnson, discussed in the preceding section, defendants offer no reason to suspect that absent class members will not be adequately represented.

### IV. MAINTENANCE OF A CLASS

In addition to meeting all four prerequisites of Rule 23(a), a plaintiff must also meet one of the three requirements of Rule 23(b). The Court considers this motion under Rule 23(b)(2) and (b)(3).

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 11

1

**A.  Rule 23(b)(2)**

2

3        Plaintiffs seek certification of a class of registrants to pursue injunctive relief under the

4  CPA. Certification under Rule 23(b)(2) is available when defendant "has acted or refused to act

5  on grounds that apply generally to the class, so that final injunctive relief or corresponding

6  declaratory relief is appropriate respecting the class as a whole." Plaintiffs argue that defendants

7  acted uniformly in relation to the registrant class by recording them in the absence of a wake

8
9  word and, without disclosure, transcribing, storing, and using those recordings indefinitely for

10  their own benefit. They request that the Court enjoin defendants from using class recordings or

11
12  data from those recordings to train algorithms and programs and to require defendants to destroy

13  existing recordings, transcripts, and related data.

14        Defendants argue that a Rule 23(b)(2) class cannot be certified because the primary relief

15
16  sought through the CPA claim is monetary damages. While it is clear that Rule 23(b)(2) "does

17  not authorize class certification when each class member would be entitled to an individualized

18
19  award of monetary damages," *Dukes*, 564 U.S. at 360-61, that does not preclude the possibility

20  of a Rule 23(b)(2) class seeking injunctive relief and a separate Rule 23(b)(3) class seeking

21  damages, *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013). The key to the

22
23  Rule 23(b)(2) analysis is whether an injunctive remedy (and, if applicable, any incidental

24  damage award) would apply to the class as a whole without having to make individual

25  determinations as to each class member's eligibility. *Ellis*, 657 F.3d at 987. That plaintiffs are

26

27

28

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 12

1  also seeking compensatory damages as a Rule 23(b)(3) class does not preclude a Rule 23(b)(2)
2
   class seeking remedies of an indivisible nature.
3
4          The Court finds that a Rule 23(b)(2) class of registrants may be certified for the purpose
5  of seeking injunctive relief.
6
   **B. Rule 23(b)(3)**
7
8          An "adventuresome innovation" created specifically with damages class actions in mind,
9  Rule 23(b)(3) imposes two additional requirements on a putative class beyond the four
10
   prerequisites of Rule 24(a), namely predominance and superiority. *Amchem Prods., Inc. v.*
11
12 *Windsor*, 521 U.S. 591, 615 (1997) (quoting Kaplan, *A Prefatory Note*, 10 B.C. IND. & COM.
13 L.REV. 497, 497 (1969)). These additional requirements reflect the concern that in actions for
14
   money damages, classwide adjudication may "not as clearly [be] called for as…in Rule 23(b)(1)
15
16 and (b)(2) situations [yet] may nevertheless be convenient and desirable." *Id.* (internal
17 quotations and citations omitted). Accordingly, the notification requirements of Rule 23(b)(3)
18
   are heightened and class members' right to opt-out is mandatory. *Compare* Fed. R. Civ. P.
19
20 23(c)(2)(B) ("For any class certified under Rule 23(b)(3), the court must direct to class members
21 the best notice that is practicable…including individual notice to all members who can be
22
   identified through reasonable effort."), *with* Fed. R. Civ. P. 23(c)(1)(A) ("For any class certified
23
24 under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class."); *see also*
25 *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974) (discussing the requirements of notice
26
27 and opt out in a Rule 23(b)(3) action); *Ellis*, 657 F.3d at 987 (noting that Rule 23(b)(3) not only
28

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 13

"expand[ed] the breadth of possible class actions, it also expanded the procedural protections

afforded the class.").

**1. Predominance**

Under the Rule 23(b)(3) predominance inquiry, the Court must find "that the questions of

law or fact common to class members predominate over any questions affecting only individual

members." Fed. R. Civ. P. 23(b)(3). "An individual question is one where members of a

proposed class will need to present evidence that varies from member to member, while a

common question is one where the same evidence will suffice for each member to make a *prima*

*facie* showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods*, 577

U.S. at 453 (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, 196-197 (5th ed.

2012 (internal quotations marks and alteration omitted))). Although somewhat similar to the

commonality prerequisite of Rule 23(a)(2), commonality and the predominance requirement of

Rule 23(b)(3) must be analyzed separately. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)

("Rule 23(b)(3)'s predominance criterion is even more demanding than 23(a)."); *Amchem*, 521

U.S. at 624 (finding that even if named and unnamed plaintiffs' shared asbestos exposure was

sufficient to satisfy commonality, too many individual issues regarding the circumstances and

subsequent effects of exposure predominated to uphold class certification). Where individual

inquiries would overwhelm common issues, certification under Rule 23(b)(3) is inappropriate.

*Amchem*, 521 U.S. at 623 (finding disparate circumstances of exposure to asbestos-containing

products as well as differences in state law undermined predominance). The predominance

inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson*, 577 U.S. at 453.

Defendants argue that the issues that will require individual presentations of evidence and judicial determinations outnumber and outweigh the issues that can be resolved in one stroke for each of the proposed classes. In particular, they argue that the non-registrant plaintiffs will have to produce individual evidence that they are part of the class, that they are not bound by the terms and conditions that bind the registrants with whom they lived, that they did not consent to the interception of their communications, that those communications constitute "private conversation" under the relevant wiretap statutes, and that they had a reasonable expectation that their communications would not be recorded. Defendants further argue that every member of the non-registrant class will have to prove the number of wiretap violations in order to claim statutory damages. With regards to the registrant class, defendants maintain that proof of injury and causation will be individualized and that there is no viable method for ascertaining damages across the entire class. Each of these arguments and, if necessary, the standing issue will be considered, separately and collectively, below.

### a. Non-Registrant Class Members

#### i. Identification of Non-Registrant Class Members

With regards to the non-registrant class, defendants argue that there is no way to identify all persons within a given state who never registered an Alexa device but who resided with a

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 15

registrant while an Alexa device was active and operational. This issue is less about predominance and more about manageability. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1126-28 (9th Cir. 2017); *Wetzel v. CertainTeed Corp*., No. C16-1160JLR, 2019 WL 3976204, at *19 (W.D. Wash. Mar. 25, 2019). The class definition sets forth objective criteria that allows the parties and the Court to recognize any given class member and to evaluate the viability of the claims asserted on their behalf. Whether the absence of a database containing all non-registrants' names or the related difficulties in providing class notice makes representative litigation unmanageable is an issue to be considered when determining superiority.

ii.      Agency and Estoppel

Defendants argue that non-registrants may be bound by Amazon's terms and conditions through an agency or estoppel theory, a determination that can be made only after individualized discovery and fact-finding. With regards to agency, defendants assert that non-registrant spouses, children, and roommates (the purported principals) may have authorized the registrants with whom they lived to register an Alexa device and enter into the terms and conditions on their behalf.

A principal is generally bound by the acts of his or her agent which, based on the objective manifestations of the principal, are within the express or apparent authority granted to the agent. *See generally Steadman v. Green Tree Servicing, LLC*, No. 2:14-cv-00854-JLR, 2015 WL 2085565, at *6 (W.D. Wash. May 5, 2015) (citing *King v. Riveland*, 125 Wn.2d 500, 507 (1994)). There is evidence in the record that could support a finding that Michael McNealy, the

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 16

representative of the proposed class of non-registrants who are pursuing a wiretap claim under

New Hampshire law, authorized his wife to register an Alexa device in his name. Dkt. # 294-2 at

75-77. Mr. McNealy may, in fact, be a registrant (although there is some ambiguity in his

discovery responses). While that exact scenario may be rare, the possibility of a joint purchase

of an Alexa device with one spouse registering the device on behalf and with full knowledge of

both partners is not. "Authorization occurs when one spouse, prior to the initiation of a

transaction, indicates his willingness to allow the other to enter into a transaction." *Nichols Hills*

*Bank v. McCool*, 104 Wn.2d 78, 83 (1985). While defendants would have the burden of

establishing the existence of an agency relationship at trial, the issue will undoubtedly engender

discovery aimed at absent class members and, where appropriate, individualized fact-finding.

Defendants' estoppel argument is based on the fact that non-registrants used the Alexa

device in their home and are therefore equitably estopped from avoiding the terms and

conditions to which the registrant agreed, citing *Tice v. Amazon.com, Inc*., No. 5:19-cv-1311-

SVW-KK, 2020 WL 1625782 (C.D. Cal. Mar. 25, 2020). *Tice* makes clear that state law

determines whether and under what theories nonsignatories may be bound by the terms of an

agreement. *Id.*, at *2. While California and Washington[2] recognize estoppel as one of the

ordinary contract principles that may bind nonsignatories to an agreement, defendants make no

effort to show that Florida, Maryland, New Hampshire, and/or Pennsylvania share that view.

More to the point, even if estoppel were a viable theory for binding non-registrants in all of the

---

[2] *See Satomi Owners Ass'n v. Satomi, LLC*, 167 Wn.2d 781, 811 n.22 (2009).

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 17

relevant states, simply using a tool, toy, device, or appliance that was purchased by another under the terms of a contract does not imply an awareness or exploitation of the contract, does not suggest that a claim for injuries caused by the tool, toy, vehicle, or appliance arises out of the contract, and is not evidence of an agency relationship. *See B.F. v. Amazon.com, Inc.*, 858 Fed. App'x 218 (9th Cir. 2021); *Townsend v. Quadrant Corp.*, 173 Wn.2d 451 (2012). The Court is not persuaded that equity must step in to hold a nonsignatory to unknown and undisclosed contractual terms simply because he or she was injured by a device that another purchased under a contract.

iii.    Consent

The wiretap statutes of California, Florida, Maryland, New Hampshire, Pennsylvania, and Washington require that plaintiffs prove that their private conversation was intercepted without their consent. Defendants argue that some purported non-registrants may have expressly consented to Amazon's terms and conditions of use (including that their conversations would be recorded) by buying an Alexa device on amazon.com and/or by signing into the Alexa app. As discussed above, Mr. Johnson, the proposed representative of a class of non-registrants who are pursuing a wiretap claim under Pennsylvania law, had the Alexa app on his cell phone for some unspecified period of time and therefore agreed to the same terms and conditions of use as the registrants whose wiretap claims have already been dismissed by the Court. Dkt. # 302-10 at 4; Dkt. # 310 at ¶¶ 60-62; Dkt. # 91 at 16-17. Plaintiffs argue that (1) the wiretap classes are defined to include only people who did not register an Alexa device and (2) Amazon already

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 18

possesses information sufficient to challenge the inclusion of a given non-registrant in the non-registrant class. The record shows, however, that registering an Alexa device is not the only way a consumer consents to the recordings, so merely looking at whether an individual has registered an Alexa device does not answer the consent question. That defendants will not have to undertake extensive discovery to identify putative non-registrants who have nevertheless consented does not change the fact that the inquiry is individualized and must be resolved before either liability or damages can be adjudicated.

Defendants also argue that publicly available disclosures, news reports, lawsuits, and other sources alerted non-registrants to the fact that if an Alexa device awoke – intentionally or unintentionally – the subsequent communications would be recorded, giving rise to the non-registrants' implied consent to the recordings. This issue might, as plaintiffs suggest, be susceptible to classwide resolution if, after a review of all of the relevant disclosures and sources, the fact-finder determines that the available information would not have put a reasonable consumer on notice that he or she was consenting to the recordings. *See Calhoun v. Google, LLC*, 113 F.4th 1141, 1148 (9th Cir. 2024). If that were the case, the issue of implied consent could be added to the list of other common questions in Section III.B. of this Order. But if plaintiffs are unable to achieve an unalloyed and universal victory on the issue, the fact-finder would be required to determine which sources of information each non-registrant read, saw, or heard and whether that specific constellation of sources established the non-registrant's implied

consent to the recordings, an intensely fact-based and individualized analysis.

    iv. Content of Recording

  The wiretap statutes of Washington and Maryland prohibit the interception of "conversations." RCW 9.73.030; Md. Code Cts. & Jud. Proc. § 10-401(13). While the Court declines to undertake an exhaustive analysis of what is and what is not a "conversation" for purposes of these statutes at this stage of the litigation, unintelligible sounds, random noises, and words with little or no context likely fall outside the definition of "conversation." Defendants have provided at least two recordings that contain no words, convey no information, and would not likely be considered "conversations." Dkt. # 294-5 and # 294-7.

  Plaintiffs assert that each member of the non-registrant classes was injured and damaged based on the facts that (a) they lived in proximity to an active Alexa device and (b) Amazon's internal data shows that false wakes were so frequent as to make it almost certain that each non-registrant was recorded at some point. Each of the proposed class representatives have identified at least one recorded communication that would be considered a private conversation. Dkt. # 257 at 13-14. Defendants' assertion that, amongst all the recordings it has transcribed, maintained, and used, a few of them are unintelligible does not invalidate any named plaintiff's claim. At most, individualized proof that certain recordings did not capture conversations might impact the calculation of the per violation damages for the Washington and Maryland classes, but the need for some individualized damage calculations does not outweigh the common issues

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 20

identified by plaintiffs.

v.    Reasonable Expectation of Privacy

Most of the state wiretap laws at issue require a showing that plaintiff had a reasonable expectation that the communication was private and/or that it would not be intercepted. The analysis involves an objective inquiry which, plaintiffs argue, will be decided for the entire class based on common evidence. Plaintiffs point out that non-registrants were recorded in their homes, a place where one normally expects privacy, and they rely on survey evidence showing that consumers do not like the idea that their in-home communications are being intercepted by a constantly listening device. Defendants, for their part, offer a different survey suggesting that the knowledge and expectations of Alexa users vary widely, with more than half understanding that Alexa was recording and keeping communications. To the extent a given non-registrant understood how Alexa worked, including the possibility of false wakes and subsequent recordings, it is difficult to see how that person could have a reasonable expectation that communications taking place in the vicinity of the device were private and/or would not be intercepted. Individualized discovery and fact-finding would be necessary to resolve this issue.

vi.    Damages

The non-registrant classes seek to recover statutory damages under the relevant state laws. Plaintiffs argue that because the non-registrants seek "a set amount in statutory damages," class wide issues predominate. Dkt. # 257 at 26. While claims for statutory damages sometimes obviate the need for individualized inquiry, that does not appear to be the case here. California's

wiretap law authorizes recovery of $5,000 per violation, while the other relevant state laws provide for liquidated damages at the rate of $100 a day for each day of the violation or $1,000, whichever is higher. Cal. Penal Code § 637.2(a)(1); Fla. Stat. § 934.10(1)(b); Md. Code Ann. Cts. & Jud. Proc. § 10-410(a)(1); N.H. Rev. Stat. Ann. § 570-A:11(a); 18 Pa. Cons. Stat. § 5725(a)(1); RCW 9.73.060. Plaintiffs offer no method or model to determine the number of unauthorized recordings made of each non-registrant, making it impossible to ascertain damages under California law or whether damages are capped under the laws of Florida, Maryland, New Hampshire, Pennsylvania, and Washington. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (while the proposed calculations need not be exact, plaintiffs must provide a model or method evidencing the damages attributable to the liability theory being pursued, otherwise the model "cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)."). Here, plaintiffs offer no model, simply asserting that they will be able to prove that every non-registrant was surreptitiously recorded and that each such recording is actionable. It is the number of those recordings that will determine the amount of statutory damages, however, an inquiry that will require individualized discovery and fact-finding.

vii.    Weighing Prevalence and Importance

Ultimately, the predominance inquiry requires the Court to determine whether the common issues that lend themselves to representational litigation of the wiretap claims are more prevalent or more important than the issues that will require individualized proof and fact-

finding. They are not. Common evidence will likely lead to common answers regarding Amazon's intent regarding and knowledge of the interception of non-registrant communications, whether Alexa devices are wiretapping "devices" for purposes of the state wiretapping statutes, and whether the universe of publicly-available information regarding how Alexa works was insufficient to establish implied consent for the recordings. While these issues are undoubtedly critical to plaintiffs' success on the wiretapping claims, they do not come close to establishing either liability or damages. Individual evidence will be needed regarding whether class members expressly consented to the recordings through the acts of their agent or through acceptance of Amazon's terms and conditions as part of an amazon.com purchase and/or use of the Alexa app, whether class members impliedly consented to the recordings or had a reasonable expectation of privacy around an Alexa device given their individual knowledge and understanding of how Alexa works, and the number of intercepted communications at issue for each non-registrant (or at least whether than number is less than or exceeds ten). Given the number, breadth, and importance of these issues, the Court cannot find that the questions of law or fact common to the non-registrant class members predominate over the questions that will need to be resolved on an individual-by-individual basis.[3]

### b.  Registrant Class

The registrant class has asserted a single cause of action under Washington's CPA. To

---

[3] In light of this conclusion, the Court declines to determine whether the possibility that some portion of the non-registrant classes was never recorded by Alexa (and therefore lacks standing) precludes certification.

prevail on a CPA claim, plaintiffs must prove "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Wash*., 166 Wn.2d 27, 37 (2009) (citing *Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co*., 105 Wn.2d 778, 784 (1986)). Plaintiffs assert that common evidence regarding Amazon's conduct will establish most of the elements of their CPA claim, satisfying the predominance inquiry. Defendants appear to concede that whether Alexa devices were advertised and sold in an unfair or deceptive way, whether those sales occurred in trade or commerce, and whether their conduct affected the public interest will be resolved for the class as a whole based on common evidence.

i.    Injury

The proposed class contains tens of millions of people, some of whom defendants assert were never recorded at all, much less had their recordings transcribed, subjected to human review, or used to better defendants' products.[4] In particular, defendants point out that some registrants use Alexa through a push-to-talk button (eliminating the opportunity for false wakes), may have gifted the device to someone else, or may be non-verbal so that they could not have had their voices recorded. They also argue that almost 900,000 Alexa users have taken advantage of a "do-not-save recordings" function that was introduced in September 2020 and that almost two million Alexa users have opted out of human review. While there is a

---

[4] The CPA claim is also based on allegations that the transcript of a recording was maintained even if the registrant attempted to delete the voice recording and that transcripts, as well as recordings, were stored and used by defendants forever, at their sole discretion.

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 24

hypothetical possibility that someone may have purchased and registered an Alexa device but never used it[5] and/or that a non-verbal customer purchased a device advertised as a cloud-based voice service platform, the Ninth Circuit "do[es] not permit a defendant to support its invocation of individualized issues with mere speculation." *Van v. LLR, Inc.*, 61 F.4th 1053, 1068 (9th Cir. 2023). Rather, "the defendant must invoke individualized issues and provide sufficient evidence that the individualized issues bar recovery on at least some claims" in order to raise "the spectre of class-member-by-class-member adjudication of the issue." *Id.*, at 1067.

With regards to defendants' other arguments, they each address limited facets of the unfair and deceptive conduct of which plaintiffs complain. If, for example, a registrant uses the push-to-talk feature, there may be less chance of a false wake, but his or her voice is still recorded, transcribed, and subjected to review, storage, and use at defendants' sole discretion. If a registrant chose the "do-not-save recordings" function when it became available in September 2020, there is no reason to assume that he or she was not recorded prior to that date. And affirmatively opting out of human review does nothing to avoid false wakes, transcription, storage, and use. There being no logical reason to assume, much less evidence to show, that the individual issues defendants identify would bar any class members' recovery on the CPA claim,

---

[5] The only evidence cited for this scenario is the deposition testimony of Jodi Brust. Ms. Brust purchased at least four Alexa devices, two of which she gave away as gifts. Dkt. # 302-2 at 11-15. This testimony in no way suggests that Ms. Brust was not the subject of false wakes, transcription, human review, and/or continued use of her voice data.

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 25

the Court will not allow speculation and surmise to tip the decisional scales at class certification.

Defendants also argue that an individualized review of every recording associated with a registrant's account will be necessary in order to determine whether there were any false wakes. But, again, defendants misstate the nature of plaintiffs' CPA claim. While false wakes are certainly a facet of the device that plaintiffs believe to be unfair, they are also complaining about defendants' failure to disclose that all recordings – whether intended for Alexa or not -- are transcribed, reviewed, maintained, and used. If plaintiffs prove their allegations regarding how Alexa works and what defendants do with the recordings they collect, the loss of control over their voice data appears to be a class wide injury.

ii.    Causation

Plaintiffs will have the burden of proving that defendants' unfair or deceptive conduct (*i.e.*, the failure to disclose the prevalence of and/or design preference for false wakes, that recordings are transcribed, that recordings and transcriptions are reviewed by humans, stored, and used indefinitely at defendants' sole discretion, and that requests to delete recordings left transcripts untouched) caused them to lose the value of and control over their voice data. Defendants argue that each class member's knowledge regarding how Alexa works and why they purchased the device will have to be evaluated before the fact-finder can determine whether a causal nexus exists. The argument seeks to impose on plaintiffs the task of proving that they would have acted differently in a hypothetical world in which defendants had made adequate

disclosures about what they did with the voice data processed by the Alexa service.

Where the act or practice at issue is an omission of material fact, as is the case here, the causation element of a CPA claim includes a rebuttable presumption of reliance. *Eng v. Specialized Loan Servicing*, 20 Wn. App. 2d 435, 452 (2021); *Deegan v. Windermere Real Est./Ctr.-Isle, Inc.*, 197 Wn. App. 875, 890 (2017). The presumption is "premised on the idea that otherwise the person seeking relief would have to prove a negative." *White v. Symetra Assigned Benefits Serv. Co.*, 104 F.4th 1182, 1197 n.3 (9th Cir. 2024). Defendants argue that the presumption of reliance is rebutted here because members of the registrant class were exposed to disparate information regarding how Alexa worked.

The presumption can be rebutted in this case by providing evidence that plaintiffs' decision to purchase and use an Alexa device would have been unaffected had the omitted facts been disclosed. *G.G. v. Valve Corp.*, 579 F. Supp. 3d 1224, 1234 (W.D. Wash. 2022), *aff'd sub nom. Galway v. Valve Corp.*, No. 22-35105, 2023 WL 334012 (9th Cir. Jan. 20, 2023). Defendants' assertion that some members of the class had more information regarding Alexa than others is insufficient. Defendants have not provided any evidence that one or more registrants knew all the omitted facts and nevertheless chose to purchase an Alexa or that, in the hypothetical world where defendants had disclosed all of the omitted facts, registrants would have made the same purchasing decision. The presumption would fail of its purpose if it could be rebutted simply by saying "plaintiffs failed to prove reliance." With the presumption in place,

causation remains a common issue.

    iii. Damages

  At the class certification stage, whether the calculation of damages is a common issue susceptible of class wide determination through common evidence or will require individualized proof depends on the proposed path for obtaining the necessary data and the method of computation. *Lytle v. Nutramax Lab'ys, Inc*., 114 F.4th 1011, 1032 (9th Cir. 2024), *cert. denied*, No. 24-576, 2025 WL 663695 (U.S. Mar. 3, 2025). Plaintiffs assert that there are common methods for establishing the value of the voice data defendants took and used for their own purposes without compensation, including (a) the fair market value of individual utterances or monthly subscriptions for the data and (b) the costs defendants currently incur to acquire non-Alexa voice recordings. Defendants have not suggested any reason to doubt that a per utterance value can be obtained.[6] But assigning a value to the utterances defendants collected from class members without payment gets plaintiffs only halfway towards proving damages. They will then have to show how many such utterances were taken from each class member in order to calculate a damage amount. Neither party addresses this aspect of the damage calculations, but there is evidence in the record suggesting that a review of registrant accounts would yield the necessary information. While that review would be individualized,

  "[t]he amount of damages is invariably an individual question and does not defeat

---

[6] At the class certification stage, plaintiffs need not prove the actual value of the data taken, they simply have to present a model or method for establishing that value which is viable given the facts of the case. They have done so, regardless whether Jonathan Hochman's expert opinions stop short of applying the model or method.

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 28

class action treatment." *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir.1975); *see also Yokoyama* [*v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1089 (9th Cir.2010)] ("The potential existence of individualized damage assessments ... does not detract from the action's suitability for class certification."). . . . Indeed, the Supreme Court clarified in *Dukes* that "individualized monetary claims belong in Rule 23(b)(3)." [564 U.S. at 362]. Thus, the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3).

*Leyva v. Medline Indus. Inc*., 716 F.3d 510, 514 (9th Cir. 2013).

### iv. Standing

Revisiting defendants' Article III standing arguments from Section II.B. of this Order, the Court finds that the concern that a class of all registrants may contain individuals who were never recorded does not preclude certification. While it is clear that federal courts lack the power to grant relief to a plaintiff who suffered no injury, registrants who were never recorded by Alexa can be identified through the same account review that will establish the amount of damages. While the standing issue will necessitate the same individualized review of Alexa account data as the damage issue, it does not predominate over the common issues in the case.

### v.    Weighing Prevalence and Importance

The Court finds that common issues central to resolution of the registrant class claims predominate over individualized inquiries regarding damages and standing.

## 2.  Superiority

In addition to finding that common questions of law or fact predominate with regards to the registrant class, the Court must also find "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 29

determining whether a class action is superior, the Court must consider the following list of non-exhaustive factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Defendants argue that the proposed registrant class would be unmanageable because (i) the class is comprised of tens of millions of people and (ii) defendants have prevailed in every Alexa arbitration claim to reach a decision on the merits. Neither consideration makes class treatment less fair or less efficient than individual litigation in this case. The fact that millions of people were allegedly injured by the same conduct suggests that representative litigation is the only way to both adjudicate related claims and avoid overwhelming the courts. And whether plaintiffs will be able to prove the elements of the CPA claim is not properly before the Court on class certification. It may well be that defendants prevail, in which case they will be released from the claims of all class members. Class treatment is not precluded simply because plaintiffs may not win.

### V. CONCLUSION

For all of the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiffs' motion to certify a class of registrants under Rule 23(b)(2) to seek injunctive relief under the CPA is GRANTED;

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 30

1    2.  Plaintiffs' motion to certify six classes of non-registrants under Rule 23(b)(3) to seek

2        damages under state wiretapping laws is DENIED; and

3

4    3.  Plaintiffs' motion to certify a class of registrants under Rule 23(b)(3) to seek damages

5        under the CPA is GRANTED.

6

7    DATED this 7th day of July, 2025.

8

9

10                               *MrS Lasnik*
                                 Robert S. Lasnik
11                               United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 31