UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KAELI GARNER, *et al.*,

              Plaintiffs,

     v.

AMAZON.COM, INC., *et al.*,

              Defendants.

CASE NO. 2:21-cv-00750-RSL

ORDER DENYING DEFENDANTS' *DAUBERT* MOTION REGARDING TESTIMONY OF JONATHAN HOCHMAN

This matter comes before the Court on "Amazon's Motion to Exclude Testimony of Jonathan Hochman." Dkt. # 312. Defendants seek to exclude Mr. Hochman's testimony that (a) a large collection of utterances or speech data has value and can be utilized for various purposes, (b) each individual user's data has discrete value in and of itself, and (c) Amazon could have programmed Alexa to record only the voices of registered users.[1]

Federal Rule of Evidence 702 provides that expert testimony is admissible if:

    (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other

---

[1] Amazon has not challenged, and the Court has not considered, the admissibility of Mr. Hochman's first two opinions.

This matter can be decided on the papers submitted. Amazon's request for oral argument is DENIED.

ORDER DENYING DEFENDANTS' DAUBERT MOTION
REGARDING TESTIMONY OF JONATHAN
HOCHMAN - 1

specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case.

*City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014). As construed in *Daubert v. Merrell Dow Pharmaceuticals, Inc*., Rule 702 tasks a district judge with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. 579, 597 (1993). Where an expert offers non-scientific testimony, "reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind" the testimony. *Porter v. Martinez*, 64 F.4th 1112, 1127 (9th Cir. 2023) (quoting *Daubert*, 509 U.S. at 594, and *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F. 3d 998, 1017 (9th Cir. 2004)). The analysis "should be applied with a 'liberal thrust' favoring admission." *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (quoting *Daubert*, 509 U.S. at 588).

> Ultimately, the test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology. The court is a gatekeeper, not a fact finder. Accordingly, the district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury. If the proposed testimony meets the thresholds of relevance and reliability, its proponent is entitled to have the jury decide upon its credibility, rather than the judge. Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge. A district court should not make credibility determinations that are reserved for the jury. This Court has previously noted that shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.

ORDER DENYING DEFENDANTS' DAUBERT MOTION
REGARDING TESTIMONY OF JONATHAN
HOCHMAN - 2

*Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) (internal quotation marks, citations, and alterations omitted). "Basically, the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969–70 (9th Cir. 2013).

The first two opinions to which Amazon objects have been offered in support of plaintiffs' motion for class certification to show that each registered Amazon user has been deprived of compensation for the voice data that Amazon collects and uses. Mr. Hochman provides alternative methods or models for valuing the voice data but does not attempt to calculate that value. Amazon challenges Mr. Hochman's qualifications to offer opinions regarding whether the voice data Amazon has collected has value or whether a voice identification filter were possible. It also argues that his opinion that voice data has value is unhelpful in the absence of a method by which that value can be ascertained on a class wide basis and that Mr. Hochman should be precluded from "regurgitating" Amazon's documents.

Mr. Hochman has 35 years of experience in software product development, internet technology, online marketing, and cybersecurity. He received Bachelor of Science and Master of Science degrees in computer science from Yale University in 1990, recently returning to Yale as a Ph.D. student in the Department of Computer Science, focusing on crytography. He currently teaches classes on computer privacy and is conducting research related to computer security, privacy, and distributed computing. Between stints as a

student, Mr. Hochman founded companies aimed at assisting clients with internet marketing and internet security, developing secure and private user authentication options, and integrating systems to maximize data capture and efficiency. He has also served as an expert regarding online data collection practices, software development, marketing, e-commerce, and internet security. His most recent article and research involve the tension between maintaining large data repositories for machine learning and safe-guarding individual privacy. He has been hired by both plaintiffs and defendants in litigation, employing "a consistent set of methodologies regardless of which side has retained" him. Dkt. # 314 at 9. As described in his report, Mr. Hochman uses his experience, education, and selected resources (including Amazon's documents) to define the terms of art used in this litigation, to explain how Alexa works and improves with both positive and negative training data, to show why the data Amazon has been collecting has value, and to identify various choices Amazon made in furtherance of its efforts to collect voice data regardless of user privacy interests.

### A. Knowledge and Expertise

Amazon argues that Mr. Hochman's admitted expertise in amassing, handling, using, and analyzing data is not transferrable to this case because his experiences involved types of data other than voice data. The distinction is unexplained and is unclear in this context. The challenged testimony is being offered to show the ways in which large quantities of data are used to train and improve products (such as the Alexa device), to explain the means by which Amazon and other market participants value the data they use

ORDER DENYING DEFENDANTS' DAUBERT MOTION
REGARDING TESTIMONY OF JONATHAN
HOCHMAN - 4

for such purposes, and to provide a basis for the jury to conclude that consumers have been injured by Amazon's collection of the data. Whether that data is in the form of a key stroke or an utterance is not dispositive of the relevant legal analysis. While Amazon is free to argue that Mr. Hochman's opinions should be discounted because they are based on his experiences with collections of data other than voice recordings, challenges to the weight of the testimony will be resolved by the fact finder.

Amazon also argues that Mr. Hochman lacks training and/or experience in economics and is therefore unable to assign a value to the data Amazon collects and uses. Mr. Hochman has not, however, offered an opinion regarding the actual value of the voice recordings at issue, either individually or en masse.

Finally, Amazon objects to the opinions set forth in Section D.i. of Mr. Hochman's report, namely that "[i]t is technologically feasible for products to not record a voice that is not registered or recognized." Dkt. # 314 at 49.  This opinion is based on Mr. Hochman's interpretation of internal Amazon documents, his understanding of how Apple's Siri virtual assistant works, and his work experiences with internet user authentication and identification through voice prints. The fact that he has not developed or created a voice print authentication system does not prevent him from opining that such a thing exists.

**B. Helpfulness**

Amazon argues that Mr. Hochman's opinions are not helpful in the context of a class certification motion because they do not provide a methodology for determining damages on a class-wide basis. More specifically, Amazon argues that (1) proof that voice

data has value to Amazon is insufficient to prove that Alexa customers were injured by Amazon's taking of the data and (2) even if the collection and use of the data caused injury, Mr. Hochman has not proposed a damages model capable of measuring or calculating damages in the absence of individualized proof. The first argument ignores the reasonable inferences that can be drawn from Mr. Hochman's testimony. Amazon does not dispute that it has a need for and values the voice recording data it collects. Before Alexa was capable of collecting the necessary utterances – *i.e.*, before the product was fully deployed and in homes across the country – Amazon paid people to generate and contribute their audio data. Once Alexa became operational, however, Amazon opted to take, store, and use the utterances recorded by the system rather than pay users for that privilege. A reasonable fact finder could conclude that Amazon's allegedly unfair acts deprived Alexa users of the opportunity to sell their voice data, thereby giving rise to an "injury to property" commensurate with the value of the taken data. While the collected data undoubtedly has a higher value to Amazon than it does to individual Alexa users, Mr. Hochman's testimony is sufficient to allow the fact finder to conclude that, had Amazon not simply taken the voice recordings, a mutually agreeable price for the data could have been reached and the users were deprived of that value.

     For the reasons set forth in class certification order, the Court disagrees with Amazon's second proposition. At the class certification stage, whether the calculation of damages is a common issue susceptible of class wide determination through common evidence or whether it will require individualized proof depends on the proposed path for

ORDER DENYING DEFENDANTS' DAUBERT MOTION
REGARDING TESTIMONY OF JONATHAN
HOCHMAN - 6

obtaining the necessary data and the method of computation. *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1032 (9th Cir. 2024), *cert. denied*, No. 24-576, 2025 WL 663695 (U.S. Mar. 3, 2025). Mr. Hochman offers at least two common methods for establishing the value of the voice data Amazon took and used for its own purposes without compensation, namely (a) the fair market value of individual utterances or monthly subscriptions for the data and (b) the costs Amazon is incurring or has incurred to acquire non-Alexa voice recordings. Amazon does not contest the per utterance cost calculations derived from its own documents, nor does it argue that the fair market value of an utterance cannot be obtained. Mr. Hochman's testimony is helpful at the class certification stage in that it identifies common methods for establishing value. Plaintiffs need not prove each element of their claims at the class certification stage or prove all elements through a single witness. The fact that Mr. Hochman has not gone further and offered an opinion as to what that value is does not make his testimony irrelevant or unhelpful.

### C. Regurgitation of Documents

In its motion, Amazon asserts that "most of Opinions 3 and 4" consist of nothing more than quotations from Amazon's documents and/or that the quoted documents require no expertise to understand and apply in this case. Amazon makes no attempt to explain why Mr. Hochman should be precluded from relying on Amazon's documents to support his opinions that the utterances Amazon has collected, individually and as a collective, have value. Amazon appears to have abandoned this argument in reply.

For all of the forgoing reasons, defendants' *Daubert* motion regarding Mr. Hochman's third and fourth opinions is DENIED.

Dated this 5th day of January, 2025.

*[signature]*
Robert S. Lasnik
United States District Judge