UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KAELI GARNER, *et al.*,

            Plaintiffs,

    v.

AMAZON.COM, INC., *et al.*,

            Defendants.

CASE NO. 2:21-cv-00750-RSL

ORDER GRANTING IN PART
PLAINTIFFS' *DAUBERT* MOTION
REGARDING TESTIMONY OF
DOMINIQUE HANSSENS

       This matter comes before the Court on "Plaintiffs' Motion to Exclude Testimony of Dominique Hanssens." Dkt. # 421. Plaintiffs seek to exclude Dr. Hanssens' opinions because he is not qualified to opine on privacy issues or the law and because the surveys he conducted are neither scientifically valid nor relevant to the issues in this case.[1]

       Federal Rule of Evidence 702 provides that expert testimony is admissible if:

> (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods;

---

[1]    This matter can be decided on the papers submitted. The parties' requests for oral argument are DENIED.

ORDER GRANTING IN PART PLAINTIFFS' DAUBERT
MOTION REGARDING TESTIMONY OF DOMINIQUE
HANSSENS - 1

and (5) the expert has reliably applied the relevant principles and methods to the facts of the case.

*City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014). As construed in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, Rule 702 tasks a district judge with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. 579, 597 (1993). Where an expert offers non-scientific testimony, "reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind" the testimony. *Porter v. Martinez*, 64 F.4th 1112, 1127 (9th Cir. 2023) (quoting *Daubert*, 509 U.S. at 594, and *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F. 3d 998, 1017 (9th Cir. 2004)). The analysis "should be applied with a 'liberal thrust' favoring admission." *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (quoting *Daubert*, 509 U.S. at 588).

> Ultimately, the test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology. The court is a gatekeeper, not a fact finder. Accordingly, the district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury. If the proposed testimony meets the thresholds of relevance and reliability, its proponent is entitled to have the jury decide upon its credibility, rather than the judge. Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge. A district court should not make credibility determinations that are reserved for the jury. This Court has previously noted that shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.

*Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) (internal quotation marks, citations, and alterations omitted). "Basically, the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are

impeachable." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969–70 (9th Cir. 2013).

Dominique Hanssens is a Distinguished Research Professor of Marketing at the UCLA Anderson School of Management and has been on the UCLA faculty since 1977. His undergraduate degree in applied economics was earned at the University of Antwerp. His M.S. and Ph.D. degrees are in Management from Purdue University. His focus is on strategic marketing problems, and both his research and his legal consultations have involved surveys and analysis regarding consumer perceptions and their response to alternative information disclosures.

## A. Knowledge and Expertise

Plaintiffs argue that, because Dr. Hanssens' expertise is in marketing, not privacy, he should not be permitted to assess consumers' understanding of Amazon's privacy policies.[2] But Dr. Hanssens does not opine regarding how or whether consumers understood Amazon's disclosures. Rather, he designed and conducted two surveys, one to see whether providing additional information related to Amazon's use of Alexa voice recordings impacted consumers' decisions to register an Alexa device ("Materiality Survey") and the second to test consumers' awareness of information regarding how Alexa works and their satisfaction regarding the ease of finding that information (the "Awareness

---

[2] In their reply memorandum, plaintiffs also argue that Dr. Hanssens lacks the experience or expertise to opine on computer science or cloud computing. This argument was not timely raised and fails for the same reasons as the privacy objection fails.

ORDER GRANTING IN PART PLAINTIFFS' DAUBERT
MOTION REGARDING TESTIMONY OF DOMINIQUE
HANSSENS - 3

Survey"). Dr. Hanssens has knowledge and expertise in consumer marketing and survey design sufficient to offer an expert opinion in this case

Plaintiffs also object to Dr. Hanssens' opinion that "individualized inquiry is needed to assess a particular Proposed Class Member's awareness of and attitude toward a particular Alexa feature." Dkt. 311 at ¶ 16. The objection was abandoned in reply and is overruled. Dr. Hanssens describes the data and evidence that led him to that conclusion, including his own survey results. The fact that the issue of commonality "is a key question for class certification" does not mean his opinion on that issue is a legal conclusion or inadmissible. Fed. R. Ev. 704.

**B. Materiality Survey**

Plaintiffs argue that Dr. Hanssens' Materiality Survey is irrelevant because it tests a factual scenario that does not apply to any potential class member, one in which the Alexa-enabled device has already been purchased and the consumer must now decide whether to register the device. Although it is possible that a consumer could review Amazon's policies before purchasing a device, the scenario Dr. Hanssens tested appears to be the most common way in which a user becomes familiar with those policies. Plaintiffs allege that Amazon failed to disclose the way it stores, reviews, and uses Alexa voice recordings, and the survey is designed to determine whether additional and/or different disclosures regarding those practices makes a difference in consumer willingness to register an Alexa device. Dr. Hanssens ultimately concluded that "the likelihood to register an Alexa Device was statistically indistinguishable between the Test Group (which was shown additional

information about Amazon's practices) and the Control Group." Dkt. 311 at ¶ 33. While the survey results and the conclusion drawn therefrom do not definitively resolve the issue of whether consumers would alter their behavior in the face of effective disclosures, they do suggest that the specific alterations Dr. Hanssens tested would not impact consumer behavior. To that extent, they are relevant.

The problem is that the survey that generated the data underlying Dr. Hanssens' conclusions is unreliable. Dr. Hanssens used a participant panel that was already pre-disposed to share information, excluded anyone who had never purchased or lived with an Alexa device (decisions that may correlate with a heightened concern for privacy),[3] excluded anyone who was uncomfortable sharing personal information (a defect compounded by the fact that demographic information was requested at the beginning of the survey), and excluded anyone who took the time to read the disclosures. Having disqualified 95% of the respondent pool, many for reasons that could bias the responses to the main question of the survey, the results of the survey do not reliably reflect consumer reaction to the tested changes in disclosures. Evidence of and opinions regarding the Materiality Survey will be excluded.

---

[3] The Court recognizes that this particular screening question was designed to identify respondents who belong to the proposed classes and, therefore, more accurately represent the classes' responses to the additional disclosures. But the conclusion Dr. Hanssens draws is that additional disclosures regarding how Alexa works does not impact consumers' likelihood of registering the device. "Consumers," in general, were not the target of the survey, however, seemingly by design.

ORDER GRANTING IN PART PLAINTIFFS' DAUBERT
MOTION REGARDING TESTIMONY OF DOMINIQUE
HANSSENS - 5

**C. Awareness Survey**

Dr. Hanssens' Awareness Survey was designed to test plaintiffs' contention that consumers are unaware that Alexa records, transcribes, and stores voice interactions even when the recordings are not intended for Alexa, that the recordings and transcriptions are stored and used by Amazon forever, and that human reviewers listen to and annotate the voice recordings. The survey also assesses whether consumers find these practices acceptable and whether consumers are satisfied with the availability of information regarding Alexa's features. Plaintiffs argue that the survey results are irrelevant because it is based on consumer knowledge in 2024 and/or at the time they registered their first Alexa device (if in or after 2019). While this choice means that the survey results reflect consumer knowledge that has been bolstered by five to ten years of disclosures and may not accurately reflect consumer knowledge when Alexa devices were first introduced, it does not make the results irrelevant. The proposed classes undoubtedly include individuals who first purchased their devices in the studied time frame. While the survey is not co-extensive with the class period and cannot reflect the information known to all class members, the results shed light on consumer awareness of the practices covered by the survey.[4]

Plaintiffs further argue that the Awareness Survey is unreliable because Dr. Hanssens did no research or follow-up questioning to confirm the respondents'

---

[4] To the extent Dr. Hanssens failed to test consumer awareness that transcripts were retained even if a consumer chose to delete the recordings, he will not be permitted to opine on practices that were not tested.

ORDER GRANTING IN PART PLAINTIFFS' DAUBERT
MOTION REGARDING TESTIMONY OF DOMINIQUE
HANSSENS - 6

recollections, as represented in their survey responses. He did, however, limit the time frame of the questions to five years. As long as a "survey was conducted in accordance with generally accepted survey principles and that the results were used in a statistically correct manner . . . , [t]echnical inadequacies in the survey, including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility." *Keith v. Volpe*, 858 F.2d 467, 480 (9th Cir. 1988) (internal citation omitted). *See also Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010) (noting that "survey evidence should be admitted as long as it is conducted according to accepted principles and is relevant" and that "[c]hallenges to survey methodology go to the weight given the survey, not its admissibility"). That the opposing party can poke holes in a survey's design and construction is not surprising: surveys are a scientifically constructed sampling method and, like any scientific method applied in the social sciences, there are bound to be limitations, restrictions, and flaws. *See* 5 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 32:178, at 32-297 (4th ed. 2004) ("One must keep in mind that there is no such thing as a 'perfect' survey."); *Indianapolis Colts, Inc. v. Metrop. Baltimore Football Club L.P.*, 34 F.3d 410, 416 (7th Cir. 1994) (after identifying methodological flaws, the court noted, "That is only to say, however, that Jacoby's survey was not perfect, and this is not news. Trials would be very short if only perfect evidence were admissible."). "Shaky but admissible evidence is to be attacked by cross examination,

ORDER GRANTING IN PART PLAINTIFFS' DAUBERT
MOTION REGARDING TESTIMONY OF DOMINIQUE
HANSSENS - 7

contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), as amended (Apr. 27, 2010).

For all of the forgoing reasons, plaintiffs' *Daubert* motion regarding Dr. Hanssens' opinions is GRANTED in part and DENIED in part.

Dated this 30th day of March, 2026.

Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART PLAINTIFFS' DAUBERT
MOTION REGARDING TESTIMONY OF DOMINIQUE
HANSSENS - 8