UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KAELI GARNER, *et al*.,

                Plaintiffs,

      v.

AMAZON.COM, INC., *et al*.,

              Defendants.

CASE NO. 2:21-cv-00750-RSL

ORDER GRANTING IN PART
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

This matter comes before the Court on "Amazon's Motion for Summary Judgment." Dkt. # 335. Plaintiffs either live in a household with an Alexa device they registered themselves ("registrants") or live in a household with an Alexa device that was registered by someone else ("non-registrants"). Registrants allege that Amazon engaged in unfair or deceptive conduct in violation of the Washington Consumer Protection Act by misrepresenting how it collects, uses, and stores recordings from Alexa devices. Non-registrants also assert claims under state and federal wiretap statutes. Amazon seeks summary judgment on all of plaintiffs' remaining claims.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its

ORDER GRANTING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 1

motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties[2] and taking the evidence in the light most favorable to plaintiffs, the Court finds as follows:

---

[2] The Court has considered the rebuttal report of Dr. Egelman. Plaintiffs' objections to the Declaration of Nedim Fresko, Dkt. 298, will be addressed separately. This matter can be resolved on the papers submitted. The parties' requests for oral argument are therefore DENIED.

ORDER GRANTING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 2

**A. Washington Consumer Protection Act ("CPA") Claims**

To prevail on a Consumer Protection Act claim under Washington law, a private plaintiff must establish "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 37 (2009). "[A] claim under the Washington CPA may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 787 (2013).

A plaintiff does not need to show the act was intended to deceive, "only that it had the capacity to deceive a substantial portion of the public." *Panag*, 166 Wn.2d at 47. A deceptive act or practice is measured by "the net impression" on a reasonable consumer. *Id.* at 50. The first element of a CPA claim is decided as a question of law when the facts are undisputed. As the Washington Supreme Court noted in *Leingang v. Pierce County Medical Bureau, Inc.*:

> Whether a party in fact committed a particular act is reviewable under the substantial evidence test. However, the determination of whether a particular statute applies to a factual situation is a conclusion of law. Consequently, whether a particular action gives rise to a Consumer Protection Act violation is reviewable as a question of law. . . . Therefore, since there is no dispute of facts as to what the parties did in this case, whether the conduct constitutes an unfair or deceptive act can be decided by this court as a question of law.

131 Wn.2d 133, 150 (1997) (internal citations omitted). *See also Panag*, 166 Wn.2d at 47.

**1. Unfair or Deceptive Act or Practice**

Plaintiffs argue that Amazon "deceptively and unfairly collected, used, and indefinitely retained recordings" when it failed to disclose that (a) Alexa-enabled devices

ORDER GRANTING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 3

are susceptible to false wakes and record a split second of audio just before a wake word is uttered, (b) Amazon records, retains, and uses false wake data even after confirming that the data was not intended for Alexa, (c) consumer requests to delete recordings are not always honored and do not result in the deletion of the associated transcript, and (d) Amazon's security measures apply to only a small percentage of the employees and contractors who have access to Alexa data. Dkt. 414 at 49.

### a. False Wakes and Split Second Recordings

Plaintiffs argue that Amazon deceptively failed to disclose the existence and frequency of false wakes and failed to disclose that Alexa transmits from the on-device buffer a split second of audio that precedes the wake word. The existence of false wakes was disclosed during the registration process. *See* Order Granting in Part Defendants' Motion to Dismiss, Dkt. 91 at 12-19 (discussing disclosures made during registration process). A practice is not "unfair or deceptive" under the CPA where the company's "applicable policies do not conceal" that it occurs, but "instead contemplate that very practice." *Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 858 (W.D. Wash. 2023), *aff'd*, No. 23-35377, 2024 WL 2206454 (9th Cir. May 16, 2024) (dismissing WCPA claim based on Amazon's "use of Alexa-captured voice data for advertising purposes").

With regards to the frequency of false wakes, plaintiffs do not identify any affirmative misrepresentation on the subject or any representation that was made unfair or deceptive because a false wake rate was not also disclosed. Instead, plaintiffs point to evidence suggesting that there have been hundreds of millions of false wakes since Alexa was introduced, averaging 1-3 false wakes per device per month. It is still not clear where the deception lies. Amazon disclosed how and why false wakes occur, a description which contemplates daily (if not more frequent) false wakes if a member of the household happens to be named Alexa or to drive a Lexus. That Alexa wakes if it detects a sound

ORDER GRANTING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 4

pattern matching the wake word is an accurate description of the device: it also suggests that the incidence of false wakes is highly variable depending on the context and conditions in which the device is deployed. Plaintiffs' primary complaint appears to be that Amazon internally characterizes false wakes as "exceedingly rare," Dkt. 414 at 51, but there is no indication that this characterization was shared with consumers.[1]

With regards to the transmission and recording of a fraction of a second of audio before the wake word, Amazon disclosed that audio would be streamed and recorded when the wake word is detected. As of 2014, Amazon's FAQs clearly disclosed that the transmission would include "a few seconds of audio before the wake word." Dkt. 350-6 at 2. *See, e.g.*, Dkt. 350-10 at 3; Dkt. 350-16 at 4; Dkt. 350-25 at 9. Again, there can be no deception when the applicable disclosures do not conceal but instead contemplate the very practice of which plaintiffs complain.[2]

---

[1] In fact, Amazon declined to publicly describe false wakes as "very rare." Dkt. 415-22. Despite the fact that an Alexa device makes approximately 2.4 million wake/no-wake decisions every month with a false wake rate of approximately 1 in every 1 million assessments, most people will eventually experience a false wake, so Amazon shied away from claiming that false wakes were "very rare." *Id.*

[2] Plaintiffs argue in another context that the FAQs are irrelevant to the CPA analysis because consumers are not required to consent to them. The question, however, is not affirmative consent or the existence of a legally binding contract, but whether the challenged practice had the capacity to deceive a substantial portion of the purchasing public. Plaintiffs allege an omission, specifically that Amazon failed to disclose that an Alexa device transmits the audio from a fraction of a second before the wake word is detected. No provision of the registration materials, which generally disclose that interactions with Alexa are streamed to the cloud, is alleged to be misleading or deceptive. Rather, plaintiffs argue that there should have been additional details provided regarding the amount of data streamed when the wake word is detected. But that level of detail was, in fact, provided in readily accessible and easily understood disclosures. When a CPA claim is based on an omission (or the use of statements not technically false or which may be literally true), the analysis under the first prong of the CPA test is whether the net impression created by the available and accessible disclosures, viewed as a whole rather than as individual parts, is deceptive. *Panag*, 166 Wn.2d at 50; *Keithly v. Intelius Inc.*, 764 F. Supp. 2d 1257, 1266 (W.D. Wash. 2011), *on reconsideration*, No. C09-1485RSL, 2011 WL 2790471 (W.D. Wash. May 17, 2011). While it is undoubtedly possible that a necessary bit of information could be buried in voluminous or hard-to-find disclosure materials in such a way that a substantial portion of the purchasing public would miss it, Amazon's FAQs are readily accessible and written in a clear and straightforward style specifically designed for consumers. Plaintiffs cannot simply ignore parts of Amazon's disclosures in order to prove a deceptive omission under the CPA.

ORDER GRANTING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 5

**b. Recording, Retention, and Use of False Wake Data**

Plaintiffs argue that Amazon failed to disclose that it retains and reviews false wake data (as opposed to the data generated from intentional interactions with Alexa), that human reviewers may be involved, and/or that Amazon retains transcripts of false wakes even if a user requests that the audio recordings be deleted. Dkt. 414 at 51-53. Amazon clearly and repeatedly disclosed that Alexa records and streams data to the cloud when the wake word is detected and that false wakes can occur. *See* Order Granting in Part Defendants' Motion to Dismiss, Dkt. 91 at 12-19 (discussing disclosures made during registration process). Since at least 2019, Amazon's FAQs clearly disclosed that false wake data was retained in the same way as other voice recordings and that human review is occasionally utilized to train Amazon's speech recognition and natural language understanding systems. *See* Dkt. 350-24 at 2-3 (advising consumers that "you can review and delete the voice recordings associated with your account (including any audio resulting from a false wake) in your Voice History available in the Alexa app" and that Amazon's machine learning involves "human[] review [of] an extremely small sample of requests"). The Court will nevertheless assume, for purposes of this analysis, that Amazon's disclosures regarding its retention, review, and use of false wake data were misleading for some portion of the relevant period.

**c. Indefinite Retention and Failure to Comply with Deletion Requests**

Plaintiffs argue that Amazon failed to disclose that it retained Alexa data indefinitely, that it used that data to improve or develop non-Alexa services, that it was having trouble fulfilling customer requests to delete audio recordings, and that it did not delete transcripts even after receiving a request to delete the associated audio recording. The first two arguments are unavailing. Amazon clearly and repeatedly disclosed that it retained audio, interactions, and other Alexa data and that it used the data to improve its

ORDER GRANTING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 6

services.[3] The "services" that might benefit from use of the retained Alexa data were not limited in any way other than that they belong to or are offered by Amazon. Plaintiffs offer no theory or explanation for their bald assertion that Amazon's disclosures regarding what it did with the Alexa data was deceptive.

With regards to the deletion practices, the Court will assume for purposes of this motion that Amazon has not followed through on its promise to delete audio data upon request and that its promise was misleading to the extent that the transcripts of the audio recordings are kept regardless of a deletion request.

### d. Inadequate Security Measures

Plaintiffs assert that Amazon's statements regarding the security measures applied to registrant data are deceptive because hundreds of Amazon employees had access to the data. No representations on the subject are identified, however, nor do plaintiffs present an actionable omission. *See* Dkt. 414 at 19 and 55.

### 2. Injury and Causation

As discussed above, the only potentially deceptive conduct in this case involves representations or omissions regarding (a) Amazon's retention, review, and use of false wake data for some period of time and (b) Amazon's deletion practices. There is no evidence from which a reasonable jury could conclude that plaintiffs were injured by human review or a failed deletion request, however. Amazon has produced undisputed

---

[3] Amazon has produced versions of the Conditions of Use, Alexa Terms of Use, and Privacy Notice that governed from January 2017 (when the first named plaintiff registered an Alexa-enabled device) forward. When registering an Alexa-enabled device, the initial "Welcome Screen" informs consumers that Amazon processes and retains Alexa audio and other data in the cloud to provide and improve Amazon's services, provides hyperlinks to the Terms of Use and the Privacy Notice, and requires consumers to accept the Alexa Terms of Use as a condition of registration. Dkt. 310-5. This language has remained substantially similar throughout the relevant period. Dkt. 298 at ¶ 65. Section 1.3 of the Alexa Terms of Use contain the same disclosures (Dkt. 349-18 through 349-32) and the Privacy Notice makes clear that information provided to Amazon is stored and used "for such purposes as responding to your requests, customizing future shopping for you, improving our stores, and communicating with you" (Dkt. 349-33 through 349-36; *see also* Dkt. 349-37 through 349-38).

ORDER GRANTING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 7

evidence that none of the false wake recordings associated with plaintiffs' accounts were subjected to human review, and none of the plaintiffs claim to have attempted to delete their Alexa recordings.

With regards to the claim that Amazon failed to adequately disclose that it retained and used false wake data prior to 2019, plaintiffs argue that they were injured by the practice because they were deprived of valuable voice data without compensation. For purposes of this motion, the Court assumes that plaintiffs will be able to prove an injury to business or property cognizable under the CPA. Nevertheless, they cannot link the injury to the allegedly deceptive conduct. "[T]o establish causation the plaintiff must 'establish that but for the defendant's unfair or deceptive act or practice the plaintiff's injury would not have occurred' as a matter of fact." *Young v. Toyota Motor Sales, U.S.A.*, 196 Wn.2d 310, 322 (2020) (quoting *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wn.2d 59, 82 (2007)). Plaintiffs offer no evidence that they viewed or read Amazon's allegedly misleading disclosures. Thus, any losses they may have suffered as a result of their purchase and use of Alexa – including damages arising from Amazon's use of false wake data without paying compensation -- cannot be causally related to the representations/omissions contained in the unseen documents. *Gray*, 653 F. Supp.3d at 859.

**B. State Wiretap Claims**

The unregistered plaintiffs who remain in this case have asserted wiretap claims under the laws of the states in which they reside.[4] Amazon argues that Lorlie Tesoriero and

---

[4] The Court has already determined that Kaeli Garner and Ronald Johnson, who sought to represent a class of California or Pennsylvania non-registrants, respectively, registered an Alexa-enabled device and therefore agreed to the same terms and conditions of use (including a Washington choice-of-law provision) as the registrants whose wiretap claims were dismissed. Dkt. 492 at 10-11 and 18; Dkt. 91 at 12-17. The Court also found that questions of law and fact common to the non-registrant class members' wiretap claims did not predominate over the questions that will need to be resolved on an individual-by-individual basis. Dkt. 492 at 23. Thus, only the individual wiretap claims of

ORDER GRANTING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 8

Michael McNealy are actually registrants because their partners acted as their agents when registering an Alexa-enabled device. Defendants also argue that the household member that registered the device contractually bound the non-registrants by agreeing to the terms and conditions of use on behalf of "all other persons who use Alexa under your account," that equitable estoppel binds third-party users of an Alexa device to the contractual terms governing the use of the device, and that the non-registrants impliedly consented to the recordings.

### 1. Choice of Law

Amazon argues that Washington has the most significant relationship to the wiretap claims of the unregistered plaintiffs, relying almost exclusively on the choice-of-law analysis the Court performed regarding the claims of registered plaintiffs. Dkt. 335 at 31-32 (referring to Dkt. 91 at 7-12). The Court expressly declined to determine whether Washington law applies to the wiretap claims of foreign unregistered users, Dkt. 91 at 12 n.5, and considered the elements of the other states' wiretap laws in the context of plaintiffs' motion for class certification, Dkt. 492 at 18-22. Plaintiffs have established that conflicts exist between Washington law and the wiretapping laws of Florida, New Hampshire, and Maryland that make a choice of law necessary. After conducting the two-step "most significant relationship" analysis set forth in Restatement (Second) of Conflicts of Laws ¶¶ 6 and 145-46, *Woodward v. Taylor*, 184 Wn.2d 911, 917 (2016), the Court finds that the place where the surreptitious recording and resulting injury occurred is most significant in the absence of any sort of contractual relationship and that the interests and policies of the jurisdiction where the injured parties are domiciled should govern.

---

Lorlie Tesoriero (Washington), Ricky Babani (Florida), Michael McNealy (New Hampshire), and Caron Watkins (Maryland) remain.

ORDER GRANTING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 9

**2. Agency**

Amazon asserts that both Ms. Tesoriero and Mr. McNealy authorized the registrant with whom they lived to register the Alexa device and enter into the terms and conditions of use on their behalf. A principal is generally bound by the acts of his or her agent which, based on the objective manifestations of the principal, are within the express or apparent authority granted to the agent. *See generally Steadman v. Green Tree Servicing, LLC*, No. 2:14-cv-00854-JLR, 2015 WL 2085565, at *6 (W.D. Wash. May 5, 2015) (citing *King v. Riveland*, 125 Wn.2d 500, 507 (1994)). Authority to act exists where the agent reasonably believes, based on the principal's statements to and conduct towards the agent, that the principal wishes the agent to take an action having legal consequences for the principal. *Revitalization Partners, LLC v. Equinix, Inc*., No. 2:16-cv-01367-JLR, 2017 WL 823291, at *4 (W.D. Wash. Mar. 2, 2017) (quoting Restatement (Third) of Agency § 2.01 (2006)).

There is ample evidence that Mr. McNealy authorized his wife to register at least one Alexa device on behalf of and for the benefit of their household. The McNealy's purchased their first Alexa-enabled device together, Mrs. McNealy had her husband's permission to use his name and do anything she wanted on his behalf with regards to electronic equipment, and Mr. McNealy specifically requested certain functionality through the Alexa device, which his wife programmed for him. Dkt. 338-9 at 21, 25-26, 30. In response, plaintiffs rely on cases involving the ratification of an agent's unauthorized acts, but in this case the evidence shows that Mr. McNealy purchased the Alexa-enable device with his wife and authorized her to register and program it for both of them. Mr. McNealy is therefore bound by the legal consequences of his agent's authorized conduct.

With regards to Ms. Tesoriero, however, it appears that her husband purchased and set up the Alexa device. There is no indication that Ms. Tesoriero agreed with, authorized,

ORDER GRANTING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 10

or was otherwise involved with the purchase. Amazon relies solely on Ms. Tesoriero's statement that she is not technically-oriented and leaves all such things to her husband, but that statement was made in the context of describing who opened the box in which the Alexa device arrived and "put [the device] together." Dkt. 346-4 at 8-9. While the statement might be interpreted as authorization of any and all technical work, that is not the only reasonable interpretation. Amazon has not shown as a matter of law that Mr. Hoyt was acting as Ms. Tesoriero's agent when he registered the device.

### 3. Binding Non-Signatories Through Contract or Equitable Estoppel

Amazon includes in its terms and conditions of use a statement that purports to bind not only the registrant, but also anyone who uses the Alexa device. Although a party who knowingly exploits the benefits of a contract will not be permitted to simultaneously avoid its burdens, there is no knowing exploitation where the claims asserted do not arise out of the contract and instead are grounded in tort law and allege personal injuries. *Townsend v. Quadrant Corp.*, 173 Wn.2d 451, 461, 465 (2012). The wiretapping claims of Ms. Tesoriero, Ricky Babani, and Caron Watkins do not assert any right or seek to enforce any duty created by the terms and conditions of use. Rather, plaintiffs seek to enforce statutory duties and prohibitions that exist outside of those agreements. *See B.F. v. Amazon.com, Inc.*, 858 Fed. App'x 218, 221 (9th Cir. 2021).[5] The Court reiterates its prior holding that "simply using a tool, toy, device, or appliance that was purchased by another under the terms of a contract does not imply an awareness or exploitation of the contract [and] does

---

[5] The facts of *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 275 (E.D.N.Y. 2019), were materially different. In that case, the husband accessed and used his wife's Amazon.com account to make a purchase, "implicitly representing that he was the true accountholder." Use of an Alexa device requires no sign-in, no voice authentication, and no representation of a contractual right or interest of any kind. The Court in *Tice v. Amazon.com, Inc.*, 845 Fed. App'x 535, 537 (9th Cir. 2021), applied California law to the equitable estoppel analysis which, according to the district court, holds that a spousal relationship automatically creates agency and justifies enforcing arbitration agreements against the non-signatory spouse, *Tice v. Amazon.com, Inc.*, No. 5:19-CV-1311-SVW-KK, 2020 WL 1625782, at *3 (C.D. Cal. Mar. 25, 2020). There is no indication that Washington law involves such a presumption.

ORDER GRANTING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 11

not suggest that a claim for injuries caused by the tool, toy, vehicle, or appliance arises out of the contract." Dkt. 492 at 18.

### 4. Washington Law (Ms. Tesoriero)

The wiretap statute of Washington requires Ms. Tesoriero to prove that her communication was intercepted without her consent. RCW 9.73.030(1). Amazon argues that her use of an Alexa-enabled device in her home establishes a long-standing and extensive relationship which, coupled with Amazon's public disclosures and Ms. Tesoriero's knowledge of how Alexa worked, constitutes consent to being recorded. Amazon relies primarily on the analysis in *State v. Townsend*, 147 Wn.2d 666 (2002), in which the Washington Supreme Court found that an individual impliedly consented to the recording of his communications when he used email and a chat network to host those communications. The court found that "a communicating party will be deemed to have consented to having his or her communication recorded when the party knows that the messages will be recorded." *Id.* at 675. An email was likened to a telephone answering machine: in both cases, the communication is accomplished and the device is useful only if a recording is made. *Id*. at 676. With regards to the use of a chat network, the court recognized that the technology worked with or without recording the communications, but found that Mr. Townsend had been notified that recordings could be made depending on the version and settings chosen by the recipient and had been advised that if he "did not wish to be subjected to the risks of recording, [he] should not use the software." *Id*. at 677-78.

Amazon argues that consent is implied in this case for the same reasons the *Townsend* court found consent: that recording is an inherent part of the technology, that Amazon made effective disclosures regarding recording, and that Ms. Tesoriero understood how Alexa worked and used the device with full knowledge that she would be

ORDER GRANTING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 12

recorded. Plaintiffs point out, however, that the analogy to *Townsend* falls apart in the context of false wakes. Unlike commands issued to or queries directed at Alexa, a false wake recording involves a communication that was intended to be entirely within the household and involved no technology whatsoever. Amazon, through its Alexa device, intercepted a communication that had no technological component at all, making the *Townsend* analysis inapposite.[6] The fact that Amazon publishes registration materials and privacy policies is superficially similar to the facts of *Townsend*, but Mr. Townsend was, in the parlance of this case, a registrant, whereas Ms. Tesoriero was not obligated to review or accept any of Amazon's disclosures. The existence of these policies somewhere on the internet does not establish notice to or the consent of this particular plaintiff.

Whether Ms. Tesoriero had actual notice of the false wake phenomenon and knowingly subjected herself to the risk of false wake recordings is a fact issue on which Amazon is entitled to summary judgment only if it can show that there is no genuine dispute. Defendants have, to a limited extent, met their burden. Ms. Tesoriero understood that Alexa would respond after detecting the wake work, she created a voice profile to improve the device's ability to process her accent, and she configured the device to address her in a certain way. None of these facts suggests, much less proves as a matter of law, that Ms. Tesoriero understood, prior to bringing this lawsuit in 2021, that communications in Alexa's presence could or would be recorded. Amazon has not, therefore, shown that she impliedly consented to recordings before 2021. With regards to recordings made after this lawsuit was filed, Ms. Tesoriero alleged and was fully aware that false wakes were a

---

[6] The same cannot be said for communications directed at the Alexa device. In that context, Ms. Tesoriero is speaking to a technological device that can function only by recording the command, and the intentional use of the technology implies consent. Plaintiffs attempt to draw a distinction between recording a command on the local device for local processing and streaming the command to Amazon's server for remote recording and processing. Dkt. 414 at 30. But the issue here is whether plaintiff consented to the recording itself, not where the recording is made or how it is subsequently stored or processed.

ORDER GRANTING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 13

possibility and that audio from the Alexa device, whether intended for Alexa or not, was recorded. Because she continued to live in proximity to and use a recording device that she knew was subject to false wakes, the *Townsend* rule compels a finding that she impliedly consented to such recording after initiating this litigation.

Amazon further argues that its recording of Ms. Tesoriero did not involve "private communications" or "private conversations." RCW 9.73.030(1) prohibits the interception or recording of any "private communication transmitted by telephone, telegraph, radio, or other device between two or more individuals" or any "private conversation, by any device . . . designed to record or transmit such conversation." Plaintiffs effectively concede that intentional commands directed at Alexa are neither private communications between two or more individuals nor private conversations. Dkt. 414 at 40-44 (acknowledging that Amazon's argument in this regard "at best – solely applies to . . . intentional commands" and focusing the opposition on false wakes).

With regards to false wakes, the question is whether the interception and recording of Ms. Tesoriero's pre-lawsuit conversations with her husband or other individuals in her home violates RCW 9.73.030(1). As described above, Washington's privacy act regulates the interception and recording of two separate types of communications. The first prohibits recording communications between individuals that take place through a device of some kind, like a telephone. RCW 9.73.030(1)(a). The second prohibits recording "private conversations" using a "device electronic or otherwise designed to record or transmit such conversation." RCW 9.73.030(1)(b). RCW 9.73.030(1)(a) is inapplicable because false wakes involve intra-household communications that do not involve transmission "by telephone, telegraph, radio, or other device." Amazon argues that the "private conversation" element of RCW 9.73.030(1)(b) is not satisfied here for two reasons.

ORDER GRANTING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 14

Amazon's first argument with regards to false wakes is that the Alexa device is not "designed to record or transmit" conversations that are not intended for it. Alexa is, however, a device designed to record and transmit verbal communications: the fact that Amazon accidentally or inadvertently records conversations between household members with the device is irrelevant to whether the recording falls within the purview of the statute. *See State v. Smith*, 189 Wn.2d 655, 663 (2017). Amazon's second argument is that the audio recordings captured in a false wake scenario are not "private conversations" because they are too short or primarily contain unintelligible blips of sound or words with no context. This argument has some merit under Washington law, which excludes from the definition of "conversation" recordings of non-verbal and unintelligible sounds even if there are brief verbal exchanges captured as well. *See id*. at 663-64; *State v. Smith*, 85 Wn.2d 840, 844 (1975). But that description does not categorically apply to all false wake recordings, and Amazon has not shown that Ms. Tesoriero's recordings primarily reflect non-verbal and unintelligible sounds. The inquiry is fact specific and requires a recording-by-recording analysis. Summary judgment is not appropriate on the record and arguments submitted.

### 5. Florida Law (Mr. Babani)

The Florida wiretap statute, Fla. Stat. § 934.03, appears to be modeled on 18 U.S.C. § 2511, discussed below. Amazon has not separately analyzed the elements of the Florida statute in the context of Mr. Babani's understanding and use of Alexa devices, instead simply asserting that the analysis is the same as under Washington law. The statutes do not have the same format or language, however, and there is no indication that Florida has adopted the decisional law of Washington on which Amazon relies. Amazon has not shown that it is entitled to judgment as a matter of law on Mr. Babani's Florida wiretap claim.

ORDER GRANTING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 15

**6. Maryland Law (Ms. Watkins)**

Maryland's wiretap statute, Md. Code Ann., Cts. & Jud. Proc. § 10-402, utilizes language and formatting that differs from both the Washington and federal wiretap laws. Because Amazon has not separately analyzed the elements of the Maryland statute in the context of Ms. Watkins' understanding and use of Alexa devices, it is not entitled to judgment as a matter of law on her Maryland wiretap claim.

**C. Federal Wiretap Claim**

The federal wiretap act prohibits the intentional interception of any oral communication and the disclosure or use of a communication known to have been intercepted in violation of the Act. 18 U.S.C. § 2511(1)(a), (c), and (d); *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 894 (S.D. Cal. 2025). It is not, however, unlawful "for a person . . . to intercept a[n] . . . oral . . . communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). The Court has already determined that the non-registrants' intentional interactions with Alexa do not violate the federal wiretap law because Amazon is a party to those communications. Dkt. 91 at 23.

Amazon argues that false wake recordings do not violate the federal statute because (1) the interception is not intentional, (2) plaintiffs lacked a reasonable expectation that their communications would not be intercepted, and (3) the use and disclosure of communications cannot establish liability without an underlying unlawful interception. Amazon sold recording devices for deployment in people's homes while knowing that the devices were subject to false wakes at a rate of approximately 1 in every 100 recordings (1%). Whether such interceptions are intentional and whether the non-registrants should

have known prior to filing this lawsuit that having an Alexa device in their homes meant their conversations were subject to interception will have to be determined on a case-by-case basis by the fact finder.

**D. Standing**

Amazon's standing argument misapprehends the nature of plaintiffs' claims and alleged damages.

For all of the foregoing reasons, defendants' motion for summary judgment (Dkt. 335) is GRANTED in part and DENIED in part. The named plaintiffs' CPA claim is DISMISSED. The wiretap claims of Ms. Garner, Mr. Johnson, and Mr. McNealy are DISMISSED. Ms. Tesoriero's wiretap claim under Washington law may proceed only as to false wake recordings made prior to the initiation of this lawsuit. Mr. Babani's wiretap claim under Florida law, Ms. Watkins' wiretap claim under Maryland law, and Ms. Tesoriero's, Mr. Babani's, and Ms. Watkins' federal wiretap claims related to false wakes may proceed.

DATED this 31st day of March, 2026.

Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 17